Guy B. Wallace – 176151
Sarah Colby – 194475
**SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP**
2000 Powell Street, Suite 1400
Emeryville, California  94608
Telephone:    (415) 421-7100
Facsimile:    (415) 421-7105
Email:    gwallace@schneiderwallace.com
            scolby@schneiderwallace.com

Gay Crosthwait Grunfeld – 121944
Benjamin Bien-Kahn – 267933
Devin W. Mauney – 294634
**ROSEN BIEN
GALVAN & GRUNFELD LLP**
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:    ggrunfeld@rbgg.com
            bbien-kahn@rbgg.com
            dmauney@rbgg.com

Kathryn A. Stebner – 121088
George Kawamoto – 280358
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, California  94102
Telephone:    (415) 362-9800
Facsimile:    (415) 362-9801
Email:    kathryn@stebnerassociates.com
            george@stebnerassociates.com

Attorneys for Plaintiffs and the Proposed Classes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

STACIA STINER; HELEN CARLSON, by and through her Guardian Ad Litem, JOAN CARLSON; LAWRENCE QUINLAN, by and through his Guardian Ad Litem, LORESIA VALLETTE; EDWARD BORIS, by and through his Guardian Ad Litem, MICHELE LYTLE; RALPH SCHMIDT, by and through his Guardian Ad Litem, HEATHER FISHER; PATRICIA LINDSTROM, as successor-in-interest to the Estate of ARTHUR LINDSTROM; and BERNIE JESTRABEK-HART; on their own behalves and on behalf of others similarly situated,

Plaintiffs,

v.

BROOKDALE SENIOR LIVING, INC.; BROOKDALE SENIOR LIVING COMMUNITIES, INC.; and DOES 1 through 100,

Defendants.

Case No. 4:17-cv-03962-HSG

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE PORTIONS OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

Judge:   Hon. Haywood S. Gilliam, Jr.
Date:    July 12, 2018
Time:    2:00 p.m.
Crtrm.:  2, 4th Floor

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.       INTRODUCTION ................................................. 1

II.     SUMMARY OF KEY ALLEGATIONS.................................... 2

III.    LEGAL STANDARD.......................................... 4

IV.    PLAINTIFFS ALLEGE VIABLE CLAIMS FOR RELIEF .................... 4

    A.   The Named Plaintiffs Have Standing........................ 4

    B.   Plaintiffs Have Alleged Viable Claims Under the ADA and the Unruh Act .......... 7

        1. Brookdale's Assisted Living Facilities Are Public Accommodations................. 7

        2. Plaintiffs Allege Discrimination Under the ADA and the Unruh Act ............... 11

    C.   The Court Should Not Abstain from Hearing Plaintiffs' Equitable Claims .......... 15

    D.   Plaintiffs Have Not Released Understaffing Claims Arising After May 15, 2015 18

    E.   Plaintiffs' CLRA and UCL Claims Are Adequately Pled and No Portion of Those Claims Should Be Stricken .................................... 21

        1. Plaintiffs Have Adequately Pled Their Fraud-Based CLRA and UCL Claims, And No Portion of Those Claims Should be Stricken ....................... 21

        2. Plaintiffs Have Adequately Pled the Portions of Their UCL Claims Based on Defendants' Willful Interference with Family and Resident Councils............... 22

    F.   Plaintiff Carlson's Post-December 2017 Claims Are Adequately Pled ................ 24

V.     CONCLUSION.......................................... 25

PLAINTIFFS' MPA IN OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3
4
*Antoninetti v Chipotle Mexican Grill, Inc.*
643 F.3d 1165 (9th Cir. 2010) ............................................................................... 11

5
*Armstrong v. Davis*
275 F.3d 849 (9th Cir. 2001) ............................................................................ 6, 17

6
7
*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .................................................................................................. 4

8
*AXA Corp. Solutions v. Underwriters Reinsurance Corp.*
347 F.3d 272 (7th Cir. 2003) ................................................................................. 16

9
10
*Baba v. Hewlett-Packard Co.*
No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ...................... 20

11
*Barden v. City of Sacramento*
292 F.3d 1073 (9th Cir. 2002) ............................................................................... 15

12
13
*Baughman v. Walt Disney World Co.*
685 F.3d 1131 (9th Cir. 2012) ............................................................................... 14

14
*Bay Area Roofers Health & Welfare Trust v. Sun Life Assurance Co. of Can.*
73 F. Supp. 3d 1154 (N.D. Cal. 2014) ................................................................... 20

15
16
*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) .................................................................................................. 4

17
*California v. ARC Amer. Corp.*
490 U.S. 93 (1989) .................................................................................................. 15

18
19
*Champlin v. Sovereign Res. Servs.*
No. 6:08-cv-55-Orl-22DAB, 2008 WL 2646627 (M.D. Fla. June 26, 2008) ......... 10

20
*Chapman v. Pier 1 Imports, Inc.*
631 F.3d 939 (9th Cir. 2011) .............................................................................. 4, 9

21
22
*Clark v. California*
739 F. Supp. 2d 1168 (N.D. Cal. 2010) ...................................................... 2, 13, 25

23
*Davidson v. Kimberly-Clark Corp.*
— F.3d —, 2018 WL 2169784 (9th Cir. May 9, 2018) ..................................... 2, 25

24
25
*Deakins v. Monaghan*
484 U.S. 193 (1988) ................................................................................................ 16

26
*Doe v. Salvation Army in U.S.*
685 F.3d 564 (6th Cir. 2012) ................................................................................. 10

27
28
*Doran v. 7-Eleven, Inc.*
524 F.3d 1034 (9th Cir. 2008) ............................................................................... 12

*Ebeid ex rel. United States v. Lungwitz*
   616 F.3d 993 (9th Cir. 2010) ........................................................................... 20

*Eichman v. Fotomat Corp.*
   759 F.2d 1434 (9th Cir. 1985) ......................................................................... 18

*Erie R.R. v. Tompkins*
   304 U.S. 64 (1938) ............................................................................... 1, 16, 17

*Fernandez v. Atkins Nutritionals, Inc.*
   No. 3:17-cv-01628-GPC-WVG, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018)................................. 25

*Fortyune v. City of Lomita*
   766 F.3d 1098 (9th Cir. 2014) ................................................................. 7, 9, 12, 13

*Haddad v. Dudek*
   784 F. Supp. 2d 1308 (M.D. Fla. 2011) ................................................................. 13

*Heindel v. Pfizer, Inc.*,
   381 F. Supp. 2d 364 (D.N.J. 2004) ..................................................................... 25

*Hernandez v. Cty. of Monterey*
   110 F. Supp. 3d 929 (N.D. Cal. 2015)................................................................... 8

*Herriot v. Channing House*
   No. C 06-6323 JF (RS), 2009 WL 225418 (N.D. Cal. Jan. 29, 2009) ....................................... 11

*Hubbard v. Twin Oaks Health & Rehab. Ctr.*
   408 F. Supp. 2d 923 (E.D. Cal. 2004) .................................................................. 11

*Hunter v. Nature's Way Prods., LLC*
   No. 16-cv-0532-WQH-AGS, 2018 WL 340233 (S.D. Cal. Jan. 9, 2018) ....................................... 25

*In re Candland*,
   90 F.3d 1466 (9th Cir. 1996), *as amended* (Oct. 2, 1996)............................................. 24

*In re Facebook PPC Adver. Litig.*
   709 F. Supp. 2d 762 (N.D. Cal. 2010)................................................................. 1, 21

*Karczewski v. DCH Mission Valley LLC*
   862 F.3d 1006 (9th Cir. 2017) ..................................................................... 12, 13

*Kirola v. City & Cnty. of S.F.*
   860 F.3d 1164 (9th Cir. 2017) ....................................................................... 4, 5

*Lazy Y Ranch Ltd. v. Behrens*
   546 F.3d 580 (9th Cir. 2008) ......................................................................... 4

*Lentini v. Cal. Ctr. for the Arts, Escondido*
   370 F.3d 837 (9th Cir. 2004) ......................................................................... 15

*Lovell v. Chandler*
   303 F.3d 1039 (9th Cir. 2002) ........................................................................ 15

*Lujan v. Defs. of Wildlife*
   504 U.S. 555 (1992) ............................................................................................................ 4

*MacRae by and through Watters v. HCR Manor Care*
   691 F. App'x 476 (9th Cir. 2017) ...................................................................................... 16

*McGary v. City of Portland*
   386 F.3d 1259 (9th Cir. 2004) .......................................................................................... 13

*Melendres v. Arpaio*
   784 F.3d 1254 (9th Cir. 2015) ....................................................................................... 4, 5

*Meneses v. U-Haul International, Inc.*
   Case No. C-11-03615 DMR, 2012 WL 669518 (N.D. Cal. Feb. 29, 2012) ...................... 6

*Montano v. Bonnie Brae Convalescent Hosp., Inc.*
   79 F. Supp. 3d 1120 (C.D. Cal. 2015) ............................................................................. 11

*Moore v. Kayport Package Express, Inc.*
   885 F.2d 531 (9th Cir. 1989) ...................................................................................... 20, 21

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*
   491 U.S. 350 (1989) .......................................................................................................... 16

