MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
ADAM P. KOHSWEENEY (S.B. #229983)
akohsweeney@omm.com
MALLORY A. JENSEN (S.B. #309187)
mjensen@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

JEFFREY A. BARKER (S.B. #166327)
jbarker@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660-6429
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

Attorneys for Defendants
BROOKDALE SENIOR LIVING INC. AND
BROOKDALE SENIOR LIVING COMMUNITIES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| STACIA STINER; HELEN CARLSON, by and through her Guardian Ad Litem, JOAN CARLSON; LAWRENCE QUINLAN, by and through his Guardian Ad Litem, LORESIA VALLETTE; EDWARD BORIS, by and through his Guardian Ad Litem, MICHELE LYTLE; RALPH SCHMIDT, by and through his Guardian Ad Litem, HEATHER FISHER; PATRICIA LINDSTROM, as successor-in-interest to the Estate of ARTHUR LINDSTROM; BERNIE JESTRABEK-HART; and JEANETTE ALGARME; on their own behalves and on behalf of others similarly situated, Plaintiffs, v.<br><br>BROOKDALE SENIOR LIVING INC.; BROOKDALE SENIOR LIVING COMMUNITIES, INC.; and DOES 1 through 100, Defendants. | Case No. 17-cv-03962-HSG<br><br>**BROOKDALE SENIOR LIVING INC. AND BROOKDALE SENIOR LIVING COMMUNITIES, INC.'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS RELATED TO PLAINTIFFS HELEN CARLSON AND LAWRENCE QUINLAN'S CLAIMS PENDING APPEAL OF ORDER DENYING MOTION TO COMPEL ARBITRATION** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that Defendants Brookdale Senior Living Inc. and Brookdale Senior Living Communities, Inc. (together, "Brookdale" or "Defendants") will, and hereby do, move this Court for an order staying proceedings related to claims brought by Plaintiffs Helen Carlson, by and through her Guardian Ad Litem, Joan Carlson, and Lawrence Quinlan, by and through his Guardian Ad Litem, Loresia Vallette, pending resolution of Defendants' appeal, brought pursuant to 9 U.S.C. § 16(a)(1)(B), of this Court's January 25, 2019 Order (Dkt. No. 85) denying Defendants' Renewed Motion to Compel Arbitration.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the entire file in this matter, and such other matters, both oral and documentary, as may properly come before the Court.

Dated:   February 25, 2019

**O'MELVENY & MYERS LLP**
JEFFREY A. BARKER
MATTHEW D. POWERS
ADAM P. KOHSWEENEY
MALLORY A. JENSEN

By:_____*/s/ Jeffrey A. Barker*_____
           Jeffrey A. Barker

Attorneys for Defendants
BROOKDALE SENIOR LIVING INC. AND
BROOKDALE SENIOR LIVING
COMMUNITIES, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

As Defendants Brookdale Senior Living Inc. and Brookdale Senior Living Communities, Inc. (collectively, "Brookdale" or "Defendants") previously informed the Court, they are filing today a Notice of Appeal from the arbitration-related rulings in this Court's Order Denying Defendants' Motion to Compel Arbitration, Granting in Part and Denying in Part Defendants' Motion to Dismiss, and Denying Defendants' Motion to Strike (Dkt. No. 85), entered on January 25, 2019.  In connection therewith, Brookdale requests that this Court stay further proceedings related to claims brought by Plaintiffs Helen Carlson, by and through her Guardian Ad Litem, Joan Carlson (collectively, "Carlson"), and Lawrence Quinlan, by and through his Guardian Ad Litem, Loresia Vallette (collectively, "Quinlan"), pending Brookdale's appeal of the Order.

The Federal Arbitration Act entitles Brookdale to an immediate appeal of this Court's order denying Brookdale's motion to compel arbitration.  *See* 9 U.S.C. § 16(a).

When a party appeals from the denial of a motion to compel arbitration, a stay pending appeal is warranted so long as the motion to compel presented a "substantial," non-frivolous legal issue as to the arbitrability of the claims at issue.  *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990).  Brookdale's motion to compel arbitration satisfies that standard.

