UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIA STINER, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>BROOKDALE SENIOR LIVING, INC., et al.,<br><br>   Defendants. | Case No. 17-cv-03962-HSG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STAY AND MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL**<br><br>Re: Dkt. Nos. 94, 99 |

Defendants Brookdale Senior Living, Inc. and Brookdale Senior Living Communities, Inc. (collectively, "Brookdale") filed a motion to stay proceedings pending its appeal of the Court's order denying Defendants' motion to compel arbitration. Dkt. No. 94. Brookdale also filed a motion requesting the Court to certify for interlocutory appeal the question of whether Brookdale facilities are public accommodations under Title III of the Americans with Disabilities Act ("ADA"). Dkt. No. 99. The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **DENIES** the motion to stay proceedings and motion to certify for interlocutory appeal.

**I. BACKGROUND**

Plaintiffs filed their second amended complaint against Brookdale for violations of the ADA, the Unruh Civil Rights Act ("Unruh Act"), the Consumer Legal Remedies Act, California Business and Professions Code §§ 7200 *et seq.*, and California Welfare and Institutions Code § 15610, based on the conditions of Brookdale's assisted living facilities.[1] Dkt. No. 52 ("SAC").

---

[1] As of the date of this Order, there are eight Plaintiffs: Stacia Stiner, Helen Carlson, Lawrence Quinlan, Edward Boris, Bernie Jestrabek-Hart, Arthur and Patricia Lindstrom, and Ralph Schmidt.

In November 2018, Brookdale filed three motions: (1) motion to compel Plaintiffs Helen Carlson and Lawrence Quinlan to arbitrate, Dkt. No. 59; (2) motion to dismiss Plaintiffs' SAC, Dkt. No. 60; and (3) motion to strike the class allegations of Plaintiffs' SAC, Dkt. No. 61. The Court denied Brookdale's motion to compel arbitration and motion to strike, and granted in part and denied in part Brookdale's motion to dismiss. Dkt. No. 85 ("January 25 Order"). Brookdale appealed the Court's order denying the motion to compel arbitration, Dkt. No. 93, and filed the present motion to stay proceedings related to Plaintiffs Carlson and Quinlan pending appeal, Dkt. No. 94. Brookdale also filed a motion to certify for interlocutory appeal the Court's finding that Brookdale facilities are public accommodations under the ADA. Dkt. No. 99.

## II. MOTION TO STAY

### A. Court's Order Denying Motion to Compel Arbitration

Brookdale moved to compel Plaintiff Helen Carlson to arbitrate based on a 2011 Agreement, which Plaintiffs argued was later superseded by a December 2017 Agreement. Dkt. No. 59. In 2011, Ms. Carlson entered into a standardized residency agreement and arbitration addendum before moving into a Brookdale facility. SAC ¶ 115. Ms. Carlson entered into a new residency agreement in December 2017, under which she opted out of the arbitration provision. Dkt. No. 38-1, Ex. D at 9–12. The Court found that the December 2017 Agreement controlled and the arbitration opt-out applied to all claims arising from her stay at the Brookdale facility. January 25 Order at 6–7. Further, based on the plain language of the arbitration provision, the Court held that the opt-out retroactively applied to the claims asserted in this lawsuit, notwithstanding that the lawsuit was filed before the December 2017 Agreement. *Id*. ("The 2017 arbitration provision applies to 'claims … whether existing or arising in the future.'") (quoting Dkt. No. 38-1, Ex. D at 10). Therefore, by the plain language of the December 2017 Agreement, Ms. Carlson was not compelled to arbitrate her claims.

As to Plaintiff Lawrence Quinlan, the Court found that there was no agency relationship between him and his son, Phillip Quinlan, at the time Phillip Quinlan signed a 2015 residency agreement containing an arbitration opt-out clause. January 25 Order at 7–9. Mr. Quinlan did not grant his son power of attorney until January 2016. Dkt. No. 31-4, Ex. A. Brookdale offered no

evidence that Mr. Quinlan, either by his conduct or inaction, caused Brookdale to believe that Phillip Quinlan was acting as his agent when Phillip Quinlan executed the residency agreement. January 25 Order at 8. The Court also rejected Brookdale's equitable estoppel argument, as none of Plaintiffs' claims relies on the residency agreements as valid and enforceable contracts. *Id*. at 9.

