1   Guy B. Wallace, State Bar No. 176151
    gwallace@schneiderwallace.com
2   Mark T. Johnson, State Bar No. 76904
    mjohnson@schneiderwallace.com
3   Travis C. Close, State Bar No. 308673
    tclose@schneiderwallace.com
4   Rachel L. Steyer, State Bar No. 330064
    rsteyer@schneiderwallace.com
5   **SCHNEIDER WALLACE**
    **COTTRELL KONECKY LLP**
6   2000 Powell Street, Suite 1400
    Emeryville, CA  94608
7   Telephone: (415) 421-7100
    Facsimile:  (415) 421-7105
8

    Gay Crosthwait Grunfeld, State Bar No. 121944
    ggrunfeld@rbgg.com
    Benjamin Bien-Kahn, State Bar No. 267933
    Bbien-kahn@rbgg.com
    Jenny S. Yelin, State Bar No. 273601
    jyelin@rbgg.com
    Amy Xu, State Bar No. 330707
    axu@rbgg.com
    **ROSEN BIEN**
    **GALVAN & GRUNFELD LLP**
    101 Mission Street, Sixth Floor
    San Francisco, CA  94105-1738
    Telephone:  (415) 433-6830
    Facsimile:  (415) 433-7104

9   Kathryn A. Stebner, State Bar No. 121088
    kathryn@stebnerassociates.com
10  Brian S. Umpierre, State Bar No. 236399
    brian@stebnerassociates.com
11  **STEBNER & ASSOCIATES**
    870 Market Street, Suite 1212
12  San Francisco, CA 94102
    Telephone:  (415) 362-9800
13  Facsimile:   (415) 362-9801

    David T. Marks (pro hac vice)
    davidm@marksfirm.com
    Jacques Balette (pro hac vice)
    jacquesb@marksfirm.com_
    **MARKS, BALETTE, GIESSEL**
    **& YOUNG, P.L.L.C.**
    7521 Westview Drive
    Houston, TX 77055
    Telephone: (713) 681-3070
    Facsimile: (713) 681-2811

14

15   Attorneys for Plaintiffs and the Proposed Classes

16                    **UNITED STATES DISTRICT COURT**

17                  **NORTHERN DISTRICT OF CALIFORNIA**

18                          **OAKLAND DIVISION**

19   STACIA STINER, et al., on behalf of themselves        Case No. 4:17-cv-03962-HSG (LB)
20   and all others similarly situated,

21              Plaintiffs,                                 **PLAINTIFFS' NOTICE OF MOTION AND**
                                                            **MOTION FOR CLASS CERTIFICATION;**
     vs.                                                    **MEMORANDUM OF POINTS AND**
22                                                          **AUTHORITIES IN SUPPORT THEREOF**
23   BROOKDALE SENIOR LIVING, INC.;
     BROOKDALE SENIOR LIVING                                Date:     May 26, 2022
24   COMMUNITIES, INC.; et al.,                             Time:     2:00 p.m.
                                                            Place:    Courtroom 2
25              Defendants.                                 Judge:    Hon. Haywood S. Gilliam, Jr.

26

27

28                          **REDACTED**

1

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION ....................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

    I.      INTRODUCTION ................................................................................. 1

    II.    STATEMENT OF FACTS ................................................................... 4

           A.    Brookdale's California Assisted Living Facilities ............................ 4

           B.    Brookdale's Facilities are Characterized by Multiple, Pervasive Access Barriers to Residents with Disabilities ................................ 4

                 1.    Newly Constructed Facilities Do Not Comply with Federal and State  Accessibility Standards .................................................... 4

                 2.    Altered Facilities Do Not Comply with Access Standards ................. 7

                 3.    Brookdale Has Failed to Perform Readily Achievable Barrier Removal .................................................................................... 7

                 4.    Brookdale's Systemic Inaccessibility Has a Severe Negative Impact on its Residents with Disabilities and Denies Them Full and Equal Access ...................................................................... 9

           C.    Brookdale's Policies and Practices Regarding Transportation Deny Full and Equal Access to Residents with Disabilities ............................. 10

           D.    Brookdale's Emergency Evacuation Plans and Procedures for Residents with Disabilities are Deficient ........................................................ 11

           E.    Brookdale Has Failed to Make Reasonable Modifications in Policy and Practice With Respect to Caregiver Staffing for Residents with Disabilities .............................................................................. 12

           F.    Uniform Misrepresentations in Brookdale's Form Residency Agreements.... 12

           G.    Resident Assessments, Service Plans and Fees ................................ 14

           H.    Brookdale's Standardized Corporate Policies and Procedures Regarding Staffing ............................................................................... 15

           I.    Brookdale's Staffing Model is Deficient ....................................... 17

           J.    Brookdale's Conduct Raises Significant Health and Safety Concerns .......... 18

[3780175.1]

III.  THE LEGAL STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 23 ........................................................................................ 19

  A.  Numerous Courts Have Granted Class Certification in Similar Cases Under the ADA........................................................................................ 19

  B.  Numerous Courts Have Granted Class Certification in Similar Cases Under the CLRA, the UCL and the Elder Financial Abuse Statute .............. 20

IV.  THE CLASS OF RESIDENTS WITH MOBILITY OR VISION DISABILITIES MEETS THE REQUIREMENTS OF RULE 23 ........................................................ 22

  A.  The Class Is So Numerous That Joinder Is Impracticable .............................. 22

  B.  There Are Numerous Common Questions Of Law And Fact That Are Capable Of Common Answers And That Are Apt To Drive The Resolution Of The Litigation............................................................................ 22

    1.  Whether Brookdale's Assisted Living Facilities are Covered by Title III of the ADA .................................................................... 23

    2.  Whether Brookdale's New or Altered Facilities Comply with the 2010 ADAS, the 1991 ADAAG and/or the California Building Code................................................................................ 23

    3.  Whether Brookdale Has Failed to Conduct Readily Achievable Barrier Removal ...................................................... 24

    4.  Whether Brookdale's Policies and Practices Regarding Transportation Ensure Full and Equal Access to and Enjoyment of Services for Residents with Disabilities.......................................... 25

    5.  Whether Brookdale's Policies and Practices Regarding Emergency Evacuation are Equally Effective for Residents with Disabilities ......................................................................... 26

  C.  The Named Plaintiffs Satisfy the Typicality Requirement.............................. 26

  D.  The Proposed Class Representatives and Class Counsel Are Adequate ......... 27

  E.  Plaintiffs Satisfy the Requirements of Rule 23(b)(2) ..................................... 28

  F.  Plaintiffs Satisfy the Requirements of Rule 23(b)(3) With Respect to Their Proposed Damages Class on Behalf of Persons with Mobility or Vision Disabilities ......................................................................................... 29

    1.  Common Questions of Law and Fact Predominate Over Individual Questions.......................................................................... 29

[3780175.1]

2. Class Certification Is Superior to Other Means of Resolving This Dispute ............................................................................... 30

V. THE CLASS OF RESIDENTS WITH DISABILITIES SATISFIES RULE 23 ........ 31

 A. The Class Is So Numerous That Joinder Is Impracticable ............................. 31

 B. Commonality And Predominance Are Satisfied ............................................. 31

  1. Whether Brookdale's Assisted Living Facilities are Covered by Title III of the ADA ............................................................................... 31

  2. Whether Defendants Have Made Reasonable Modifications in Policies and Practices with Respect to Caregiver Staffing ................. 31

 C. The Named Plaintiffs Satisfy the Typicality Requirement ............................ 33

 D. The Proposed Class Representatives and Class Counsel Are Adequate ........ 33

 E. Plaintiffs Satisfy the Requirements of Rule 23(b)(2) .................................... 34

 F. Superiority is Met ......................................................................................... 34

VI. THE FALSE AND MISLEADING STATEMENTS AND OMISSIONS CLASS MEETS THE REQUIREMENTS OF RULE 23 ........................................................ 34

 A. The Class Is So Numerous That Joinder Is Impracticable ............................. 34

 B. There Are Numerous Common Questions Of Law And Fact That Are Apt To Drive The Resolution Of The Claims .................................................. 34

  1. Whether Brookdale's Statements and Omissions Regarding Facility Staffing Were Deceptive or Likely to Mislead a Reasonable Consumer ....................................................................... 34

  2. Whether Brookdale's Deceptive Statements or Omissions Would be Material to a Reasonable Consumer ................................................ 35

  3. Whether Brookdale Has Wrongfully Taken the Property of Elderly Residents ................................................................................. 35

  4. Whether Brookdale's Conduct Has Caused Classwide Injury ........... 36

 C. The Named Plaintiffs Satisfy the Typicality Requirement ............................ 36

 D. The Proposed Class Representatives and Class Counsel are Adequate .......... 37

 E. Plaintiffs Satisfy the Requirements of Rule 23(b)(2) .................................... 37

 F. Plaintiffs Meet the Requirements of Rule 23(b)(3) ....................................... 37

[3780175.1]

1    1.    Common Questions of Law and Fact Predominate ............................ 37

2    2.    Superiority is Satisfied ........................................................ 38

3  VII.  PLAINTIFFS' DAMAGES MODEL MEETS APPLICABLE
       REQUIREMENTS ................................................................. 39

4

5  VIII.  CONCLUSION ..................................................................... 40

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[3780175.1]

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abbit v. ING USA Annuity*,
   No. 13cv2310—GPC—WVG, 2015 WL 7272220 (S.D. Cal. Nov. 16, 2015)................................. 39

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................................................... 28

*Armstrong v. Davis*
   275 F.3d 849 (9th Cir. 2001) ......................................................................................................... 20

*Arnold v. United Artists Theatre Circuit, Inc.*,
   158 F.R.D. 439 (N.D. Cal. 1994) .................................................................................................. 24

*Bailey v. Rite Aid Corp.*,
   __ F.R.D. __, No. 4:18-cv-06926 YGR, 2021 WL 1668003 (N.D. Cal. April 28, 2021)................ 37

*Baughman v. Walt Disney World Co.*,
   685 F.3d 1131 (9th Cir. 2012) ................................................................................................. 25, 26

*Beyer v. Symantec Corp.*,
   333 F. Supp. 3d 966 (N.D. Cal. 2018) ........................................................................................... 35

*Botosan v. Paul McNally Realty*,
   216 F.3d 827 (9th Cir. 2000) ......................................................................................................... 23

*Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*,
   290 F.R.D. 409 (S.D.N.Y. 2012) ................................................................................................... 26

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
   631 F.3d 939 (9th Cir. 2011) ........................................................................................................... 5

*Combe v. Intermark Commc'ns, Inc.*,
   No. CV 09-09127 SJO (PJWx), 2010 WL 11597517 (C.D. Cal. Nov. 18, 2010) ........................... 14

*Comcast Corp. v. Behrend*,
   569 U.S. 27, 34 (2013) .................................................................................................................. 39

*Crowder v. Kitigawa*,
   81 F.3d 1480 (9th Cir. 1996) ......................................................................................................... 33

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ......................................................................................................... 22

*Feller v. Transamerica Life Ins. Co.*,
   No. 2:16-cv-01378-CAS-AJW, 2017 WL 6496803(C.D. Cal. Dec. 11, 2017)................................ 22

*Fortyune v. Am. Multi-Cinema, Inc.*,
   364 F.3d 1075 (9th Cir. 2004) ....................................................................................................... 32

*Gold v. Lumber Liquidators Inc.*,
   No. 14-cv-05373-TEH, 2017 WL 2688077, (N.D. Cal. June 22, 2017) ........................................... 3

*Gray v. Golden Gate Nat'l Recreational Area*,
   279 F.R.D. 501 (N.D. Cal. 2011) ........................................................................................... 20

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012)............................................................................................ 21

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018)..................................................................... 20, 34, 35

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir.1998) ................................................................................................. 27

*Hernandez v. County of Monterey*,
   305 F.R.D. 132(N.D. Cal. 2015) ............................................................................................ 20

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) .................................................................................................. 35

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ...................................................................................... 21

*In re First Alliance Mortgage Co.*,
   471 F.3d 977 (9th Cir. 2006) .................................................................................................. 14

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) .................................................................................................. 29

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ..................................................................................... 27, 29, 39

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ................................................................................................ 39

*Lane v. Landmark Theatre Corp.*,
   No. 16-cv-06790-BLF, 2020 WL 1976420 (N.D. Cal. Apr. 24, 2020) .................................... 7

*Lentini v. Cal. Ctr. for the Arts, Escondido*,
   370 F.3d 837 (9th Cir. 2004) ........................................................................................... 23, 32

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) .................................................................................................. 39

*Lopez v. Catalina Channel Express, Inc.*,
   974 F.3d 1030 (9th Cir. 2020).......................................................................................... 7, 24

*MacRae v. HCR Manor Care Services*, LLC,
   No. SA CV 14-00715-DOC (RNBx), 2018 WL 8064088 (C.D. Cal. Dec. 10, 2018) ............. passim

*Makaeff v. Trump Univ., LLC*,
   No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ............................... 22

*Miller v. Cal. Speedway Corp.*,
   536 F.3d 1020 (9th Cir. 2008) ................................................................................................ 24

*Moeller v. Taco Bell Corp.*,
   816 F. Supp. 2d 831 (N.D. Cal. 2011) ........................................................................... 5, 24

*Nevarez v. Forty Niners Football Co., LLC*,
   326 F.R.D. 562 (N.D. Cal. 2018) ........................................................................... 20, 29, 30

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) ........................................................................................... passim

*Park v. Ralph's Grocery Co.*,
   254 F.R.D. 112 (C.D. Cal. 2008) ................................................................................. 20

