Guy B. Wallace, State Bar No. 176151
gwallace@schneiderwallace.com
Mark T. Johnson, State Bar No. 76904
mjohnson@schneiderwallace.com
Travis C. Close, State Bar No. 308673
tclose@schneiderwallace.com
Rachel L. Steyer, State Bar No. 330064
rsteyer@schneiderwallace.com
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Kathryn A. Stebner, State Bar No. 121088
kathryn@stebnerassociates.com
Brian S. Umpierre, State Bar No. 236399
brian@stebnerassociates.com
**STEBNER & ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, CA 94102
Telephone: (415) 362-9800
Facsimile: (415) 362-9801

Gay C. Grunfeld, State Bar No. 121944
ggrunfeld@rbgg.com
Benjamin Bien-Kahn,State Bar No. 267933
Bbien-kahn@rbgg.com
Jenny S. Yelin, State Bar No. 273601
jyelin@rbgg.com
Amy Xu, State Bar No. 330707
axu@rbgg.com
**ROSEN BIEN**
**GALVAN & GRUNFELD LLP**
101 Mission Street, Sixth Floor
San Francisco, CA 94105-1738
Telephone: (415) 433-6830
Facsimile:  (415) 433-7104

Attorneys for Plaintiffs and the Proposed Classes

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| STACIA STINER, et al., on behalf of themselves and all others similarly situated;<br><br>                Plaintiffs,<br><br>        vs.<br><br>BROOKDALE SENIOR LIVING, INC.;<br>BROOKDALE SENIOR LIVING<br>COMMUNITIES, INC.; et al.,<br><br>                Defendants. | Case No. 4:17-cv-03962-HSG (LB)<br><br>**DECLARATION OF GARY WATERS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:    May 26, 2022<br>Time:    2:00 p.m.<br>Place:    Courtroom 2<br>Judge:   Hon. Haywood S. Gilliam, Jr. |

I, Gary Waters, declare:

1. I am a resident of Sonoma County. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

2. This Declaration is submitted in support of Plaintiffs' Motion for Class Certification in *Stiner et al., v. Brookdale Senior Living, Inc., et al.,* in the U.S. District Court, Northern District of California.

## QUALIFICATIONS AND BACKGROUND

3. I am a licensed architect with over 25 years of experience in the practice of architecture. I currently am the President of Gary Waters Architectural Corporation. Since 2000, I have focused my practice on accessibility and universal design, providing access management consulting services. I have significant knowledge and experience in assessing compliance with all facility related disability access laws and regulations, including the 2010 Americans with Disabilities Act Standards for Accessible Design (2010 ADAS), the 1991 Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG), and the California Building Code (CBC). In 2014, I was a founding Member of Pacific Access Consulting, LLC along with Anthony Goldsmith, providing access consulting services to business, governmental agencies, attorneys, and architects & developers. In early 2017, Mr. Goldsmith returned to legal practice. I continue to provide access consulting services as Pacific Access Consulting, a Dba of Gary Waters Architectural Corporation.

4. As an access consultant, I maintain a balanced practice providing access litigation consulting services for both plaintiff and defense, working with businesses and governmental entities to assist them in meeting their respective obligations for barrier removal and program access, and as a specialized access consultant for design and construction of new facilities and alterations projects. Significant recent and current projects for which I provided access consulting services for design and construction include:

- A 5000 student Housing Project at a University of California Campus
- San Francisco Conservatory of Music
- Sonoma Bungalows Boutique Hotel, Sonoma
- MacArthur Place Resort and Spa, Sonoma

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
1

- Nickel & Nickel Winery, Oakville

- McDonald's

- Chevron

A true and correct copy of my curriculum vitae is attached hereto as **Appendix A**.

5. I am very familiar with the requirements of federal disability access design standards, including the 2010 Americans with Disabilities Act Standards for Accessible Design (ADAS), the 1991 Americans with Disabilities Act Accessibility Guidelines (ADAAG) and the Uniform Federal Accessibility Standards (UFAS). I am also very familiar with the requirements of California accessibility design standards as codified within the California Building Code (CBC), also known as Title 24 of the California Code of Regulations (Title 24). I am an accessibility consultant approved by the Division of the State Architect for the review of K thru 12, Community College, and other public projects. I review those plans for compliance with the CBC. I am familiar with both federal and state disability access design standards as they relate to accessibility for persons with mobility and/or vision disabilities.

6. I received my Bachelor of Architecture from California Polytechnic Institute, San Luis Obispo in 1985. I have been a licensed architect in California since 1989, license renewal pending. I am a Certified Access Specialist in California, CASp – 065, certification renewal pending.

## <u>SCOPE OF MY WORK</u>

7. Counsel for Plaintiffs retained Pacific Access Consulting and Jeff Mastin of Facility Access Consulting, Inc. to survey Brookdale's assisted living facilities in California. I conducted the survey on behalf of Pacific Access Consulting. We were asked to determine the extent to which Brookdale's assisted living facilities and their physical elements comply with the standards set forth in the 2010 ADAS, the 1991 ADAAG and the CBC, and to assess the sufficiency of the policies, procedures, and practices of Defendants with respect to disability access for persons with mobility or vision disabilities.

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
2

**BASIS OF EXPERT TESTIMONY**

**A.     Published Materials**

8.      The opinions I express in connection with this litigation are based upon various professional trainings and seminars that I have either presented or attended, upon articles, reports, codes and publications that I have studied, my professional experience interpreting and applying the requirements of the ADA (including the standards of the 2010 ADAS, the 1991 ADAAG, and UFAS) and the CBC in practice, and my experience in working with public entities and owners to educate them on their obligations under the ADA, the 2010 ADAS, the 1991 ADAAG, and the CBC with regard to providing facilities that are accessible to individuals with disabilities.

**B.     Review of Case Documents and Testimony**

9.      The opinions I express in this Declaration are based on review and analysis of various documents, including: Defendants' Supplemental Responses to Plaintiff Stacia Stiner's Interrogatories, Set one; various Brookdale renovation status spreadsheets; Brookdale's 3 Year Renovation Plan Consolidated Communities; CapEx review; 2017 Budgeted Projects Spreadsheet; building department records for the facilities that I inspected (including certificates of occupancy); and the transcript of the deposition testimony dated June 23, 2021 of Kevin Bowman, the witness designated by Defendants pursuant to Federal Code of Civil Procedure 30(b)(6) on the topic of Brookdale's policies, procedures and practices regarding compliance with disability access requirements.  I also reviewed relevant portions of the deposition transcript of Audrey Withers, who testified on behalf of Brookdale on July 23, 2021, as its rule 30(b)(6) designee on the topic of employee training.  I have reviewed Plaintiffs' Third Amended Complaint and Defendants' Answer. I have reviewed the District Court's opinions, specifically *Stiner v. Brookdale Senior Living Inc.*, 354 F. Supp. 3d 1046 (N.D. Cal. 2019) and *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949 (N.D. Cal. 2019).  Additionally, I have reviewed the site inspection reports prepared by Jeff Mastin.

10.      The analysis and conclusions contained in this Declaration reflect my preliminary findings and conclusions, and these are subject to revision and supplementation, as further information becomes available through the discovery process in this case.  My work is continuing.  I may supplement, revise, or change the opinions contained within this Declaration as I review

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)

3

additional documents produced and additional deposition testimony in this litigation and should I conduct further site inspections of Brookdale's facilities.

**C.      Federal Disability Access Design Standards**

11.      With the passage of the ADA, the Department of Justice issued the ADAAG standards. Since January 26, 1993, public accommodations have been obligated to perform new construction in compliance with the 1991 ADAAG.  Since January 26, 1992, public accommodations have been obligated to perform alterations in compliance with the 1991 ADAAG.  On September 15, 2010, the Department of Justice published updated accessible design standards, the 2010 ADA Standards for Accessible Design (2010 ADAS).  For new construction and alterations commenced between September 15, 2010 and March 15, 2012, public accommodations were permitted to choose and ensure compliance with either the 2010 ADAS or the 1991 ADAAG.  Physical construction or alterations commenced by public accommodations on or after March 15, 2012 must comply with the 2010 ADAS.

12.      It is considered the appropriate standard of professional care by California architects to ensure that new construction and alterations be performed in compliance with both the CBC and the applicable federal access standard, whichever is more restrictive.  The goal in following the more restrictive standard is to ensure the greatest degree of compliance with applicable codes and regulations and consequently, to ensure the greatest usability for persons with disabilities, including persons with mobility disabilities.  I have utilized the most restrictive requirements of the applicable federal access standard (2010 ADAS or ADAAG) and the CBC as the appropriate disability access standard for our work with public accommodations in California.  It is widely accepted among California architects who work with public accommodations that compliance with the standards of both the applicable federal access standard and the CBC, whichever is more restrictive, is necessary to ensure that persons with mobility and/or vision disabilities are able to use the public facilities safely and independently.

13.      California architects and CASp's are often asked to determine the extent to which the facilities they inspect are subject to disability access requirements and the particular access standards that apply. It is my opinion that the Brookdale assisted living facilities in California that I surveyed

are covered by Title III of the ADA and by the CBC.  Specifically, the assisted living and memory care facilities operated by Brookdale are "places of public accommodation" as defined by the Americans with Disabilities Act (ADA) 42 U.S.C. § 12181((7) and its applicable regulations.  As such, the public and common areas of the assisted living and memory care facilities must comply with the requirements of the ADA and its disability access standards, including the 2010 ADAS and the 1991 ADAAG.

### SITE INSPECTIONS OF BROOKDALE'S FACILITIES

14.    I inspected the following Brookdale facilities as part of my work on this case to date.  I was asked primarily to determine the extent to which Brookdale's assisted living facilities and their physical elements comply with the standards set forth in the 2010 ADAS, the 1991 ADAAG, and the CBC.