*Newirth v. Aegis Senior Comties., LLC*
   No. 16-cv-03991-JSW, 2017 WL 3328073 (N.D. Cal. May 18, 2017) ...................... 20, 22

*PGA Tour, Inc. v. Martin*
   532 U.S. 661 (2001) ....................................................................................................... 7, 8

*Pierce v. Cty. of Orange*
   526 F.3d 1190 (9th Cir. 2008) .......................................................................................... 17

*Prohias v. Pfizer, Inc.*,
   485 F. Supp. 2d 1329 (S.D. Fla. 2007) ............................................................................ 25

*Red v. Kraft Foods, Inc.*
   No. CV 10-1028-GW(AGRx) 2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) ............... 25

*Rex v. Chase Home Fin. LLC*
   905 F. Supp. 2d 1111 (C.D. Cal. 2012) ........................................................................... 18

*Smith v. Forest Manor*
   No. 7:16-cv-01774-RDP, 2017 WL 1425830 (N.D. Ala. Apr. 21, 2017) ...................... 11

*Sutton v. Freedom Square Ltd.*
   Case No. 07-14897, 2008 WL 4601372 (E.D. Mich. Oct. 15, 2008) .............................. 10

*Tennessee v. Lane*
   541 U.S. 509 (2004) ....................................................................................................... 2, 12

*Thompson v. Paul*
   657 F. Supp. 2d 1113 (D. Ariz. 2009) .............................................................................. 21

PLAINTIFFS' MPA IN OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE

*Tribendis v. Life Care Centers of America, Inc.*
No. CV 14-02765-DMG (PJWx), 2015 WL 12914326 (C.D. Cal. April 9, 2015) ........................ 7

*Vess v. Ciba-Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003) ............................................................................................ 19

*Wehlage v. EmpRes Healthcare, Inc.*
791 F. Supp. 2d 774 (N.D. Cal. 2011) ................................................................................ 17

*Winans v. Emeritus Corp.*
No. 13-cv-03962-SC, 2014 WL 970177 (N.D. Cal. Mar. 5, 2014) ........................................ passim

**State Cases**

*Alvarado v. Selma Convalescent Hosp.*
153 Cal. App. 4th 1292 (2007) ........................................................................................... 15

*Klein v. Chevron U.S.A., Inc.*
202 Cal. App. 4th 1342 (2012) ........................................................................................... 18

*Kwikset Corp. v. Super. Ct.*
51 Cal. 4th 310 (2011) .................................................................................................. 2, 23

*Munson v. Del Taco, Inc.*
46 Cal.4th 661 (2009) ........................................................................................................ 15

*Shuts v. Covenant Holdco LLC*
208 Cal. App. 4th 609 (2012) ............................................................................................. 17

*Winet v. Price*
4 Cal. App. 4th 1159 (1992) ............................................................................................... 19

*Young v. Alden Gardens*
30 N.E.3d 631 (Ill. App. Ct. Mar. 31, 2015) ....................................................................... 10

**Federal Statutes**

29 U.S.C. § 794(b)(2) ........................................................................................................ 10

42 U.S.C. § 12181(7) .......................................................................................................... 8

42 U.S.C. § 12182 ...................................................................................................... passim

42 U.S.C.A. § 12201(b) ...................................................................................................... 15

**State Statutes**

Bus. & Prof. Code § 17200 *et. seq.* .............................................................................. passim

Cal. Civ. Code § 51 ........................................................................................................ 1, 15

Cal. Civ. Code § 1770 *et. seq.* .................................................................................... passim

Cal. Health & Safety Code § 1430 ....................................................................................... 7

Cal. Health & Safety Code § 1569.2 ...........................................................................10

Cal. Health & Safety Code § 1569.157 .......................................................................23

Cal. Health & Safety Code § 1569.158 .......................................................................23

Cal. Health & Safety Code § 1569.269 .........................................................................9

Cal. Welf. & Inst. Code § 9701....................................................................................9

**Rules and Regulations**

28 C.F.R. § 36.104 .......................................................................................................8

28 C.F.R. Pt. 36, App. A § 6.1 ....................................................................................9

28 C.F.R. Pt. 36, App. C ..............................................................................................9

28 C.F.R. Pt. 36, Subpart D, 2004 ADAAG § 223.1...................................................9

California Code of Regulations, Title 22, § 84711 ......................................................17

Federal Rule of Civil Procedure 12(b)(6).....................................................................4

Federal Rule of Civil Procedure 23 ...........................................................................1, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Defendants' challenges to Plaintiffs' Second Amended Complaint for Declaratory and Injunctive Relief and Damages ("SAC" or "Complaint") conflict with controlling precedent and the plain language of the relevant statutes and regulations.  Under Ninth Circuit precedent, the named Plaintiffs have Article III standing.  Their ability to challenge Defendants' policies and practices at all of their assisted living facilities in California is an issue to be addressed at class certification under Fed. R. Civ. Proc. 23.  Moreover, this Court may not abstain from hearing federal claims under a state rule of equitable abstention nor, under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), may it apply that state procedural rule to abstain from considering Plaintiffs' state law claims.

Plaintiffs have alleged valid claims for discrimination under the Americans with Disabilities Act of 1990 ("ADA") and the Unruh Civil Rights Act ("Unruh Act") based on the existence of physical access barriers in Defendants' facilities, and Defendants' failure to provide reasonable modifications to their staffing policies and practices under 42 U.S.C. § 12182 (b)(2)(A)(ii) and (iv) and Cal. Civ. Code § 51(f).  Further, the language of Title III of the ADA, the Title III regulations, the Department of Justice's interpretation of those regulations, and the case law all compel the conclusion that Defendants' facilities are "public accommodations" covered by the ADA.

Defendants do not and cannot cite any legal authority for their extreme theory that the *Winans* settlement agreement dated May 15, 2015 releases claims which arose after that date.  Plaintiffs have met the pleading requirements of Rule 9(b) for their claims under Cal. Civ. Code § 1770 *et. seq.* ("CLRA") and Cal. Bus. & Prof. Code § 17200 *et. seq.*  ("UCL") by alleging standardized misrepresentations and failures to disclose material facts by Brookdale after May 15, 2015 upon which they relied in deciding to remain at the facility and/or pay the rates charged by Brookdale.

This Court should deny Defendants' motions to strike portions of Plaintiffs' CLRA and UCL claims, as such motions should not be granted "unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation."  *In re Facebook PPC Adver. Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010).  This is clearly not the case with Plaintiffs' allegations regarding Brookdale's website and other marketing materials.  And contrary to Defendants' mischaracterization of the SAC, Plaintiffs expressly allege that they relied on the false statements in

1    Defendants' residency agreements and associated materials in deciding to enter or remain at a

2    Brookdale facility, and that had Brookdale disclosed its staffing policies and practices to them, they

3    would have looked for another assisted living facility.  This satisfies Rule 9(b).

4           For the reasons stated herein, Defendants' motion is without merit and should be denied.

5    **II.      SUMMARY OF KEY ALLEGATIONS**

6           Plaintiffs are elders and/or persons with disabilities who bring this putative class action on

7    behalf of themselves and all persons similarly situated.  SAC ¶¶ 2, 183.  Defendants Brookdale Senior

8    Living, Inc. and Brookdale Senior Living Communities, Inc. ("Brookdale" or "Defendants") are

9    corporations centralized in Brentwood, Tennessee that own, manage, and operate approximately 89

10   assisted living facilities throughout California.  SAC ¶¶ 23, 26.

11          Brookdale's corporate headquarters establishes policies and budgets that must be followed at

12   all of its assisted living facilities.  SAC ¶¶ 23-24.  These include a corporate policy and practice of

13   setting staffing based on "predetermined labor budgets and desired profit margins" without regard to

14   the needs of residents.  SAC ¶¶ 36, 38, 92, 204, 234.  Brookdale does not increase its staffing even if

15   the residents require additional staff to meet their needs as determined by Brookdale's assessments.

16   SAC ¶¶ 38, 92, 204, 234.  As a result of these corporate policies, Brookdale's facilities are

17   systemically and chronically understaffed.  SAC ¶¶ 39, 92, 204, 234.

18          Plaintiffs allege that Brookdale has violated Title III of the ADA and the Unruh Act by failing

19   to make reasonable modifications to its staffing policies and procedures.  SAC ¶¶ 4, 62, 205-10,

20   218(f).  Plaintiffs have requested reasonable modifications to Brookdale's staffing policies and

21   practices to provide sufficient numbers of adequately trained staff to ensure that residents with

22   disabilities receive access to the services for which they are paying Brookdale, but Brookdale has

23   failed and refused to do so.  SAC ¶¶ 4, 62, 205, 210.  As a result of its failure to make reasonable

24   modifications in policies and practices, Brookdale does not provide adequate staffing and the named

25   Plaintiffs and the putative class members are routinely denied assistance with basic activities of daily

26   living, including mobility, toileting, showering, dressing, grooming, transfers, meals, taking

27   medications, housekeeping, and laundry.  SAC ¶¶ 7, 39, 40, 279.