Moreover, the balance of the equities strongly tips in favor of granting a stay.  Litigation in this Court is precisely the harm that Brookdale's arbitration provision and the FAA were intended to avoid.  Delving into discovery and pre-trial motions before Brookdale's appeal is heard would irreparably waste the parties', and the Court's, resources if the Court of Appeals (or U.S. Supreme Court) were to reverse.  By contrast, Plaintiffs can make no comparable claim of irreparable harm that would result from a stay.  The limited stay requested would not affect the claims of any of the other named plaintiffs in this case.

Finally, the public policies favoring conservation of judicial resources and encouraging arbitration strongly support a stay.  Under these circumstances, there can be no justification for requiring Brookdale to engage in burdensome, expensive, and potentially meaningless litigation in this Court while its appeal is pending.  Indeed, federal district courts in California have

1    repeatedly held as much.  *See Winig v. Cingular Wireless LLC*, 2006 WL 3201047, at *3 (N.D.

2    Cal. Nov. 6, 2006); *Stern v. Cingular Wireless LLC*, 2006 WL 2790243, at *2 (C.D. Cal. Sept. 11,

3    2006); *Jones v. Deutsche Bank AG*, 2007 WL 1456041, at *2 (N.D. Cal. May 17, 2007); *Steiner*

4    *v. Apple Computer, Inc.*, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008); *Brown v. MHN*

5    *Government Servs., Inc.*, 2014 WL 2472094, at *4 (N.D. Cal. June 3, 2014); *In re Apple iPhone*

6    *3G Prod. Liab. Litig.*, 2010 WL 9517400, at *2 (N.D. Cal. Dec. 9, 2010).

7    **II.    BACKGROUND**

8            Plaintiffs have alleged a variety of claims concerning alleged understaffing, fraud, and

9    accessibility related to Brookdale's assisted living communities in California.  *See, e.g.*, Third

10   Amended Compl. ("TAC") ¶¶ 3, 4, 6, 37, 41, 45, 52, 55, 57.  On April 19, 2018, Brookdale

11   moved to compel Plaintiffs Quinlan and Carlson to arbitrate their claims.  (Dkt. No. 59.)  This

12   Court denied Brookdale's motion on January 25, 2019.

13           As to Plaintiff Carlson, the Court held that she had opted out of arbitration in a new,

14   December 2017 resident agreement with Brookdale, and that the 2017 opt-out provision

15   controlled over prior resident agreements in which Carlson *had* agreed to arbitration—even

16   though Brookdale's motion to compel arbitration was already pending at the time of the 2017

17   agreement and it was undisputed that the 2017 agreement resulted solely from Carlson's

18   relocation to the memory care unit at the Fountaingrove community.  (Dkt. 85 at 3–7.)  As to

19   Plaintiff Quinlan, the Court held that Quinlan's son, Phillip, did not bind his father when Phillip

20   signed the resident arbitration agreement containing the arbitration provision.  (Dkt. 85 at 7–8.)

21           Concurrently with the filing of this Motion, Brookdale is filing a notice of appeal pursuant

22   to Section 16 of the FAA, which authorizes an immediate appeal from an order denying

23   arbitration.

24   **III.   ARGUMENT**

25       **A.    A Stay Is Warranted Because Brookdale's Appeal Raises Substantial, Non-**
                 **Frivolous Questions.**
26

27           As other California district courts addressing the issue have recognized, the statutory

28   history of the FAA evinces a congressional preference for stays pending appeal.  This preference

BROOKDALE'S MOTION  TO STAY
PROCEEDINGS PENDING APPEAL
CASE NO. 17-CV-03962-HSG

1  is apparent from Congress's decision, when amending the FAA in 1988, to authorize

2  interlocutory appeals from orders denying motions to compel or stay litigation during arbitration,

3  while barring appeals from orders granting such motions.[1]  *See Stern*, 2006 WL 2790243 at *1

4  ("Congress … indicated its policy favoring arbitration by specifically allowing for immediate

5  appeal of a decision denying a motion to compel arbitration."); 15B CHARLES ALAN WRIGHT ET

6  AL., FEDERAL PRACTICE AND PROCEDURE § 3914.17 (2d ed. 1992) (explaining that this legislative

7  choice "reflects a deliberate determination that appeal rules should reflect a strong policy favoring

8  arbitration," which is "commonly valued because in comparison to litigation it is seen as faster,

9  less expensive, and more expert").  Congress recognized that, if immediate appeals of orders

10  denying motions to compel arbitration were not allowed—as well as stays during the pendency of

11  such appeals—"the expense and delay associated with preparation for trial would obviate the

12  benefits of arbitration, producing a costly error should the district court's refusal to enforce an

13  arbitration agreement be reversed on appeal."  Edith H. Jones, *Appeals of Arbitration Orders—*

14  *Coming Out of the Serbonian Bog*, 31 S. TEX. L. REV. 361, 375-376 (1990).