Based on these findings, the Court denied Brookdale's motion to compel Plaintiffs Carlson and Quinlan to arbitrate. *Id*. at 2–9.

## B. Legal Standard

The Ninth Circuit has held that a district court's order denying a motion to compel arbitration does not automatically result in a mandatory stay of proceedings pending appeal of that order. *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990). Instead, the district court has discretion to decide whether to stay proceedings pending appeal. *Id*. The party requesting the stay bears the burden of showing that the circumstances justify exercise of that discretion. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). To determine whether the moving party has met its burden, the Supreme Court articulated the following four-factor test: "(1) whether the [movant] has made a strong showing that [the movant] is likely to succeed on the merits; (2) whether the [movant] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 418. Courts in the Ninth Circuit weigh these factors with a "general balancing" or "sliding scale" approach, under which "a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). As to the first factor, if a movant is unable to show a "strong likelihood of success," then the movant must at least demonstrate that the appeal presents a "substantial case on the merits," or that there are "serious legal questions" raised.[2] *Id*. at 965–68. However, under this lower

---

[2] Although the parties present two alternative frameworks for analyzing whether a stay in this action is appropriate (*i.e.* one applied specifically to stays pending appeal in the arbitration context and one applied generally to stays pending appeal), courts in this district have consistently analyzed the "substantial question" inquiry, first articulated in *Britton*, under the first factor in *Nken* as part of the sliding scale approach set forth in *Leiva-Perez*. *See, e.g.*, *Blair v. Rent-A-Ctr., Inc.*, No. C 17-02335 WHA, 2018 WL 2234049 (N.D. Cal. May 16, 2018); *Jimenez v. Menzies Aviation Inc.*, No. 15-CV-02392-WHO, 2015 WL 5591722 (N.D. Cal. Sept. 23, 2015); *Ward v. Estate of Goossen*, No. 14-CV-03510-TEH, 2014 WL 7273911 (N.D. Cal. Dec. 22, 2014);

3

threshold, the movant must then demonstrate that the balance of hardships under the second and third factor tips sharply in the movant's favor. *Id*. at 970.

### C. Discussion

#### i. Likelihood of Success or Substantial Question

Brookdale argues that on appeal it raises "substantial issues in contending that its arbitration agreements with Plaintiffs Carlson and Quinlan are fully enforceable under the FAA." Dkt. No. 94 at 5. For Ms. Carlson, Brookdale proffers that there is a substantial issue as to whether the opt-out provision in the December 2017 "subject-matter-specific agreement" can supersede an earlier, "broader agreement to arbitrate." *Id*. The substantial issue as to Mr. Quinlan, according to Brookdale, is whether an "implied agent may bind a principal as to arbitration" in light of "Congress's preference for arbitration." *Id*. at 7.

The Ninth Circuit has not clearly defined the phrase "substantial case on the merits," but courts in this district have interpreted the phrase to mean a case that: (1) "raises genuine matters of first impression within the Ninth Circuit"; (2) may "implicate a constitutional question"; or (3) "otherwise address[es] a pressing legal issue which urges that the Ninth Circuit hear the case." *Morse*, 2013 WL 123610, at *3 (citing cases in this district granting stays because there was a substantial question as to whether state precedent is preempted by the FAA); *Blair*, 2018 WL 2234049, at *2 (finding substantial question as to whether a California Supreme Court case is preempted by the FAA); *Ward*, 2014 WL 7273911, at *3 (finding substantial question in case where contracts were poorly-constructed and contained ambiguous and inconsistent provisions); *Zaborowski*, 2013 WL 1832638, at *2 (finding substantial question as to the applicability of a Supreme Court case to California law governing arbitration agreements). The Court will follow the same approach, as it is consistent with public policy recognizing that while a stay is an "intrusion into the ordinary processes of administration and judicial review," there may be instances when enforcement of a determination should be stayed to allow the reviewing court

---

*Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638 (N.D. Cal. May 1, 2013); *Morse v. Servicemaster Glob. Holdings, Inc.*, No. C 08-03894, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013).

ample time to consider the merits and prevent "irreparable injury to the parties or to the public." *See Nken*, 556 U.S. at 427; *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 9 (1942). Any other approach would allow a party to indefinitely stall trial "simply by bringing a frivolous motion to compel arbitration." *Britton*, 916 F.2d at 1412.