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) .................................................................................. 22, 28

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ............................................................................................ 40

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .......................................................................................... 28

*Senne v. Kansas City Royals Baseball, Corp.*,
   934 F.3d 918 (9th Cir. 2019) ............................................................................ 29, 37, 39

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ......................................................................................... 21

*Stiner v. Brookdale Senior Living, Inc.*,
   354 F. Supp. 3d 1046 (N.D. Cal. 2019) .................................................................. 1, 23, 32

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ............................................................................. 20, 37, 38

*True Health Chiropractic Inc. v. McKesson Corp.*
   332 F.R.D. 589 (N.D. Cal. 2019) ............................................................................ 19, 22, 31

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .......................................................................................................... 29

*Villalpando v. Exel Direct Inc.*,
   303 F.R.D. 588 (N.D. Cal. 2014) ..................................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................... 22, 23

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ........................................................................................ 28

*Winans by and through Moulton v. Emeritus Corp.*,
   No. 13-cv-03962-SC, 2014 WL 970177 (N.D. Cal. Mar. 5, 2014) ................................ 13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................................. 21, 36, 38

*Wortman v. Air New Zealand*, 326 F.R.D. 549 (N.D. Cal. 2018) ........................................ 40

1 **STATUTES**

2 42 U.S.C. § 12181(7)............................................................................................... 23

3 42 U.S.C. § 12182(a).............................................................................................. 31

4 Cal. Bus. & Prof. Code § 17200 ............................................................................... 2

5 Cal. Civ. Code § 51 ................................................................................................... 1

6 Cal. Civ. Code § 51(f) ........................................................................................ 30, 33

7 Cal. Civ. Code § 52(a) ....................................................................................... 30, 33

8 Cal. Civ. Code § 55 .................................................................................................. 30

9 Cal. Civ. Code § 56(e) ............................................................................................. 30

10 Cal. Civ. Code §1750 ................................................................................................. 2

11 Cal. Gov. Code § 4459 (c) ....................................................................................... 23

12 Cal. Gov. Code § 4459(a) ........................................................................................ 23

13 Cal. Health & Saf Code § 1430(b) ........................................................................... 38

14 Cal. Health & Saf Code § 1569.887(a) .................................................................... 13

15 Cal. Welf. & Inst. Code § 15610.30 .................................................................... 2, 35

16 Cal. Welf. & Inst. Code § 15610.30(a)(1) ............................................................... 21

17 Cal. Welf. & Inst. Code § 15610.30(b) .................................................................... 21

18 Cal. Welf. & Inst. Code §15657.5(a) ....................................................................... 39

19 Cal.Welf. & Inst. Code § 15610.310 ....................................................................... 20

20 **RULES AND REGULATIONS**

21 22 CCR § 87457 ...................................................................................................... 14

22 22 CCR § 87507(c) .................................................................................................. 12

23 28 C.F.R. § 36.202(a) .............................................................................................. 25

24 28 C.F.R. § 36.202(b) ......................................................................................... 25, 26

25 28 C.F.R. § 36.302(a) ......................................................................................... 31, 33

26 28 C.F.R. § 36.304 ................................................................................................... 24

27 28 C.F.R. § 36.401 ............................................................................................... 5, 23

28 28 C.F.R. § 36.402 ............................................................................................... 7, 23

28 C.F.R. § 36.403 ................................................................................................................ 7, 23

28 C.F.R. § 36.406(a) ............................................................................................................ 5, 7

49 C.F.R. § 37.165(e) ......................................................................................................... 10, 25

Fed. R. Civ. P. 23 ..................................................................................................................... 39

Fed. R. Civ. P. 23(a) ................................................................................................................ 19

Fed. R. Civ. P. 23(a)(1) ........................................................................................................... 34

Fed. R. Civ. P. 23(a)(2) ........................................................................................................... 22

Fed. R. Civ. P. 23(a)(3) ........................................................................................................... 26

Fed. R. Civ. P. 23(a)(4) ............................................................................................... 27, 33, 37

Fed. R. Civ. P. 23(b) ................................................................................................................ 19

Fed. R. Civ. P. 23(b)(2) ..................................................................................................... passim

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... passim

Fed. R. Civ. P. 23(g)(1) ........................................................................................................... 33

Fed. R. Civ. P. 23(g)(4) ........................................................................................................... 33

Fed. R. Civ. P. 30(b)(6) ..................................................................................................... passim

**<u>OTHER AUTHORITIES</u>**

U.S. DOJ Technical Assistance Manual § III-4.4200 (1993) ................................................... 24

## NOTICE OF MOTION

On May 26, 2022 at 2:00 p.m. in Courtroom 2 of the United States District Court in Oakland, California, Plaintiffs will move for an order granting class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).  This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declarations, the case file in this matter, and any further evidence or argument offered at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

In this case, thousands of vulnerable senior citizens and persons with disabilities seek redress for violations of their statutory rights under federal and California law.  Defendants Brookdale Senior Living, Inc. and Brookdale Senior Living Communities, Inc. ("Defendants" or "Brookdale") have subjected the putative class members to systemic violations of their civil rights under the Americans with Disabilities Act of 1990 (ADA) and California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 *et seq.* (Unruh Act). Further, in violation of California's consumer protection laws, Brookdale has subjected the putative class members to a deceptive scheme in which it promises to assess their needs for care and then provide care services to them.  Brookdale, however, does not disclose to the putative class members that it has a policy and practice of understaffing its facilities, and that as a result, the residents of its assisted living facilities are placed at a substantial risk of being denied care services on any given day.  The residents pay thousands of dollars to Brookdale every month for care that they often do not receive, while Brookdale pockets literally billions of dollars and strips them of their life savings.  In short, Brookdale's wrongful conduct has subjected the putative class members to discrimination, deception, elder financial abuse and indignity.

Plaintiffs' claims are well-suited for class treatment.  Brookdale has a corporate policy and practice of violating the ADA and the Unruh Act.  Brookdale defiantly rejects the applicability of the ADA and the Unruh Act to its facilities, and operates its facilities as though these laws do not exist despite this Court's holding that "Brookdale assisted living facilities are 'public accommodations' subject to the ADA."  *Stiner v. Brookdale Senior Living, Inc.*, 354 F. Supp. 3d 1046, 1059 (N.D. Cal. 2019).  As discussed below, Defendants have violated the ADA and the Unruh Act by failing to make their assisted

1   living facilities accessible to residents with disabilities.  Plaintiffs have inspected fifty-two (52) of

2   Defendants' facilities, of which forty-nine (49) constitute new construction under the ADA and/or the

3   Unruh Act.  All of them are filled with access barriers.  Not one of them complies with the 1991

4   Americans with Disabilities Act Accessibility Guidelines (ADAAG) or the applicable version of the

5   California Building Code (CBC).  Defendants have also violated the ADA and the Unruh Act through

6   corporate policies regarding transportation and emergency evacuation services that, on their face, violate

7   the mandates of federal and state law.

8       Moreover, Defendants have violated the ADA and the Unruh Act by systemically understaffing

9   their assisted living facilities.  As a result, Plaintiffs are routinely denied essential services with respect

10  to their activities of daily living (ADLs), such as assistance with toileting, dressing, grooming, bathing,

11  ambulation, escorting, medication administration and housekeeping.  Plaintiffs have requested that

12  Defendants make a reasonable modification in policy and practice pursuant to the ADA to provide

13  sufficient staffing to ensure that residents with disabilities receive the services specified in their

14  assessments and care plans.  Defendants have refused to do so.  Instead, Defendants continue to staff

15  their facilities based on corporate staffing procedures that are not reasonably designed to ensure the

16  amount of staffing necessary to deliver to the residents the services they need as set forth in

17  Brookdale's own care plans.

18      Defendants have also violated California's Consumers Legal Remedies Act (CLRA), Civ. Code

19  §§ 1750 *et seq.*, the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and the

20  Elder Financial Abuse statute, Cal. Welf. & Inst. Code § 15610.30, by making false and misleading

21  statements and nondisclosures regarding the care services provided at their assisted living facilities.  In

22  their standard form contracts with the residents, Defendants represent that they will assess the

23  residents' needs for services, and then provide them with those services.  These statements are false

24  and misleading to a reasonable consumer as a result of Defendants' corporate policy and practice of

25  understaffing which often results in the denial of care services.  Further, Defendants conceal their

26  policy and practice of understaffing from the residents.  These facts are highly material, and if they had

27  been disclosed to the residents prior to their entry into Defendants' facilities, they undoubtedly would

28  not have contracted with Defendants.

1   Numerous courts have granted class certification in cases brought under the ADA that

2   challenge the defendant's corporate policies and practices and their negative impact upon persons with

3   disabilities.  In so doing, courts have recognized that the legality of such policies and practices may be

4   evaluated through common proofs such as corporate admissions and documents, expert testimony, and

5   the testimony of the class members.  Similarly, courts routinely certify class actions under the CLRA

6   and the UCL in cases such as this one that challenge uniform misleading statements and omissions.

7   Plaintiffs seek certification of the following three classes.  The first two classes seek declaratory

8   and injunctive relief under the ADA and the Unruh Act, and as well as statutory minimum damages

9   under the Unruh Act, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).  The third class

10   seeks declaratory and injunctive relief and damages under the CLRA, the UCL and the Elder Financial

11   Abuse statute pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

12   **1.**   All persons with disabilities who use wheelchairs, scooters, or other mobility aids or
13   who have vision disabilities and who reside or have resided at a residential care facility
for the elderly located in California and owned, operated and/or managed by Brookdale
14   during the three years prior to the filing of the Complaint herein through the conclusion
of this action, including their successors-in-interest if deceased, excluding any persons
15   who are subject to arbitration.

16   **2.**   All persons with disabilities who require assistance with activities of daily living and
who reside or have resided at a residential care facility for the elderly located in
17   California and owned, operated and/or managed by Brookdale during the three years
prior to the filing of the Complaint herein through the conclusion of this action,
18   including their successors-in-interest if deceased, excluding any persons who are
subject to arbitration.

19   **3.**   All persons who resided or reside at one of the residential care facilities for the elderly
located in California and owned, operated and/or managed by Brookdale during the
20   period from May 16, 2015 through the conclusion of this action, and who contracted
with Brookdale or another assisted living facility for services for which Brookdale was
21   paid money, including their successors-in-interest if deceased, excluding any persons
who are subject to arbitration.

22

23   The proposed classes are narrower than those alleged in the operative Complaint (ECF 90 at ¶¶ 197-99) in

24   that they exclude persons who are subject to arbitration.  Because the  proposed classes are narrower,

25   there is no need to amend the pleadings.  *See, e.g.*, *Gold v. Lumber Liquidators Inc.*, No. 14-cv-05373-

26   TEH, 2017 WL 2688077, at *3 (N.D. Cal. June 22, 2017) (collecting authorities).

27

28

[3780175.1]

## II.    STATEMENT OF FACTS

### A.  Brookdale's California Assisted Living Facilities

Brookdale Senior Living Inc. is a for-profit corporation that maintains its principal place of business in Brentwood, Tennessee.  Brookdale is the largest provider of assisted living services in the United States.  Assisted living facilities, also called residential care facilities for the elderly (RCFEs), offer room, board and assistance with activities of daily living.  Many also provide "memory care" services for persons with cognitive disorders.  Residents at Brookdale's California facilities include independent residents (who at the time of admission do not require care services but who will need them as they "                   "), residents who require assistance with "                                 " and residents who require additional care for memory and cognitive issues (referred to by Brookdale as "                   " residents).  Declaration of Guy B. Wallace In Support of Plaintiffs' Motion for Class Certification (Wallace Decl.) ¶ 14, Ex. 14 at BKD0205442.

Brookdale exercises extensive control over the day-to-day operations of its California facilities.  *See* discussion *infra* at §§ II.F-H.  Brookdale currently owns, operates and/or manages 48 assisted living facilities in California.  ECF 238-2 (Declaration of Kevin Bowman in Support of Motion to Deny Class Certification (Bowman Decl.)) at ¶ 6.  During the class period, Brookdale has owned, operated and/or managed ninety (90) facilities in California.  *Id.,* ¶ 13; Wallace Decl., ¶ 15, Ex. 2 at  46-50 (Defendants' Supplemental Responses to Plaintiff Helen Carlson's Interrogatories Set One, No. 16).[1]

### B.  Brookdale's Facilities are Characterized by Multiple, Pervasive Access Barriers to Residents with Disabilities

#### 1.  Newly Constructed Facilities Do Not Comply with Federal and State Accessibility Standards

Brookdale owns, operates and/or manages twenty-seven (27) facilities that it admits were constructed after the effective date of Title III of the ADA, January 26, 1993.  Wallace Decl. ¶ 16, Ex. 3 (Defendants' Supplemental Responses to Plaintiff Stacia Stiner's Interrogatories, Set One, No. 9 at 4-5).  These facilities must be in full compliance with the 1991 Americans with Disabilities Act Accessibility

---

[1] In subsequent Rule 30(b)(6) deposition testimony offered through the same witness, Brookdale attempted to walk back its sworn admissions of its ownership or operation of these facilities in the Declaration it filed with the Court. The record shows that Brookdale is the de facto manager and operator of the California facilities.  Although if Brookdale disagrees, the dispute presents another common issue that can be resolved on a class basis.