1.)   Brookdale Auburn – 11550 Education St. **(Exhibit A)**

2.)   Brookdale Cortona Park – 150 Cortona Way **(Exhibit B)**

3.)   Brookdale Carlsbad – 3140 El Camino Real **(Exhibit C)**

4.)   Brookdale Carmel Valley – 13101 Hartfield Ave., Del Mar  **(Exhibit D)**

5.)   Brookdale Citrus Heights - 7375 Stock Ranch Rd. **(Exhibit E)**

6.)   Brookdale Danville – 950 Diablo Rd. **(Exhibit F)**

7.)   Brookdale Lodi – 2150 Kettleman Ln. **(Exhibit G)**

8.)   Brookdale Lodi – 2220 Kettleman Ln. **(Exhibit H)**

9.)   Brookdale N. Fremont – 38035 Martha Ave., Fremont **(Exhibit I)**

10.)   Brookdale Northridge – 17650 Devonshire St. **(Exhibit J)**

11.)   Brookdale Orangevale – 6125 Hazel Ave. **(Exhibit K)**

12.)   Brookdale Rancho Mirage – 72201 Country Club Dr. **(Exhibit L)**

13.)   Brookdale Mirage Inn – 72750 Country Club Dr. **(Exhibit M)**

14.)   Brookdale Roseville – 1 Somer Ridge Dr. **(Exhibit N)**

15.)   Brookdale Clairemont – 5292 Clairemont Mesa Blvd. **(Exhibit O)**

16.)   Brookdale San Jose – 1009 Blossom River Way **(Exhibit P)**

17.)   Brookdale San Juan Capistrano – 31741 Rancho Viejo Rd **(Exhibit Q)**

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)

5

18.) Brookdale San Ramon – 18888 Bollinger Canyon Rd. **(Exhibit R)**

19.) Brookdale Santa Rosa – 3250 Chanate Rd. **(Exhibit S)**

20.) Brookdale Fountaingrove – 300 Fountaingrove Parkway **(Exhibit T)**

21.) Brookdale Scotts Valley – 100 Lockewood Ln.  **(Exhibit U)**

22.) Brookdale South Tarzana – 18700 Burbank Blvd. **(Exhibit V)**

23.) Brookdale Tracy – 355 W. Grantline Rd. **(Exhibit W)**

24.) Brookdale Windsor – 907 Adele Dr. **(Exhibit X)**

15.    I inspected all areas of the foregoing facilities that Defendants permitted to inspect.  I inspected the following elements:

1.) Exterior designated accessible routes of travel, including but not limited to walks, curb ramps, and ramps

2.) Parking

3.) Passenger drop-off and loading zones

4.) Exterior patios and courtyards

5.) Exterior entry and exit doors

6.) All interior public spaces available to residents and guests

7.) Corridors and hallways

8.) Stairs

9.) Wayfinding and room identification signage

10.)    Elevators

11.)    Representative resident units

16.    I also inspected a sample of the resident units that was selected by Defendants for each facility.  Pursuant to the parties' Stipulation and Order Regarding Accessibility Inspections, I inspected resident units that were identified by Defendants pursuant to Paragraph 7, which provides in pertinent part:  "Defendants hereby stipulate for purposes of class certification and the merits as to Plaintiffs' claims under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)("ADA") and the Unruh Civil Rights Act (Cal. Civ. Code § 51 *et seq.*) ("Unruh Act") that the

residential units at a particular Location that are made available to Plaintiffs' counsel and their experts for inspection are typical, in all material respects affecting disability access, of all other residential units of the same configuration (e.g., studio, one-bedroom, two-bedroom, etc.) at that Location. Defendants further stipulate that no residential units at any Location that were not made available to Plaintiffs and their experts for inspection have any features, elements or dimensions that provide greater access to persons with disabilities than those that were inspected." Dkt. No. 154 at ¶ 7.

17.    At each of the facilities I surveyed, I inspected between 8 and 16 resident rooms as specified in each individual survey report. These included rooms of different configurations, sizes, and types, including rooms for both assisted living residents and memory care residents and rooms that were both occupied and unoccupied on the date of the inspection. The exemplar rooms I was permitted to inspect were identified by Brookdale's counsel, who were present at all of the surveys I conducted. My understanding, based on a stipulation between Brookdale and Plaintiffs, is that the rooms identified by counsel for Brookdale that I inspected at each location were representative in all material respects affecting disability access, of all other residential units of the same configuration (e.g., studio, one-bedroom, two-bedroom, etc.) at the location. (Docket No. 154, paragraph 7). Based on that same Stipulation, it is my understanding that no residential units that were not made available for inspection at any of these facilities have any features, elements or dimensions that provide greater access to persons with disabilities than those that were inspected.

18.    The inspections were not comprehensive.  As discussed, only a representative sample of resident units was made available for inspection.  Further, in some instances, I was unable to inspect all of the elements in some of the resident's units.  It was sometimes infeasible to complete the inspections during the time limits that were imposed (i.e., a single day of inspection typically of 7-8 hours duration, including breaks).  In addition, it was more difficult to inspect the units that were occupied.  Defendants insisted that the inspector not take photographs that included any of the resident's personal effects.  In many instances, this made it impossible to take photographs that included measurements of elements of the unit because the photograph would necessarily include an

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)

7

image of a personal effect.  This significantly hampered our ability to inspect the bathrooms, kitchens and bedrooms in units that were occupied.  Because measurements are often included as part of the photographs that are taken in our access inspections, this limitation made conducting the inspections in this case more difficult and time consuming and was particularly problematic because of the limited, one-day nature of the inspections.  As a result, for occupied units, to save time and minimize the imposition on the resident, if a unit contained the same barriers as a previously inspected unit, certain measurements of elements that were the same as those previously inspected were not repeated.  The facility reports indicate the units in which this was the case.  It is important to note, however, that all units that were inspected contained numerous elements that did not comply with the 1991 ADAAG and/or the requirements of the CBC.

## **METHODOLOGY**

19.     In conducting my surveys, I follow the methods outlined in the U.S. Department of Justice's ADA Best Practices Tool Kit, Introduction to Appendices 1 and 2.  The equipment I use includes a two-foot digital smart level, a metal tape measurer, a door pressure gauge, and a camera.  I record the information in note form.  Typically, I will begin a survey by familiarizing myself with the facility.  For Brookdale, I then began the inspection with the interior features.  The sequence of the interior inspection varied from facility to facility as necessary to minimize disruption for residents.  I noted whether required elements are provided or not and record dimensions, slopes, and cross slopes as appropriate.  In conducting the survey, I identified if the required accessible features are provided and if they meet the most restrictive requirements of the 1991 ADAAG or the 2010 ADAS, depending on the date of construction.  In this case, as a baseline for accessibility under California law, I also used the 2016 and 2019 CBC.  The survey typically involves taking dimensions, slopes, and cross slopes, as applicable, and photographs.

20.     In conducting the survey, I documented all dimensional data as close as I could measure given the limitations of the survey tools and my human capability.  In preparing the reports, I considered and applied dimensional tolerances as appropriate.  Items that are identified as barriers in my facility reports are outside of what I would consider reasonable dimensional tolerances.

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
8

Moreover, when a standard includes only a maximum, it is considered best practice in the industry to design and construct well below that maximum to ensure compliance with the standard.  The same is true for a standard that includes a minimum; it is considered best practice to design and construct well above that minimum to ensure compliance.

21.     The detailed survey findings and photographs of the areas and elements listed in Paragraph 15 above are attached as Exhibits A through X.  Below is a summary of those findings.

## FINDINGS

22.     I inspected the following Brookdale facilities that Defendants admit were newly constructed after January 26, 1993 (See Defendants' Supplemental Responses to Plaintiff Stacia Stiner's Interrogatories, Set One):

1.) Carlsbad

2.) Carmel Valley

3.) Citrus Heights

4.) Cortona Park

5.) Danville

6.) Fountaingrove

7.) Kettleman Lane

8.) Lodi

9.) Mirage Inn

10.)      North Fremont

11.)      Northridge

12.)      Roseville

13.)      San Juan Capistrano

14.)      Windsor

23.     These facilities are all required to comply fully with the requirements of the 1991 ADAAG.  28 C.F.R. § 36.401(a); § 36.406(a) (facilities constructed on or after January 26, 1993, and before September 15, 2010, must comply with the 1991 ADAAG.  Based on the results of my inspections, none of the facilities identified above complied with the 1991 ADAAG.

24.     All of Defendants' facilities that were constructed after January 26, 1993, contained numerous barriers to persons with mobility and/or vision disabilities, including the following types of barriers that do not comply with the 1991 ADAAG.  The residential units contained numerous barriers in the bathrooms.  These included, but are not limited to, toilets that are too high and grab bars that do not meet the standards set forth in ADAAG.  The bathrooms are also characterized by showers, sinks and cabinets that do not comply with ADAAG and that are inaccessible.  These conditions were present in all of the residential units that I inspected.  These barriers have the effect of denying access to residents with disabilities by making it difficult or impossible for them to use the toilet, shower and/or wash their hands.

25.     The resident units were also characterized by numerous barriers in their kitchens.  Among other barriers, the kitchens in the units contained counters that were too high and inaccessible sinks that lacked the heights or reach-ranges required by ADAAG.  Built-in microwave units are mounted too high and cannot be used by wheelchair users.  Because of these barriers, it is either difficult or impossible for residents with disabilities to use their kitchens, particularly with regard to preparing or eating food, or washing their hands.

26.     Most units that I inspected have balconies that are inaccessible to residents with mobility disabilities because of high thresholds that do not comply with the 1991 ADAAG.  These thresholds significantly exceed the maximum requirements of the ADAAG, and wheelchair or walker users would find it difficult or impossible to navigate them on their own without assistance.  Also, in most of the units I inspected the closet rods in the closets are mounted too high.  This makes it difficult or impossible for residents with disabilities to hang up or get their clothes without assistance.