28

Plaintiffs further allege that Brookdale has a corporate policy and practice of failing to provide full and equal access to persons with mobility disabilities and of leaving in place physical access barriers that violate the ADA's requirements for newly constructed, altered or existing facilities.  SAC ¶¶ 3, 33–35, 212-214, 218(g)-(i).  Specifically, Brookdale has failed to make its residents' rooms and common areas compliant with federal disability access standards.  SAC ¶¶ 33, 212-213.  Brookdale's facilities are characterized by pervasive physical access barriers including, but not limited to, rooms with insufficient turning space for wheelchair users, inaccessible sinks and countertops, non-compliant grab bars, heavy doors, and a lack of roll-in showers.  SAC ¶¶ 34, 109, 129, 131, 175.  Brookdale further violates the ADA and the Unruh Act through its corporate policy and practice of denying persons with mobility disabilities full and equal access to transportation services, and by failing to put in place emergency evacuation policies and procedures that address the needs of residents with disabilities.  SAC ¶¶ 5, 56-62, 216-218.

Plaintiffs also allege that Brookdale has engaged in a corporate policy and practice of making false and misleading statements regarding its services and of failing to disclose its staffing policies and procedures.  SAC ¶¶ 6, 71.  Specifically, Brookdale represents in its uniform corporate resident admission contracts and other standardized corporate documents that it will provide residents with care services to ensure all assessed needs are met.  SAC ¶¶ 71-80, 106, 119-20, 122, 134, 139, 151, 162-163, 171, 223, 255-56, 266.  After Brookdale merged with Emeritus Senior Living and began to operate the facilities formerly owned and operated by Emeritus, Brookdale sent out standardized letters to its residents promising that residents would receive the same, and likely improved, services.  SAC ¶ 81.  They reiterated these misrepresentations in October 2015 with another standardized letter to residents about an upgrade to Brookdale's assessment system and promising service enhancements.  SAC ¶ 82.  At no time did Brookdale disclose that its corporate policy and practice of understaffing precludes it from consistently providing the promised services to residents for which they pay Brookdale.  SAC ¶¶ 71, 91-92, 99, 102-105, 107, 123, 135, 141, 152, 164, 172, 234, 241, 271.

The named Plaintiffs and the putative class members have suffered from, for example, excessive falls, routine failures to provide bathing, toileting, dressing, and grooming services; slow or no responses to their call pendants; failure to monitor and report changes in health conditions; failures

1  to provide medically necessary nutritional assistance; and medication errors.  SAC ¶¶ 6, 109, 112,

2  137-8, 142, 144-146, 154, 158-60, 169, 176, 180, 181-182.  The named Plaintiffs' and other

3  residents' experiences are the direct result of Defendants' centralized corporate policies and

4  procedures that result in systemic understaffing.

5  **III.   LEGAL STANDARD**

6      On a motion under Fed. R. Civ. P. 12(b)(6), the Court's "inquiry is limited to the allegations

7  in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."

8  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). The allegations may not be

9  conclusory but must present a facially plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

10  570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

11  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

12  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

13  **IV.   PLAINTIFFS ALLEGE VIABLE CLAIMS FOR RELIEF**

14      **A.   The Named Plaintiffs Have Standing**

15      The standing requirements for a plaintiff in a class action are no different than those for a

16  plaintiff in a single party lawsuit.  *Kirola v. City & Cnty. of S.F.*, 860 F.3d 1164, 1175-76 (9th Cir.

17  2017); *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2015).  A plaintiff must show that (1)

18  she has "suffered an 'injury in fact'" that is "concrete and particularized" and "actual or imminent";

19  (2) there is "a causal connection between the injury and the conduct complained of"; and (3) the

20  injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61

21  (1992).  A plaintiff seeking injunctive relief must also demonstrate a "real and immediate threat of

22  repeated injury."  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).

23      Defendants argue that the class representatives do not have standing to bring their claims

24  against all 89 of Brookdale's facilities in California because they reside in or have resided in only five

25  of those facilities.  ECF No. 60 ("MTD") at 6-8.  That argument was presented to and rejected by the

26  Ninth Circuit in *Kirola*, 860 F.3d at 1176.[1]  In *Kirola*, defendant City and County of San Francisco

27

28  _____
[1] *Kirola's* holding applies here, even though it involved Title II claims.  *Kirola*, 860 F.3d at 1174, n. 3 ("[D]espite [Title II's and Title III's] different application and different standards for relief on the merits, the answer to the

("the City") argued that the sole class representative did not have Article III standing in a class action

challenging disability access barriers at the City's parks, pools, libraries and pedestrian rights-of-way,

because she had testified about only four sidewalks of the City's 2,000 miles of sidewalks, two of the

City's 27,585 street corners, three of the City's 28 libraries, three of the City's nine pools, and one of

the City's 220 parks.  860 F.3d at 1174-75.  The Court rejected that argument, holding that the Article

III analysis was the same for both individual and class action claims.  *Id.* at 1175-76.  The Court

found that the named plaintiff had standing because she had encountered barriers that prevented her

from having full and equal access to the City's facilities, that she was likely to suffer harm in the

future from such barriers, that her injury was caused by the City's behavior, and that she would

personally benefit from a properly framed injunction.  *Id.* at 1175-76.

After concluding that the named plaintiff had standing to challenge barriers at the facilities she

had visited, the Court turned to whether she had standing to challenge those she had not visited.

Citing *Melendres v. Arpaio*, 784 F.3d 1254, 1262, the Court held that once the named plaintiff has

demonstrated her individual standing, the Article III inquiry concludes.  *Kirola*, 860 F.3d at 1176.

The court then turns to whether the plaintiff has met the requirements of Fed. R. Civ. Proc. 23(a).  *Id.*

If the class definition encompasses facilities the named plaintiff has not personally visited, she can

challenge the barriers and/or policies and practices at those facilities.  *Id.*

> The class definition is broad enough to encompass every facility discussed at trial, whether
> Kirola personally visited that facility or not. The district court thought that it could address
> only facilities that were visited by Kirola. But that does not take into account the scope of the
> certified class and the holding of *Melendres*. We hold that the plaintiff class has standing for
> claims related to all facilities challenged at trial.

*Id.*  Thus, if the named plaintiff has encountered barriers at one facility within a multi-facility system,

and the public accommodation has the same policies and practices at all of its facilities, then the named

plaintiff has standing to seek relief with respect to all of the facilities so long as the class certification

requirements of Rule 23 are met.  *See, e.g.*, *id.* at 1176; *see also Armstrong v. Davis*, 275 F.3d 849, 871

---

*constitutional question* of what amounts to injury under Article III is the same." (emphasis in original)).

1    (9th Cir. 2001) (named plaintiffs had standing to seek system-wide relief to California prison system

2    based on common discriminatory policies and practices); *see also* SAC ¶¶ 183-195.[2]

3              Each of the seven named Plaintiffs has established standing to bring his or her individual

4    claims.  All seven have been injured by physical barriers or discriminatory policies that limit or

5    obstruct their access to and enjoyment of Brookdale's services and facilities.  SAC ¶¶ 109-14, 125-29,

6    136-38, 142-47, 153-56, 158-61, 166-68, 175-79, 181-82.  All seven have been misled by and

7    suffered injury from Brookdale's misrepresentations and failures to disclose material facts about

8    Brookdale's services, which induced the Plaintiffs to move into and/or remain at Brookdale's

9    facilities and pay ever-increasing rates in exchange for promised, but routinely denied, services.

10   SAC ¶¶ 107-08, 110-17, 119-28, 132-47, 150-74, 177-79, 181-82.  All seven have been injured by

11   Defendants' corporate policy and procedure of providing pre-determined staffing at its facilities

12   which precludes Brookdale from providing promised care and services, and places all residents at a

13   substantial risk that they will not receive the care and services they have paid for on any given day.

14   *Id.*  Each named Plaintiff has suffered injury-in-fact sufficient for Article III standing.

15             The named Plaintiffs' injuries are directly caused by Defendants' failure to remove access

16   barriers, modify their discriminatory policies and practices, make accurate representations regarding

17   the quality and availability of services at Brookdale, and properly staff their facilities.  The named

18   Plaintiffs' injuries are redressable because the requested relief would require Brookdale to, *inter alia*,

19   remove access barriers and cease the aforementioned policies and unlawful conduct.  SAC ¶¶ 8, 9;

20   Prayer for Relief ¶¶ 1–15.  In short, a favorable decision on the named Plaintiffs' claims would confer

21   a direct, tangible benefit on them.  Without injunctive relief, the three named Plaintiffs who currently

22   live in Brookdale facilities are certain to suffer future harm.  SAC ¶¶ 279-87.

23

24   ───────────────────────

[2] The cases Defendants rely on have no application here. The plaintiff in *Meneses v. U-Haul International, Inc.*

25   was acting as an individual claimant, not a class representative, and the court was therefore required to address
     his ability to challenge barriers at the U-Haul facilities he had neither visited nor expressed an intention to visit

26   on an individual basis.  *Meneses*, No. C-11-03615 DMR, 2012 WL 669518, at *1, n. 1 (N.D. Cal. Feb. 29,
     2012). Similarly, *Twede v. University of Washington* was not a class action, but brought by three plaintiffs with

27   individual claims.  *Twede*, No. C16-1761JLR, 2018 WL 835705 (W. D. Wash. Feb. 13, 2018).  Morever, the
     *Twede* court misunderstood *Kirola*, citing it for the proposition that "standing is limited to 'that facility' where

28   the plaintiff encountered 'at least one barrier'", clearly an incorrect statement of *Kirola's* holding. 2018 WL
     835705, at *7.