15      Stays pending resolution of interlocutory appeals of denials of motions to compel

16  arbitration are thus generally appropriate, as they effectuate Congress's intent and reduce needless

17  expenditures of resources by courts, parties, and the public.  *See, e.g.*, *Cendant Corp. v. Forbes*,

18  72 F. Supp. 2d 341, 343 (S.D.N.Y. 1999) (explaining that Congress's intent should "usually tilt

19  the balance in favor of granting such a stay whenever doing otherwise would effectively deprive

20  the appellant of the possibility of having the underlying controversy presented to an arbitrator in

21  the first instance").  Even where a district court finds a party's argument for arbitration "wholly

22  unconvincing," the appropriate course of action is to stay proceedings pending resolution of the

23  interlocutory appeal, as that would "undermine [congressional] policy."  *Id.*

24

25  [1] As the House report explains:
      [I]nterlocutory appeals are provided for when a trial court rejects a contention that a
26    dispute is arbitrable under an agreement of the parties and instead requires the parties to
      litigate.  In contrast, interlocutory appeals are specifically prohibited * * * when the trial
27    court finds that the parties have agreed to arbitrate and that the dispute comes within the
      arbitration agreement.
28  H.R. Rep. No. 100-889, at 36-37 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 5997; *see also* 9
   U.S.C. § 16 (codifying amendments).

BROOKDALE'S MOTION  TO STAY
PROCEEDINGS PENDING APPEAL
CASE NO. 17-CV-03962-HSG

1    Indeed, most courts of appeals have held that an appeal from the denial of a motion to

2 compel arbitration *automatically* stays litigation.[2]  These courts have reasoned that it makes no

3 sense to proceed with the case because the appeal is to determine whether the matter should be

4 litigated in the district court *at all*.  *See, e.g.*, *Bradford-Scott Data Corp. v. Physician Computer*

5 *Network, Inc.*, 128 F.3d 504, 505–06 (7th Cir. 1997).  Potentially inconsistent handling of the

6 case by the two courts would defeat the speed and cost benefits parties seek from arbitration.  *Id.*

7 at 505.  The Ninth Circuit disagreed with this reasoning in *Britton*, 916 F.2d at 1412—a minority

8 position that Brookdale contests.  Under the rule of virtually every other court of appeals, this

9 case would automatically be stayed pending resolution of Brookdale's interlocutory appeal.  That

10 should be the appropriate outcome here, too.[3]

11    In any event, a stay here is fully appropriate even under *Britton*.  *Britton* held that an

12 automatic stay "would allow a defendant to stall a trial simply by bringing a ***frivolous*** motion to

13 compel arbitration."  *Britton*, 916 F.2d at 1412 (emphasis added).  The Ninth Circuit made clear,

14 however, that a district court is authorized to grant a stay whenever "the court finds that the

15 motion [to compel arbitration] presents a ***substantial question***."  *Id.* (emphasis added).  That is

16 precisely the situation here:  Brookdale raises "substantial" issues in contending that its

17 arbitration agreements with Plaintiffs Carlson and Quinlan are fully enforceable under the FAA.

18 (*See* Dkt. Nos. 23, 34, 59, 75.)

19    With respect to Carlson, the substantial issue is whether an opt-out provision in a

20 subsequent, subject-matter-specific agreement entered into during pending proceedings can

21 supersede an earlier, broader agreement to arbitrate.  As the Court knows from Brookdale's prior

22

23 [2] *See Levin v. Alms & Assocs., Inc.,* 634 F.3d 260, 264–66 (4th Cir. 2011); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007); *McCauley v. Halliburton Energy Servs., Inc.*,

24 413 F.3d 1158, 1160 (10th Cir. 2005); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004); *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 2002 WL 31818924, at *1

25 (D.C. Cir. Dec. 12, 2002); *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997).  *But see Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 54 (2d Cir.

26 2004) ("adopt[ing] Ninth Circuit's position" in *Britton*); *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 907-08 (5th Cir. 2011).