The Court does not find that Brookdale's arguments constitute substantial questions that raise genuine matters of first impression with the Ninth Circuit, implicate a constitutional question, or otherwise address a pressing legal issue. *See Morse*, 2013 WL 123610, at *3. Rather, the Court resolved Brookdale's arguments through application of well-settled contract and agency principles. With respect to Ms. Carlson, Brookdale asserts that the Court was incorrect as a matter of contract interpretation when it read the opt-out in the December 2017 Agreement to apply to "[a]ny and all claims arising out of, or in any way relating to, this Agreement or your stay at the Community." Dkt. No. 94 at 6 (quoting January 25 Order at 6). But that is *exactly* what the arbitration provision said, in unambiguous, plain language:

> AGREEMENT TO ARBITRATE. [ ] Any and all claims or controversies arising out of, or in any way relating to, this Agreement or your stay at the Community, excluding any action for eviction, and including disputes regarding interpretation of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law.

Dkt. No. 38-1, Ex. D at 10. The appeal thus poses no serious legal issues of contract interpretation, and Brookdale's position is contrary to the plain language of the provision itself. *See Morse*, 2013 WL 123610, at *3 ("Notwithstanding the FAA's strong preference for arbitration where contracts raise doubts, the Court held that 'here there is no doubt.' The Court relied only on the four corners of the contract, and did not rest on or implicate any constitutional issue").[3]

Brookdale's second purportedly substantial question is whether an implied agent may bind

---

[3] Brookdale cites several cases for the proposition that this Court's holding is inconsistent with other courts' rulings. Dkt. No. 94 at 6. The Court sees no inconsistency, as those cases (a) are not controlling and (b) involved distinguishable facts.

5

a principal to arbitration. Dkt. No. 94 at 6. But Brookdale's reading of the January 25 Order is misplaced. The Court did not address whether an implied agent may bind a principal to arbitration, because it held that Phillip Quinlan, Mr. Quinlan's son, was *not* an agent under principles of "apparent authority." January 25 Order at 8. As Brookdale correctly notes, it "is black letter law that agency may generally be implied," but the Court held that Brookdale offered no evidence that Mr. Quinlan, either by conduct or inaction, "caused Brookdale to believe Phillip Quinlan was acting as his agent when he executed the 2015 residency agreement." *Id*. at 8. Brookdale seems to suggest that Congress's "preference for arbitration" compels the Court to disregard well-established agency principles and presume an implied agency relationship within the arbitration context, even when there simply is no evidence of such a relationship. Dkt. No. 94 at 7. But the Court is doubtful that the law requires that result, and Brookdale's cases do not stand for such a position. *See id*. at 7 (citing *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421 (2017)). In *Kindred*, the Supreme Court reversed a lower court's decision declining to give effect two arbitration agreements executed by individuals holding powers of attorney. *Kindred Nursing*, 137 S. Ct. at 1425. The lower court's decision was based on a state rule that the Supreme Court held violated the FAA. *Id*. at 1426–27 ("The Kentucky Supreme Court's clear-statement rule … fails to put arbitration agreements on an equal plane with other contracts."). Notably here, Phillip Quinlan did not hold his father's power of attorney at the time he signed the residency agreement. Dkt. No. 31-4, Ex. A.

The first factor therefore does not weigh in favor of a stay.

### ii. Irreparable Harm to Defendants

Next, Brookdale contends that "[t]here can be no question that Brookdale will be irreparably harmed if a stay is denied," because it would have to incur the cost of litigation pending appeal, thereby defeating the cost-limiting purpose of arbitration. Dkt. No. 94 at 9–10. However, litigation will move forward regardless of the outcome of Brookdale's appeal, as the appeal only concerns two Plaintiffs. Because Plaintiffs will continue with discovery and class certification briefing, the cost of litigating this case is not likely to be meaningfully reduced if only

two Plaintiffs are compelled to arbitrate.[4] Other courts in this district have held that litigation expense, when the moving party must continue litigating regardless of the outcome of the appeal, is not sufficient to establish irreparable harm. *See, e.g.*, *Blair*, 2018 WL 2234049, at *2 ("[The] appeal concerns only a portion of the claims at issue in this case. Regardless of the outcome of the appeal, [defendant] will incur the costs of litigating [the] non-arbitrable claims"); *Ambrosio v. Cogent Commc'ns, Inc.*, No. 14-CV-02182-RS, 2016 WL 7888024, at *3 (N.D. Cal. Sept. 21, 2016) ("Yet, this litigation will move forward regardless of the outcome of [defendant's] appeal … [a]s such, the cost of litigating this case is not likely to be less"); *Jimenez*, 2015 WL 5591722, at *4 ("Regardless of the outcome of its appeal, [defendant] must continue to litigate the remaining claims; therefore, if I grant this partial stay [defendant] will still incur the potential costs or delays associated with litigation"). Brookdale does not convincingly explain why the same is not true here.