Guidelines (ADAAG). *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945-46 (9th Cir. 2011) (en banc); 28 C.F.R. §§ 36.401; 36.406(a).  They are not.  Plaintiffs' experts, who are architects and California state certified specialists in accessibility (CASps), inspected 23 of Brookdale's facilities that were newly constructed after January 26, 1993.  Declaration of Gary Waters In Support of Plaintiffs' Motion for Class Certification (Waters Decl.) ¶¶ 3-22; Declaration of Jeffrey Scott Mastin In Support of Plaintiffs' Motion for Class Certification (Mastin Decl.) ¶¶ 3-27.  All of the new facilities that they inspected have pervasive physical access barriers that violate the 1991 ADAAG and the applicable iteration of the California Building Code (CBC).  Waters Decl. ¶¶ 23-24; 43-45; Mastin Decl. ¶¶ 28-36.[2]

In addition, Plaintiffs' experts inspected 26 of Brookdale's new facilities that were constructed during the period between July 1, 1970 and January 26, 1993, and that therefore must comply with California access standards.  *See, e.g.*, *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 848 (N.D. Cal. 2011).  None of those facilities comply with the iteration of the CBC that was in effect at the time of construction.  Waters Decl. ¶¶ 34-42; Mastin Decl. ¶¶ 37-52.

Plaintiffs' experts inspected a sample of the residential units in these facilities that was "typical, in all material respects affecting disability access."  *See* ECF 154 at ¶7.  They identified the following categories of barriers therein that do not comply with ADAAG or the CBC.  The residential units contained numerous significant barriers in the bathrooms, including but not limited to, toilets that are too high, non-compliant grab bars, inaccessible showers, and inaccessible sinks and cabinets. As Mr. Waters and Mr. Mastin explain in their Declarations, the impact of these barriers is to deny residents with disabilities full and equal access to the bathrooms in their units by making it difficult or impossible for them to use the toilet, shower and/or wash their hands.  Waters Decl. ¶ 24; Mastin Decl. ¶¶ 28-29.  In addition, among other barriers, the kitchens in the units contained counters that were too high and inaccessible sinks, thus making it difficult for residents to use their kitchens, prepare and eat food or wash their hands.  Waters Decl. ¶ 25; Mastin Decl. ¶ 30(a).  Numerous units contain balconies or patios that are inaccessible to residents with mobility disabilities because of high thresholds.  Waters Decl. ¶ 26; Mastin Decl. ¶ 30(b).  The closet rods in the closets are too high, thus making it difficult or impossible for

---

[2] Plaintiffs' experts inspected 52 of Brookdale's facilities before their facilities were closed to further inspections because of the pandemic. Wallace Decl. ¶ 17, Ex. 4.

[3780175.1]

1   residents with disabilities to hang up or get their clothes without assistance.  Waters Decl. ¶ 26; Mastin

2   Decl. ¶ 30(d).

3   The areas outside of the facilities, including their parking lots, paths of travel and the primary

4   entrances, were also characterized by numerous barriers.  Plaintiffs' experts observed barriers in

5   Defendants' designated "accessible" parking spaces including steep running slopes and cross slopes,

6   inadequate widths and non-compliant signage.  Waters Decl. ¶ 27; Mastin Decl. ¶ 31(a)-(c). The paths of

7   travel and ramps leading to and within the facilities also contained steep slopes, as well as sections of

8   pavement that were broken and uneven thus creating a falling or tripping hazard for residents with

9   mobility and/or vision disabilities.  Waters Decl. ¶ 28; Mastin Decl. ¶ 31(d)-(f).  As a result of these

10  barriers, residents with disabilities encounter barriers that limit or deny equal access when they attempt to

11  approach and enter these facilities.  Waters Decl. ¶ 28; Mastin Decl. ¶¶ 31-32.

12  The common areas inside Brookdale's new facilities also contained many barriers that limit or

13  deny full and equal access to residents with disabilities.  The public restrooms contain toilets that are

14  mounted too far from the adjacent wall, non-compliant grab bars, inaccessible sinks and coat hooks that

15  are mounted too high.  Waters ¶ 30; Mastin ¶ 33.  The dining rooms contain numerous barriers, including

16  but not limited to tables that are too low and that do not provide adequate knee clearance for wheelchair

17  users.  Waters ¶ 31; Mastin ¶ 34.  The hallways contain protruding objects that are hazards to residents

18  who are blind or who have low vision.  Waters ¶ 31; Mastin ¶ 35.  Similarly, the stairs in Brookdale's

19  facilities lack proper contrast striping, thus making them hazardous for residents with vision disabilities.

20  There is also a lack of tactile signage for persons who are blind.  Waters ¶ 32;  Mastin ¶ 33(g).

21  As discussed below, under applicable law Defendants are obligated to remediate these barriers and

22  bring these facilities into compliance with current access standards, including the 2010 Americans with

23  Disabilities Act Accessibility Standards (2010 ADAS).  But Mr. Bowman, the President of the West

24  Division and Brookdale's Rule 30(b)(6) designee regarding disability access, testified that ██████████

25  █████████████████████████.  Wallace Decl. ¶ 63, Ex. 50 (Deposition of Kevin

26  Bowman of June 23, 2021 at 18:12-19:9; 30:9-31:14).  Further, Brookdale ████████████

27  ████████████████████████████████.  *Id.* at 61:6-11; 115:3-

28  118:25.  Brookdale ████████████████████████.  *Id.* at 106:5-21.

[3780175.1]

### 2. Altered Facilities Do Not Comply with Access Standards

Under applicable law, the areas of a facility that were altered after January 26, 1992 must comply with federal and state access standards.  In addition, the path of travel leading from exterior parking to the area(s) of alteration within the facility must be made compliant.  *See, e.g.*, 28 C.F.R. §§ 36.402; 36.403; 36.406(a); *Lane v. Landmark Theatre Corp.*, No. 16-cv-06790-BLF, 2020 WL 1976420, at **21-24 (N.D. Cal. Apr. 24, 2020).  Plaintiffs' experts inspected seven major alterations projects that were conducted at these facilities since January 26, 1992.  None of the altered areas of these facilities comply with federal and state access standards.  Waters ¶¶ 46-50;  Mastin ¶¶ 56-69.   In addition, Brookdale has failed to make the path of travel leading to the areas of alteration at these facilities compliant with the 1991 ADAAG or the 2010 ADAS.  Waters ¶¶ 47(p), (r)-(u), 48(a)-(b), (h)-(l), 49(a)-(m); Mastin ¶¶ 57-68.

According to its Rule 30(b)(6) designee, Brookdale ███████████████████████████████████████████████████████████████████████████████ Wallace Decl. Ex. 50 (Bowman Depo. at 62:13-20; 139:2-142:25).  Brookdale ██████████████████████████████████████████████████████████████████ *Id.* at 38:1-10; 40:11-41:14.  Brookdale ███████████████████████████████████████████████████████████████████ *Id.* at 54:12-56:16; 106:5-21; 139:10-142:24.

### 3. Brookdale Has Failed to Perform Readily Achievable Barrier Removal

Under the ADA and the Unruh Act, Brookdale is required to remove access barriers from its facilities regardless of the age of the facility if doing so can be accomplished without much difficulty or expense.  *See, e.g.*, *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1034 (9th Cir. 2020); 28 C.F.R. § 36.304.  Brookdale's facilities are replete with access barriers that the U.S. DOJ has identified as being of the type that are readily achievable, and that are routinely removed from public accommodations. Waters ¶¶ 51-56; Mastin ¶¶ 70-77.

Plaintiffs' experts identified the following types of barriers in Brookdale's facilities that can readily be removed without difficulty and at a cost of $5,000 per item or less.  Specifically, Plaintiffs' experts observed ramps and curb ramps that were too steep or that lacked a smooth and even surface as required by federal and state access standards.  In their experience, barriers of this nature can be removed

1   easily and without much expense.  Waters ¶¶ 51-52;  Mastin ¶ 71(a-(b).  Similarly, most of the facilities

2   had designated "accessible" parking spaces that were not level, or that were non-compliant in other

3   respects.  Creating designated accessible parking spaces is a readily achievable barrier removal item that

4   is routinely carried out by public accommodations.  Waters ¶¶ 51-53;  Mastin ¶ 73.

5        The bathrooms in the resident's units and the common area restrooms contained many barriers that

6   fall within the category of being readily achievable.  Most of the residential units that were inspected

7   lacked grab bars in the bathrooms that comply with ADAAG.  Compliant grab bars can be provided next

8   to toilets at low cost and without difficulty.  Waters ¶¶ 51-53;  Mastin ¶ 74.  The same is true with respect

9   to providing paper towel and toilet paper dispensers at compliant heights and locations, another barrier

10  that was common in the residential unit bathrooms and the public restrooms.  Waters ¶¶ 51-53;  Mastin

11  ¶ 71.  Similarly, many of the common area restrooms lacked compliant insulation of the lavatory pipes

12  under the sinks to prevent burns or abrasions, another easy and inexpensive barrier removal fix often

13  carried out by maintenance staff.  Waters ¶¶ 51-53;  Mastin ¶ 71(j).

14       Moreover, there were numerous other readily achievable barrier removal items in the residents'

15  units.  Clothing rods are mounted too high and out of reach for wheelchair users.  The clothing rods in the

16  closets can be re-mounted at a compliant height without difficulty or expense; this fix is a maintenance

17  item.  Waters ¶¶ 54(a), 55; Mastin ¶ 75.  Similarly, thermostats in the units were often mounted too high,

18  and have controls that require tight pinching or grasping in violation of the ADAAG and the CBC.

19  Waters ¶¶ 54(b), 55; Mastin ¶ 75.  These controls can easily be replaced with push-button controls at a

20  compliant height so that residents with mobility disabilities can control the temperature in their units

21  without needing assistance from a nondisabled person.  Also, the controls for the windows and the blinds

22  require tight pinching and grasping to operate, and do not comply with ADAAG or the CBC.  These

23  controls can easily be replaced and made compliant, thus allowing residents to open and close their

24  windows and blinds without assistance.  Waters ¶¶ 54(d), 55; Mastin ¶ 75.

25       Finally, the common areas in Brookdale's assisted living facilities have many significant access

26  barriers that can be removed with little expense or difficulty.  For example, Brookdale's dining room

27  furniture includes tables that lack compliant knee clearance for wheelchair users.  Waters Decl. ¶ 51;

28  Mastin Decl. ¶ 76.  Brookdale's facilities are also characterized by heavy doors with fast closing speeds,

1    thus creating a falling hazard for residents with mobility disabilities.  Such door pressures can be made

2    compliant by maintenance staff with little cost or difficulty.  Waters ¶ 54(l), 55; Mastin ¶ 76.

3        Brookdale's Rule 30(b)(6) designee, Mr. Bowman, testified that Brookdale ███████████

4    ████████████████████████████ Wallace Decl. Ex. 50 at 62:22-63:4; 166:14-20.  Rather, it has a

5    ████████████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████████████

7    █████████.  *Id.* at 54:12-56:16.  ████████████████████████████████████████████

8    ████████  *Id.* at 173:2-10.  Thus, Brookdale has no policies or procedures in place regarding the

9    completion of readily achievable barrier removal in its facilities, even though it is a multi-billion dollar

10   company and is the largest provider of assisted living services in the nation.  Declaration of Patrick

11   Kennedy in Support of Plaintiffs' Motion for Class Certification (Kennedy Decl.) at ¶ 6.

12   **4.  Brookdale's Systemic Inaccessibility Has a Severe Negative Impact on its Residents with Disabilities and Denies Them Full and Equal Access**

13

14       The testimony of the named Plaintiffs and the putative class members underscores that the access

15   barriers discussed herein deny them full and equal access to Brookdale's assisted living facilities.  *See*

16   Appendix of Class Member and Witness Declarations submitted herewith and Declaration of Rachel L.

17   Steyer in Support of Plaintiffs' Motion for Class Certification (Steyer Decl.) at ¶¶ 4-11.  Brookdale

18   residents or family members discuss numerous instances in which they have been denied full and equal

19   access to Brookdale facilities because of barriers.  Many class members have difficulty using the

20   inaccessible bathrooms in their units.  Steyer Decl. ¶ 5.  Similarly, residents with mobility disabilities have

21   experienced great difficulty in using the showers in their units because of the lack of accessible roll-in

22   showers that comply with applicable access requirements.  *Id.* at ¶ 6.  The putative class members also

23   testify to the difficulty, fatigue and frustration that they routinely experience as a result of sinks, counters

24   and/or tables that are inaccessible.  *Id.* at ¶ 7.  Many have found it difficult or impossible to use their own

25   closets because the clothing rods are too high and out of reach.  *Id.* at ¶ 8.  Others express their frustration

26   that they are unable to use the balconies or patios in their units because of high thresholds that cannot be

27   negotiated with their wheelchairs.  *Id.* at ¶ 9.

28

[3780175.1]

**C. Brookdale's Policies and Practices Regarding Transportation Deny Full and Equal Access to Residents with Disabilities**

Brookdale's policies and practices regarding transportation on its vans and buses violate the ADA. As explained in the accompanying Declaration of Plaintiffs' accessible transportation expert Douglas J. Cross, Brookdale's "Fleet Safety Policy" is directly contrary to the regulations promulgated by the U.S. DOJ and U.S. DOT to implement Title III of the ADA. The so-called "Fleet Safety Policy" requires ████████████████████████████████████████████████████████████████████ ████████████████████████. Wallace Decl. ¶ 18, Ex. 5 at BKD1205394 ("████████████████████ ████████████████████████████████████████████████.") Residents using a power wheelchair or scooter "████████████████████████████████████████████████████████ ████████████" *Id.* Earlier and later versions of the policy make the same requirement. Wallace Decl. ¶¶ 19-20, Ex. 6 at BKD2837455-56; Ex. 7 at BKD0002904. Under the regulations, however, a public accommodation may only *request* that the user of a wheelchair or scooter transfer from their mobility device; if she or he decides not to, the decision must be respected. 49 C.F.R. § 37.165(e); Declaration of Douglas J. Cross In Support of Plaintiffs' Motion for Class Certification (Cross Decl.) at ¶¶ 23, 26-27. Brookdale's purported exceptions to the policy ████████████████████████████████. *Id.*

As confirmed by the Declarations submitted by the named Plaintiffs and the putative class members and fact witnesses, Brookdale has regularly enforced its policy, and has made residents who use scooters or wheelchairs transfer out of their devices and into passenger seats. Steyer Decl. ¶ 10. This policy has deterred many residents with mobility disabilities from using Brookdale's buses to go on outings. *Id.* Thus, Brookdale's Fleet Safety Policy violates the ADA both on its face and as applied.