27.     The areas outside of the facilities, including their parking lots, paths of travel and the primary entrances to the building, were also characterized by numerous barriers.  The designated "accessible" parking spaces including excessive running slopes and cross slopes, inadequate widths, and non-compliant signage, and do not comply with ADAAG.

28.     The paths of travel and ramps leading from the pedestrian right of way or parking spaces and to and within the facilities also contained excessive running slopes and cross-slopes, as well as sections of pavement that were broken and uneven, creating a falling or tripping hazard for residents with mobility and/or visual impairments.  As a result of these barriers, residents with disabilities encounter

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
10

barriers that limit or deny equal access when they attempt to park at, approach and/or enter these facilities. Generally, the exterior path of travel at Brookdale's new facilities contained many barriers that make them more difficult for residents with mobility and/or vision disabilities to traverse, and this limits their ability to access the exterior areas of these facilities.

29.     In almost all cases the Brookdale facilities that I inspected had one accessible bus or van that seats, at most, accommodated two wheelchair users.  At each facility where there was a driver available, I observed the bus or van lift deployed at the normal pick-up and drop off area.   At the majority of facilities there was not a compliant accessible drop-off and pick-up location.

30.     The common areas inside Brookdale's new facilities also contained many barriers that deny or limit full and equal access to residents with disabilities.  The public restrooms contain toilets that are mounted too far from the adjacent wall, non-compliant grab bars, inaccessible sinks and coat hooks that are mounted too high.  These barriers deny or limit access.

31.     The dining rooms contain numerous barriers, including but not limited to tables that are too low and that do not provide adequate knee clearance to residents with mobility disabilities.   The path of travel between tables or other furniture is in many instances too narrow and does not comply with federal or state access standards, thus making it more difficult for residents with disabilities to travel within the dining rooms and other common areas.  The hallways contain protruding objects that are hazards to residents who are blind or who have low vision.

32.     Similarly, the stairs in Brookdale's facilities do not comply with applicable access standards and in many instances lack proper contrast striping, thus making them hazardous for residents with mobility and/or vision disabilities to use.  The stairs also lack compliant handrail extensions at the top and bottom landings so that residents with disabilities who are ambulatory can steady themselves and keep their balance as they transition between the landings and the stairs.

33.     In addition, these facilities are also required to comply with any requirements of the applicable CBC, including those that are more stringent in terms of their requirements for disability access than the ADAAG.  In most instances, however, the CBC requirement(s) for a particular element are the same of those of the ADAAG and/or the 2010 ADAS.  Based on my inspection

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
11

results, none of the facilities identified above in Paragraph 22 complied with the version of the CBC that was applicable at the time of construction.

## New Facilities Under California Law

34.  Several of the other facilities that I inspected were constructed prior to January 26, 1993, but were new facilities under California law (*i.e.*, the facility was constructed after July 1, 1970).  During the time period between July 1, 1970, and December 31, 1981, newly constructed facilities were required to comply with the accessibility standards set forth in the American Standards Associations Specification A117.1/1961.  After December 31, 1981, newly constructed facilities were required to comply with the access requirements of Title 24 of the California Code of Regulations (also known as the 1981 CBC).  New iterations of the access requirements of the CBC become effective every three years.  My inspections showed that none of these facilities were fully compliant with the applicable requirements of the CBC.

35.  According to building department records, Brookdale Clairemont, located in San Diego, was originally constructed in 1977.  Under California law, this facility was therefore required to comply with the American Standards Associations Specification A117.1/1961.  My inspection identified the following barriers at the Clairemont facility, among others, that do not comply with the American Standards Associations Specification A117.1/1961:

      a.  Accessible parking spaces with steep surface slopes

      b.  Inadequate number of accessible parking spaces provided

      c.  Door maneuvering clearances that are too steep

      d.  Doors with inadequate maneuvering clearances

      e.  Door thresholds that are too high

      f.  Doors equipped with inaccessible thumb latch operating hardware

      g.  Signs that lack tactile characters for the blind

      h.  Visual fire alarms provided without audible alarms

      i.  Items that are beyond accessible reach range

      j.  Unprotected hazardous elements located under lavatories

      k.  Inadequate handrail extensions at stair handrails

And within resident units, barriers including but not limited to:

    l.  Door thresholds that are too high

    m.  Closet shelves/clothing rods that are located too high

    n.  Accessories such as coat hooks, and window blinds and latches that are located too high

    o.  Items such as thermostats and exhaust fans that are located beyond accessible reach range

    p.  Patio/balcony doors that are not wide enough

    q.  Bathroom doors that are not wide enough

    r.  Bathrooms with inadequate space for a person in a wheelchair to maneuver

    s.  Inadequate width at toilet alcoves

    t.  Toilets with no grab bars and/or inadequate grab bars

    u.  Bathroom lavatories with no or inadequate knee/toe clearance

    v.  Bathroom lavatory mirrors that are located too high

36.   According to building department records, Brookdale San Jose was originally constructed in 1986.  Under California law, this facility was therefore required to comply with the 1984 iteration of the CBC.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

    a.  Exterior walkways with excessive running slope

    b.  Signs that lack tactile characters for the blind

    c.  Doors equipped with inaccessible operating hardware

    d.  Doors with inadequate maneuvering clearances

    e.  Door maneuvering clearances that are too steep

    f.  Doors that are not smooth on the bottom of the push side

    g.  Doors that require too much force to operate

    h.  Items that are beyond accessible reach range

    i.  Unprotected hazardous elements located under lavatories

    j.  Lavatories with inadequate knee and/or toe clearance

k.   Accessories in restrooms that are beyond accessible reach range

l.   Restroom mirrors that are too high

m.   Toilet flush levers that are located on the wrong side of the toilet

And within resident units, barriers including but not limited to:

n.   Patio/balcony door thresholds that are too high

o.   Closet shelves/clothing rods that are located too high

p.   Accessories such as coat hooks, and window blinds and latches that are located too high

q.   Operable controls for items such as thermostats and exhaust fans that are located beyond accessible reach range

r.   Bathroom lavatories with no or inadequate knee/toe clearance

s.   Unprotected hazardous elements located under lavatories

t.   Accessories in bathrooms that are beyond accessible reach range

u.   Shower thresholds that are too high

v.   Showers that lack an accessible wall-mounted seat

w.   Shower hand-held sprayers that are located too high

37.   According to building department records, Brookdale Tracy was originally constructed in 1987.  Under California law, the requirements of the 1984 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a.   Signs that lack tactile characters for the blind

b.   Doors with inadequate maneuvering clearances

c.   Doors that close too quickly

d.   Elements that protrude from the side or above, presenting hazards to the blind

e.   Items that are beyond accessible reach range

f.   Unprotected hazardous elements located under lavatories

g.   Accessories in restrooms that are beyond accessible reach range

h.   Restroom mirrors that are too high

i.  Toilet flush levers that are located on the wrong side of the toilet

j.  Doors with inadequate maneuvering clearance

k.  Closet shelves/clothing rods that are located too high

l.  Operable controls for items such as thermostats and exhaust fans that are located beyond accessible reach range

m.  Kitchen sinks with inadequate knee and toe clearance

n.  Windows without inaccessible latching hardware

o.  Inadequate width at toilet alcoves

p.  Bathroom lavatory mirrors that are located too high

q.  Toilets with no grab bars and/or inadequate grab bars

r.  Bathroom lavatories with no or inadequate knee/toe clearance

s.  Shower thresholds that are too high

t.  Showers that lack an accessible wall-mounted seat

u.  Shower hand-held sprayers that are located too high

38.   According to building department records, Brookdale South Tarzana was originally constructed in 1988.  Under California law, the requirements of the 1987 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a.  Exterior walkways that are not wide enough

b.  Exterior walkways with excessive running slope

c.  Accessible parking spaces with excessive surface slopes

d.  Inadequate number of accessible parking spaces

e.  Signs that lack tactile characters for the blind

f.  Door thresholds that are too high

g.  Doors with inadequate maneuvering clearances

h.  Door maneuvering clearances that are too steep

i.  Doors that require too much force to operate

j.  Doors that close too quickly

k.  Gratings/gaps with excessive wide openings

l.  Inadequate width at toilet alcoves

m.  Inadequate side grab bar at toilet

n.  Accessories in restrooms that are beyond accessible reach range

o.  Restroom mirrors that are too high

p.  Toilet flush levers that are located on the wrong side of the toilet

q.  Toilet located too far from the wall

r.  Inadequate handrail extensions at stair handrails

s.  Stairs without or with inadequate contrast striping at edges of steps and landings

And within resident units, barriers including but not limited to:

t.  Doors with inadequate maneuvering clearance

u.  Doors with maneuvering clearances that are not level

v.  Accessories such as coat hooks, and window blinds and latches that are located too high

w.  Bathrooms with inadequate space for a person in a wheelchair to maneuver

x.  Inadequate width at toilet alcoves

y.  Bathroom lavatories with no or inadequate knee/toe clearance

z.  Shower thresholds that are too high

aa.  Shower hand-held sprayers that are located too high

39.  According to building department records, Brookdale Orangevale was originally constructed in 1988.  Under California law, the requirements of the 1987 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a.  Exterior walkways that are not wide enough

b.  Exterior walkways with excessive running slope

c.  Exterior walkways with excessive cross slope

d.  Ramps lacking handrails

e.  Lack of detectable warnings where pedestrian walks meet hazardous vehicular areas