Defendants analogize this case to *Tribendis v. Life Care Ctrs. of America, Inc.*, No. CV 14-02765-DMG (PJWx), 2015 WL 12914326 (C.D. Cal. April 9, 2015), merely because it involves multiple long-term care facilities.  Yet *Tribendis* has no application here.  In *Tribendis*, the statute at issue specifically required that the cause of action be brought against the "licensee" of a skilled nursing facility.  Cal. Health & Safety Code § 1430(b) ("A current or former resident or patient of a skilled nursing facility . . . may bring a civil action against the *licensee of a facility . . . .*" (emphasis added)).  As a result of the wording of the statute, the plaintiff in *Tribendis* was required to sue not just the parent corporation and the licensee of the facility at which he had resided, but also each separate licensee/subsidiary for each of the California facilities within the parent corporation's chain.  2015 WL 12914326, at *1.  Thus, the *Tribendis* court had to consider whether the plaintiff had standing to sue subsidiary defendants who did not exercise control over the facility at which he had resided, based only on the fact that those subsidiaries were controlled by a parent corporation which also owned plaintiff's resident facility.  *Id.* at *3-*4.  The connection was too attenuated.  *Id.*  Here, the only defendants Plaintiffs seek to hold accountable are defendants who operate and control the facilities in which they reside or resided.  They meet the standard quoted in *Tribendis*:  *"[W]hat is required is that for every named defendant there be at least one named plaintiff who can assert a claim directly against that defendant."*  *Id.* at *2 (emphasis in original).

**B.    Plaintiffs Have Alleged Viable Claims Under the ADA and the Unruh Act**

   1.    *Brookdale's Assisted Living Facilities Are Public Accommodations*

Congress enacted the ADA to provide a comprehensive statutory solution to widespread discrimination against persons with disabilities in all aspects of society.  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75 (2001).  To advance its stated purpose of eliminating and providing remediation for such discrimination, the ADA is to be construed broadly.  *See, e.g., Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014).  Title III of the ADA prohibits discrimination in "public accommodations."  Under 42 U.S.C. § 12181(7), "[t]he phrase 'public accommodation' is defined in terms of 12 extensive categories, which the legislative history indicates 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled."  *PGA Tour*, 532 U.S. 676-77.  Had Congress intended to exclude an entire industry from

1   the ADA's coverage, it would undoubtedly have made that exclusion explicit, as it did for private

2   clubs and religious organizations.  42 U.S.C. § 12187.  Nonetheless, Defendants contend that assisted

3   living facilities are not "public accommodations" covered by Title III of the ADA.

4          Assisted living facilities provide basic and personal care services to their residents, and clearly

5   fall under the enumerated categories of "service establishment," "senior citizen center," and "other

6   social service establishment."  42 U.S.C. § 12181(7)(F) & (K); *see also* 28 C.F.R. § 36.104.

7   Brookdale's residency agreement promises to provide its residents "Basic Services" and "Personal

8   Services" in exchange for monthly fees.  SAC ¶¶ 30-31, 71-80.  Defendants argue that because those

9   services are not provided to the general public, but instead to Brookdale residents, its facilities are not

10  "public accommodations."  MTD at 11.  They ignore Brookdale's extensive marketing of its services

11  to the public.  SAC ¶¶ 84-90.  That one must undergo an application process, meet basic qualifications,

12  and make payments to receive the services does not disqualify Brookdale as a "public

13  accommodation."

14         Defendants' theory has no legal basis and is, in fact, contrary to the statute and the case law.

15  The statute lists numerous facilities that do not provide services to any member of the public but only

16  to their students (private schools, nurseries), clients (day care center, senior citizen center, adoption

17  agency), or residents (homeless shelter).  42 U.S.C. § 12181(7)(J) and (K).  Similarly, courts have

18  recognized as "public accommodations" those entities whose services and benefits are provided only

19  to qualified members of the public.  *PGA Tour*, 532 U.S. at 677-80 (fact that plaintiff needed to

20  compete to be eligible for defendant's services and benefits did not exclude him or the PGA Tour from

21  ADA coverage); *see also Jankey v. Twentieth Century Fox Film Corp.,* 14 F. Supp. 2d 1174, 1178

22  (C.D. Cal. 1998) ("[m]any facilities that are classified as public accommodations are open only to

23  specific invitees").  In other words, a facility "need not be open to every member of the public in order

24  to be a public accommodation."  *Indep. Living Res. v. Oregon Arena Corp.*, 982 F. Supp. 698, 759 (D.

25  Or. 1997), *overruled on another ground by Miller v. Cal. Speedway Corp.*, 536 F.3d 1020 (9th Cir.

26  2008); *see also Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 978 (N.D. Cal. 2015) (private

27  provider of jail medical services was a public accommodation even though its services are not

28  available to the non-incarcerated public).

The U.S. Department of Justice ("DOJ") has long understood Title III to encompass "residential facilities that provide social services, including . . . nursing homes [and] residential care facilities," so long as they "can appropriately be categorized as a service establishment or as a social service establishment."  U.S. Dep't of Justice, Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544-01 (July 26, 1991) (now codified at 28 C.F.R. Pt. 36, App. C).  The DOJ's interpretation of its regulations is entitled to deference unless clearly erroneous or inconsistent.  *Fortyune*, 766 F.3d at 1104.

The regulations provide that assisted living facilities are covered by the ADA.  Licensed long-term care facilities are included in both the 1991 Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and the 2010 ADA Standards for Accessible Design ("2010 ADAS"):

> Medical care facilities included in this section are those in which people receive physical or medical treatment or care and where persons may need assistance in responding to an emergency and where the period of stay may exceed twenty-four hours. . . . (3) Long term care facilities, nursing homes—At least 50 percent of patient bedrooms and toilets, and all public use and common use areas are required to be designed and constructed to be accessible.

28 C.F.R. Pt. 36, App. A § 6.1; *see also*, 28 C.F.R. Pt. 36, Subpart D, 2004 ADAAG § 223.1 ("In licensed medical care facilities and licensed long-term care facilities where the period of stay exceeds twenty-four hours, patient or resident sleeping rooms shall be provided in accordance with" specific access standards); § 223.3 (same).  The Ninth Circuit has repeatedly held that ADAAG is entitled to *Chevron* deference.  *See, e.g.*, *Chapman*, 631 F.3d at 945-46.

Defendants' facilities are clearly long-term care facilities covered by Title III.  They are Residential Care Facilities for the Elderly ("RCFEs"), licensed by the California's Department of Social Services ("CDSS").  They are defined and/or referred to as "long-term care facilities" in multiple California statutes. *See, e.g.*, Cal. Welf. & Inst. Code § 9701(b)(2) ("'Long-term care facility' means any of the following:  . . Any residential care facility for the elderly as defined in [the Health and Safety Code sections regulating assisted living facilities]"); Cal. Health & Safety Code § 1569.269(a)(12) (RCFE residents have the right "[t]o contact . . . the long-term care ombudsman . . . regarding grievances against the licensee. . . . ").  They provide care services to their residents, including nursing and medication assistance.  SAC ¶ 202.

1   Defendants have cited no cases which support their extreme theory.  To the contrary, the cases

2   Defendants rely on are distinguishable, as they involved facilities which did not provide services to

3   their residents.  *Sutton v. Freedom Square Ltd.*, No. 07-14897, 2008 WL 4601372 (E.D. Mich. Oct.

4   15, 2008) (purely residential facility, no allegations of services provided); *Champlin v. Sovereign Res.*

5   *Servs.*, No. 6:08-cv-55-Orl-22DAB, 2008 WL 2646627 (M.D. Fla. June 26, 2008) (condominium

6   complex, no allegations of services).   In their desperation to manufacture a legal basis for their

7   argument, Defendants also cite an Illinois appellate court opinion, *Young v. Alden Gardens*, 30

8   N.E.3d 631 (Ill. App. Ct. Mar. 31, 2015), which has no relevance here.  *Young* did not involve claims

9   under the ADA or any similar statute, and the court performed no analysis of whether the facility at

10  issue was a "public accommodation."  Similarly, *Doe v. Salvation Army in U.S.*, 685 F.3d 564 (6th

11  Cir. 2012) has no application here.  The *Doe* Court was interpreting statutory language outlining

12  which "programs or activities" receiving federal financial assistance are covered by Section 504 of

13  the Rehabilitation Act, a statute similar in many respects to the ADA but with markedly different

14  qualifications for coverage.  *Id.* at 568.  In *Doe*, the Court had to determine whether the Salvation

15  Army was "principally engaged in the business of providing education, health care, housing, social

16  services, or parks and recreation," the specific criteria Section 504 mandated for its application under

17  the particular circumstances of that case.  29 U.S.C. § 794(b)(2).  *Id.*  Title III of the ADA does not

18  define "public accommodation" in that way, and at any rate, the provision of social and other services

19  is integral to the definition of an assisted living facility.