27 [3] Although Brookdale recognizes that this Court may not reject *Britton*, it preserves its argument that the Ninth Circuit's position on this issue is erroneous for potential review by the *en banc*

28 Ninth Circuit and the U.S. Supreme Court.

BROOKDALE'S MOTION  TO STAY
PROCEEDINGS PENDING APPEAL
CASE NO. 17-CV-03962-HSG

motions on this topic, Carlson signed three agreements relevant here: (1) a 2011 residency agreement, in which she agreed to arbitrate all claims with Brookdale under the FAA; (2) a 2013 residency agreement that is silent as to arbitration; and (3) a 2017 agreement concerning Carlson's move to a Brookdale memory care unit, in which Carlson opted out of arbitration.  The Court agreed with Brookdale that Carlson's 2011 agreement to arbitrate was not superseded by the 2013 residency agreement.  (Dkt. No. 85 at 6:2–5.)  But Brookdale contends on appeal that the Court read Carlson's 2017 opt-out too broadly, holding that it applies to "[a]ny and all claims arising out of, or in any way relating to, this Agreement or your stay at the Community."  (Dkt. No. 85 at 6:22-23.)  Respectfully, Brookdale believes this conclusion is wrong as a matter of contract interpretation and is inconsistent with other courts' decisions in comparable circumstances—or, at the very least, this holding presents a substantial question warranting a stay of proceedings pending resolution of Brookdale's appeal of the Order.  *See Huffman v. Hilltop Cos., LLC,* 747 F.3d 391 (6th Cir. 2014) (reversing district court's denial of motion to compel arbitration, as the "omission of the arbitration clause from the survival clause . . . did not clearly imply that the parties did not intend for the arbitration clause to have post-expiration effect"); *Cione v. Foresters Equity Servs, Inc.*, 58 Cal. App. 4th 625 (1997) (holding that fully integrated contract did not supersede arbitration agreement in plaintiff's original contract); *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008 (E.D. Cal. 2008) (holding that integrated employment contracts did not supersede original arbitration agreement); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886 (N.D. Ill. 2016) (noting that even if plaintiffs had successfully opted out of arbitration in a second contract, "that would have no bearing on the arbitrability of claims they had asserted based on earlier Agreements as to which they had not opted out of arbitration").  Again, even though this Court has rejected Brookdale's position (Dkt. No. 68 at 4–7), that is not a basis to deny the motion for a stay at this juncture; otherwise, stays pending appeal of denials of motions to compel arbitration would never be granted, in direct contravention of Congress's express intentions.  *See Cendant Corp.*, 72 F. Supp. 2d at 343.

With respect to Quinlan, the substantial question is whether an implied agent may bind a principal as to arbitration.  As this Court has noted, on or about the day that Quinlan moved in as

1    a long-term Brookdale resident, his son signed a residency agreement on Quinlan's behalf.  (Dkt.

2    No. 68 at 7.)  That agreement included an arbitration opt-out, which Quinlan's son did not select.

3    (*Id.*)  Quinlan's son apparently did not have power of attorney at that time, but subsequently

4    acquired it.  (*Id.*)  Quinlan contends that he is not bound by his son's failure to opt-out of

5    arbitration, even though he has otherwise accepted the benefits of his Residency Agreement and

6    is continuing to seek by this litigation to enforce the "promises" supposedly made to him in that

7    agreement.  This Court agreed, holding that there was insufficient evidence that Quinlan's son

8    was acting as Quinlan's agent.  (Dkt. 68 at 8.)

9         This holding raises substantial questions of federal law—specifically, whether Congress's

10   preference for arbitration should inform a court's assessment of whether implied agency exists

11   under state law.  There is every reason to think that it should.  As the Supreme Court has

12   explained, the FAA "is a congressional declaration of a liberal federal policy favoring arbitration

13   agreements, notwithstanding any state substantive or procedural policies to the contrary."  *Moses*

14   *H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The Supreme Court has

15   repeatedly effectuated this congressional intent by enforcing arbitration agreements over

16   objections on state law grounds.  *See id.* at 24–25 ("The [FAA] establishes that, as a matter of

17   federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

18   arbitration, whether the problem at hand is the construction of the contract language itself or an

19   allegation of waiver, delay, or a like defense to arbitrability."); *Kindred Nursing Ctrs. Ltd. P'ship*

20   *v. Clark*, 137 S. Ct. 1421 (2017).  For example, it has specifically held that, to the extent that state

21   law disfavors a finding of an express agency relationship in the arbitration context, that state-law

22   rule is invalid.  *See Kindred*, 137 S. Ct. at 1426 .  There is no reason this rule should not extend to

23   implied agency relationships, such as the kind Brookdale contends existed between Quinlan and

24   his son at the time his son signed the 2015 residency agreement.