Because Brookdale fails to satisfy the first two crucial factors, the Court need not reach the remaining factors in its analysis. *See Mount Graham Coal. v. Thomas*, 89 F.3d 554, 558 (9th Cir. 1996) (declining to address the remaining factors where first factor was not satisfied); *see also Ambrosio*, 2016 WL 7888024, at *3; *Morse*, 2013 WL 123610, at *4.

\*     \*     \*

For the foregoing reasons, Brookdale's motion to stay pending appeal of the Court's order denying the motion to compel arbitration is **DENIED**.

### III.    MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL

#### A. Court's Order Finding Brookdale Facilities Are Public Accommodations

In the Court's January 25 Order, the Court denied Brookdale's motion to dismiss Plaintiffs' Title III ADA and Unruh Act claims.[5] January 25 Order at 12–14. In so doing, it held

---

[4] Brookdale cites to a Seventh Circuit case, *Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504 (7th Cir. 1997), to support its assertion that the time and expense of litigation constitutes irreparable harm in the arbitration context. Dkt. No. 94 at 10. Beyond the fact that litigation expense does not constitute irreparable harm in this particular case, the Court also notes that *Bradford-Scott* rejects, and is in direct conflict with, the Ninth Circuit's holding in *Britton*. *See Bradford-Scott*, 128 F.3d at 506.

[5] The analysis underlying the ADA claims also applies to the Unruh Act claims. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007) ("Any violation of the ADA necessarily constitutes

7

that Brookdale facilities are public accommodations subject to the ADA. *Id*. at 12. According to the SAC, Brookdale facilities are assisted living facilities, also called "Residential Care Facilities for the Elderly ("RCFEs"), and offer "room, board and daily assistance for seniors and persons with disabilities." SAC ¶ 28. The assistance offered includes "preparing meals, shopping, transportation, preparing and taking medication, housekeeping, laundry, bathing, toileting, grooming, dressing, and others." *Id*. Brookdale's own SEC filings represented that all "of our communities are required to comply with the Americans with Disabilities Act, or ADA." Dkt. No 26-1, Ex. A at 32.

The Court found unpersuasive Brookdale's argument that despite its facilities providing skilled nursing "and other, higher levels of medical care," the facilities are more similar to private apartment complexes than assisted living and nursing facilities. January 25 Order at 12. Brookdale cited no case in which similar facilities were exempted from ADA compliance. *Id.* Instead, the Court found convincing Plaintiffs' argument that the facilities are similar to assisted living and skilled nursing facilities, such as those at issue in *Hubbard v. Twin Oaks Health & Rehab Ctr.*, 408 F. Supp. 2d 923 (E.D. Cal 2004) and *Herriot v. Channing House*, No. C 06-6323JF, 2009 WL 225418 (N.D. Cal. Jan. 29, 2009), and are therefore public accommodations. *Id*.

Brookdale now asks the Court to certify for interlocutory appeal the question of whether the facilities are public accommodations under the ADA. Dkt. No. 99. Should the Court grant the motion to certify for interlocutory appeal, Brookdale also seeks a partial stay pending the appeal. *Id*.

### B. Legal Standard

Under the "final judgment rule," codified in 28 U.S.C. § 1291, the courts of appeal have jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Appellate review before a final judgment is only appropriate in "exceptional cases where decision of an interlocutory appeal might avoid protracted and expensive litigation." *U.S.*

---

a violation of the Unruh Act.").

*Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). A district court may only certify an order for interlocutory appeal if the moving party demonstrates that: (1) the issue to be certified "involves a controlling question of law"; (2) there is a "substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The requirements of § 1292(b) are jurisdictional, meaning if the appeal does not present circumstances satisfying the statutory prerequisites, the reviewing court cannot allow the appeal. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2009).