More generally, Brookdale has denied residents with mobility disabilities full and equal access to and enjoyment of its transportation services. Brookdale provides its residents with transportation services so that they can go on scheduled trips to shopping centers, health providers, scenic drives and other outings. Brookdale, however, typically only has one accessible bus per facility. That vehicle can only transport up to two wheelchair or scooter users at a time. Waters Decl. ¶ 29; Mastin Decl. ¶ 78. This is not enough capacity to meet the needs of the relatively large number of wheelchair and scooter users who reside at most of Brookdale's facilities, often numbering ten or more per facility. Declaration

10

of Cristina Flores, Ph.D., In Support of Plaintiffs' Motion for Class Certification (Flores Decl.) ¶ 74.

As a result of Brookdale's limited capacity to transport wheelchair and scooter users, residents with

mobility disabilities have often been forced to miss out on outings that they would have liked to go on.

Steyer Decl. ¶ 11.

### D. Brookdale's Emergency Evacuation Plans and Procedures for Residents with Disabilities are Deficient

Brookdale's Emergency Manual and evacuation plans are inadequate in several fundamental

respects and deny residents with disabilities equally effective access to this vital service.  First, the

Emergency Manual and the Emergency and Disaster Plans are vague and fail ███████████████

████████████████████████████████████████████████████████████████████████████

████████████████████  Wallace Decl. ¶¶ 21-23, Exs. 8-10.  As discussed in the accompanying

Declaration of Plaintiffs' emergency evacuation expert, June Kailes, among other defects, the plans fail

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████.  Declaration of

June Isaacson Kailes In Support of Plaintiffs' Motion for Class Certification (Kailes Decl.) ¶¶ 18, 23-26.

Brookdale's emergency plans and procedures also fail ████████████████████████

████████████████████████████  Brookdale's Emergency Manuals and its contract with

transportation vendors show that Brookdale ████████████████████████████████████

████████████████████████████████████████  Wallace Decl. ¶ 24; Ex. 11 (transportation contract).  Moreover, the Emergency Manual imposes unlawful

requirements and limitations regarding the manner in which transportation will be provided to residents

with disabilities.  First, the Manual states that ████████████████████████████████████

█████████████████████████████████████.  Wallace Decl. ¶ 21, Ex. 8

at BKD1569811.  Second, the Manual also includes a █████████████████████████████

█████████████████████████████████████████.  *Id.* at BKD15699880.  These

provisions violate the ADA.  *See* discussion *infra* at § IV.B.4.

Finally, Brookdale's emergency plans ████████████████████████████████████

████████████████████████████████████████████████████████

[3780175.1]

1    ███████████████████████████.  Kailes Decl. ¶ 30.  As a result of these deficiencies in Brookdale's

2    emergency evacuation plans and procedures, residents with disabilities are placed at significant risk of

3    injury or loss of life.  *Id.* at ¶¶ 18-20, 33.

4    **E.  Brookdale Has Failed to Make Reasonable Modifications in Policy and Practice With**
     **Respect to Caregiver Staffing for Residents with Disabilities**

5

6    Plaintiffs have requested that Defendants make a reasonable modification in their policies and

7    practices regarding caregiver staffing to increase the amount of such staffing so that it is sufficient at all

8    times to provide the assisted living services specified in the residents' assessments.  Wallace Decl.

9    ¶ 25; Ex. 12; Steyer Decl. ¶ 12.  Brookdale can modify its staffing policies by basing them on accurate

10   and reasonable task times for providing care services and ensuring that it uses enough staff to actually

11   deliver the care services identified in Brookdale's assessments of residents with disabilities.  This

12   modification is reasonable and necessary to ensure that the residents receive assistance with activities of

13   daily living that they need because of their disabilities as set forth in the assessments.  Flores Decl. ¶ 78.

14   Defendants, however, have failed and refused to make this reasonable modification for Plaintiffs.

15   Wallace Decl. Ex. 12; Ex. 50 (Bowman Depo. at 200:6-201:22); Steyer Decl. ¶ 12; ECF 90 at ¶¶ 217-

16   24.  Defendants have not provided any reason for their failure and refusal to make this requested

17   modification in their staffing policies and practices.

18   **F.  Uniform Misrepresentations in Brookdale's Form Residency Agreements**

19   As mandated by California regulations, Brookdale requires that each resident (or his or her

20   representative) execute a form admission contract as a condition of entering any Brookdale facility.  22

21   CCR § 87507(c); Wallace Decl. ¶ 66, Ex. 53 (Deposition of District Director of Operations Rhonda

22   Dolcater of April 21, 2021 at 68:9-13; 70:6-10); ¶ 67, Ex. 54 (Deposition of Theresa Ward of March 17,

23   2021) at 156:5-157:9 (Executive Director describing ████████████████████████████████

24   █████████████████; 176:18-21 (prospective residents not permitted ████████████████████

25   █████████████████)); ¶ 68, Ex. 55 (Deposition of Marie Harris of March 24, 2021 at 124:8-14

26   (same)); ECF 238-2, Bowman Decl. Exs. C, D, F (template residency agreements for 2016, 2017, and

27   2018).

28

[3780175.1]

All residents or their representatives are required to confirm that they have reviewed the Residency Agreement at the time of execution. Cal. Health & Safety Code § 1569.887(a); Wallace Decl. ¶¶ 67-69, Exs. 54-56 (relevant excerpts of Executive Director deposition testimony).

The form Residency Agreement ties promised services to the resident assessment process. The Agreement states that the assisted living services required by the resident are determined through an assessment of the resident's specific needs. *See, e.g.*, Bowman Decl., Ex. 1-B, ECF 238-3 at 266; *id.* at Ex. 1-C, ECF 238-3 at 291; *id.* at Ex. 1-D, ECF 238-4 at 3; *id.* at Ex. 1-E, ECF  238-4 at 30; Wallace Decl. ¶ 64, Ex. 51 (Deposition of Kevin Bowman of July 13, 2021 at 65:21-24 ["██████████ ████████████████████████████████████████████████████ ████████████ ."]).

The resident's assessment provides the basis for preparing a "Personal Service Plan." Brookdale's Residency Agreements state: "Prior to moving in and periodically throughout your residency, we will use a personal service assessment to determine the personal services you require. The personal service assessment will be used to develop your Personal Service Plan."  Declaration of Kevin Marquis In Support of Plaintiffs' Motion for Class Certification (Marquis Decl.) at ¶ 9(b)(i) (this language appears in all 7,111 signed agreements in which residents opted out of arbitration).  The Agreement further provides that "[t]he results of the assessment, or method for evaluating your personal care needs, and the cost of providing the additional personal services (the "Personal Service Rate") will be shared with you." *Id.* at ¶ 9(b)(ii).

With minor exceptions, all of the form Residency Agreements used at Brookdale's California facilities during the class period (May 16, 2015 through the present) in which residents opted out of arbitration contain the same language for these key provisions.  Marquis Decl. ¶ 9.  All contract versions state that an "assessment" will be used to prepare a "personal service plan" and that the residents will be charged for the identified services.  *Id.*  As these "[s]ervices can only be provided by staff," these uniform provisions provide a plausible nexus between resident assessments and facility staffing such that a reasonable consumer would have a reasonable expectation that Brookdale provides sufficient caregiver staffing to deliver the care services identified in the residents' assessments. *Winans by and through Moulton v. Emeritus Corp.*, No. 13-cv-03962-SC, 2014 WL 970177, **8-9 (N.D. Cal. Mar. 5, 2014).

[3780175.1]

Minor variations in contract language not impacting the "center of gravity" of the asserted claims do not

preclude class certification. *In re First Alliance Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006); *Combe*

*v. Intermark Commc'ns, Inc.*, No. CV 09-09127 SJO (PJWx), 2010 WL 11597517, at *8 (C.D. Cal. Nov.

18, 2010).

### G.  Resident Assessments, Service Plans and Fees

As shown by Brookdale's 696-page Policy and Procedure Manual and other corporate

documents, Brookdale facilities are subject to extensive corporate policies and procedures.  *See, e.g.*,

Wallace Decl. ¶ 26; Ex. 13 (2021 Policy and Procedure Manual, BKD2874761 – BKD2875456).

Brookdale admits that the ███████████████████████████████████████████████

████████████████████████████████.  *See, e.g.*, Wallace Decl. ¶ 27, Ex. 14 (Policy

CS-70-2 regarding resident assessment process at BKD2874857); ¶ 28, Ex. 15 (Policy CS-70-3

regarding service plan process at BKD2874858).  These policies are implemented through Brookdale's

Personal Service System (PSS).  Wallace Decl. ¶¶ 29-30; Exs. 16-17; ¶ 64, Ex. 51 (Bowman Depo. at

94:25-95:3 (describing ███████████████████); 93:6-9 (describing ████████████████

███████████████"); 101:8-102:23 (the ███████████████████

██████████████████████████████████████████████████████).

Per California regulations (22 CCR § 87457), Brookdale assesses each resident prior to move-in,

with subsequent reassessments conducted upon a change in condition or when additional assisted living

services may be needed.  *See, e.g.*, Wallace Decl. ¶ 27, Ex. 14; Ex. 51 (Bowman Depo. 60:4-12 ("██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████").  ██████████████████████████████."  Wallace Decl. ¶

65; Ex. 52 (Bowman Deposition of July 14, 2021 at 243:15-21 [███████████████████]);

Wallace Decl. ¶¶ 67-71; Exs. 54-58 (████████████████████████████████

████████████████████████).  The assessment determines the specific needs of each resident,

including assistance with ADLs, such as bathing, grooming, dressing and medication assistance.  ████

14

[3780175.1]

1   ██████████████████████████████████████████████████████████████████████████████

2   ██████████████████████████████████████████████████. *See, e.g.*, Wallace Decl. Ex. 15;

3   Ex. 52 (Bowman Depo. at 113:22-114:2).

4          The Basic Service Rate and Personal Service Rate (collectively, "fees") are paid monthly, along

5   with rent and other monthly charges.  In addition, many new residents are charged a "Community Fee"

6   which is paid upfront prior to admission to Brookdale.  Brookdale maintains records from which the

7   aggregate amounts of all fees charged to residents can be calculated.  Wallace Decl. Ex. 2 at 40-46

8   (Defendants' interrogatory responses providing aggregate figures for residents during class period);

9   Kennedy Decl. ¶¶ 46-55.  Brookdale has billed residents more than $37 million in Community Fees for

10  the time period of January 1, 2015 through December 31, 2020.  Wallace Decl. Ex. 2 at 40-41.  Brookdale

11  has collected approximately $2.044 billion in fees from residents during that time.  *Id.* at 43, 45.

12          **H.  Brookdale's Standardized Corporate Policies and Procedures Regarding Staffing**

13  ██████████████████████████████████████████████████████████████████████████.

14  Wallace Decl. ¶ 31, Ex. 18 at BKD1723416; Ex. 19 (email from Executive Vice President for Community

15  and Field Operations Patchett re Service Alignment Benchmarks and reports).  Service Alignment is

16  "███████████████████████████████████."  *Id.* at ¶ 33, Ex. 20 at BKD2522658 [SA1002_SA_

17  Overview]; *see also*, Ex. 18 at BKD1723417; Ex. 19 at BKD1762315.  "Service Alignment ██████

18  ████████████████████████████████████████████████████████

19  █████████████████████████████████████████████."  *Id.* Ex. 21 at

20  BKD2518714; Ex. 22 at BKD2522712 [SA1005 SA_Labor Reports]); Ex. 23 at BKD1840442.

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████. ███

23  ████████████████████████████████████████████████████

24  ██████████████████████████████████████████████████████████

25  ██████  Wallace Decl. ¶ 37, Ex. 24 at BKD1918711, BKD1918717.  ███████████████

26  ██████████████████████████████████████████████████████████

27  ██████████████████████████  *Id.* Ex. 24 at BKD1918714.  ██████████████████

28  ██████████████████████████████████████████████████████████

[3780175.1]

1 ████████████████████████████████████████████. Wallace Decl. Ex. 25 at

2 BKD2517637; Ex. 23 at BKD1840459; Ex. 26 at BKD2507643; Ex. 27 at BKD1890853; Ex. 28 at

3 BKD2884686; *id.* at ¶41, Ex. 51 (Bowman Depo. at 149:1-6 ["███████████████████████

4 ████████████████████████████████████████████████████████████

5 █████████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████████████

8 █████████████████████████████████████████████████████████████████

9 ███████████████████████████████████

10 ████████████████████████████████████████████████████████

11 █████████████████████████████████. Wallace Decl. Ex. 23 at BKD1840459; Ex. 26 at

12 BKD2507643; Ex. 51 (Bowman Depo. at 154:14-22 ["███████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████

16 ███████████████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████

18 ████████████████████████Wallace Decl. Ex. 26 at BKD2507643. ███████████████████

19 █████████████████████████████████████████████████████████████

20 ██████████████████████████████████████████████████. *Id.* Ex. 29 at BKD1797431.

21 ███████████████████████████████████████████████████████████████████

22 ██████████████████████████████████████████. Wallace Decl. Ex. 23 at BKD1840459; Ex. 26

23 at BKD2507643; Ex. 27 at BKD1890853; Ex. 30 [Request for Advanced Customization]. █████████

24 ██████████████████████████████████████████████████████████████████. *Id.* at Ex. 30;

25 Ex. 52 (Bowman Depo. at 446:7-17).

26       Brookdale's assisted living facilities in California are required to staff in compliance with the

27 Labor Benchmarks. *See, e.g.*, Wallace Decl. ¶¶ 44-55, Exs. 31-42 (emails of senior corporate officials

28 including three Presidents for the West Division ████████████████████████████████████████

1      ███████████████████████). Such compliance is monitored by Brookdale management using

2 ████████████████████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████████. *Id.*

4 at ¶¶ 56-58, Exs. 43-45. █████████████████████████████

5 ████████████████████████████████████████████████████████

6 ██████████████████████████████████. *Id.*, Ex. 18 at BKD1723416.

7 ████████████████████████████████████████████████████████

8 █████████████████████████████████████████████████████████████.

9 Wallace Decl. Ex. 51 (Bowman Depo. at 190:3-10); Exs. 46-49.

10      **I.**    **Brookdale's Staffing Model is Deficient**

11          Substantial common evidence supports Plaintiffs' merits contention that Brookdale's staffing

12 model is defective. By the express terms of Brookdale's staffing formula, the "norms" that it uses to

13 calculate the labor benchmarks for its facilities are far too low, and are not realistically calculated to

14 provide caregivers with enough time to perform particular care tasks. Plaintiffs' staffing expert, Dr.

15 Cristina Flores, PhD., R.N., is an expert gerontologist with decades of experience with caring for the

16 elderly and the proper staffing of RCFEs. Flores Decl. ¶¶ 7-11. Dr. Flores has analyzed the "norms"

17 that Brookdale uses in its staffing formula, and has concluded that they are too low. *Id.* at ¶¶ 71-72.

18 Specifically, Brookdale's task times for toileting and mobility escort are far too low. *Id.* Because the

19 "norms" used by the formula are too low, the ultimate labor benchmarks are also too low, and are

20 insufficient to ensure that Brookdale has enough caregiver staffing to provide the residents with all of

21 the services that they have been promised in their Personal Services Plans. *Id.* at ¶¶ 59-63, 72.

22          Moreover, Plaintiffs have conducted an engineering analysis of whether Brookdale's staffing

23 policies and procedures result in sufficient levels of staffing. Plaintiffs' systems engineering expert,

24 Dale Schroyer of ProModel/MedModel, compared the staffing required to meet residents' needs (from

25 Brookdale's resident assessments) to the actual staffing available (from Brookdale's staffing records).

26 Declaration of Dale Schroyer In Support of Plaintiffs' Motion for Class Certification (Schroyer Decl.)

27 ¶¶ 34, 84-87. MedModel uses a generally accepted scientific methodology known as discrete event

28 simulation (DES). *Id.* at ¶¶ 7, 10-11, 22. This analysis was applied for those days during a three-year

1  timeframe for which Brookdale produced complete or substantially complete assessment and staffing

2  data for six Brookdale facilities.  *Id.* at ¶ 76.  The MedModel analysis shows clear evidence of

3  understaffing for all six facilities, with an average shortfall of 41.5% in the caregiver staffing time

4  required to deliver resident care.  *Id.* at 31.b, ¶¶ 91-92.  The MedModel study provides powerful

5  confirmation of the systemic flaws in Brookdale's corporate staffing procedures identified in the

6  analysis of Dr. Flores.  *Id.* at ¶¶ 31, 86-93.  Furthermore, the DES methodology used by MedModel to

7  determine if it was mathematically or physically possible for the number of staff on duty to deliver the

8  care documented in the resident assessments at the six facilities can be used to analyze the sufficiency

9  of caregiver staffing at all of Brookdale's California facilities.  *Id.* at ¶ 94.

10  **J.   Brookdale's Conduct Raises Significant Health and Safety Concerns**

11  The systemic flaws in Brookdale's corporate staffing policies place all residents at substantial

12  and unreasonable risk of not receiving promised services, including assistance with activities of daily

13  living. The record shows that understaffed conditions at Brookdale facilities have in fact caused

14  substantial risk to the health and safety of Brookdale's residents.  Plaintiffs have obtained

15  overwhelming evidence demonstrating that the understaffed conditions at Brookdale facilities cause

16  serious physical injuries and patent neglect of the residents under its care.  This evidence confirms the

17  very real safety risks to the residents that result from Brookdale's policy of caregiver understaffing.

18  *See, e.g.*, Flores Decl. ¶¶ 72, 79-83; Steyer Decl. ¶ 13 and Table 10; Declaration of Benjamin Bien-

19  Kahn In Support of Plaintiffs' Motion for Class Certification (Bien-Kahn Decl.), Exs. 2-571.

20  The Declarations of the residents and their families are replete with descriptions of the deleterious

21  effects resulting from staffing shortages, including: falls resulting in broken bones or hospitalization;

22  missed meals resulting in weight loss, dehydration, and UTIs; long response times to call buttons leaving

23  residents to lie on the floor for hours before being discovered; missed bathing; soiled clothing and

24  unchanged diapers; and other harms to resident safety and dignity.  Steyer Decl. ¶ 13 at Table 10.

25  The Community Care Licensing Division of the California Department of Social Services (DSS)

26  has issued 807 citations to Brookdale facilities during the class period, the vast majority pertaining to

27  insufficient staffing.  Flores Decl. ¶¶ 80-83; Bien-Kahn Decl. ¶¶ 6-17, Exs. 1-571.  DSS specifically

28  cited 39 Brookdale facilities a total of 82 times during the class period for failing to provide sufficient

staffing in violation of California regulations.  Flores Decl. ¶ 82; Bien-Kahn Decl. ¶¶ 7-10 (collecting DSS citations regarding understaffing violations).  DSS also issued hundreds of citations to scores of Brookdale facilities for incidents indicative of understaffing.  Flores Decl. ¶ 83; Bien-Kahn Decl. ¶¶ 12-15 (collecting citations). For example, twenty-five facilities were cited 43 times for long call button response times, a key indicator of understaffing.  *Id.* at ¶ 11 (collecting citations).

Finally, DSS also issued 136 citations against 51 Brookdale facilities that show a lack of staff attention to keeping the facilities safe, clean and sanitary, noting insect and rodent infestations, filthy resident rooms with strong urine odors and rooms in disrepair.  *Id.* at ¶ 16 (collecting citations).

**ARGUMENT**

### III.     THE LEGAL STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 23

Pursuant to Federal Rule of Civil Procedure 23(a), class certification is proper if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In addition, a proposed class must be certifiable under one of the three subdivisions of Rule 23(b).  Rule 23(b)(2) permits certification of a class for declaratory and injunctive relief if the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) permits certification of a damages class if "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate.  *True Health Chiropractic Inc. v. McKesson Corp.*, 332 F.R.D. 589, 603 (N.D. Cal. 2019).

### A.  Numerous Courts Have Granted Class Certification in Similar Cases Under the ADA

Numerous courts have held that policy and practice-based challenges under the ADA like those raised here are suitable for class treatment.  As the Ninth Circuit has stated, "We have previously held,

19

1    in a civil-rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice

2    or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th

3    Cir. 2001). "In such circumstance, individual factual differences among the individual litigants or

4    groups of litigants will not preclude a finding of commonality" because the class members "suffer

5    similar harm from the [defendant's] failure to accommodate their disabilities." *Id.*

6           Since the Ninth Circuit's decision regarding class certification in *Armstrong*, courts in this

7    Circuit have regularly granted class certification in cases that challenge the lawfulness of policies or

8    practices under the ADA.  Such cases focus on common proof regarding the policies and practices

9    themselves, the conduct of senior officials, admissions contained in corporate documents, expert

10   testimony and other common evidence such as the accessibility of the defendant's facilities.  *See, e.g.*,

11   *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 578-80 (N.D. Cal. 2018) (granting class

12   certification in case challenging accessibility of Levi's Stadium and its surrounding parking lots and

13   pedestrian rights of way as well as its policies and procedures regarding operations); *Hernandez v.*

14   *County of Monterey*, 305 F.R.D. 132, 139 (N.D. Cal. 2015) (granting class certification in ADA jail

15   case involving allegations of failure to provide accommodations and access to health services, physical

16   inaccessibility and failure to ensure safe emergency evacuations); *Gray v. Golden Gate Nat'l*

17   *Recreational Area*, 279 F.R.D. 501, 519-20 (N.D. Cal. 2011) (granting class certification in case

18   challenging inaccessibility of various park facilities, and finding that commonality was satisfied based

19   on common proof such as defendant's policies, expert site inspections reports and class member

20   declarations [collecting cases]); *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 121 (C.D. Cal. 2008).

21          **B.  Numerous Courts Have Granted Class Certification in Similar Cases Under the CLRA,**
            **the UCL and the Elder Financial Abuse Statute**

22          Plaintiffs' claims under the CLRA, the UCL and Welf. & Inst. Code § 15610.310 are well-suited

23   for class treatment. Liability under the CLRA is established under an "objective test, that is, whether

24   members of the public are likely to be deceived." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466,

25   480 (C.D. Cal. 2012). Thus, CLRA claims are "ideal for class certification" because the liability

26   determination focuses on defendant's conduct, as opposed to "class members' individual interaction

27   with the product." *Id.*; *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115-16 (N.D. Cal. 2018).

28

---

20

The CLRA's "any damage" injury requirement is a "capacious" standard that can be met by "any pecuniary damage as well as opportunity costs and transaction costs that result when a consumer is misled" by the deceptive conduct. *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019). Classwide injury under the CLRA can be established by "showing that a reasonable person would have considered the defendant's representations material." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015) (collecting authorities). Likewise, CLRA "[c]ausation, on a classwide basis, may be established by materiality." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) ("If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."). The same presumption applies to claims based on an omission or failure to disclose. *Id.* at 1022. As materiality concerns the "objective features" of the challenged statements and omissions and "not subjective questions of how it was perceived by each individual consumer," materiality presents another "common question of fact suitable for treatment in a class action." *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012).

Where, as here, the basis for the CLRA claim is that the defendant's product or service is "allegedly defective," the defect itself "is the injury" even if the defect is latent. *Nguyen*, 932 F.3d at 822. That legal injury is sufficient to support class certification without proof as to the specific circumstances of any particular class member. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) ("manifestation of a defect is not a prerequisite to class certification"); *Nguyen*, 932 F.3d at 821.

Liability under Plaintiffs' separate claim for financial elder abuse is established where the defendant "[t]akes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1). Wrongful purpose is shown if the defendant "knew or should have known that [its] conduct was likely to be harmful" to plaintiff. Cal. Welf. & Inst. Code § 15610.30(b). Here, Plaintiffs contend that Brookdale wrongfully took money from elders by promising to provide them with assisted living services, while failing to disclose that its staffing policies fail to ensure facility staffing that is sufficient to meet the residents' assessed needs. As the liability determination primarily focuses on Defendants' conduct, the financial elder abuse claims are likewise well-suited for class treatment. *See, e.g.*, *Feller v.*

21

[3780175.1]

*Transamerica Life Ins. Co.*, No. 2:16-cv-01378-CAS-AJW, 2017 WL 6496803, at *12 (C.D. Cal. Dec. 11, 2017) (granting class certification on financial elder abuse claim where "the inquiries will focus on [defendant's] conduct").  Further, the financial elder abuse claims asserted here are "premised on the same acts" as Plaintiffs' CLRA claims. *Makaeff v. Trump Univ., LLC*, No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164, at *15 (S.D. Cal. Feb. 21, 2014).

## IV.     THE CLASS OF RESIDENTS WITH MOBILITY OR VISION DISABILITIES MEETS THE REQUIREMENTS OF RULE 23

### A.  The Class Is So Numerous That Joinder Is Impracticable

The proposed class of residents with mobility or vision disabilities easily meets the numerosity requirement of Rule 23(a)(1).  "[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *True Health*, 332 F.R.D. at 606 (quoting *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014)).  Here, according to Defendants' own assessment data, the number of putative class members who have mobility or vision disabilities comprises 3,693 persons.  Flores Decl. ¶¶ 74-75.  Numerosity is met.

### B.  There Are Numerous Common Questions Of Law And Fact That Are Capable Of Common Answers And That Are Apt To Drive The Resolution Of The Litigation

Plaintiffs can also show that "there are questions of law and fact common to the class," Fed. R. Civ. P. 23(a)(2), and that "class members have 'suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  The commonality requirement is "construed permissively." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citations omitted). "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2) … Thus, '[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (citations omitted).  Here, several of the key legal questions raised are common ones, such as whether Brookdale's facilities comply with federal and state disability access standards, and whether Defendants' policies and practices regarding transportation and emergency evacuation are lawful.  The answers to such core legal questions will not vary from class member to class member, and will "generate common *answers* apt to drive the resolution of the

[3780175.1]

litigation." *Wal-Mart*, 564 U.S. at 350 (citations omitted).  At least the following important common questions capable of common answers are presented:

### 1. Whether Brookdale's Assisted Living Facilities are Covered by Title III of the ADA

The ADA prohibits discrimination in places of "public accommodation."  Places of public accommodation are defined under Title III to include twelve categories, one of which is "senior citizen center[s]." 42 U.S.C. § 12181(7).  This Court has previously held that Defendants are covered by the ADA.  *Stiner*, 354 F. Supp. 3d at 1058-59.  Nevertheless, Defendants continue to argue (albeit without authority) that Brookdale is not covered by the ADA.  This raises a predominant common question that can be answered based on applicable law and by evidence regarding the nature of Brookdale's facilities and the services provided therein to the residents.  The resolution of this question will resolve an important threshold issue and is therefore apt to drive the resolution of this case for all class members.

### 2. Whether Brookdale's New or Altered Facilities Comply with the 2010 ADAS, the 1991 ADAAG and/or the California Building Code

Under the ADA Title III regulations, public accommodations such as Brookdale are required to ensure that any new or altered facilities that they own, operate and/or manage are in full compliance with federal and state accessibility standards.  *See, e.g.*, *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004); *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000).  Under the ADA, "new" facilities that were constructed after January 26, 1993 must comply with the 1991 ADAAG.  28 C.F.R. § 36.401.  Facilities that were altered after January 26, 1992 must comply with the 1991 ADAAG or the 2010 ADAS depending on the date when construction was performed.  Specifically, the areas of a facility that were altered must be made compliant with the applicable federal standard, as well as the path of travel leading from the parking lot to the area(s) of alteration.  28 C.F.R. §§ 36.402; 36.403.  Newly constructed or altered facilities must also comply with the requirements of state law, including any requirements under the CBC that are more stringent than federal law with respect to disability access.  *See, e.g.*, Cal. Govt. Code § 4459(a), (c); 42 U.S.C. § 12201(b).

Brookdale admits that 27 of its facilities were constructed after January 26, 1993. Wallace Decl. ¶ 16, Ex. 3 at 4-5.  If Brookdale's newly constructed or altered facilities are not in full compliance with federal and state access standards, then Defendants have violated the ADA and the Unruh Act thereby

[3780175.1]

1  establishing liability to all class members.  Plaintiffs' access experts have conducted site inspections of

2  52 of Brookdale's new and altered facilities to determine whether they are in compliance with federal

3  and state access standards. None of them are compliant.  Waters Decl. ¶¶ 22-33, 42-45, 50, 57-61;

4  Mastin Decl. ¶¶ 26-69.  As discussed, Brookdale's facilities are characterized by non-compliant

5  parking, entrances, paths of travel, ramps, restrooms, residential units, dining rooms and other facilities.

6  This  inaccessibility is caused by Brookdale's lack of proper policies and practices.  Waters Decl. ¶¶ 57-

7  61; Mastin Decl. ¶¶ 52-55, 69, 79.  Whether the foregoing conditions exist, and whether they violate

8  federal and/or California access standards, are overarching predominant common questions that are

9  capable of common answers for all class members based on the measurements and data from Plaintiffs'

10  site inspections.  It is for this reason that the vast majority of courts have held that new construction and

11  alterations claims easily satisfy the test for commonality, and are ideally-suited for class certification.

12  *See* discussion *supra* at § III.A.

13          **3.**   **Whether Brookdale Has Failed to Conduct Readily Achievable Barrier Removal**

14          Title III of the ADA requires public accommodations to remove access barriers where it is

15  "readily achievable" to do so regardless of the age of the facility.  *Lopez*, 974 F.3d at 1034.  "Readily

16  achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."

17  28 C.F.R. § 36.304.  The U.S. DOJ has identified 21 types of barriers that would usually fall within the

18  category of being readily achievable.  *Id.*; U.S. DOJ Technical Assistance Manual § III-4.4200 (1993); *see*

19  *also Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1028 (9th Cir. 2008) (holding that DOJ Technical

20  Assistance Manual is "entitled to substantial deference").  Brookdale's facilities contain numerous

21  barriers that fall within the DOJ's illustrative list, many of which have denied full and equal access to the

22  class members.  *See* discussion *supra* at § II.B.3.  The vast majority of courts have granted class

23  certification in cases regarding the duty to conduct readily achievable barrier removal.  In so doing, courts

24  have recognized that the test for determining whether readily achievable barrier removal is required

25  focuses on the defendant's conduct, the type of barriers at issue, and the nature of the defendant's

26  operations and overall financial resources.  All of these are objective factors that are well-suited for class

27  treatment.  *See, e.g.*, *Moeller v. Taco Bell*, 220 F.R.D. 604, 610 (N.D. Cal. 2004); *Arnold v. United Artists*

28  *Theatre Circuit, Inc.*, 158 F.R.D. 439, 444, 449 (N.D. Cal. 1994).

### 4. Whether Brookdale's Policies and Practices Regarding Transportation Ensure Full and Equal Access to and Enjoyment of Services for Residents with Disabilities

Title III of the ADA mandates that public accommodations provide full and equal access to, and enjoyment of, their services to persons with disabilities. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135-36 (9th Cir. 2012). Defendants provide transportation services to their residents through buses and vans. Residents are provided with transportation for purposes of shopping trips, medical and other appointments, scenic drives and other scheduled outings. The U.S. DOJ and the U.S. DOT have promulgated regulations to implement Title III's requirements with respect to transportation services. The DOT's regulations provide, in pertinent part, that a public accommodation may *request* that a passenger transfer from his or her wheelchair to a passenger seat inside a lift-equipped van or bus. 49 C.F.R. § 37.165(e). Brookdale, however, has violated the ADA and its implementing regulations by expressly requiring in its ███████████████████████████████████████████████ ███████████████████████████████████████████ Cross Decl. ¶¶ 26-27, 32-33. The Fleet Safety Policy is set forth in Brookdale's Policy and Procedure Manual, and applies to all assisted living facilities in California. *See* discussion *supra* at § II.C.

Brookdale has also failed to provide a sufficient number of accessible buses to provide residents with mobility disabilities with full and equal access to its transportation services. Brookdale's facilities typically have one accessible bus or van that seats, at most, two wheelchair users. Waters Decl. ¶ 29; Mastin Decl. ¶ 78. However, most Brookdale facilities in California have ten or more residents who use wheelchairs or scooters for mobility, far in excess of the available accessible seating on its buses or vans. Flores Decl. ¶ 74. There is often not enough capacity for residents with mobility disabilities to go on outings in which they would like to participate. The testimony of the putative class members confirms that they have been denied full and equal access to and enjoyment of Brookdale's transportation services as a result of the Fleet Safety Policy, and because of Brookdale's failure to provide a sufficient number of accessible vans and buses to ensure full and equal access to transportation services. *See* 28 C.F.R. § 36.202(a); § 36.202(b); Steyer Decl. ¶¶ 10-11. Accordingly, whether Brookdale's written policies and practices regarding transportation services comply with the requirements of the ADA and the Unruh Act raises common questions capable of common answers.

[3780175.1]

### 5. Whether Brookdale's Policies and Practices Regarding Emergency Evacuation are Equally Effective for Residents with Disabilities

As discussed, Title III of the ADA mandates that public accommodations provide full and equal access to their services to persons with disabilities. *Baughman*, 685 F.3d at 1135-36. A public accommodation must provide persons with disabilities with an equal opportunity to participate in and benefit from the services that they offer. 28 C.F.R. § 36.202(b). Brookdale provides evacuation services to its residents in the event of emergencies such as fire, earthquake, flood and others, but their policies do not provide residents with disabilities with an equal opportunity to benefit from such services. According to Plaintiffs' expert on emergency evacuation for persons with disabilities, June Kailes, Brookdale's policies and procedures are inadequate in several fundamental respects. *See* discussion *supra* at § II.D.

First, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████ Kailes Decl. ¶¶ 23-26. ███████████████████████████ ██. *Id.* at ¶ 30. Second, ███████████████████████████████ ███████████████████████████████████████████████████████████ ██████ *Id.* at ¶¶ 27-29. The Manual also contains a discriminatory provision which states ████████ ███████████████████████████████████████████████████████. *Id.* at ¶¶ 27-28.

Whether Brookdale's emergency evacuation policies and procedures are sufficient will turn on an assessment of Defendants' written policies, procedures, and practices. Accordingly, these issues satisfy commonality and are appropriate for class treatment. Courts have granted class certification in similar cases challenging the inadequacy of policies and procedures regarding emergency evacuation. *See, e.g.*, *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 418-19 (S.D.N.Y. 2012).

### C. The Named Plaintiffs Satisfy the Typicality Requirement

Rule 23(a)(3) requires that the claims of the representative party be typical of those of the class. "Typicality focuses on the class representative's claim – but not the specific facts from which the claim arose—and ensures that the interest of the class representative 'aligns with the interests of the class.' The requirement is permissive, such that 'representative claims are "typical" if they are reasonably co-

extensive with those of absent class members; they need not be substantially identical.'" *Just Film, Inc.*

*v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation omitted).

Plaintiffs' claims are typical of those of the class they seek to represent. All of the named plaintiffs are or were residents with mobility disabilities, except Plaintiff Schmidt, who is blind, or represent such persons. All have encountered numerous barriers that denied them full and equal access to Defendants' facilities, and that caused them difficulty and discomfort. They were or are subject to Defendants' discriminatory policies and practices regarding transportation and emergency evacuation services. Ms. Stiner and Ms. Jestrabek-Hart are current residents of Brookdale and have standing to seek injunctive relief. *See* Declaration of Stacia Stiner In Support of Plaintiffs' Motion for Class Certification (S. Stiner Decl.), ¶¶ 2, 5-6, 17-23; Declaration of Ralph Carlson In Support of Plaintiffs' Motion for Class Certification (R. Carlson Decl.), ¶¶ 4-5, 18-21; Declaration of Loresia Vallette In Support of Plaintiffs' Motion for Class Certification (Vallette Decl.), ¶¶ 5-6, 22-24; Declaration of Heather Fisher In Support of Plaintiffs' Motion for Class Certification (Fisher Decl.), ¶¶ 5-33; Declaration of Michele Lytle In Support of Plaintiffs' Motion for Class Certification (Lytle Decl.), ¶¶ 21-22; Declaration of Patricia Lindstrom In Support of Plaintiffs' Motion for Class Certification (Lindstrom Decl.), ¶¶ 12-13; Declaration of Bernie Jestrabek-Hart In Support of Plaintiffs' Motion for Class Certification (Jestrabek-Hart Decl.), ¶¶ 4-7, 10-32; Declaration of Jeanette Algarme In Support of Plaintiffs' Motion for Class Certification (Algarme Decl.), ¶¶ 7-27. In short, Plaintiffs' claims arise from the same course of conduct by Defendants, and are based on the same legal theories. In addition, they have suffered the same or similar injuries as the other class members. Accordingly, their claims are typical of those of the proposed class.

**D.  The Proposed Class Representatives and Class Counsel Are Adequate**

The proposed class representatives and class counsel all satisfy the adequacy requirement of Fed. R. Civ. P. 23(a)(4). Class representatives and their counsel are adequate if they do not have "any conflicts of interest with other class members" and if they will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998). The proposed class representatives seek the same relief as the members of the proposed class and do not have any conflicts with the unnamed class members. Moreover, the proposed class representatives have

1   knowledge of the case and of their duties as class representatives, and have affirmed their willingness to

2   carry out their duties. S. Stiner Decl. ¶¶ 27-30; R. Carlson Decl. ¶¶ 25-27; Vallette Decl. ¶¶ 33-35; Lytle

3   Decl. ¶¶ 30-32; Fisher Decl. ¶¶ 37-39; Lindstrom Decl. ¶¶ 18-20; Jestrabek-Hart Decl. ¶¶ 39-41;

4   Algarme Decl. ¶¶ 29-31.

5        Proposed class counsel also satisfy the requirements of Rule 23(g)(1) and (4).  Class counsel

6   have extensive experience with class action lawsuits generally as well as class actions involving

7   disability rights and elder abuse.  Wallace Decl. ¶¶ 4-10; Declaration of Gay Crosthwait Grunfeld In

8   Support of Plaintiffs' Motion for Class Certification (Grunfeld Decl.) ¶¶ 2-7; Declaration of Kathryn A.

9   Stebner In Support of Plaintiffs' Motion for Class Certification (Stebner Decl.) ¶¶ 3-8; Declaration of

10  David T. Marks In Support of Plaintiffs' Motion for Class Certification (Marks Decl.) ¶¶ 3-10.  Counsel

11  are committed to preparing this case for trial and to expending the resources for its prosecution. Wallace

12  Decl. ¶ 13; Grunfeld Decl. ¶¶ 8-9; Stebner Decl. ¶¶ 10-11; Marks Decl. ¶ 11.

13      **E.  Plaintiffs Satisfy the Requirements of Rule 23(b)(2)**

14        Plaintiffs' proposed class of persons with mobility and/or vision disabilities may be certified if

15  "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so

16  that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

17  whole." Fed. R. Civ. P. 23(b)(2).  "The primary role of this provision has always been the certification

18  of civil rights class actions." *Parsons*, 754 F.3d at 686; *see also*, *Amchem Prods., Inc. v. Windsor*, 521

19  U.S. 591, 614 (1997).  For a class to be certified under Rule 23(b)(2), "it is sufficient if class members

20  complain of a pattern or practice that is generally applicable to the class," even if not all class members

21  have been injured by the challenged practice. *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010)

22  (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

23        The claims brought herein are precisely the type of claims that Rule 23(b)(2) was intended to

24  address.  Plaintiffs seek broad declaratory and injunctive relief including, *inter alia*, that Brookdale's

25  facilities be made accessible in compliance with the 2010 ADAS and the CBC, and that Defendants'

26  policies and practices regarding transportation and emergency evacuation be brought into compliance

27  with the ADA.  Thus, class certification under Rule 23(b)(2) is proper.

28

**F.   Plaintiffs Satisfy the Requirements of Rule 23(b)(3) With Respect to Their Proposed Damages Class on Behalf of Persons with Mobility or Vision Disabilities**

**1.   Common Questions of Law and Fact Predominate Over Individual Questions**

The Ninth Circuit has held that predominance is established if the "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Senne v. Kansas City Royals Baseball, Corp.*, 934 F.3d 918, 938 (9th Cir. 2019) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  Predominance is a "comparative" concept. More important questions "apt to drive the resolution of the litigation are given more weight" and predominance can be established by "just one common question" even if "other important matters will have to be tried separately." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc) (quoting *Tyson Foods*, 577 U.S. at 453).

Here, the predominance test is satisfied because significant aspects of the case (indeed resolution-driving issues) can be resolved through evidence common to the class.  First, Defendants' liability for owning, operating or managing their facilities in violation of applicable federal and state disability access standards will be resolved through public records regarding the construction of the facilities and the parties' disability access site inspections.  Plaintiffs' inspections have produced objective measurements and data that show that Brookdale's newly constructed and/or altered facilities violate the 2010 ADAS, the 1991 ADAAG, and the CBC.  This will establish Defendants' liability under the ADA and the Unruh Act as to all members of the proposed damages class.  Whether Defendants complied with the new construction and alterations requirements of the ADA therefore raises quintessential common questions that predominate over any individual questions.  Indeed, courts have held that claims for violations of the ADA's access requirements raise predominant common questions of law and fact, and that certification of a damages class under Rule 23(b)(3) is therefore appropriate. *See, e.g., Nevarez*, 326 F.R.D. at 584-85.

Second, Plaintiffs' proposed statutory damages class satisfies the Ninth Circuit's requirements that the damages "are directly attributable to their legal theory of harm," and that they can be determined "without excessive difficulty." *Just Film*, 847 F.3d at 1121.  Plaintiffs seek only statutory minimum damages on a class basis, and do not seek any actual or compensatory damages.  The

1    damages suffered by the class flow directly from Defendants' conduct in violating the access

2    requirements of the ADA.  A violation of the ADA constitutes a violation of the Unruh Act.  Cal. Civil

3    Code § 51(f); *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 673 (2009) ("[L]ike the language of the

4    amendment itself, [the legislative history] demonstrates an intent to incorporate ADA accessibility

5    standards comprehensively into the Unruh Civil Rights Act and thus to provide a damages remedy for

6    any violation of the ADA's mandate of equal access to public accommodations.").

7         Courts consider each particular occasion that involved an access barrier to be a separate Unruh

8    Act violation, with each such occasion entitling the plaintiff to recover $4,000 in minimum statutory

9    damages.  *See, e.g.*, Cal. Civil Code § 52(a), 55.56(e); *Nevarez*, 326 F.R.D. at 584-85.  Thus, each

10   Plaintiff and each member of the putative class is entitled to statutory minimum damages of $4,000 per

11   violation.  The members of the damages class may be identified from Brookdale's assessment data.  To

12   the extent that it is necessary for the class members to confirm eligibility to recover statutory damages

13   under the Unruh Act, or the number of instances in which they encountered a barrier or their ADA

14   rights were violated, courts have held that this issue may be addressed by way of a claim form after

15   classwide liability has been determined.  *Id.* at 576-77.

16        **2.  Class Certification Is Superior to Other Means of Resolving This Dispute**

17        Plaintiffs also satisfy each of the Rule 23(b)(3) superiority factors, including: (A) the class

18   members' interests in individually controlling the prosecution or defense of separate actions; (B) the

19   extent and nature of any litigation concerning the controversy already begun by or against class

20   members; (C) the desirability or undesirability of concentrating the litigation of the claims in the

21   particular forum; and (D) the likely difficulties in managing a class action.

22         With respect to the first factor, there is no indication that class members have an interest in

23   individually controlling their own cases, as the cost of litigating individual actions would be

24   prohibitively high.  With respect to the second factor, Plaintiffs are unaware of any other cases

25   challenging Brookdale's compliance with the ADA.  The third factor – the desirability of concentrating

26   the litigation in this forum—is also met, because substantial judicial resources are conserved by

27   determining common issues in a single adjudication.  Plaintiffs also meet the fourth factor because trial

28   will not pose any unique case management problems.  As discussed, liability and statutory damages

may be established by common proof, including expert testimony regarding the barriers in Defendants' facilities, policy and procedure documents, the testimony of Defendants' Rule 30(b)(6) designees and officers, and testimony from representative class members.

## V.   THE CLASS OF RESIDENTS WITH DISABILITIES SATISFIES RULE 23

### A.  The Class Is So Numerous That Joinder Is Impracticable

The proposed class of residents with disabilities easily meets the numerosity requirement of Rule 23(a)(1).  "[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *True Health*, 332 F.R.D. at 606.  Here, according to Defendants' assessment data, the number of residents not subject to arbitration and who have disabilities and require assistance from caregivers to perform basic activities of daily living exceeds 3,617 persons.  Flores Decl. ¶¶ 74-75.

### B.  Commonality And Predominance Are Satisfied

The proposed class of residents with disabilities presents, among others, the following key common questions that predominate over any individualized issues, and which will determine liability with respect to the claims of all class members based on common proof:

#### 1.   Whether Brookdale's Assisted Living Facilities are Covered by Title III of the ADA

As discussed, whether Brookdale is covered by Title III of the ADA is a predominant common question.  If Brookdale is not covered by Title III, then Plaintiffs' claim fails.  If, however, as this Court has ruled, Brookdale is covered by the ADA, then the resolution of this threshold issue will permit Plaintiffs to seek relief regarding Brookdale's policy and practice of understaffing.  The resolution of this key question will thus drive the resolution of this case for all residents with disabilities.

#### 2.   Whether Defendants Have Made Reasonable Modifications in Policies and Practices with Respect to Caregiver Staffing

Defendants have violated Title III of the ADA by failing and refusing to make reasonable modifications in policy or practice that are necessary for Plaintiffs to have "full and equal enjoyment of the goods, services, facilities, privileges, advantages, [and] accommodations" of Brookdale's assisted facilities.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.302(a).  To establish a violation of this provision of the ADA, Plaintiffs must show: "(1) [they are] disabled as that term is defined by the ADA; (2) the

31

[3780175.1]

1    defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the

2    defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the

3    plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification

4    that was (b) necessary to accommodate the plaintiff's disability." *Fortyune v. Am. Multi-Cinema, Inc.*,

5    364 F.3d 1075, 1082 (9th Cir. 2004).

6         The elements of this test are objective and its application to this case is well-suited to class

7    treatment.  Defendants have a policy and practice of understaffing their facilities based on the use of

8    "Norms" (or care task times) that are too low.  *See* discussion *supra* at § II.I.  Plaintiffs have requested

9    that Defendants modify this policy to provide residents with disabilities with enough staff to actually

10   deliver the services identified in Brookdale's resident assessments.  Defendants have refused to do so.

11   Accordingly, common questions arise regarding whether Plaintiffs' requested modifications are

12   reasonable and necessary to accommodate their disabilities.  The proposed class is comprised of

13   residents with disabilities who require assistance with caring for themselves and performing activities of

14   daily living according to Brookdale's own assessments.  *Id.*  As discussed above, Defendants' existing

15   policies and procedures regarding caregiver staffing are insufficient to ensure that there are enough

16   caregivers available to deliver services in a timely and reliable manner, and this has a discriminatory

17   effect on residents with disabilities by preventing them from having full and equal access to and

18   enjoyment of Brookdale's facilities, services, activities and accommodations as required by Title III.

19   For these reasons, modifying Defendants' staffing policies and procedures as discussed in the

20   Declaration of Dr. Flores so that they are based on reasonable task times for care services and are

21   reasonably designed to ensure that staffing is at all times sufficient in numbers and competence to meet

22   resident needs, is eminently reasonable.  *Stiner*, 354 F. Supp. 3d at 1059.

23        Defendants' refusal to modify their policies and practices regarding caregiver staffing applies to

24   all class members equally and raises common issues of law and fact regarding whether their policies

25   and practices regarding staffing violate the ADA's affirmative duty on public accommodations to make

26   reasonable changes in how they operate their businesses so that disabled persons will have an equally

27   effective opportunity to enjoy their goods and services.  *See, e.g.*, *Lentini*, 370 F.3d at 844-45 (holding

28   that a public accommodation must make "reasonable" and "necessary" modifications in policy);

32

[3780175.1]

1    *Crowder v. Kitigawa*, 81 F.3d 1480, 1485 (9th Cir. 1996); *Stiner*, 354 F. Supp. 3d at 1059.

2    Defendants are not required to make this reasonable modification if they can show that doing so

3    would "fundamentally alter the nature" of their services.  28 C.F.R. § 36.302(a).  Whether Defendants

4    can establish this affirmative defense raises additional common questions that are capable of common

5    answers because the focus of this analysis will be on whether Plaintiffs' proposed modifications would

6    "fundamentally after the nature" of their services.  This inquiry will not be individualized in any way.

7    Finally, Plaintiffs' claim for damages for the residents with disabilities class also satisfies

8    predominance.  In the event that liability is found, all class members will be entitled to recover the $4,000

9    minimum statutory damages available under the Unruh Act.  Cal. Civ. Code §§ 51(f); 52(a).

10    **C.  The Named Plaintiffs Satisfy the Typicality Requirement**

11    Plaintiffs' claims are typical of those of the class they seek to represent.  Plaintiffs are or were

12    all residents with disabilities who require or required assistance with activities of daily living, including

13    caring for themselves.  All are subject to, or have been subject to, Brookdale's policy and practice of

14    understaffing, and all have experienced the denial of necessary care services  as a result thereof.  S.

15    Stiner Decl. ¶¶ 5-17; R. Carlson Decl. ¶¶ 4-6, 13-17, 20; Vallette Decl. ¶¶ 11-21; Lytle Decl. ¶¶ 4-9, 12-

16    20; Fisher Decl. ¶¶ 5-31; Lindstrom Decl. ¶¶ 3, 8-11; Jestrabek-Hart Decl. ¶¶ 10-32; Algarme Decl. ¶¶

17    7-22.  In short, Plaintiffs' claims arise from the same course of conduct by Defendants, and are based on

18    the same legal theories.  In addition, they have suffered the same or similar injuries as the other class

19    members.  Finally, Ms. Stiner and Ms. Jestrabek-Hart are current residents and have standing to seek

20    injunctive relief.  S. Stiner Decl. ¶ 2; Jestrabek-Hart Decl. ¶ 2.  Typicality is satisfied.

21    **D.  The Proposed Class Representatives and Class Counsel Are Adequate**

22    The proposed class representatives and class counsel all satisfy the adequacy requirement of

23    Fed. R. Civ. P. 23(a)(4).  The proposed class representatives seek the same relief as the members of the

24    proposed class and do not have any conflicts with the unnamed class members.  Moreover, the proposed

25    class representatives have affirmed their willingness to carry out their duties as class representatives.

26    Proposed class counsel also satisfy the requirements of Rule 23(g)(1) and (4).  Counsel have substantial

27    experience with disability rights class actions and elder abuse cases involving allegations of

28    understaffing, and are committed to preparing this case for trial.  *See* discussion *supra* at § IV.D.

[3780175.1]

### E.   Plaintiffs Satisfy the Requirements of Rule 23(b)(2)

Plaintiffs' ADA claims regarding Brookdale's inadequate policies and practices regarding staffing are precisely the type of claims that Rule 23(b)(2) was intended to address.  Plaintiffs seek injunctive relief requiring reasonable modifications in Brookdale's staffing policies and procedures so that they are brought into compliance with the ADA, including, inter alia, modifications to Brookdale's policies and procedures so that they are reasonably designed to ensure sufficient staffing to meet the needs of residents with disabilities. Thus, class certification under Rule 23(b)(2) is proper.

### F.   Superiority is Met

The proposed (b)(3) class satisfies superiority for the same reasons set forth above in § IV.F.2.

## VI.   THE FALSE AND MISLEADING STATEMENTS AND OMISSIONS CLASS MEETS THE REQUIREMENTS OF RULE 23

### A.   The Class Is So Numerous That Joinder Is Impracticable

The proposed class easily meets the numerosity requirement of Rule 23(a)(1).  Plaintiffs have analyzed the Residency Agreements produced by Brookdale in discovery.  Those documents show that the proposed class of residents who opted-out of arbitration is comprised of more than 7,111 persons. Marquis Decl. ¶ 9.  Numerosity is met.

### B.   There Are Numerous Common Questions Of Law And Fact That Are Apt To Drive The Resolution Of The Claims

The proposed false and misleading statements and omissions class presents, among others, the following key common questions that predominate over any individualized issues, and which will determine liability with respect to the claims of all class members based on common proof:

#### 1.   Whether Brookdale's Statements and Omissions Regarding Facility Staffing Were Deceptive or Likely to Mislead a Reasonable Consumer

Whether Brookdale's statements were deceptive or likely to mislead will be determined using an objective reasonable consumer standard. That is a key common question that will generate common answers on a classwide basis, thus satisfying commonality. *See, e.g.*, *Hadley*, 324 F. Supp. 3d at 1115-16.  Here, all residents were exposed to the same false or misleading statements and omissions in the Residency Agreements and the resident assessment process. *MacRae v. HCR Manor Care Services, LLC*, No. SA CV 14-00715-DOC (RNBx), 2018 WL 8064088, at *5 (C.D. Cal. Dec. 10, 2018) (finding

commonality where "class members were exposed to the same admission agreement" that gave rise to CLRA "misrepresentation and concealment" claims).

### 2. Whether Brookdale's Deceptive Statements or Omissions Would be Material to a Reasonable Consumer

Whether misleading statements or omissions are material under the CLRA is also determined under an objective reasonable consumer standard. Materiality thus presents an important common question that is capable of generating a common answer for the class as a whole. *See, e.g.*, *Hadley*, 324 F.Supp.3d at 1115-16; *MacRae*, 2018 WL 8064088, at **8-9.

The parties' dispute over whether Brookdale was obligated to disclose its deficient staffing policies raises another common question. The Ninth Circuit has held that companies have a duty to disclose defects that are "central" to "a product's function." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018); *see also*, *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 978-79 (N.D. Cal. 2018). The duty to disclose also arises under the CLRA if the non-disclosed information implicates health and safety concerns. *Hodsdon*, 891 F.3d at 864. Here, the alleged defects in Brookdale's staffing policies and procedures are clearly "central" to Brookdale's ability to provide promised care services. And Brookdale's deficient staffing policies raise substantial health and safety concerns for vulnerable residents. *See* discussion *supra* at §§ II.I, II.J. Defendants' Rule 30(b)(6) designee, Mr. Bowman, testified that Brookdale does not disclose the facts regarding its caregiver staffing policies and procedures to the residents. Wallace Decl. Ex. 52 (Bowman Depo. at 455:4-456:25). Multiple courts have held that such questions regarding common omissions and the duty to disclose are sufficient to satisfy commonality. *See, e.g.*, *MacRae*, 2018 WL 8064088, at **5, 9; *Guido*, 284 F.R.D. at 482.

### 3. Whether Brookdale Has Wrongfully Taken the Property of Elderly Residents

Whether Brookdale knew, or should have known, that its conduct was harmful to its elderly residents raises important common questions that can be answered through common proof. Cal. Welf. & Inst. Code § 15610.30(a)(1)(b) (financial elder abuse proven by taking property for "wrongful use or with intent to defraud," which is established if defendant "knew or should have known that [its] conduct is likely to be harmful"). Common evidence supports Plaintiffs' position that Brookdale knew (or should have known) that its staffing policies were and are defective. That evidence includes, *inter alia*,

[3780175.1]

the following.  Brookdale's own time studies show "norms" or task times that are much higher than those that Brookdale has used during the class period for purposes of determining staffing.  Flores Decl. ¶¶ 59-72. ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████  *Id.*  Similarly, Brookdale knew, or should have known, that its staffing policies and practices were resulting in staffing levels that were too low based on the hundreds of citations it has received from DSS regarding incidents arising from understaffing.  *See* discussion *supra* at § II.J.  While Brookdale doubtless disagrees, it is plain that this question can be resolved by common proof such as Brookdale's documents and expert testimony.

### 4.  Whether Brookdale's Conduct Has Caused Classwide Injury

Plaintiffs contend all class members have been injured as a result of Brookdale's defective staffing policy and model which is not reasonably designed to deliver the services promised to all residents. While Brookdale disagrees, the question can be resolved through common proof, including Brookdale's documents and expert testimony. Thus, it presents another common question that can be resolved on a classwide basis. *See, e.g.*, *Nguyen*, 932 F.3d at 819-20; *Wolin*, 617 F.3d at 1173.

### C.  The Named Plaintiffs Satisfy the Typicality Requirement

The claims of the named Plaintiffs are typical of those of the class they seek to represent.  Like the proposed class, Plaintiffs were exposed to the same deceptive statements in Brookdale's form Residency Agreements and the same nondisclosure of material facts, including the fact that Brookdale's staffing policies and procedures are not reasonably calculated to result in facility staffing levels that are based on the assessed needs of the residents.  Plaintiffs would not have entered Brookdale facilities or paid money to it had they known these undisclosed material facts.  S. Stiner Decl. ¶¶ 7, 26; R. Carlson Decl. ¶¶ 11, 23; Vallette Decl. ¶¶ 8-10; Lytle Decl. ¶¶ 10-11, 28; Fisher Decl. ¶¶ 15, 36; Lindstrom Decl. ¶¶ 5-7, 15; Jestrabek-Hart Decl. ¶¶ 9, 36; Algarme Decl. ¶¶ 6, 28.  Thus, the claims of the named Plaintiffs are based on the same core facts and legal theories as those asserted on behalf of the class, *i.e.*, that Brookdale has violated the CLRA, the UCL and the financial elder abuse statute by making deceptive statements and by concealing material facts. *MacRae*, 2018 WL 8064088, at *6 (named plaintiffs and all class members received the same "admission statement on which the CLRA claim is

based" and asserted same claims based on "Defendants' inadequate staffing and misrepresentations as to staffing" as putative class).

### D.  The Proposed Class Representatives and Class Counsel are Adequate

The proposed class representatives and counsel satisfy the adequacy requirements of Rule 23(a)(4).  *See* discussion *supra* at IV.D.

### E.  Plaintiffs Satisfy the Requirements of Rule 23(b)(2)

Plaintiffs' false and misleading statements and omissions claims meets the requirements of Rule 23(b)(2).  Plaintiffs seek indivisible injunctive relief on behalf of the class as a whole including, *inter alia*, an injunction prohibiting Brookdale from making false or misleading statements about its assisted living services and mandating disclosures to consumers regarding the true nature of its staffing policies and procedures and the risks they impose on residents.  Thus, (b)(2) certification is proper.

### F.  Plaintiffs Meet the Requirements of Rule 23(b)(3)

#### 1.  Common Questions of Law and Fact Predominate

The importance of the "common, aggregating" questions raised by Plaintiffs' claims under the CLRA, UCL and elder financial abuse statute far outweigh the significance of any individual issues. If Brookdale's conduct is determined to be "likely to deceive" a reasonable consumer, liability is established to the entire class.  Because this "objective test" for resolving liability is so crucial, common questions predominate and claims under the CLRA and the UCL are "routinely" certified for class treatment.  *See, e.g.*, *Bailey v. Rite Aid Corp.*, __ F.R.D. __, No. 4:18-cv-06926 YGR, 2021 WL 1668003, at *13 (N.D. Cal. April 28, 2021); *Tait*, 289 F.R.D. at 480; discussion *supra* at § III.B.

Further, in considering whether predominance is established, evidence of "uniform corporate policies" carries "great weight." *Senne*, 934 F.3d at 943. Here, all class members are exposed to the same language in the Residency Agreement and the assessment process. All residents are subjected to a corporate staffing model that fails to ensure staffing sufficient to meet promised services. Thus, the key liability questions will largely be resolved by reference to Brookdale's corporate policies. All class members are injured by Brookdale's non-disclosure of the true facts regarding its staffing approach. Thus, the predominance element is clearly met. *MacRae*, 2018 WL 8064088, at *9.

The *MacRae* decision applies these principles in a closely analogous situation. There, plaintiffs asserted class claims for violations of the CLRA and California's Health & Safety Code § 1430(b) based on allegations that the defendants "misrepresented that their facilities would employ sufficient personnel" to meet resident needs, and also "suppressed the fact that the facilities were understaffed." *MacRae*, 2018 WL 8064088, at *1. Rejecting defendants' argument that the CLRA's "actual injury" requirement necessitated individualized inquiries into resident care, the materiality of staffing representations, and other matters, the court found that predominance was satisfied. *Id.* at **8-9 & n. 4. Here, as in *MacRae*, "class members were exposed to the same admission agreement, misrepresentations and omissions by Defendants regarding understaffing" at Brookdale facilities. *Id* at *5. Thus, Plaintiffs' claims do not require an individualized analysis.

Brookdale contends that Plaintiffs' claims require a resident-specific analysis of what services were provided. Not so. Plaintiffs' theory is that Brookdale's staffing policies and procedures are deficient and fail to ensure that caregiver staffing is sufficient to meet the assessed needs of all of Brookdale's residents. As a result of Brookdale's failure to adopt and implement policies and procedures that ensure adequate staffing, all residents are subjected to a substantial and unreasonable risk that they will not receive promised care services. The payment of money coupled with exposure to Brookdale's (undisclosed) defective staffing policies constitute legal injury for all class members. *Nguyen*, 932 F.3d at 822 (affirming viability of case theory that "the defect itself *is* the injury") (emphasis in original). That is true even if some class members have not yet been deprived of promised services. *Id.* at 819 (CLRA liability for claims challenging defendant's defective clutch system established "at the time of purchase, regardless of when and if the defect manifested"); *Wolin*, 617 F.3d at 1173 (proof of "manifestation of a defect is not a prerequisite to class certification"; predominance met); *Tait*, 289 F.R.D. at 479-80 (under *Wolin*, "Plaintiffs need only prove that Defendant's products had a common design and the design created a propensity for the products to develop an undesirable condition; Plaintiffs need not prove that every product actually developed this undesirable condition").

## 2. Superiority is Satisfied

Plaintiffs satisfy the superiority requirement for the same reasons set forth in § IV.F.2. Moreover, the liability determination for all claims asserted under the CLRA, the UCL, and the elder

38

[3780175.1]

financial abuse statute turns on whether Brookdale's uniform representations and omissions are deceptive or likely to mislead, which can be established through common proof. The possibility that some individual issues must be litigated does not preclude class treatment.  *Senne*, 934 F.3d at 938.

## VII.      PLAINTIFFS' DAMAGES MODEL MEETS APPLICABLE REQUIREMENTS

A party seeking Rule 23(b)(3) certification must show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). As the Ninth Circuit has repeatedly held, however, *Comcast* did not abrogate the well-established rule that "uncertain damages calculations alone cannot defeat class certification." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-514 (9th Cir. 2013).  Rather, *Comcast* requires only that Plaintiffs are "able to show that their damages stemmed from the defendant's actions that created the legal liability." *Id.*; *Just Film, Inc.*, 847 F.3d at 1121 (Rule 23 requires only that "damages can be determined without excessive difficulty and attributed to [plaintiff's] theory of liability").  To the extent that it is necessary for the class members to confirm eligibility to recover damages, this can be addressed by a claims process after classwide liability has been determined.  *Nevarez*, 326 F.R.D. at 576-77 (collecting authorities).

With respect to Plaintiffs' damages claims under the Unruh Act,  Plaintiffs propose the same approach to class damages that has been approved in other cases in this District.  Once this Court has determined whether Brookdale has violated the class members' rights under the ADA, the number of instances in which individual class members' rights under the ADA have been violated –thereby giving rise to $4,000 statutory minimum damages per violation under the Unruh Act– can be determined through a claims form process.  *Id.*  In his Declaration, Dr. Kennedy describes a well-accepted method for analyzing the claims forms and calculating interest.  Kennedy Decl. ¶¶ 79-81.

Class wide damages calculations under the CLRA are "particularly forgiving" with only a "reasonable basis of computation of damages" required.  *Lambert*, 870 F.3d at 1183. CLRA damages are calculated based on the difference between what consumers paid to defendants and the "actual value of that which [they] received …." *Nguyen,* 932 F.3d at 818. The same principles apply to financial elder abuse claims. *Abbit v. ING USA Annuity*, No. 13cv2310—GPC—WVG, 2015 WL 7272220, at *7 (S.D. Cal. Nov. 16, 2015); Cal. Welf. & Inst. Code §15657.5(a).

[3780175.1]

Plaintiffs have proposed a reasonable damages model with respect to the move-in fees and service fees paid by Plaintiffs.  Plaintiffs' damages model addresses any contention that recovery should be offset for "value conferred."  Kennedy Decl. ¶¶ 21-72.  With respect to service fees paid by the class members, Brookdale's assessment and staffing records provide a basis to determine the extent to which daily actual staffing at Brookdale facilities was insufficient to deliver promised services. Flores Decl. ¶¶ 59-67; Schroyer Decl. ¶¶ 34, 85-87.  Using that information, damages can be calculated based on what a reasonable person would have paid for Brookdale's care services.  Kennedy Decl. ¶¶ 67-70; *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (approving damage model that relies on defendant's "pricing ratio"). Plaintiffs have not yet performed any class damages calculations, but at class certification plaintiffs need only present a "likely method for determining class damages." *Wortman v. Air New Zealand*, 326 F.R.D. 549, 558 (N.D. Cal. 2018) (citation omitted).

Finally, Plaintiffs' damages models complies with *Comcast*.  The three categories of monetary relief requested -- recovery of move-in fees, service fees and statutory damages -- all "stem[] from the defendant's actions that created the legal liability." *Nguyen*, 932 F.3d at 817.  For each category of damages, the amounts requested can be reasonably calculated on an aggregate and per-resident basis. Kennedy Decl. ¶¶ 70-78.  The calculations will be made based on Brookdale's records maintained in the ordinary course of business. *Id.* at ¶ 71, 77 n. 102; discussion *supra* at § II.G.

## VIII.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that their motion be granted.


Dated: August 18, 2021                     Respectfully submitted,

                                            */s/ Guy B. Wallace*
                                           Guy B. Wallace
                                           Attorneys for Plaintiffs and the Proposed Classes

[3780175.1]

1

## **CERTIFICATE OF SERVICE**

2 I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for

3 the United States District Court, Northern District of California, by using the Court's CM/ECF system on

4 August 18, 2021.

5 I certify that all participants in the case are registered CM/ECF users and that service will be

6 accomplished by the Court's CM/ECF system.

7

Dated: August 18, 2021     /s/ *Guy B. Wallace*

8            Guy B. Wallace

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[3780175.1]