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
16

 f. Accessible parking spaces without access aisles

 g. Accessible parking spaces with excessive surface slopes

 h. Inadequate number of accessible parking spaces

 i. Signs that lack tactile characters for the blind

 j. Door thresholds that are too high

 k. Doors that are not wide enough

 l. Doors with inadequate maneuvering clearances

 m. Door maneuvering clearances that are too steep

 n. Doors that are not smooth on the bottom of the push side

 o. Doors that require too much force to operate

 p. Doors that close too quickly

 q. Elements that protrude from the side or above, presenting hazards to the blind

 r. Items that are beyond accessible reach range

 s. Inaccessible locking hardware on restroom door

 t. Inadequate width at toilet alcoves

 u. Inadequate side grab bar at toilet

 v. Lavatories with inadequate knee and/or toe clearance

 w. Accessories in restrooms that are beyond accessible reach range

 x. Restroom mirrors that are too high

 y. Toilet flush levers that are located on the wrong side of the toilet

 z. Toilet located too far from the wall

 aa. Inadequate handrail extensions at stair handrails

 bb. Stairs without or with inadequate contrast striping at edges of steps and landings

And within resident units, barriers including but not limited to:

 cc. Doors with inadequate maneuvering clearance

 dd. Door thresholds that are too high

 ee. Balconies/patios lacking space for a person using a wheelchair

 ff. Closet shelves/clothing rods that are located too high

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
17

gg. Operable controls for items such as thermostats and exhaust fans that are located beyond accessible reach range

hh. Kitchen sinks with inadequate knee and toe clearance

ii. Bathroom doors with inadequate maneuvering clearances

jj. Inadequate width at toilet alcoves

kk. Bathroom lavatory mirrors that are located too high

ll. Toilets with no grab bars and/or inadequate grab bars

mm. Bathroom lavatories with no or inadequate knee/toe clearance

nn. Shower thresholds that are too high

oo. Showers that lack an accessible wall-mounted seat

pp. Shower hand-held sprayers that are located too high

qq. Bathtubs that lack a built-in or portable seat

rr. Bathtubs that lack grab bars in required locations

40. According to building department records, Brookdale San Ramon was originally constructed in 1989. Under California law, the requirements of the 1987 CBC would apply to this facility. My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a. Exterior walkways with excessive running slope

b. Exterior walkways with excessive cross slope

c. Accessible parking spaces with excessive surface slopes

d. Reception counter that is too high

e. Signs that lack tactile characters for the blind

f. Door thresholds that are too high

g. Door maneuvering clearances that are too steep

h. Doors that are not smooth on the bottom of the push side

i. Doors that close too quickly

j. Elements that protrude from the side or above, presenting hazards to the blind

k. Restrooms with inadequate space for a person in a wheelchair to maneuver

l.   Inadequate width at toilet alcoves

m.  Inadequate grab bar at toilet

n.   Unprotected hazardous elements located under lavatories

o.   Accessories in restrooms that are beyond accessible reach range

p.   Toilet flush levers that are located on the wrong side of the toilet

q.   Toilet located too far from the wall

r.   Inadequate handrail extensions at stair handrails

s.   Stairs without or with inadequate contrast striping at edges of steps and landings

And within resident units, barriers including but not limited to:

t.   Doors equipped with inaccessible locking hardware

u.   Patio/balcony door thresholds that are too high

v.   Patio/balcony sliding doors that require too much force to operate

w.  Closet shelves/clothing rods that are located too high

x.   Accessories such as coat hooks, and window blinds and latches that are located too high

y.   Operable controls for items such as thermostats and exhaust fans that are located beyond accessible reach range

z.   Kitchen sinks with inadequate knee and toe clearance

aa. Windows without inaccessible latching hardware

bb. Bathroom doors with inaccessible locking hardware

cc. Bathrooms with inadequate space for a person in a wheelchair to maneuver

dd. Inadequate width at toilet alcoves

ee. Toilets with no grab bars and/or inadequate grab bars

ff.  Toilet flush levers that are located on the wrong side of the toilet

gg. Bathroom lavatories that are too high

hh. Bathroom lavatories with no or inadequate knee/toe clearance

ii.  Shower thresholds that are too high

jj.  Bathtubs that lack a built-in or portable seat

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)

19

41. According to building department records, Brookdale Danville was originally constructed in 1989.  Under California law, the requirements of the 1987 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

    a. Exterior walkways with excessive running slope

    b. Exterior walkways with excessive cross slope

    c. Ramps with excessive running slope

    d. Lack of parking tow away signage

    e. Accessible parking spaces with excessive surface slopes

    f. Inadequate number of van accessible parking spaces

    g. Accessible parking spaces that are not wide enough

    h. Accessible spaces located so that users must pass behind other parked vehicles

    i. Signs that lack tactile characters for the blind

    j. Doors with inadequate maneuvering clearances

    k. Doors that are not smooth on the bottom of the push side

    l. Doors that require too much force to operate

    m. Doors that close too quickly

    n. Elements that protrude from the side or above, presenting hazards to the blind

    o. Lavatories with inadequate knee and/or toe clearance

    p. Unprotected hazardous elements located under lavatories

    q. Accessories in restrooms that are beyond accessible reach range

    r. Restroom mirrors that are too high

    s. Inadequate handrail extensions at stair handrails

    t. Stairs without or with inadequate contrast striping at edges of steps and landings

And within resident units, barriers including but not limited to:

    u. Doors equipped with inaccessible locking hardware

    v. Doors with maneuvering clearances that are not level

    w. Patio/balcony sliding doors that require too much force to operate

x.   Closet shelves/clothing rods that are located too high

y.   Accessories such as coat hooks, and window blinds and latches that are located too high

z.   Operable controls for items such as thermostats and exhaust fans that are located beyond accessible reach range

aa.  Windows without inaccessible latching hardware

bb.  Bathrooms with inadequate space for a person in a wheelchair to maneuver

cc.  Inadequate width at toilet alcoves

dd.  Toilets with no grab bars and/or inadequate grab bars

ee.  Bathroom lavatories with no or inadequate knee/toe clearance

ff.  Shower thresholds that are too high

gg.  Showers that lack an accessible wall-mounted seat

hh.  Shower hand-held sprayers that are located too high

ii.  Shower equipped with an enclosure that obstructs minimum clearances

42.   In summary, none of the facilities that I inspected that were newly constructed under California law between July 1, 1970, and January 26, 1993, complied with the California accessibility standards that applied to them when they were built.  Further, the barriers that I observed in those facilities were of such a nature that they would deny or limit full and equal access to persons with mobility and/or vision disabilities.

43.   Pursuant to the ADA and California law, Brookdale is required to remove barriers that do not comply with federal and state access standards from the newly constructed facilities that it owns, operates and/or manages in California.  *See, e.g.*, 28 C.F.R. § 36.406(a)(5)(ii) ("Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."); Cal. Govt. Code § 4452 ("It is the intent of the Legislature that the building standards published in the State Building Standards Code relating to access by the physically handicapped and the other regulations adopted by the State Architect pursuant to Section 4450 shall be used as minimum requirements to insure that

buildings, structures and related facilities covered by this chapter are accessible to, and functional for, the physically handicapped to, through, and within their doors, without loss of function, space, or facility where the general public is concerned.  Any unauthorized deviation from such regulations or building standards shall be rectified by full compliance within 90 days after discovery of the deviation.").

44.     Brookdale, however, does not have in place any policies or procedures that will enable it to comply with the requirements of federal and state law with respect to new construction and alterations.  According to Mr. Bowman, the Division Vice President of Operations, West Division, and Brookdale's Rule 30(b)(6) designee regarding disability access and Brookdale's policies, practices, and procedures with respect to disability access, Brookdale is not covered by Title III of the ADA.  Deposition of Kevin Bowman of June 23, 2021, at 18:12-19:9; 30:9-31:14.  Similarly, Brookdale official Audrey Withers, also testifying on behalf of Brookdale as a Rule 30(b)(6) witness, stated that Brookdale's California facilities do not "fall under" Title III of the ADA or its standards for disability access.  Deposition of Audrey Withers, Senior Human Resources Business Partner, of July 23, 2021, at 113:12-114:7.

45.     Moreover, with respect to new construction or alterations to facilities, Brookdale has no policies and procedures for ensuring compliance with Title III of the ADA or its access standards.  *Id.* at 42:14-43:6; 58:8-11; 62:13-20.  Brookdale has no written definition of what is accessible or what constitutes a barrier to persons with mobility or vision disabilities.  *Id.* at 57:9-25; 63:10-18. Brookdale has not conducted any survey or inspection to determine whether the assisted living facilities that it owns, operates and/or manages, and that are covered by the new construction and/or alterations requirements of the ADA and the Unruh Act, are in compliance with the 1991 ADAAG or the CBC.  *Id.* at 61:6-11; 115:3-118:25. Brookdale has set no deadline for removing any of the access barriers in its newly constructed or altered facilities in California. *Id.* at 106:5-21.

### Alterations

46.     According to building department records, many of the facilities that I inspected were altered after January 26, 1992.  As discussed above, the altered portions of those facilities were required to comply with the requirements of federal and state access standards, whichever is more

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)

22

stringent in its requirements for disability access. In addition, an accessible path of travel should have been provided to the area(s) of alteration. The alterations projects I inspected included several that I would consider to be major projects (*i.e.*, those with a valuation of more than $150,000). Such projects clearly trigger to the requirement to provide an accessible path of travel to the area(s) of alteration, including but not limited to a primary entrance to the building, the primary path of travel to the altered portion(s) of the facilities, and restrooms served the altered area(s). My inspections revealed several instances of non-compliant alteration projects, including but not limited to the following examples.

47. Building department records show that at Brookdale Chanate there was a renovation to the fifth floor of the existing facility with respect to the memory care unit. This included a modification of the floor plans for common community spaces. The work undertaken in July of 2017 was subject to the 2010 ADAS and the 2016 CBC. The work was valued at $787,425.00. CTRL0001554. The work included a renovation to the 5th floor to create a memory care unit including the modification of existing space to create memory care residential units and common spaces. My inspection identified many access barriers at both the resident units and common spaces that were required to be compliant under the alteration standards of the federal and/or California standards. The following are barriers with respect to this alteration that do not comply with federal and/or California access standards:

Within resident units, barriers included but are not limited to:

    a. Entry door peep holes that are too high

    b. Sliding closet door hardware that is not usable

    c. Closet pole and shelves that are not within reach range

    d. Window latches that require pinching to open

    e. Window blinds that require twisting of a wand or pulling a cord to open and close

    f. Bathroom lavatories without a compliant knee space

    g. Insufficient clearance at the toilet to make a transfer from a wheelchair

    h. Lack of required wheelchair maneuvering space in front of the toilet

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
23

i.   Lack of compliant rear wall and side wall grab bars

j.   Incorrect toilet locations in relation to a side wall that is not provided

k.   Toilet paper dispensers that are not in an accessible location

l.   Non-compliant showers with a curb that prevents a wheelchair user from rolling in to make a transfer, a handheld shower that is not within reach range, and the lack of a fold-down shower seat as required

Common area access barriers, including, but not limited to:

m.   Lack of required knee space for a wheelchair user at the dining counter

n.   Excessive slopes at the pull side of the door from the dining room to the outside dining area

o.   Lack of required knee space at dining tables for persons using a wheelchair

p.   Bathrooms without the required maneuvering space in front of a toilet

q.   Thermostats that are not within reach range

r.   Lack of compliant geometric symbol door sign at restroom

s.   Paper towel dispensers at restrooms that are too high and not within reach range

t.   Bathroom lavatories that are not correctly located to be accessible

u.   Bathroom lavatories without the required knee and toe space to be usable by a person in a wheelchair

48.   Building department records show that there were several significant alterations to Brookdale San Jose that were performed after January 26, 1992.  The City of San Jose issued Permit No. BPM9972093 in November of 1999 for a 16,000 sq. ft. renovation of a central area of the facility. The work was valued at $650,000. SANJ000792 - SANJ000794.  In October of 2013 permit No. 2012-023350-MF was issued for a 24,428 sq. ft. conversion of the existing first and second floor, 41 units of independent living area to assisted living area, and 8,990 sq. ft conversion of the existing first floor, 13 units of independent living area, to assisted living/memory care.  No valuation was provided for this conversion. SANJ000690.  My inspection identified the following barriers with respect to this alteration that do not comply with federal and/or California access standards:

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
24

Common area access barriers, including but not limited to:

    a.  A detectable warning is not provided at the curb ramp at the passenger drop-off and loading zone at the front of the building

    b.  The non-directed walk area between the passenger drop-off and loading zone and the primary facility entrance has non-compliant slopes exceeding 1:48

    c.  The opening force and closing speed of numerous interior doors is not maintained in compliance

    d.  Tactile "EXIT" signs are not provided at all doors identified by an illuminated EXIT sign

    e.  Required exits do not continue at the exterior with an accessible route to the public right of way or to a safe dispersal area

    f.  Accessible tables are not provided at the Bistro or main Dining Room

    g.  Drinking fountain at the atrium is not in an alcove or otherwise protected for persons with visual disability

    h.  Restroom doors serving the lobby / atrium have kick-down door stops at the push side of the doors that may conflict with a wheelchair users foot petals when trying to enter

    i.  Restroom lavatories are protruding objects into the circulation space

    j.  Coat hooks are too high

    k.  The flush handle at the toilet is adjacent the sidewall and not reachable by a person using a wheelchair

    l.  Toilet paper dispensers are not within reach range of the toilet

Within resident units, barriers included but not limited to:

    m.  At entry doors to units the closing speed is too fast and not maintained compliant

    n.  Sinks are too high

    o.  Sliding closet door hardware that is not usable

    p.  Closet poles and shelves that are not within reach range

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION for CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
25

q.  The thresholds at sliding doors to the patio / balcony is too high

r.  Windows require more than 5lbs force to open

s.  Thermostats are too high and not within reach range

t.  Bathroom lavatories without a compliant knee space

u.  Water and waste lines under the lavatory are not protected from contact

v.  Insufficient clearance at the toilet to make a transfer from a wheelchair

w.  Incorrect toilet location in relation to a side wall that is not provided

x.  Non-compliant showers with a curb that prevents a wheelchair user from rolling in to make a transfer, a handheld shower that is not within reach range, and the lack of a fold-down shower seat as required

49.     Building department records show that Brookdale San Ramon was the subject of extensive alterations after January 26, 1992.  City of San Ramon Building Permit no. 02-0759 was issued in August 2003.  The permit authorized the construction of a 3-story, 36,000 sq. ft. addition valued at $3,300,000.  SANR000413. In November of 2003, the kitchen was renovated, and the basement dining areas was enlarged by 340 sq. ft. as per permit no. 03-1626.  The same permit also authorized a change out of the HVAC system, and secured approval for conversion of top floor to R2.1 occupancy with added smoke barrier.  The entire permit was valued at $708,444. SANR000203. My inspection identified the following barriers with respect to these alterations that do not comply with federal and/or California access standards:

Common area access barriers, including but not limited to:

a.  The reception desk at the entry lobby does not have an accessible section of the service counter

b.  At the exterior push plate for the power operated primary entry door, there is not a level wheelchair space to safely approach and use the push plate opener

c.  At the ramp to the primary building entry there is not a level top landing

d.  At the ramp to the primary building entry there is not a level bottom landing

e.  The handrail extension at the bottom of the ramp is less than 12" before the return

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
26

f.  The handrail extension at the bottom of the ramp is less than 12" before the return

g.  At the non-directed walk area at the bottom of the stair and ramp to the primary building entry there are slopes measured up to 9.0%

h.  At the walk connecting the accessible parking to the primary building entry there are running slopes up to 12.4% and the walk width is not compliant at 46"

i.  The curb ramps along the accessible route from the public right of way and accessible parking to the primary building entry do not have detectable warnings as required

j.  The accessible parking spaces do not have the required "MINIMUM FINE $250" signs

k.  The slopes at the accessible parking spaces and access aisles are not compliant

l.  There is not a compliant passenger drop-off and loading zone for the Brookdale bus

m.  There is not a compliant passenger drop-off and loading zone for the Brookdale van (separate location from the bus)

Within resident units, barriers including but not limited to:

n.  Entry door peep holes that are too high

o.  Entry door hardware required pinching and twisting of the wrist to lock

p.  Sinks that are too high and do not have the required knee and toe space for forward approach

q.  Kitchen counters that are too high

r.  Controls for the cooktop exhaust fan that are not within reach range

s.  Sliding closet door hardware that is not usable

t.  Closet poles and shelves that are not within reach range

u.  Windows that require more than 5lbs force to open

v.  Bathroom lavatories without a compliant knee space

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.*, Case No. 4:17-cv-03962-HSG (LB)

27

w. Water and waste lines under the lavatories that are not protected from contact

x. At the medicine cabinet the shelves are not within the required reach range

y. Insufficient clearance at the toilet to make a transfer from a wheelchair

z. Insufficient maneuvering space in front of the toilets

aa. Incorrect toilet flush handle location

bb. Rear wall grab bars at the toilet that are not provided

cc. Side wall grab bars at the toilet not correctly located

dd. An accessible shower size and configuration is not provided

ee. Non-compliant showers with a curb that prevents a wheelchair user from rolling in to make a transfer, a handheld shower that is not within reach range, and the lack of a fold-down shower seat as required

50.     None of these alteration projects complied with federal or state disability access requirements.  It is my expert opinion that the root cause of this non-compliance is Brookdale's deficient policies and practices regarding alterations to its facilities.  According to its designated Rule 30(b)6) witness, Mr. Bowman, Brookdale has no written policies and procedures regarding compliance with the ADA or California access standards when performing alterations to its facilities.  Deposition of Kevin Bowman dated June 23, 2021, at 62:13-20; 139:2-142:25.  In fact, Brookdale's Rule 30(b)(6) witness, testifying on behalf of Defendants, had no understanding of what constitutes an alteration within the meaning of the ADA and its regulations.  *Id.* at 148:14-149:2. Brookdale further testified, through its designees, that it has no internal department or employees who have expertise in disability access (*id.* at 40:11-41:14), that its employees are not trained on the requirements of federal or state access standards including the 2010 ADAS, the 1991 ADAAG and the CBC (*id.* at 38:1-10), and that it does not use any external access consultants for purposes of reviewing construction projects to ensure that they comply with federal and state access standards (*id.* at 119:1-7).  Brookdale does not conduct any survey or inspection at project close-out to determine whether its alterations projects comply with applicable access standards, nor does it have any written procedures or checklists for ensuring that alterations comply with the requirements of federal or state access standards.  *Id.* at 139:10-142:24. And Brookdale has not set any deadline for the remediation

of any elements in newly constructed or altered facilities that do not comply with the 2010 ADAS or the 1991 ADAAG. *Id.* at 106:5-21. Based on this testimony, my facility surveys and review of the material in this case, it is my opinion that Defendants' policies and procedures do not ensure compliance with the ADA and other disability access laws and standards and, in fact, make non-compliance virtually certain.

## Readily Achievable Barrier Removal

51.     Under the ADA and California law, the owner, operator and/or manager of a public accommodation is required to remove access barriers from its facilities regardless of the age of the facility if doing is "readily achievable, *i.e.,* easily accomplished and able to be carried out without much difficulty or expense. 28 C.F.R. § 36.304. The U.S. DOJ has provided a non-exhaustive list of examples of readily achievable barrier removal at 28 C.F.R. 36.304(b). These categories of readily achievable barrier removal include the following types of barriers:

      i.   Installing accessible ramps, or making parts of existing ramps accessible

     ii.   Marking curb ramps in sidewalks and entrances

   iii.   Repositioning shelves

   iv.   Rearranging tables, chairs, vending machines, or other furniture

     v.   Adding raised markings on elevator control buttons

   vi.   Installing flashing alarm lights

   vii.   Widening doors

  viii.   Installing accessible door hardware

   ix.   Installing grab bars where required and in the proper locations

    x.   Rearranging toilets partitions to increase maneuvering space

   xi.   Insulating lavatory pipes under sinks to prevent burns or abrasions

   xii.   Installing a raised toilet seat or replacing toilets for correct seat height

  xiii.   Replacing toilet tanks to provide the flush handle on the wide side

   xiv.   Installing or lowering a bathroom mirror

   xv.   Repositioning the paper towel dispenser in a bathroom

   xvi.   Creating designated accessible parking spaces

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
29

xvii.   Removing high pile, low density carpeting

52.     The Brookdale facilities that I inspected contained many of the types of barriers identified by the U.S. DOJ as being "readily achievable" to remove, including those identified above. In my experience, public accommodations in California routinely remove these types of barriers from their facilities so as to make them more accessible to persons with mobility and/or vision disabilities and to comply with Title III of the ADA.

53.     All of the foregoing barrier removal work can and should be conducted at Brookdale's facilities.  In my experience working with many Title III entities, including McDonald's, Chevron, and Pester Marketing, among others, this type of barrier removal work can be performed for approximately $5,000 or less.  Much of the work can be performed by maintenance staff.  Indeed, this kind of barrier removal work is routinely carried out by Title III entities and is relatively easy to do. The removal of such barriers confers tremendous benefit on persons with mobility and/or vision disabilities by making a facility much easier for them to access and use a facility's path of travel, common areas, residential units, and bathrooms, and to do so in a manner that minimizes injury and physical fatigue that can arise from encountering and struggling with access barriers.  Also, removing these types of barriers promotes safety and independent use by persons with mobility and/or vision disabilities, while also fostering equality of use with nondisabled persons and social integration.

54.     The DOJ's list of readily achievable barrier removal categories is illustrative, not exhaustive.  Brookdale's facilities were also characterized by many other types of barriers that, in my experience, can also be removed easily and at relatively low cost.  These categories include, but are not limited to, the following:

a.   Lowering clothing rods that are too high

b.   Lowering thermostat controls that are too high

c.   Lowering coat hooks that are too high

d.   Providing compliant controls for windows and blinds

e.   Providing medicine cabinets and other fixtures that are within reach range for persons with mobility disabilities

f.   Adding compliant handrails or handrail extensions to ramps and stairs

g.   Providing contrast striping on stairs

h.   Providing toilets that comply with federal / CA access standards in terms of height and distance from the adjacent wall

i.   Replacing inaccessible furniture that lacks the knee and/or toe clearance required by federal access standards with compliant furniture

j.   Lowering and maintaining excessive door pressures and closing speeds

k.   Remediating door thresholds that are too high

l.   Providing compliant pull and push side maneuvering space at doors

m.   Providing power door openers at critical locations such as fire rated doors at restrooms

55.   All of the Brookdale facilities that I inspected contained numerous barriers that were readily achievable to remove (*i.e.,* easily accomplished, and able to be carried out without much difficulty or expense) including those discussed in the preceding paragraph.  In my experience working with many Title III entities, including those discussed above, this type of barrier removal work can be performed for approximately $5,000 or less.  Again, much of the work can be performed by maintenance staff.  These categories of barriers can typically be removed easily.  As stated, the removal of these types of barriers confers tremendous benefit on persons with mobility and/or vision disabilities by making a facility much easier for them to access.  Completing these barrier removal actions would make it much easier for Brookdale's residents with mobility and/or vision disabilities to use the facility's path of travel, common areas, residential units, and bathrooms, and to do so in a manner that minimizes the risk of injury and physical fatigue that arises from encountering and struggling with access barriers.  Also, removing these types of barriers promotes safety, independence, and equal access for persons with mobility and/or vision disabilities, while also fostering equality and social integration.

56.   Based on the testimony of Brookdale's Rule 30(b)(6) designee, Mr. Bowman, Brookdale has no written policy regarding the identification or removal of barriers that are readily achievable.  Deposition of Kevin Bowman of June 23, 2021, at 62:22-63:4; 166:14-20. Brookdale has not conducted any survey or analysis to identify access barriers that would be readily achievable to

remove from its assisted living facilities in California.  Nor has Brookdale developed any plan or set any deadline for completing the removal of such access barriers from its facilities.  *Id.* at 173:2-10.  It is my opinion that the existence of pervasive and widespread barriers in Brookdale's facilities that could be removed without much difficulty or expense is a result of Brookdale's failure at both the corporate and facility-level failure to adopt and implement appropriate policies and procedures regarding readily achievable barrier removal in its California assisted living facilities.  Numerous other Title III entities in California with which I have worked as an expert access consultant have adopted and implemented such policies and procedures; Brookdale needs to do the same.

## CONCLUSIONS

57.    Based on my site inspection and those of Jeff Mastin, it is my expert opinion that Brookdale's facilities contain repeated violations of the 2010 ADAS, the 1991 ADAAG and the CBC, which appear throughout their facilities.  It is my opinion that a public accommodation must put into place appropriate quality control policies and procedures for new construction and alterations projects to prevent these access barriers.

58.    Ultimately, the responsibility for compliance with both the applicable federal access standard and the CBC lies with the facility owner, operator and/or manager, and their design team. Therefore, it is my professional opinion that it is critical for owners to develop and enforce appropriate policies and procedures regarding construction.  Based on my professional experience, the following elements must be present in any effective policy and procedure of a public accommodation to ensure that construction is performed in compliance with the ADA and parallel California laws:

      a.   All elements of accessibility must be designed to the strictest requirements of the applicable federal access standard—in this case the 2010 ADAS—and the CBC.

      b.   The design plans must be reviewed not only for compliance with the CBC, but also with the applicable federal access standard.

      c.   It must be emphasized to the General Contractor and relevant sub-contractors at the pre-construction and subsequent construction meetings that conformance with the contract documents with regard to construction of accessible elements is critical. The obligation to comply with all applicable disability access standards—including

federal access standards (in this case the 2010 ADAS)—should be stated within the contract documents themselves.

d.   A person of responsibility must be assigned to monitor the construction for conformance with the contract documents throughout the construction process.  This person must have the appropriate training and knowledge regarding disability access requirements and may be the architect, inspector of record, construction manager, or other representative of the public entity.  This person should report directly to the owner or the owner's Representative, as well as the entity that operates and/or manages the facility.

e.   Inspections of the built facility must review not only for compliance with the CBC, but also with the applicable federal access standard.

f.   Non-compliant work must be fixed prior to acceptance of the project by the owner, operator and/or manager and the filing of the notice of completion and payment of retention.

59.    In my expert opinion, these are the policies and procedures that must be followed by a public accommodation, whether by its architect, or other specified responsible person, to ensure compliance with the federal disability access standards (in this case the 2010 ADAS) and the CBC accessibility requirements.  Based on my review of the deposition testimony, Brookdale does not have such policies and procedures in place with respect to either new construction or alterations.  In my expert opinion, Brookdale has performed alterations that do not comply with federal and state access standards, and this non-compliance is the result of its failure to have appropriate policies and procedures in this area.

60.    With respect to newly constructed or altered facilities that do not comply with the 2010 ADAS, the 1991 ADAAG or the CBC, it is my expert opinion that Brookdale has failed to adopt and implement necessary policies and procedures for bringing such facilities into compliance with the 2010 ADAS and the 2019 CBC.  In particular, Brookdale has failed to conduct an access survey or inspection of such facilities to determine if they contain elements that do not comply with the 2010 ADAS, the 1991 ADAAG or the applicable iteration of the CBC.  If Brookdale had performed such a

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)

33

survey or inspection of its newly constructed or altered facilities, it would have identified barriers therein, as shown by the inspections I performed and those done by Mr. Mastin.  Brookdale must conduct a comprehensive access survey of its newly constructed or altered facilities to evaluate their compliance, and then set prompt deadlines for the remediation of the access barriers in those facilities.

61.    In my professional opinion, no facility or portion of a facility can be considered fully accessible unless it complies with the minimum standards established by the applicable federal and state access standards, including the 2010 ADAS, the 1991 ADAAG and the CBC.  These are the standards that has been established by the ADA, the U.S. Department of Justice and the California legislature as allowing most persons with disabilities to use buildings and facilities safely and independently, and on an equal basis with non-disabled persons.  In my professional opinion, the widespread, repeated violations of these minimum standards in all parts of Brookdale's facilities make it inevitable that any person with a mobility and/or vision disability who resides at Brookdale's facilities will encounter significant access barriers that will impact their entire experience and deny them full and equal enjoyment of the facility and its accommodations.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 18, 2021, in Santa Rosa, California.

_____

Gary K. Waters, AIA

[3779754.2]

DECLARATION OF GARY WATERS ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., et al.,* Case No. 4:17-cv-03962-HSG (LB)
34

# Appendix A

## Curriculum Vitae



### *Gary Waters, Architect, CASp*
### *Gary Waters Architectural Corporation*
### *Dba - Pacific Access Consulting*
### *Dba – Gary Waters Architect*

### *California Architect License No.: C-19677*
**Renewal pending**

### *California Certified Access Specialist:  CASp 065*
**Renewal pending**

Gary Waters is the president of Gary Waters Architectural Corporation, doing business as Pacific Access Consulting and Gary Waters Architects.  Mr. Waters brings over 35 years of experience in the practice of architecture in a variety of project types, including corporate offices, community centers, athletic facilities, neighborhood commercial/retail, regional retail, medical office, OSHPD approved medical facilities, childcare, educational facilities.

Since 2000, Mr. Waters has focused his practice on accessibility and universal design, providing comprehensive access management services to public and private clients. He is responsible for project development, client relations, and providing access consulting services and litigation support.  Mr. Waters is a recognized expert in the field of accessibility with significant knowledge and experience in all facility related accessibility laws and regulations, including the Americans with Disabilities Act.  Notable clients/projects include, County of Alameda, Sonoma Developmental Center, UC Riverside, Napa Valley College, City College of San Francisco, Santa Rosa Junior College, Division of the State Architect, McDonalds, YUM! Foods and Staples.

Preferring a proactive approach to access management, Mr. Waters has developed a suite of Comprehensive Access Management Services, designed to assist public and private entities in meeting their obligations for access in an efficient and effective systems approach.  Services Include:

| | |
|---|---|
| Access Consulting | Access Surveys |
| Transition Planning | Self Evaluations |
| Architectural Design | Access Scope Development |
| Access Plan Review | Access Construction Observation |
| Accessibility Training | Litigation Support & Expert Witness |

Mr. Waters provides accessibility consulting, litigation support and acts as an expert witness on accessibility issues.  Notable cases he has been involved with include Lopez v. San Francisco Unified School District, Cherry v. City College of San Francisco and Kirola v. City and County of San Francisco, Nevarez v. 49ers Football Company, LLC.

1

## RELEVANT PROJECTS

**City College of San Francisco – Chinatown Campus**
808 Kearny Street, San Francisco
The project included the construction of two new education towers, 14-stories and 5-stories, in the financial district of San Francisco.  WMRA provided access consulting to the District.  Services included design consultation and peer review of construction documents, periodic site visits during construction to review access compliance including rough-in of plumbing and electrical elements, verifying framing dimensions, working with general contractor and trades on critical access issues during construction, review of shop drawings and construction changes, final access punch list and project acceptance.

**City College of San Francisco – District Wide Access Barrier Removal**
Gary Waters, of Waters MacRae Architects was named in settlement agreement for Cherry v City College of San Francisco, an ADA class action lawsuit, to monitor the implementation of the agreement.  Services included peer review of construction documents, final access punch list and project acceptance.  In addition, Mr. Waters participated in Federal Court hearings reviewing the progress of the settlement agreement.
Ocean Avenue Campus

| | |
|---|---|
| Science Hall | Cloud Hall |
| Student Health Center | Batmale Hall |
| Creative Arts | Visual Arts |
| Rosenberg Library | Community Health & Wellness Center |
| Student Union | Smith Hall |
| John Adams Campus | Downtown Campus |
| Evans Campus | Alemany Campus |
| Mission Campus | |

**San Francisco Unified School District – Implementation of the Settlement Agreement in Lopez v SFUSD**
Gary Waters of Waters MacRae Architects was hired by the law firm of Schneider Wallace to conduct oversight of the District's compliance with the settlement agreement. Services included peer review of construction plans for access compliance and post construction access compliance evaluation surveys and report.

**McDonald's Corporation – Sierra Pacific Region**
Gary Waters has been working with the Sierra Pacific Region of McDonald's for more than 10-years providing access compliance services.  The region covers Northern California and Northern Nevada.  McDonald's has implemented a national comprehensive access management program to ensure access compliance.  Services provided by Mr. Waters to the

2

Sierra Pacific Region include access training seminars for McDonald's construction managers, architects and general contractors, Pre-construction access surveys, post construction access surveys and CASp determinations, peer review of construction documents including decor as-needed construction services and consultation.  Mr. Waters has completed over 500 access surveys and reports for McDonald's.  The following 50 locations represent a partial list of project sites:

| | |
|---|---|
| Arcata – 4901 Valley West Blvd. | Anderson – 3100 McMurray Dr. |
| Auburn – 2865 Bell Rd. | Auburn – 13370 Lincoln Way |
| Carson City NV – 3344 N. Carson St. | Citrus Heights – 6212 Auburn Blvd. |
| Citrus Heights – 7632 Sunrise Blvd. | Clovis – 412 W. Shaw   St. |
| Coalinga – 25145 W. Dorris St. | Coalinga – 396 W. Elm St. |
| Cupertino – 10990 N. Sterling Rd. | Elk Grove – 2733 Elk Grove Blvd. |
| Fair Oaks – 5288 Hazel Ave. | Fremont – 40708 Grimmer Blvd. |
| Dinuba – 1725 E. El Monte Way | Concord – 4550 Clayton Rd. |
| El Dorado Hills – 4312 Town Center Dr. | Fremont – 38860 Fremont Blvd. |
| Fresno – 4505 Kings Canyon | Fresno - 34898 E. Kings Canyon |
| Fresno – 5600 E. Ashlan Ave. | Fresno – 4190 N. West Ave. |
| Fresno – 1248 N. Blackstone Ave. | Fresno – 669 E. Nees Ave. |
| Galt – 324 Pine St. | Hayward – 26253 Mission Blvd. |
| Healdsburg – 110 Healdsburg Ave. | Hollister – 1711 Airline Highway |
| McKinleyville – 1500 Anna Sparks Way | Eureka – 1730 4th St. |
| King City – 1350 Broadway St. | Lemoore – 1089 N. Lemoore Ave. |
| Lincoln – 290 G Street | Lindsay – 208 N. Highway 65 |
| Lodi – 6440 W. Banner St. | Lodi – 200 W. Lodi Ave. |
| Lodi – 841 E. Kettleman Ln. | Los Banos – 1480 S. Mercy Springs |
| Los Banos – 1550 W. Pacheco Blvd. | Manteca – 1236 W. Yosemite Ave. |
| Martell – 12201 Trade Center Dr. | Merced – 1821 Motel Dr. |
| Milpitas – 1795 Landess Ave | Modesto – 4120 Dale Rd. |
| Modesto – 2118 McHenry Ave. | Modesto – 901 N. Carpenter Rd. |
| Modesto – 2601 Oakdale Rd. | Modesto – 1800 Prescott Rd |
| Modesto – 3430 Tully Rd. | Modesto – 1280 E. Whitmore |

**Sebastiani Theatre – Sonoma, California**

The Sebastiani Theatre, located on the historic Sonoma Plaza in Sonoma California, is a designated historic landmark.  The building is privately owned and leased by the City of Sonoma for the purposes of ensuring the continuing use as a theatre of this historic and iconic representation of the City Sonoma.  The City in turn leases the theatre to a non-profit group operating group.  The City commissioned and access evaluation of the facility for compliance with the Americans with Disabilities Act and the California Building Code as part

of their lease renewal negotiations with the building owner.  There were several overlapping accessibility issues that came into play including:

1. Historic Building Considerations
2. ADA Title II - for State and Local entities
3. ADA Title III – For Public Accommodations
4. Allocation of access responsibilities between Lessor, Lessee and Sub-Lessee

Gary is currently working as a consultant to the City of Sonoma to review plans and construction for an alteration project to remove access barriers.

**Sonoma Bungalows Boutique Hotel**
Gary Waters is the project architect and access consultant for the design and construction of Sonoma Bungalows Boutique Hotel just off the square in Sonoma, CA.  The project will incorporate 3-existing single family 2-bedroom, 2-bath homes and construct 5 new 1-bedroom guest suites and a hospitality room as part of a new luxury boutique hotel project.

**MacArthur Place Hotel – Sonoma, California**
Gary Waters of Pacific Access Consulting has been retained to provide access consulting services for the renovation of the existing hotel facility located a short walk from the historic town square in Sonoma.  The project includes conducting access compliance evaluation surveys and assisting the design and ownership team in developing the access scope of work for the project to ensure compliance with obligations under the ADA.  In addition, Gary has provided access plan review services and will provide access construction services and post construction access survey and access project acceptance.

**Far Niente and Nickel and Nickel Wineries – Oakville, Napa Valley, CA**
Pacific Access Consulting has been retained to provide access consulting services as part of the design team for the renovation, alteration, and expansion of both wineries.  Both wineries include historic buildings and facilities.  In addition, each facility includes wine making facilities, barrel room, and caves.  Each also includes hospitality facilities including indoor and outdoor tasting venues, day use facilities and gardens.

**San Francisco Conservatory of Music**
Pacific Access Consulting, led by principal Gary Waters, is currently providing access consulting services as part of the design team let by Mark Cavagnero Architects, for the design and construction of the new 12-story San Francisco Conservatory of Music project. The project includes teaching and performance spaces, student housing, replacement rental housing and a restaurant.  The project has a prominent on Van Ness Ave, in the San Francisco Civic Center across from the Louise M. Davies Symphony Hall.

4

**A University of California – Student Housing Project**
The Pacific Access Consulting has been retained by the project architect as part of the design team for this project, currently in the design development phase.  The project includes housing for approximately 5,000 students.  In addition, the project includes teaching space and student support service and social spaces.

*Selected CASp Surveys and Reports – A Partial List of Clients*
**Mending Wall Winery**
3730 Silverado Trail, St. Helena, CA 94574
**Marini's Inn & Restaurant**
2500 El Camino Real, Santa Clara, CA 95051
**G & G Supermarket**
1211 W. College Ave., Santa Rosa, CA 95401
**Carneros Deli & Bonneau's 76 Service Station**
12001 & 12003 Arnold Dr., Sonoma CA
**Acacia Winery**
2750 Las Amigas Road, Napa, CA
**Alderbrook Winery**
2306 Magnolia Dr. Healdsburg, CA
**Provenance Winery**
1695 St Helena Highway, Rutherford, CA
**Andy's Market**
1691 Gravenstein Highway North, Sebastopol, CA
**Café Trieste**
4045 Piedmont Avenue, Oakland, CA
**Café Trieste**
2500 San Pablo Avenue, Berkeley, CA
**Country Club Apartments**
2700 East Tabor Avenue, Fairfield, CA
**Burbank Heights and Orchard senior Apartments**
7777 Bodega Avenue, Sebastopol, CA
**Perko's Restaurant**
829 11th Street, Lakeport, CA
**Vineyard Business Park**
7419-7555 Southfront Road, Livermore, CA
**Fountain Grove Center**
3550, 3554, 3558 Round Barn Blvd., Santa Rosa, CA
**Waterfall Towers Business Park**
2455 Bennett Valley Road, Santa Rosa, CA

**Hookston Square Business Park**
3478 & 3489 Buskirk Avenue, Pleasant Hill, CA
**Digital Realty**
200 Paul Avenue, San Francisco, CA
**Canevari's Delicatessen & Catering**
695 Lewis Road, Santa Rosa, CA
**Exchange Bank**
Various branch location throughout Sonoma County and
Administrative Offices -440 & 444 Aviation Blvd. Santa Rosa, CA
**Point West Professional Center**
2448 Guerneville Road, Santa Rosa, CA
**Winners Circle Beach and Tennis Resort**
550 Via De La Valle, Solana Beach, CA
**Elk Valley Rancheria and Casino**
Various Tribal buildings and facilities including Elk Valley Casino, Crescent City, CA
**Christian Brothers De La Salle Institute**
4405 Redwood Road, Napa, CA 94558
**Yum! Foods**
The project included conducting access surveys for more than 300 fast food restaurants
(Taco Bell, Pizza Hut, Wing Stop, KFC) in 15 states.
**Staples**
The project included conducting access surveys at 15 staples locations in California.
**La Playa Carmel**
75 room luxury historic hotel in Carmel, Ca
**Chevron**
Access Consulting Services for various sites in California
**British Petroleum**
Access Survey and consulting for various Arco sites throughout Northern California
**O'Reilly Auto Parts**
Access Consulting Services for various sites in California
**Kaiser Medical Offices**
Access Consulting Services for Medical Office facilities in Sonoma and Marin Counties
**Medical Office Building, Sebastopol, CA**
Access Consulting Services and Barrier Report
**Annadel Medical Group Offices – St Joseph Health, Santa Rosa, CA**
Access Consulting for full tenant improvements for new medical offices
**Baechtel Creek Medical Clinic, Willits, CA**
Access Consulting Services and Barrier Report
**Mark Cavagnero Associates Architects – San Francisco Conservatory of Music**
Access Consulting Services, Access Plan Review, Access Construction Services and Project
Acceptance
**A Squared Architects – Lasseter Family Winery, Glen Ellen, CA**

6

Access Consulting Services and Barrier Report, Access Plan Review
**A Squared Architects – Cliff Lede Vineyards, Napa, CA**
Access Consulting Services and Barrier Report, Access Plan Review
**A Squared Architects – Rivers Marie Winery, Calistoga, CA**
Access Consulting Services and Barrier Report, Access Plan Review

### *Division of the Architect Access Consulting Services*

As a principal of Architerra, LLP, Gary Waters managed the firm's work with the Division of the State Architect providing access consulting services.  Gary personally provided or supervised access plan reviews conducted back checks and providing in-house staffing at DSA Regional offices (Oakland, Sacrament, Los Angeles, and San Diego) from 2001 thru 2011.  During this time, the firm completed an estimated 500 plus plan reviews.  Mr. Waters is currently providing services to DSA as a consultant to Synthesis Partners, Inc.

### *CASp Surveys and Reports – California State Leased Facilities*

**California State Water Quality Control Board**
5550 Skylane Blvd., Santa Rosa, CA
**California Department of Fish and Game**
5355 Skylane Blvd., Santa Rosa, CA
**Hookston Square - State Leased Facility**
3478 Buskirk Ave 2nd Floor, Concord CA
**California Department of Fish & Wildlife**
3633 Westwind Blvd., Santa Rosa, CA

### *Access Litigation Support and Expert Witness Services - Title II Cases – A Partial List of Cases*

**Lopez v San Francisco Unified School District**
Gary Waters conducted access surveys at multiple elementary, middle, and high schools as part of the discovery process.  Litigation support also included providing declarations, depositions, and participation in settlement agreement discussions.

**Cherry v City College of San Francisco**
Gary Waters provided litigation support services including conducting access survey and compiling reports at many CCSF facilities, providing declarations, depositions, and participation in settlement agreement discussions.

**Kirola v City and County of San Francisco**
Gary Waters's involvement in discovery in this case included conducting access survey and compiling reports for a wide variety of San Francisco City and County parks and recreation facilities and street and sidewalk surveys.  Gary also participated in settlement discussions,

7

provided declarations, depositions, and expert trial testimony.  This case is on-going and in the appeal process.

**Yates v County of Marin**
Gary Waters work in discovery in this case included conducting access survey and compiling reports for a wide variety of Marin County facilities, including County administration buildings and street and sidewalk surveys.  This case has reached settlement.

**Willits v. City of Los Angeles**
Gary Waters conducted field surveys of the public right of way.  This case has reached settlement.

**Hammond v. County of Tehama**
Gary Waters provided access consulting and litigation support services on behalf of the plaintiff.  Mr. Waters also gave deposition testimony in this case.  This case has reached settlement.

**Nevarez v. Forty Niner's Football Company, LLC, and the City of Santa Clara**
Gary Waters is an expert for the plaintiff in this case providing access consulting and litigation support services.  Gary was part of a team of access experts who worked on this case to conduct access surveys and produce expert reports, rebuttal reports, and depositions.  Mr. Waters participated in settlement discussions and developed exhibits that became part of the settlement agreement.  Mr. Waters has been named the access expert retained by the 49ers Football Company, Inc. for the implementation period of the settlement agreement.

**Stiner v. Brookdale Senior Living, Inc.**
Gary Waters is an expert for the plaintiff in this case providing access consulting and litigation support services.  Gary is part of a two-person team of access experts working on this case including over 70 facilities in California.  Mr. Waters will complete surveys and reports for approximately 35 facilities.  Additional expert witness services will likely include expert reports, rebuttal reports, depositions, settlement meetings, and expert witness testimony.  This case is on-going.

*Selected Access Litigation Support and Expert Witness Services - Title III Cases –*
*A Partial List of Cases*

   Jean Ryker vs. Beach Blanket Babylon
   Al De La Campa v. Benihana
   Guy Jones v. 3701 J Street LLC
   Gail Moran v. Hobby Lobby

Jean Ryker v. Gar Woods Grille and Pier
Donna White v. Lucky Supermarket
Roberta Hays v. Sutter Lakeside Hospital
Wadman v. Discovery Bay Yacht Harbor, LLC et al.
Jean Riker v. Garden Court Hotel, et al.
Shaw v. Kelly
Nevarez v. Coyote Creek Golf Club
Nevarez v. Hiddenbrooke Golf Club
Nevarez v. Canyon Lakes Golf Club
Nevarez v. City of Fairfield Paradise Valley Golf Club
Cleveland v. Cannery Row Brewing Company
Shultz v. City of Pacifica
White v. Southland Office Building
Bereola v. Valero
Llewellyn v. The Greenery Restaurant
Seldon v. Market Plaza, LLC
Seldon v. Dignity Health St Mary's Medical Center
Harris v. JT Hospitality

**Litigation Consulting Services**

McDonald's – 587 El Camino Real, South San Francisco, CA
McDonald's – 16th & Mission, San Francisco, CA
McDonald's- 3rd & Townsend San Francisco, CA
Torta Ahogada – Oakland, CA
Rio Nido Lodge – Rio Nido, CA
Canevari's Deli & Catering, Santa Rosa CA
Perkos Restaurant – Lakeport, CA
Nella Oil – Placerville, CA
Nella Oil – Clearlake, CA
24 Hour Fitness – Ladera Ranch, CA


*Americans with Disabilities Act Title II Transition Plan*

**University of California Riverside – ADA Transition Plan Update**
Gary Waters, in addition to conducting access surveys, led the transition plan development process for the including implementing new standards at the time for housing at places of public education.


**Napa Valley College ADA Transition Plan Update**
Gary Waters led this firm's work to conduct campus wide accessibility surveys and produce barrier reports.  Gary worked with the NVC committees to develop the transition plan and establish priorities for barrier removal.

**Gavilan College – ADA Self-Evaluation and Transition Plan Update Project**
Gary Waters and Pacific Access Consulting is working with Bureau Veritas and Steinberg Hart to assist Gavilan Community in developing an ADA Self Evaluation and Transition Plan. This project is being undertaken as part of the District's master planning process for their Measure X funds.  The ADA transition and barrier removal plan will be coordinated with the facility master plan to leverage construction dollars to the greatest extend possible while achieving campus wide accessibility within a reasonable time frame.

*Seminars and Workshops Presented*

**Welcome SB 1608 – New ADA Lawsuit Protection**
2009 Santa Rosa CA

**CSI / AIARE ADA Seminar – Accessibility in California: Welcome to the Future**
March 16, 2011, Santa Rosa, CA, 5-hour seminar for California and AIA continuing education learning units.

**AIAEB ADA Seminar – Accessibility in California: Welcome to the Future**
August 22, 2011, Oakland, CA, 5-hour seminar for California and AIA continuing education learning units.

**AIARE ADA Seminar – Accessibility in California: Welcome to the Future**
August 26, 2011, Santa Rosa, CA, 5-hour seminar for California and AIA continuing education learning units.

**McDonalds Regional ADA Summit 32013 – Sierra Pacific Region**
August 27, 2013, Walnut Creek, CA, A 4-hour seminar for McDonald's construction managers and architects to review the 2010 ADA and the recently adopted CBC.

**AIASJ ADA Seminar – Accessibility in California**
April 19, 2015, Fresno, CA, 5-hour seminar for California and AIA continuing education learning units.

**AIAEB ADA Seminar – Accessibility in California**
August 28, 2015, Oakland, CA, 5-hour seminar for California and AIA continuing education learning units.

**Certified Access Specialist Institute (CASI) 2020 Fall Presentation**
**Nevarez v Forty Niners Football Company, LLC – Anatomy of a Class Action Accessibility Lawsuit, Settlement, and Lessons Learned**
CASI is the professional organization for Certified Access Specialists.  This workshop was presented virtually with the lead attorney in this case, Guy Wallace, on October 16, 2020.