20  RCFE's, as defined by California law, provide social and other services to their senior

21  residents.  Cal. Health & Safety Code § 1569.2(p)(1) (RCFE means "a housing arrangement chosen

22  voluntarily by persons 60 years of age or over, or their authorized representative, where varying levels

23  and intensities of care and supervision, protective supervision, personal care, or health-related

24  services are provided, based upon their varying needs, as determined in order to be admitted and to

25  remain in the facility. . . ."); *id.* § 1569.1(g) ("Residential care facilities for the elderly which are not

26  primarily medically oriented represent a humane approach to meeting the housing, social and service

27  needs of older persons, and can provide a homelike environment for older persons with a variety of

28  care needs.").

Prior to the SAC's filing, Defendants recognized this in Brookdale Senior Living, Inc.'s Form 10-K filing with the U.S. Securities and Exchange Commission on February 15, 2017:

> **All of our communities are required to comply with the Americans with Disabilities Act, or ADA**. The ADA has separate compliance requirements for "public accommodations" and "commercial properties," but generally requires that buildings be made accessible to people with disabilities. Compliance with ADA requirements could require removal of access barriers and non-compliance could result in imposition of government fines or an award of damages to private litigants.

Plaintiffs' Request for Judicial Notice ("RJN"), Exh. A. at 32 (emphasis added).

Courts regularly treat skilled nursing facilities—the entities most analogous to those at issue here—as public accommodations. In *Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F. Supp. 3d 1120, 1129 (C.D. Cal. 2015), the court held that a skilled nursing facility was "a covered entity under Title III of the ADA and was subject to it at all relevant times, as it is a health care provider and thus a place of public accommodation." In other cases involving skilled nursing facilities, the point has been so obvious that defendants have not contested it. *See Hubbard v. Twin Oaks Health & Rehab. Ctr.*, 408 F. Supp. 2d 923, 929 (E.D. Cal. 2004); *Smith v. Forest Manor*, No. 7:16-cv-01774-RDP, 2017 WL 1425830, at *3 (N.D. Ala. Apr. 21, 2017); *see also*, *Herriot v. Channing House*, No. C 06-6323 JF (RS), 2009 WL 225418, at *6 (N.D. Cal. Jan. 29, 2009) (applying Title III to a continuing care retirement community). In summary, the statute, the regulations, the case law, and the facts compel the conclusion that Brookdale's assisted living facilities are public accommodations governed by Title III.

2.    *Plaintiffs Allege Discrimination Under the ADA and the Unruh Act*

Plaintiffs adequately allege several forms of disability discrimination. First, they allege that the common spaces and resident rooms in Brookdale's facilities have many physical access barriers that deny full and equal access for residents with mobility and visual disabilities to Defendants' facilities, goods and services. SAC ¶¶ 33-35. Plaintiffs allege that many of Defendants' facilities were newly constructed or altered after January 26, 1993, yet are not readily accessible to and usable by persons with disabilities in violation of 42 U.S.C. § 12183(a). SAC ¶¶ 212-13, 218. This constitutes disability discrimination under Title III of the ADA. *Antoninetti v Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1171 (9th Cir. 2010). Plaintiffs also allege that Defendants' facilities constructed

1    prior to January 26, 1993 contain physical access barriers which Defendants have failed to remove

2    even though such removal was "readily achievable," in violation of 42 U.S.C. § 12182(b)(2)(A)(iv).

3    SAC ¶¶ 214-15.  This also constitutes disability discrimination under Title III.  *See, e.g.*, *Doran v. 7-*

4    *Eleven, Inc.*, 524 F.3d 1034, 1043 (9th Cir. 2008).

5         In addition, Plaintiffs have alleged that Brookdale has violated 42 U.S.C. § 12182(b)(2)(A)(ii)

6    by refusing to make reasonable modifications in policy and practice to provide sufficient staffing so

7    that Plaintiffs may receive full and equal access to and enjoyment of Brookdale's services, including

8    assistance with activities of daily living, social and recreational activities, and transportation to off-site

9    appointments and activities.  SAC ¶¶ 204-211, 218.  As the Ninth Circuit has held, "[t]he ADA

10   defines discrimination to include: [A] failure to make reasonable modifications in policies, practices,

11   or procedures, when such modifications are necessary to afford such goods, services, facilities,

12   privileges, advantages, or accommodations to individuals with disabilities, unless the entity can

13   demonstrate that making such modifications would fundamentally alter the nature of such goods,

14   services, facilities, privileges, advantages, or accommodations …."  *Fortyune v. Am. Multi-Cinema,*

15   *Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004) (citing 42 U.S.C. §12182(b)(2)(A)(ii)); *see also Karczewski*

16   *v. DCH Mission Valley LLC*, 862 F.3d 1006, 1011 (9th Cir. 2017).

17        Brookdale urges the Court to find that Plaintiffs' requested modification of Brookdale's

18   staffing policies and practices is not reasonable as a matter of law.  MTD at 13.  Yet the Ninth Circuit

19   has repeatedly held that whether a requested modification is "reasonable" is a question of fact that

20   cannot be resolved at the pleading stage.  *Karczewski*, 862 F.3d at 1011; *Fortyune*, 364 F.3d at 1082-

21   83.  Moreover, Brookdale has cited no legal authority for the proposition that additional staffing

22   cannot be a modification or accommodation under the ADA.  Neither the case law nor the statute

23   supports Defendants' argument that "'[a]ccommodations' are things *other than* the service."  MTD at

24   13 (emphasis in original).  To the contrary, many courts have held that a reasonable accommodation

25   or modification[3] may be *more* of something already offered by the defendant and/or assistance

26   provided by the defendant's staff.  *See, e.g., Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (public

27

28   _____
     [3] The courts use "reasonable modification" and "reasonable accommodation" interchangeably and evaluate them
     under the same standards.  *Wong v. Regents of California*, 192 F3d 807, 816 (9th Cir. 1999).

entity may comply with the ADA by "assigning aides to assist persons with disabilities in accessing services"); *Wong*, 192 F.3d at 821 (additional weeks to study and prepare for a clinical clerkship could be a reasonable accommodation); *Clark v. California*, 739 F. Supp. 2d 1168, 1179-88 (N.D. Cal. 2010) (state to provide staff assistance to prisoners with developmental disabilities in areas of reading, writing, communication, hygiene, taking medications, showering, laundry, completing assignments, and supervision); *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1327 (M.D. Fla. 2011) (where state agency had already "undertaken to provide personal care services in nursing homes and in the community," its alleged "refus[al] to provide them to [plaintiff] in the community unless she first enters a nursing home" sufficed to state a claim under Title II). Additionally, Brookdale's unsupported assertion that the accommodation must be something other than the service provided by the defendant conflicts with the statutory language. By creating an exception for those modifications which would "fundamentally alter the nature" of the services or goods provided by the business, Congress intended that in most cases the modification would be directly related to the services provided by the public accommodation. 42 U.S.C. § 12182(b)(2)(A)(ii). What Defendants urge the Court to do here—hold as a matter of law that the provision of additional staffing could not be a reasonable modification under the ADA—is incompatible with Ninth Circuit precedent, *Karczewski*, 862 F.3d at 1011; *Fortyune*, 364 F.3d at 1082-83.

Brookdale argues that its failure to provide sufficient staffing does not constitute disability discrimination because all residents, not just those with disabilities, receive subpar services. MTD at 13. This misstates Plaintiffs' allegations. Plaintiffs allege not only that there is insufficient staff, but also that adequate staffing is "necessary to ensure that *residents with disabilities* receive full and equal access to and enjoyment of Defendants' goods, services, facilities, privileges, advantages, and/or accommodations." SAC ¶ 4 (emphasis added); *see also id.* ¶ 40 ("The lack of sufficient numbers of trained staff at BROOKDALE means that residents with disabilities who need and pay for assistance with bathing, dressing, brushing their teeth, toileting, incontinence care, and other hygiene assistance do not receive it on a routine basis."). Moreover, it is not a defense to say that persons with disabilities are treated the same as those who are not disabled. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) ("We have repeatedly recognized that facially neutral policies may violate

the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.").

Defendants selectively quote from *Arizona ex rel. Goddard v. Harkins Amusement Enter., Inc.*, 603 F.3d 666 (9th Cir. 2010), ignoring that the Ninth Circuit actually found that the district court erred in holding that certain auxiliary aids and services requested by the plaintiffs could not be required as a matter of law.  The court noted that simply providing the same services as those provided to nondisabled patrons may not meet the requirements of 42 U.S.C. § 12182(b)(2)(A)(iii). *Id.* at 671-72.  Similar to a reasonable modification, the provision of certain auxiliary aids and services "may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals".  *Id.* at 671.[4]  Defendants insist that the ADA only requires the provision of equal access to services.  Yet they ignore the portion of the statute requiring public accommodations to do something more—to make reasonable modifications in policies and procedures—in order to provide "full and equal enjoyment" to persons with disabilities. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012).

In addition to failures to remove physical access barriers or to make reasonable modifications in staffing policies and practices, Plaintiffs have also alleged that Brookdale discriminates against persons with mobility disabilities in its provision of transportation services, in violation of 42 U.S.C. § 12182(b)(2)(C)(i).  SAC ¶¶ 216, 218.  Plaintiffs allege that Defendants have implemented policies that limit the number of wheelchair users who may use transportation to participate in off-site activities and/or the number of trips per month in which wheelchair users may participate.  SAC ¶¶ 57, 216.  They have also required that wheelchair users bring a family member or pay for a one-to-one personal attendant if they wish to participate in certain off-site activities.  *Id.*  Brookdale does not impose these conditions on residents who do not use wheelchairs.  *Id.*, ¶ 216.  These policies constitute facial

---

[4] The other cases Defendants cite have no relevance here.  *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000), involved a former employee who alleged discrimination in the provision of insurance benefits, not a failure to make a reasonable modification in policy or practice.  The Court held that the plaintiff was no longer protected by Title I of the ADA, and that the provision of insurance was not covered by Title III. *Id.* at 1110, 1113-14.  The court in *Blair v. Bank of America, N.A.*, No. 10-cv-946-SI, 2012 WL 860411 (D. Or. March 13, 2012) rejected the plaintiff's Title III claim because it concluded that collection activities and loan modifications were not services connected to a physical location and therefore did not constitute services of a public accommodation.  *Id.* at *5, *aff'd*, 573 Fed. Appx. 665 (9th Cir. 2014).

14

discrimination clearly prohibited by the Act.  42 U.S.C. § 12182(b)(1)(A)(i) and (ii); *see also Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002) ("categorical exclusion of disabled persons" from the program or services is facial, "intentional" discrimination in violation of the ADA).

Because Plaintiffs have alleged valid claims under the ADA, their Unruh Act claim is also viable.  Cal. Civ. Code § 51(f).  Both the Ninth Circuit and the California Supreme Court have held that the plain language of the Unruh Act mandates that any violation of the ADA constitutes a violation of the Unruh Act.  *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004); *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 673 (2009).

**C.     The Court Should Not Abstain from Hearing Plaintiffs' Equitable Claims**

Defendants have argued that this Court should invoke a rule created by California state courts to abstain from hearing Plaintiffs' equitable claims asserted under both federal and state law. California's rule gives state courts the discretion to abstain from adjudicating equitable, but not legal, claims if doing so "would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency."  *Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1298 (2007).  This Court should reject Defendants' request.

The Court cannot employ a state-court-created rule to abstain from considering a claim under Title III of the ADA, a *federal* law.  In enacting the ADA, Congress intended that it be "construed broadly" to achieve its "purpose of 'provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'"  *Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002) (internal citations omitted).  A state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," violates the Supremacy Clause of the U.S. Constitution and is pre-empted by the federal law. *California v. ARC Amer. Corp.*, 490 U.S. 93, 100-101 (1989) (internal citations omitted).  CDSS does not enforce or monitor compliance with the ADA.  As only equitable relief, and not damages, is available for violations of Title III of the ADA, the application of California's "equitable abstention" rule would clearly block and frustrate Congress' objectives.  Congress made clear that the Act pre-empts state law unless it "provides greater or equal protection for the rights of individuals with disabilities than" that afforded under the ADA.  42 U.S.C.A. § 12201(b).  The "equitable abstention"

doctrine does not qualify.

Nor should this Court apply equitable abstention to Plaintiffs' state law claims for injunctive relief.  The duty of an Article III court to exercise the jurisdiction conferred upon it is "virtually unflagging."  *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988).  The exceptions to this rule are limited and have been "carefully defined" by the U.S. Supreme Court.  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989).  These exceptions do not include California's rule.  Where a court's jurisdiction is based on diversity, it must apply *federal*, not state, rules of procedure.  *Erie*, 304 U.S. at 78.  Where the state laws at issue provide for injunctive relief, as they do here, the issue of whether a court may abstain from considering those claims is a procedural one.  *See, e.g.*, *AXA Corp. Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 277-78 (7th Cir. 2003) (abstention is a procedural issue); *MacRae by and through Watters v. HCR Manor Care Svcs., LLC*, 691 F. App'x 476, 478-79 (9th Cir. 2017) (Nguyen J., concurring) (abstention doctrine is procedural "because it concerns not whether a right or obligation exists, but rather the proper venue for its enforcement," and its application to state law injunctive relief claims in federal court would therefore violate *Erie*); *but see Winans v. Emeritus Corp.*, No. 13-cv-03962-SC, 2014 WL 970177, at *5 (N.D. Cal. Mar. 5, 2014) (state abstention doctrine is not procedural).

The Court's opinion in *Winans* does not control.  First, the *Winans* plaintiffs sought a staffing injunction based solely on consumer fraud claims under the CLRA, the UCL and the elder financial abuse statute, not the ADA or the Unruh Act.  *Winans*, 2014 WL 970177, at *2.  Here, Plaintiffs do not seek a staffing injunction under the CLRA, the UCL and the elder abuse statute.  Rather, they ask for an injunction directing Defendants to stop making misrepresentations, disclose material facts about staffing and stop charging residents monthly fees based on their Personal Service Plans until Brookdale implements staffing policies and procedures enabling it to deliver those services on a consistent basis.  SAC ¶ 249, Prayer for Relief ¶¶ 4-5.  Contrary to Defendants' claims, the *Winans* Court did not rule on whether it could enjoin the defendants from making misrepresentations.  Exhibit B to RJN at 4-5; *Winans v. Emeritus Corp.*, No. 13-cv-03962-SC, 2014 WL 2586370, at 2 (N.D. Cal. June 9, 2014) ("The Court also declines to address Plaintiff's new theories of injunctive relief at this point.").  Finally, Plaintiffs respectfully disagree with the *Winans* court's application of California's

1    equitable abstention rule in federal court.  The holding failed to acknowledge the full import of the

2    *Erie* doctrine or that the regulations relied upon by the defendants there, as here, involve training,

3    health standards, and background checks—not the core allegations of Plaintiffs' Complaint herein.

4         Even if the Court were to apply California's equitable abstention rule, it should not abstain.

5    Plaintiffs' claim under the Unruh Act is predicated on Defendants' violations of the ADA.  SAC ¶¶

6    223, 226.  As explained above, this Court may not abstain from hearing Plaintiffs' injunctive relief

7    claim under the ADA.  This is not a situation in which the Court's resolution of the ADA and

8    derivative Unruh Act claims would interfere with the functions of the state licensing agency or

9    involve complex determinations that this Court is not equipped to make.  Indeed, federal courts have

10   vast experience analyzing injunctive relief claims under disability discrimination laws, including the

11   type of injunctive relief sought here.  *See, e.g.*, *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1223 (9th

12   Cir. 2008) (ordering district court to determine on remand what injunctive relief should be granted for

13   violations of the ADA); *Armstrong*, 275 F.3d at 871 (approving injunction requiring the Board of

14   Prison Terms to modify its policies and practices to comply with the ADA).

15        Moreover, CDSS does not regulate the compliance of assisted living facilities with federal *or*

16   state disability discrimination laws.  Although the regulations applicable to such facilities do contain

17   requirements regarding staff, those most applicable to Plaintiffs' requested modification regarding

18   Defendants' staffing policies and practices are general in nature and would not be usurped by the

19   Court's exercise of jurisdiction to remedy disability discrimination under the ADA or the Unruh Act.

20   Cal. Code Regs., tit. 22, § 84711(a) ("Facility personnel shall at all times be sufficient in numbers,

21   and competent to provide the services necessary to meet resident needs. …"); *Shuts v. Covenant*

22   *Holdco LLC*, 208 Cal. App. 4th 609, 622-23 (2012) (that a regulatory agency *might* adopt rules to

23   clarify staffing standards does not mean the court should abstain, and to do so for that reason could be

24   an abuse of discretion).  Given that even in state court equitable abstention is not mandatory, but

25   subject to the court's discretion, its application at this early stage of the case is not warranted.

26   *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 786 (N.D. Cal. 2011).

27        Further, the injunctive relief Plaintiffs seek under their state law claims alleging

28   misrepresentations—the CLRA, the elder financial abuse statute, and the UCL—does not usurp the

17

1    functions of a state regulatory agency or involve a complex policy determination over which the

2    Court has no expertise.  There is nothing complex or burdensome about injunctive relief requiring

3    Defendants to disclose the material facts about their current staffing policies and practices.  Federal

4    courts regularly rule on fraud and misrepresentation claims under these California statutes.  *See, e.g.*,

5    *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1134-35 (C.D. Cal. 2012) (injunction that would

6    prohibit defendant bank from sending "false" or "deceptive" communications to borrowers in

7    connection with short sales requires only that the trial court "perform the basic judicial functions of

8    contractual and statutory interpretation"); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1368

9    (2012) (court may adjudicate request for injunction that requires defendant to inform consumers of

10   material facts).  Accordingly, this Court should not abstain from hearing any of Plaintiffs' claims.

11       Finally, Defendants ask the Court to strike Arthur Lindstrom's claims for injunctive relief due

12   to his death earlier this year.  MTD at 17.  That is unnecessary, as Plaintiffs did not include Arthur

13   Lindstrom in their request for injunctive relief.  SAC ¶¶ 279-80, 286-87.

14          **D.       Plaintiffs Have Not Released Understaffing Claims Arising After May 15, 2015**

15       Defendants argue that the *Winans* settlement agreement dated May 15, 2015 releases all of

16   Plaintiffs Carlson's and Schmidt's understaffing claims.  Defendants repeatedly misstate the date of

17   the *Winans* settlement as "May 15, *2016*" in the instant motion.  *See* MTD at 18-19 (emphasis added).

18   Notwithstanding the confusion due to these drafting errors, Defendants have never disputed that the

19   effective date of the *Winans* settlement was May 15, ***2015***.  *See* MTD at 18 (citing Stipulation of

20   Settlement, Dkt. No. 104 at 23, ¶ VIII.A.1, *Winans v. Emeritus Corp.*, No. 4:13-cv-03962-HSG (N.D.

21   Cal. July 20, 2015)).  Plaintiffs agree that the *Winans* agreement releases Plaintiffs' claims related to

22   understaffing that arose before May 15, 2015, but do not agree that any claims arising after that date

23   have been released.  *See Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985) (applying

24   California law to hold that prior settlement agreement did not release claims based on "allege[d]

25   wrongful conduct occurring after the settlement date").  The SAC accounts for the *Winans* release by

26   setting the relevant class periods to begin on May 16, 2015.[5]  *See* SAC ¶¶ 185, 211, 228, 238, 250,

---

28   [5] Plaintiffs' physical access claims under Title III of the ADA and the Unruh Act arising before *or* after May 15,
     2015 are not released, however, because they are based on a different factual predicate than that underlying the

1    262, 276.

2         Defendants now assert that no individual who lived at a facility previously operated by

3    Emeritus (Brookdale's predecessor and the *Winans* defendant) before May 15, 2015 may ever sue for

4    misrepresentations about staffing by Brookdale, including claims that did not arise until after May 15,

5    2015. *See* MTD at 18. Defendants cite no legal or factual basis for their bizarre interpretation of the

6    *Winans* release, which they have repeatedly admitted is limited by its own express terms to claims

7    arising *before* May 15, 2015. *See* ECF No. 25 at 6 n.7 ("Specifically, members of the *Winans* class

8    released all claims 'arising out of or relating to statements, representations, or failures to disclose made

9    prior to May 15, 2015'"); *see also* ECF No. 24 at 12-13, ECF No. 25 at 12-13, ECF No. 36 at 10,

10   MTD at 18. Defendants make no argument as to why the plain meaning of the terms of the *Winans*

11   release should not be given effect. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1166-67 (1992).

12        Plaintiffs have met the pleading requirements of Rule 9(b) for their post-May 15, 2015 fraud-

13   based staffing-related claims. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

14   (plaintiffs must allege the "who, what, when, where, and how" of defendants' misconduct to satisfy

15   Rule 9(b) (citation omitted)). Plaintiffs allege that Brookdale has never disclosed their policy and

16   practice of understaffing their facilities ("who, what"). SAC ¶¶ 71, 91, 97, 117, 123, 130, 152. They

17   further allege that Defendants made affirmative misrepresentations to them after May 15, 2015 (which

18   Plaintiffs quoted and/or described in detail in the SAC), including in a standardized corporate letter

19   sent in or about October 2015. That letter claimed Brookdale was rolling out an upgrade to the

20   community assessment and care planning system effective December 1, 2015, that would purportedly

21   "enhance [Defendants'] ability to match your needs and preferences with the right services at the right

22   time" via "a new personal service system …." SAC ¶ 82. Plaintiffs also described Brookdale's

23   misrepresentations in updated residency agreements and schedules of services for Plaintiff Carlson in

24   November 2015 and December 2017, and for Plaintiff Schmidt in July 2016; in Personal Service Plans

25   updated throughout each resident's stay; and in invoices sent to Plaintiffs on a monthly basis

26   representing that Defendants would provide a variety of services to residents in exchange for monthly

27   _____

28   *Winans* claims. The *Winans* complaint contained no physical access allegations.

fees ("what, where, when and how").  SAC ¶¶ 75, 76, 79, 119, 120, 122, 151.

Plaintiffs allege that these representations and failures to disclose after May 15, 2015 are false and misleading because Defendants routinely deny the promised services due to their policy and practice of understaffing their facilities based on corporate profit margins instead of residents' needs. SAC ¶¶ 6, 91, 234.  They further allege that they reasonably expected, based on all of Defendants' representations, that when Defendants took over the facilities from Emeritus, care would improve or at least not decline, and that Defendants would provide sufficient levels of adequately trained staff.  SAC ¶¶ 83, 117, 121, 152, 233, 235.  Plaintiffs allege that they relied on these representations in choosing to remain at Brookdale despite the change in ownership and that, had they known the undisclosed material facts about Brookdale's corporate staffing policies and practices, they would not have stayed and/or agreed to pay the rates charged by Brookdale.  SAC ¶¶ 121, 152, 235.  Plaintiffs also specifically allege that these representations were likely to deceive the reasonable consumer, SAC ¶¶ 233, 236, and that Defendants knew their policy of understaffing posed a health and safety risk or would be harmful to Plaintiffs, SAC ¶¶ 247, 257, 258, 273.

These allegations satisfy Plaintiffs' pleading requirements under Rule 9(b), and the CLRA and UCL.  *See, e.g.*, *Newirth v. Aegis Senior Comties., LLC*, No. 16-cv-03991-JSW, 2017 WL 3328073, at *4 (N.D. Cal. May 18, 2017) (holding in a similar assisted living case that Rule 9(b) requirements were met and "the CLRA and UCL … only require that a statement or representation be likely to deceive a reasonable consumer"); *see also Winans*, 2014 WL 970177, at *8.

The other cases Defendants cite are distinguishable.  *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010) (allegations lacked "any details or facts setting out the 'who, what, when, where, and how'"); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (complete failure to allege "the time, place or nature of the defendants' allegedly fraudulent conduct"); *Bay Area Roofers Health & Welfare Trust v. Sun Life Assurance Co. of Can.*, 73 F. Supp. 3d 1154, 1172 (N.D. Cal. 2014) (only a contract dispute because plaintiffs "show no evidence of an actual or imminent injury; rather, they show evidence of a past injury from which they seek redress"); *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *4 (N.D. Cal. June 16, 2010) (no allegations that defendant knew of alleged defects at time of sale).  Accordingly, Plaintiffs

1    Carlson and Schmidt have stated valid claims regarding Defendants' misrepresentations and failures

2    to disclose after May 15, 2015.

3        **E.**    **Plaintiffs' CLRA and UCL Claims Are Adequately Pled and No Portion of Those Claims Should Be Stricken**

4        Although Defendants say they move to dismiss all of Plaintiffs' claims under the UCL and the

5    CLRA, in their briefing they simply request dismissal of "portions of Plaintiffs' claims," MTD at 20,

6    namely, allegations regarding Brookdale's corporate website and marketing materials and the

7    availability of an onsite physical therapist at one assisted living facility, and allegations regarding

8    Defendants' interference with resident and family councils, *see id.* at 20-22.  A Rule 12(b)(6) motion is

9    not the appropriate mechanism to challenge portions of an otherwise sufficient claim.  *Thompson v.*

10   *Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009).  "Motions to strike generally will not be granted

11   unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter

12   of the litigation. … [and] allegations which contribute to a full understanding of the complaint as a

13   whole need not be stricken."  *In re Facebook PPC Adver. Litig.*, 709 F. Supp. 2d at 773.  Even

14   assuming Defendants' attacks on portions of these claims are treated as a motion to dismiss them in

15   their entirety, the SAC asserts sufficient facts with the requisite degree of particularity to adequately

16   state Plaintiffs' UCL and CLRA claims.  *See* Part IV.D, *supra*.

17           1.    *Plaintiffs Have Adequately Pled Their Fraud-Based CLRA and UCL Claims,*

18               *And No Portion of Those Claims Should be Stricken*

19       Defendants assert that the SAC's allegations regarding misrepresentations on Brookdale's

20   website and other marketing materials "cannot support Plaintiffs' claims because Plaintiffs never relied

21   upon them." MTD at 20-21.  Yet they concede that Plaintiff Jestrabek-Hart *does* allege that she saw

22   and relied upon a specific representation on Brookdale's website in deciding to move into a Brookdale

23   facility.  *Id*.  Defendants minimize the significance of the misrepresentation regarding the availability

24   of free bus transportation for social outings ("among the major selling points" for Plaintiff Jestrabek-

25   Hart), when in fact "the transportation schedule was very limited and … [Defendants] would not allow

26   her to take her electric wheelchair on the bus," which is "necessary for her to participate on shopping

27   trips and other outings that require mobility upon arrival."  SAC ¶ 177.  These specific allegations are

28   a far cry from the generalized ones rejected in the case relied upon by Defendants, *see Moore*, 885

F.2d at 540 (complete failure to allege "the time, place or nature of the defendants' allegedly fraudulent conduct" and "to attribute particular fraudulent statements or facts to the individual defendants"), and are more than sufficient to meet Rule 9(b)'s particularity requirement. *See Newirth*, 2017 WL 3328073, at *4 (N.D. Cal. May 18, 2017) (holding that "the CLRA and UCL do not require that a defendant make a blatant falsehood … [they] only require that a statement or representation be likely to deceive a reasonable consumer"). Additionally, the allegations regarding Brookdale's website and other marketing materials should not be stricken because they provide context about the ways in which Brookdale advertises its services and demonstrate its recognition that residents face significant hurdles to moving out. *See* SAC ¶¶ 84-90, 101.

Defendants also mischaracterize Plaintiffs' allegations regarding their reliance on the misrepresentations made in residency agreements, falsely asserting that "Plaintiffs only specifically allege that they saw and relied on statements made by Brookdale in agreements that they signed once they already had decided to join a Brookdale community—so such statements, by definition, could not have influenced their decision to contract with Brookdale." MTD at 20. In fact, the SAC expressly alleges that each Plaintiff relied on the false statements in Defendants' residency agreements and associated materials in making the decision to enter or remain at a Brookdale facility, and that had the material facts been disclosed to them regarding Defendants' staffing policies and practices, they would have looked for another assisted living facility. *See* SAC ¶¶ 107, 121, 123, 130, 135, 140, 141, 152, 164, 172. The specific allegations that each Plaintiff saw and reasonably relied upon particular misrepresentations by Defendants satisfy Rule 9(b)'s pleading requirements. *See Winans*, 2014 WL 970177, at *9 (Rule 9(b) standard was met even though "Plaintiff failed to plead that he saw or relied on Defendant's website and marketing materials" because "Plaintiff does allege that he read and relied on Defendant's standard contract" and it was "plausible that Plaintiff would have chosen a different assisted living facility had he known about the actual staffing practices at Defendant's facilities.").

2. *Plaintiffs Have Adequately Pled the Portions of Their UCL Claims Based on Defendants' Willful Interference with Family and Resident Councils*

Defendants also attack the portions of Plaintiffs' UCL claims based on interference with the Brookdale San Ramon Family Council and the Brookdale Scotts Valley Residents' Council, in

1  violation of Cal. Health & Safety Code §§ 1569.157 and 1569.158.  Defendants concede that the

2  allegations regarding Defendants' failure to respond in writing to four letters sent by Plaintiff

3  Jestrabek-Hart in her capacity as chair of the Brookdale Scotts Valley residents' council supports a

4  finding that Brookdale violated Section 1569.157.  *See* MTD at 21 n.11.  Plaintiffs' specific allegations

5  of interference with the Brookdale San Ramon Family Council belie Defendants' minimization of

6  them, *see, e.g.*, SAC ¶ 67 (Executive Director of Brookdale San Ramon tampered with flyers

7  announcing an upcoming family council meeting, ordered family council member to leave, and then

8  called the police to come and remove her).  Defendants' efforts to characterize Plaintiffs' allegations in

9  the light most favorable to them is inappropriate.  *Cf. Behrens*, 546 F.3d at 588.

10       Defendants' speculation about Brookdale's motivation behind its interference (MTD at 21-22)

11  is irrelevant, as the statutes define interference to include the behavior alleged.  Cal. Health & Safety

12  Code § 1569.157(g) ("willful interference shall include, but not be limited to, discrimination or

13  retaliation in any way against an individual as a result of his or her participation in a resident council,

14  refusal to publicize resident council meetings or provide appropriate space for either meetings or a

15  bulletin board, or failure to respond to written requests by the resident council in a timely manner"); *id.*

16  § 1569.158(i) (same for family councils).

17       Defendants also argue that these portions of Plaintiffs' UCL claims should be dismissed

18  because they allege no economic loss as a result of interference with family and residents' councils.

19  Plaintiffs' allegations are sufficient to state that they have and will suffer economic harm as a result of

20  Brookdale's interference with family and residents' councils.  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th

21  310, 323 (2011) (economic injury where "plaintiff . . . surrender[s] in a transaction more, or acquire[s]

22  in a transaction less, than he or she otherwise would have").  Plaintiffs allege that residents of

23  Brookdale's facilities depend on these councils to advocate for improved services and increased

24  staffing, the very items for which Plaintiffs pay Brookdale.  SAC ¶¶ 102-103, 106-14, 171-82.

25  Plaintiffs continue to experience economic harm—including by acquiring less than they bargained for

26  in their residency agreements—while Brookdale engages in retaliation against its family and resident

27  councils.  Plaintiffs have thus adequately alleged that they suffer economic harm as a result of

28  Defendants' conduct underlying their UCL claims.  *Kwikset*, 51 Cal. 4th at 323.

**F.      Plaintiff Carlson's Post-December 2017 Claims Are Adequately Pled**

Plaintiff Carlson is 93 years old and has lived at the facility now known as Brookdale Fountaingrove since October 2011.  SAC ¶¶ 17, 115.  When she moved in, and when Brookdale acquired the property in 2015, she was led to believe she would receive the care she was promised and paid for.  *Id.* ¶¶ 115-121.  Had she known that Brookdale's corporate staffing policies and procedures preclude it from providing promised care and services, Plaintiff Carlson would have looked for another facility and would not have paid Brookdale's rates.  *Id.* ¶ 130.  In late 2017, Brookdale insisted that Plaintiff Carlson move into the memory care section of its Fountaingrove property or be evicted, and gave her power of attorney, Joan Carlson, only a week to decide.  SAC ¶¶ 122, 131.  Unable to find a transfer facility in one week and afraid that her mother-in-law would suffer transfer trauma, Joan Carlson had to rely on Brookdale's promise to provide Plaintiff Carlson with appropriate care in the memory care unit in exchange for additional fees.  *Id.*  Brookdale now argues that Plaintiff Carlson's forced move into memory care under threat of immediate eviction absolves it of liability for its previous and ongoing deception, contending that any fraud-related claims based on the December 2017 Residency Agreement must be dismissed because, given her past experience with Brookdale's deception, Plaintiff Carlson could not possibly have relied on misrepresentations made by Brookdale about how it would behave in the future.

Whether Joan Carlson relied upon Brookdale's misrepresentations in the December 2017 agreement is a question of fact not appropriate for resolution at this stage of the litigation.  *See In re Candland*, 90 F.3d 1466, 1469 (9th Cir. 1996), *as amended* (Oct. 2, 1996).  Defendants argue that because Plaintiff Carlson joined the instant lawsuit, she could not ever again reasonably rely upon their representations to her, and must have known that they would continue deceiving her.  *See* MDT at 22-23.  Yet a reasonable person in Joan Carlson's position could have believed that Brookdale would reform its behavior in light of the instant lawsuit, and there is no basis for refusing to accept as true the allegations that she reasonably relied upon Brookdale's representations that they would provide additional supervision and care in exchange for additional fees.  *See* SAC ¶¶ 123, 131.

As the Ninth Circuit recently affirmed in a UCL and CLRA case, "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the

future." *Davidson v. Kimberly-Clark*, — F.3d —, 2018 WL 2169784, at 9 (9th Cir. May 9, 2018). Consumers like Plaintiff Carlson who were deceived in the past may be harmed again by the same or similar deception in the future when they "reasonably, but incorrectly, assume the product was improved." *Id.* Defendants' attempt to distinguish *Davidson* is unavailing. Indeed, Plaintiff Carlson's allegation of a more concrete and immediate injury—that she reasonably relied on the misrepresentations made by Brookdale in the December 2017 Residency Agreement—makes her case stronger than that of the *Davidson* plaintiff. In that case, the Ninth Circuit noted that it was "a close question" whether the plaintiff "adequately alleged that she faces an imminent or actual threat of future harm due to [defendant's] false advertising" as, unlike Plaintiff Carlson, she could not yet allege that she had reasonably relied upon subsequent deceptions by the defendant. *Davidson*, 2018 WL 2169784, at *10.[6]

## V.    CONCLUSION

For the reasons cited above, Plaintiffs respectfully request that this Court deny in its entirety Defendants' Motion to Dismiss and/or Strike Plaintiffs' Second Amended Complaint.

Dated: May 17, 2018

Respectfully submitted,

*/s/ Sarah Colby*
Guy B. Wallace
Sarah Colby
Jennifer A. Uhrowczik
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: 415-421-7100
Facsimile: 415-421-7105

Kathryn A. Stebner

---

[6] The district court opinions Defendants cite are distinguishable. In *Heindel v. Pfizer, Inc.*, the Court determined that the plaintiffs in fact received the "effective arthritis remedy that they bargained for," 381 F. Supp. 2d 364, 380 (D.N.J. 2004), whereas Plaintiff Carlson claims the opposite. In *Fernandez v. Atkins Nutritionals, Inc.*, the complaint specifically alleged that the plaintiff "now knows how Atkins goes about calculating its net carbs claims, and she will not be misled" in the future. *Fernandez*, No. 3:17-cv-01628-GPC-WVG, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018). In *Hunter v. Nature's Way Prods., LLC*, the plaintiff did not allege adequate facts to show that she faced an immediate threat of being deceived again. Hunter, No. 16-cv-0532-WQH-AGS, 2018 WL 340233, at *3-*4 (S.D. Cal. Jan. 9, 2018). In contrast, Plaintiff Carlson alleges that Brookdale has already made additional misrepresentations upon which she reasonably relied. *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) and *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx) 2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) were decided prior to and conflict with the holding in *Davidson*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kelly Knapp
STEBNER AND ASSOCIATES
870 Market Street, Suite 1212
San Francisco, California  94102
Telephone:    (415) 362-9800
Facsimile:    (415) 362-9801

Gay Crosthwait Grunfeld
Benjamin Bien-Kahn
Christopher D. Hu
ROSEN BIEN
GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104

Case No. 4:17-cv-03962-HSG
PLAINTIFFS' MPA IN OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on May 17, 2018, I electronically filed the foregoing document with

3

the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic

4

filing to all CM/ECF participants.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>/s/ Sarah Colby</u>
Sarah Colby (SBN 194475)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
scolby@schneiderwallace.com