25        Apart from this federal law issue, the appeal also presents a substantial question of agency

26   law—specifically, when a principal like Quinlan will be bound by an apparent agent where the

27   principal fails to correct a perception of agency.  It is black letter law that agency may generally

28   be implied and that the implied agent may bind the principal where a principal creates a mistaken

7

1   perception of agency and does not act to correct it.  *See* Restatement (Third) of Agency § 3.03

2   (2006) ("A principal's inaction creates apparent authority when it provides a basis for a third

3   party reasonably to believe the principal intentionally acquiesces in the agent's representations or

4   actions.").  Courts have specifically applied this principle in the context of apparent agency to

5   agree to arbitration.  *See Boling v. Pub. Emp't Relations Bd.*, 10 Cal. App. 5th 853, 889 n.46

6   (2017);  *Pharr v. Chapman Health Care Center*, 2013 WL 4851606, at *2 (M.D. Ala. Sept. 11,

7   2013) (husband's authority to agree to arbitration on behalf of his wife was implied where the

8   principal "passively permits the agent to appear to a third person to have the authority to act on

9   [her] behalf").  Yet the Court did not apply this rule of agency law here.  At the very least,

10  Brookdale's position to the contrary (which is supported by the decisions of other courts) raises

11  issues substantial enough to warrant a stay pending resolution of its appeal of the Order.  *See,*

12  *e.g.*, *In re Wirecomm Wireless, Inc.*, 2008 WL 3056491 (E.D. Cal. Aug. 1, 2008) (reversing

13  bankruptcy court's denial of a stay pending appeal of denial of motion to compel arbitration

14  where Ninth Circuit had not weighed in on question and case presented important question about

15  interplay of arbitration and other areas of law).

16          **B.      A Stay Is Also Appropriate Under The Analysis That Applies Outside The**
                       **Arbitration Context.**
17

18          To determine whether a stay should be granted, the Court may also consider whether (1)

19  the stay applicant is likely to succeed on the merits; (2) the stay applicant will be irreparably

20  injured absent a stay; (3) a stay would substantially injure the other parties interested in the

21  proceeding; and (4) public policy favors a stay.  *Wirecomm Wireless*, 2008 WL 3056491, at *6;

22  *see also Britton*, 916 F.2d at 1412.  In weighing these factors, courts apply a "sliding scale"

23  approach whereby the factors are balanced "so that a stronger showing of one ... may offset a

24  weaker showing of another."  *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011); *Morse v*

25  *Servicemaster Global Holdings, Inc.*, 2013 WL 123610, at *1–2 (N.D. Cal. Jan. 8, 2013).  All of

26  these factors weigh in favor of granting a stay here.

27

28

1

### 1.    Brookdale Has Demonstrated Likelihood of Succeed on the Merits by Presenting a Substantial, Non-Frivolous Questions.

2

3          Brookdale has demonstrated that it is likely to succeed on the merits because it has

4   presented "serious legal questions."  Presenting a "serious legal question" is an alternative way to

5   satisfy the likelihood of success on the merits test.  To avoid the difficult situation in which a

6   district court must find that an applicant is likely to succeed in reversing the court's orders, the

7   cases recognize that the likelihood of success test is satisfied where "the movant presents a

8   serious legal question." *C.B.S.*,716 F.Supp. at 310 (quoting *Washington Area Transit Commission*

9   *v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir.1977)); *Murphy v. DirecTV, Inc.*, 2008 WL

10  8608808, at *2 (C.D. Cal. July 1, 2008); *Winig*, 2006 WL 3201047, at *1 n.1.  As Brookdale has

11  set forth above, *supra* at § III.A, its appeal presents "serious," substantial, and non-frivolous

12  questions for appeal, and this requirement has therefore been satisfied.

13

### 2.    Further Proceedings in this Court Pending Resolution of Brookdale's Appeal Would Cause Brookdale Irreparable Harm.

14

15          There can be no question that Brookdale will be irreparably harmed if a stay is denied.

16  The Ninth Circuit has recognized that it would constitute "serious" irreparable harm for the

17  defendant to proceed all the way to trial, then appeal, only to find out that the parties should have

18  arbitrated, where the "advantages of arbitration—speed and economy—are lost forever."

19  *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984); *Winig*, 2006 WL

20  3201047 at *2 (citing *Alascom*); *see also Mundi v. Union Sec. Life Ins. Co.*, 2007 WL 2385069, at

21  *6 (E.D. Cal. 2007) ("the parties should not be required to endure the expense of discovery that

22  ultimately would not be allowed in arbitration")).  Other federal district courts in California have

23  similarly repeatedly held that stays pending the appeal from an order denying a motion to compel

24  arbitration are appropriate.  *See Steiner v. Apple Computer, Inc.*, 2008 WL 1925197, at *5 (N.D.

25  Cal. Apr. 29, 2008) (collecting cases and concluding that "almost every California district court to

26  recently consider whether to stay a matter, pending appeal of an order denying a motion to

27  compel arbitration, has issued a stay").

28          Though the cost of litigation may not be considered an irreparable harm in other

9

1    situations, "this is a unique situation" because "[t]he main purpose for defendants' appeal is to

2    avoid the expense of litigation"; therefore, "the time and expense of litigation do constitute

3    irreparable harm in this instance." *C.B.S.*, 716 F. Supp. at 310. As the Seventh Circuit has

4    explained:

5             Arbitration clauses reflect the parties' preference for non-judicial
             dispute resolution, which may be faster and cheaper.  These
6             benefits are eroded, and may be lost or even turned into net losses,
             if it is necessary to proceed in both judicial and arbitral forums, or
7             to do this sequentially.  The ***worst possible outcome*** would be to
             litigate the dispute, to have the court of appeals reverse and order
8             the dispute arbitrated, to arbitrate the dispute, and finally to return
             to court to have the award enforced. Immediate appeal under [9
9             U.S.C.] § 16(a) helps to cut the loss from duplication.  Yet
             combining the costs of litigation and arbitration is what lies in
10            store if a district court continues with the case while an appeal
             under § 16(a) is pending.
11

12   *Bradford-Scott*, 128 F.3d at 505-06 (emphasis added); *see also Lummus Co. v. Commonwealth*

13   *Oil Ref. Co.*, 273 F.2d 613, 613-14 (1st Cir. 1959) (granting motion to delay discovery pending

14   appeal of district court's order because "a court order of discovery would be affirmatively

15   inimical to appellee's obligation to arbitrate, if this court determines it to have such obligation"

16   and "[u]ntil it is determined whether this action has been properly brought, appellee should not

17   receive any unnecessary fruits thereof"); *Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 309

18   (S.D. Tex. 1999) (being "forced to participate in discovery" by which the "right to arbitrate the

19   dispute will be jeopardized" represents irreparable injury).

20            These concerns are implicated by Brookdale's appeal.  If Brookdale succeeds on appeal,

21   any further proceedings relating to Plaintiffs Carlson and Quinlan's claims, including discovery

22   into the Brookdale community at Fountaingrove and Brookdale's former community at Hemet,

23   and the resolution of the merits of Plaintiffs Carlson and Quinlan's claims, must take place before

24   an arbitrator, not this Court.  If proceedings related to Plaintiffs Carlson and Quinlan's claims

25   continue in this Court while Brookdale's appeal is pending, such duplication of effort will result

26   in irreparable harm to Brookdale.

27

28

BROOKDALE'S MOTION  TO STAY
PROCEEDINGS PENDING APPEAL
CASE NO. 17-CV-03962-HSG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.** **Any Delay In Proceedings Occasioned By A Stay Would Not Cause Plaintiffs Material Injury.**

On the other side of the ledger, Plaintiffs would suffer no comparable harm if the Court grants a stay.  The limited stay requested would not affect proceedings or discovery related to the remaining plaintiffs' claims regarding Brookdale's communities at San Ramon, Tracy, Scotts Valley, or Brookhurst.  Any other alleged harm that Plaintiffs might sustain because of a stay does not compare to the unjustifiable waste of time and money that would result from proceeding with this litigation before the Ninth Circuit decides whether Plaintiffs Carlson and Quinlan's claims are even subject to judicial resolution.  *See, e.g.*, *C.B.S.*, 716 F. Supp. at 310 (general disadvantage to plaintiff caused by delay of proceedings was outweighed by potential injury to defendant from proceeding in district court during pendency of appeal); *Trefny*, 243 B.R. at 310 (same).

**4.** **A Stay Would Be In The Public Interest.**

A stay would be in the public interest because it would promote the important policy goals of judicial efficiency and economy.  If a stay is not granted, this Court will have to devote additional time to addressing motions and supervising discovery relating to Plaintiffs Carlson and Quinlan's claims—time that otherwise could be devoted to the many other matters pending on this Court's docket.  This is most problematic for Plaintiff Quinlan, the only named plaintiff who resided at Brookdale Hemet, a community which is no longer affiliated with Brookdale and is now owned by Pacifica Senior Living.  *See* Declaration of Shelly Halleck In Support of Defendants' Motion to Compel Arbitration.  (Dkt. No. 23-3.)  As such, proceedings involving Brookdale's former community at Hemet may implicate burdensome third-party discovery issues which do not apply to Brookdale's other communities.  Put simply, it "does not make sense for this Court to expend its time and energy preparing this case for trial and possibly trying it only to learn at a later date from the court of appeals that it was not the proper forum to hear the case." *C.B.S.*, 716 F. Supp. at 310; *see also Winig*, 2006 WL 3201047, at *3 (citing *C.B.S.*).  That is especially true here, where this putative class action could embroil the courts and parties in wide-ranging litigation-related activities, which might later be deemed irrelevant if the case is subject

1   to arbitration.  While this case may include class claims, no classes have been certified and

2   Plaintiffs Carlson and Quinlan's claims are "essentially private dispute[s] that do[] not implicate

3   the public interest in any immediate sense." *Meyer v. Kalanick*, 203 F. Supp. 3d 393, 396

4   (S.D.N.Y. 2016). A stay would also serve the public's interest in promoting the "strong federal

5   policy encouraging arbitration as a prompt, economical and adequate method of dispute

6   resolution." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 n.2 (9th Cir. 1992);

7   *Stern*, 2006 WL 2790243 at *2; *Winig*, 2006 WL 3201047 at *3 ("[A] stay would advance the

8   public interest in arbitration by ensuring that Cingular is not required to litigate the instant action

9   in district court unless and until the Ninth Circuit resolves the pending appeal in plaintiff's

10  favor.").  The public interest lies in the conversation of judicial resources, which is exactly what

11  arbitration allows. *Winig*, 2006 WL 3201047, at *3.  Thus, the balance of hardships tips

12  decidedly in favor of granting a stay pending appeal of the Order.

13  **IV.    CONCLUSION**

14          For the foregoing reasons, Defendants respectfully request that this Court stay further

15  proceedings in this action related to Plaintiffs Carlson and Quinlan's claims until Defendants'

16  appeal of the Order is adjudicated.

17

18          Dated:   February 25, 2019          **O'MELVENY & MYERS LLP**
                                                 JEFFREY A. BARKER
19                                               MATTHEW D. POWERS
                                                 ADAM P. KOHSWEENEY
20                                               MALLORY A. JENSEN

21                                               By:_____/s/ Jeffrey A. Barker_____
                                                        Jeffrey A. Barker
22
                                                 Attorneys for Defendants
23                                               BROOKDALE SENIOR LIVING INC. AND
                                                 BROOKDALE SENIOR LIVING
24                                               COMMUNITIES, INC.

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on February 25, 2019, I electronically filed the foregoing document

3  with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of

4  electronic filing to all CM/ECF participants.

5

6      Dated:   February 25, 2019          **O'MELVENY & MYERS LLP**
                                             JEFFREY A. BARKER
7                                            MATTHEW D. POWERS
                                             ADAM P. KOHSWEENEY
8                                            MALLORY A. JENSEN

9
                                             By:_____*/s/ Jeffrey A. Barker*_____
10                                                      Jeffrey A. Barker

11                                           Attorneys for Defendants
                                             BROOKDALE SENIOR LIVING INC. AND
12                                           BROOKDALE SENIOR LIVING
                                             COMMUNITIES, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROOKDALE'S MOTION  TO STAY
PROCEEDINGS PENDING APPEAL
CASE NO. 17-CV-03962-HSG