Because § 1292(b) is a departure from the final judgment rule, this exception "must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002). The decision to certify an issue for interlocutory appeal is discretionary, *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 36 (1995), and the district court should apply the requirements "strictly" and certify for interlocutory appeal only when "exceptional circumstances" justify a departure from the well-established policy of postponing appellate review until after a final judgment. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). The party seeking certification bears the burden of demonstrating that the requirements are satisfied and that such a departure is warranted. *Id.*

### C. Discussion

#### i. Controlling Question of Law

The issue to be certified must be a "controlling question of law." 28 U.S.C. § 1292(b). The moving party must show that "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). Brookdale contends, and Plaintiffs concede, that this issue is controlling because only if the facilities are public accommodations subject to Title III of the ADA may "*any* ADA or Unruh Act claims … proceed at all." Dkt. No. 99; *see* Dkt. No. 120 at 1 n.1. The Court agrees and finds that Brookdale has satisfied the first factor. However, Brookdale has not satisfied the remaining two factors and the Court therefore declines to exercise its discretion to certify the issue for interlocutory appeal.

9

### ii. Substantial Ground for Difference of Opinion

The second requirement under § 1292(b) is that there is a "substantial ground for difference of opinion" on the issue the moving party seeks to certify for interlocutory appeal. "A party's strong disagreement with the Court's ruling" is not enough. *Couch*, 611 F.3d at 633. "That settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id*. Rather, "courts must examine to what extent the controlling law is unclear." *Id*. A substantial ground for difference of opinion exists where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id*. (quotations and citation omitted). However, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id*.

Brookdale argues that there is a "substantial ground for difference of opinion" because the Ninth Circuit has not addressed the specific issue concerning Brookdale's facilities and the "legislative history and statutory text indicat[e] that residential communities such as Brookdale's are not 'public accommodations' under the ADA." Dkt. No. 99 at 5–9. The Court disagrees. Brookdale repeats the arguments the Court rejected in denying the motion to dismiss, but that simply reflects its "strong disagreement" with the Court's holding. *See Couch*, 611 F.3d at 633. The Court has already found that the facilities are more similar to the assisted living and skilled nursing facilities at issue in *Hubbard* and *Herriot* than to private residences. January 25 Order at 13–14. Brookdale disagrees and characterizes the facilities differently than they are described in the SAC (and in its own SEC filings). But this is just an argument that the Court misapplied the existing law to the facts alleged, which is clearly insufficient to show a "substantial ground for difference of opinion." *See Couch*, 611 F.3d at 633; *see also United States v. Wen-Bing Soong*, No. C-13-4088 EMC, 2014 WL 988632, at *1 (N.D. Cal. Mar. 10, 2014) (citing cases).

### iii. Materially Advance Litigation

Under the third factor, the Court must determine whether an interlocutory appeal on this

issue would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Allen v. ConAgra Foods, Inc.*, No. 3:13-CV-01279-WHO, 2019 WL 1466889, at *3 (N.D. Cal. Feb. 6, 2019) (quotations and citation omitted).

The Court agrees with Plaintiffs that Brookdale's appeal would not materially advance the ultimate termination of the litigation. *See* Dkt. No. 120 at 12. As Plaintiffs observe, even if the ADA and Unruh Act claims were terminated at this juncture, Plaintiffs' other claims are still pending and litigation would go forward regardless. *Id.* An interlocutory appeal therefore would not accelerate the pace of this litigation and would not minimize either party's burden. The Court also cannot say that permitting appeal of the ADA claim would materially narrow the scope and duration of discovery, as Plaintiffs appear likely to conduct the same or very similar discovery for their other pending claims. *See* Dkt. No. 120 at 13. If anything, certifying the issue for interlocutory appeal could delay the ultimate termination of this case. *See Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988)

\*          \*          \*

Accordingly, the Court **DENIES** Brookdale's motion to certify for interlocutory appeal.

## IV. CONCLUSION

The Court **DENIES** Brookdale's motion to stay, Dkt. No. 94, and **DENIES** Brookdale's motion to certify for interlocutory appeal, Dkt. No. 99. The Court **SETS** a case management conference for July 16, 2019 at 2:00 p.m. The Court **DIRECTS** the parties to file on or before July 9, 2019, a joint case management statement with a proposed class certification briefing schedule.

**IT IS SO ORDERED.**

Dated: 6/5/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge