Guy B. Wallace – 176151
Mark T. Johnson – 76904
Travis C. Close – 308673
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California  94608
Telephone:    (415) 421-7100
Facsimile:    (415) 421-7105
Email:        gwallace@schneiderwallace.com
              mjohnson@schneiderwallace.com
              tclose@schneiderwallace.com

Kathryn A. Stebner – 121088
Brian S. Umpierre – 236399
**STEBNER AND ASSOCIATES**
870 Market Street, Suite 1212
San Francisco, California  94102
Telephone:    (415) 362-9800
Facsimile:    (415) 362-9801
Email:        kathryn@stebnerassociates.com
              brian@stebnerassociates.com

Gay Crosthwait Grunfeld – 121944
Benjamin Bien-Kahn – 267933
Jenny S. Yelin – 273601
Amy Xu – 330707
**ROSEN BIEN**
**GALVAN & GRUNFELD LLP**
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:        ggrunfeld@rbgg.com
              bbien-kahn@rbgg.com
              jyelin@rbgg.com
              axu@rbgg.com

Attorneys for Plaintiffs and the Proposed Classes

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA-OAKLAND DIVISION

STACIA STINER, et al., on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

BROOKDALE SENIOR LIVING, INC. ; BROOKDALE SENIOR LIVING COMMUNITIES, INC.; and DOES 1 through 100,

Defendants.

Case No. 4:17-cv-03962-HSG (LB)

**DECLARATION OF JEFFREY SCOTT MASTIN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date:    May 26, 2022
Time:    2:00 p.m.
Place:   Courtroom 2
Judge:   Hon. Haywood S. Gilliam, Jr.

1    I, Jeffrey Scott Mastin, declare as follows:

2        1.    This Declaration is submitted in support of Plaintiffs' Motion for Class Certification in

3    *Stiner et al., v. Brookdale Senior Living, Inc., et al*., Case No. 4:17-cv-03962-HSG (LB), in the U.S.

4    District Court, Northern District of California.  I make this Declaration of my own personal

5    knowledge of the facts stated below, and if called as a witness in this case, I could and would testify

6    as stated herein.

7                          **QUALIFICATIONS AND BACKGROUND**

8        2.    I am an expert in accessibility for persons with physical disabilities. I received my five-

9    year architectural degree from California Polytechnic State University, San Luis Obispo in 1987. I

10   became a licensed architect in California in 1995 and have been licensed continuously since.  I have

11   twenty-six years' experience in Architecture including fourteen years as Project Architect and three

12   years as Construction Manager. I have been a specialist in disability accessibility since 1999.

13       3.    I was asked to serve as Subject Matter Expert for the Division of the State Architect

14   ("DSA") in 2015.  I served under contract for five years in that capacity, specifically developing and

15   vetting materials for the California Certified Access Specialist Exam.

16       4.    I am currently an independent accessibility consultant and President of Facility Access

17   Consulting, Inc.  From 2005 through 2008, I was a partner in the architectural firm of Architerra, LLP

18   and one of the firm's resident experts on physical accessibility regulations.  I also performed

19   numerous accessibility construction plan reviews for the DSA during this time.  I was contracted by

20   that office to review, comment, and approve various public agency submittals for compliance with

21   accessibility regulations.  Prior to this, beginning in 1995, I was a project architect for three successive

22   architectural firms for large accessibility and architectural projects.

23       5.    As a project architect, I have designed a wide variety of projects including civic,

24   institutional, educational, commercial, and health care facilities, as well as a large-scale state housing

25   project for the developmentally disabled. My primary responsibility was to direct or perform all

26   aspects of design and construction document production. This included design, code compliance, cost

27   estimating, materials and systems selection, graphical and technical communication, agency

28

approvals and construction field verification.

6.      A relevant responsibility for a project architect is the investigation and documentation of existing conditions when designing alterations, additions, or renovations to existing facilities. Over half of my work as Project Architect involved existing facilities. I am very experienced with inspecting and documenting existing facilities and evaluating their potential for renovation or upgrade. This documentation includes precise measurement and an intimate knowledge of construction materials and systems for a variety of project types and scales.

7.      I have provided and managed numerous large-scale accessibility site assessments for state and private clients involving tens of millions of square feet of structures and thousands of acres of associated sites. The public projects included the majority of all facilities operated by the Counties of Orange and Alameda in California and five developmental center housing campuses for the State of California. The private projects included over one thousand retail and food service facilities for Fortune 500 companies nationwide. I have also served as a litigation access specialist for both defendants and plaintiffs involving dozens of public agencies and private entities. I have further provided training to dozens of accessibility experts working in forty-five states. I am familiar with the techniques that people with disabilities employ for mobility, including the mechanics of various mobility aids. I have used this knowledge to work with facility owners to identify and prioritize the removal of barriers to accessibility according to the degree of non-compliance and greatest potential for injury.

8.      I am very familiar with the requirements of federal disability access design standards, including the 2010 Americans with Disabilities Act Standards for Accessible Design ("ADAS"), the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and the Uniform Federal Accessibility Standards ("UFAS").  I am also very familiar with the requirements of California accessibility design standards as codified within the California Building Code ("CBC"), often known as Title 24 of the California Code of Regulations ("Title 24").  I have extensive experience measuring and inspecting individual elements of newly constructed, altered, and existing facilities to determine the extent to which they comply with these accessibility standards. This includes substantial

experience in inspecting and assessing various elements of the pedestrian right of way, including sidewalks, curb ramps and cross walks.

9.     I am a California Certified Access Specialist in good standing (CASp #88). The certification, administered by the California Division of the State Architect, signifies that I am qualified to evaluate plans, investigate facilities, conduct research, perform inspections, and prepare reports to determine compliance with applicable state and federal accessibility provisions, including statutes, regulations, and standards. In addition, an important component of CASp certification is the duty to evaluate and propose suitable barrier removal measures with a reasonable schedule for accomplishing such measures.

10.     The opinions I express in connection with this litigation are based upon various professional trainings and seminars I have attended, upon articles, reports, codes, acts, regulations, interpretations and publications that I have studied, my professional experience interpreting and applying the requirements of access regulation in professional practice, and in my experience in working with public entities and business owners to educate them on their obligations for providing accessible facilities.

11.     Attached to this Declaration as **Appendix A** is a true and correct copy of my curriculum vitae.

## SCOPE OF WORK

12.     Counsel for Plaintiffs retained Gary Waters of Pacific Access Consulting and me to survey a number of the Defendants' Assisted Living facilities located in California.  I conducted surveys of 28 such facilities on behalf of Facility Access Consulting, Inc. over the period of June 11, 2019, through February 20, 2020. I was asked to determine the extent to which the facilities and their physical elements complied with the standards set forth in the 2010 ADA Accessibility Standards ("2010 ADAS"), the 1991 ADA Accessibility Guidelines ("1991 ADAAG"), and California Title 24 Code of Regulations (commonly known as the California Building Code or "CBC") the CBC, and to assess the sufficiency of the policies, procedures, and practices of Defendants with respect to disability access for persons with mobility disabilities.

13.     By arrangements made between counsel for Plaintiffs and Defendants, I inspected the following facilities on the specified dates:

| | | |
|---|---|---|
| Brookdale Brookhurst – 15302 Brookhurst Street, Westminster | 06/11/2019 | Exhibit A |
| Brookdale Oceanside – 3524 Lake Blvd., Oceanside | 06/12/2019 | Exhibit B |
| Brookdale San Marcos – 1590 W. San Marcos Blvd., San Marcos | 06/13/2019 | Exhibit C |
| Brookdale Chatsworth – 20801 Devonshire St., Los Angeles | 06/18/2019 | Exhibit D |
| Brookdale North Tarzana – 5711 Reseda Blvd., Tarzana | 06/19/2019 | Exhibit E |
| Brookdale Riverwalk – 350 Calloway Drive, Bakersfield | 06/24/2019 | Exhibit F |
| Brookdale Corona – 2005 Kellogg Avenue, Corona | 08/27/2019 | Exhibit G |
| Brookdale Redwood City – 485 Woodside Rd. Redwood City | 08/29/2019 | Exhibit H |
| Brookdale Alhambra – 1 E. Commonwealth Ave., Alhambra | 09/24/2019 | Exhibit I |
| Brookdale Ocean House (fka Brookdale Santa Monica) – 2107 Ocean Ave., Santa Monica | 09/25/2019 | Exhibit J |
| Brookdale Santa Monica Gardens – 851 2nd Street, Santa Monica | 9/26/2019 | Exhibit K |
| Brookdale Anaheim – 200 N. Dale Avenue, Anaheim | 10/08/2019 | Exhibit L |
| Brookdale Valley View Garden Grove – 5900 Chapman Ave. | 10/08/2019 | Exhibit M |
| Brookdale Garden Grove – 10200 Chapman Avenue | 10/11/2019 | Exhibit N |
| Brookdale Bakersfield – 8100 Westlold Dr., Bakersfield | 10/14/2019 | Exhibit O |
| Brookdale Vacaville Magnolia Court- 1111 Ulatis Street, Vacaville | 10/15/2019 | Exhibit P |
| Brookdale Riverside – 5881 El Palomino Drive, Riverside | 10/16/2019 | Exhibit Q |
| Brookdale Hemet – 1177 S. Palm Avenue, Hemet | 10/17/2019 | Exhibit R |
| Brookdale North Euclid – 1031 N. Euclid Avenue, Ontario | 10/30/2019 | Exhibit S |
| Brookdale Loma Linda – 25585 Van Leuven St., Loma Linda | 12/18/2019 | Exhibit T |
| Brookdale Walnut – 19850 Golden Springs Dr., Walnut | 01/14/2020 | Exhibit U |
| Brookdale Central Whittier – 8101 Painter Ave., Whittier | 01/15/2020 | Exhibit V |
| Brookdale Uptown Whittier – 13250 Philadelphia St., Whittier | 01/16/2020 | Exhibit W |
| Brookdale San Dimas – 1740 San Dimas Avenue, San Dimas | 02/06/2020 | Exhibit X |
| Brookdale Brea – 285 W. Central Avenue, Brea | 02/07/2020 | Exhibit Y |
| Brookdale Anaheim Hills – 380 S. Anaheim Hills Rd. | 02/17/2020 | Exhibit Z |
| Brookdale Yorba Linda – 17803 Imperial Hwy., Yorba Linda | 02/18/2020 | Exhibit AA |
| Brookdale Magnolia – 737 Magnolia Ave., Corona | 02/19/2020 | Exhibit BB |

14.     At each of these facilities, I inspected all common areas available to the public to which I was provided access and the resident unit sleeping rooms to which I was provided access. The inspections included the following elements, areas or features of the premises:

      a.   On-site parking lots serving the facility

      b.   Passenger loading and unloading areas

      c.   Common areas of the facility that were open to or available for use by residents of the facility

      d.   Interior paths of travel including corridors and elevators

      e.   Exemplars of rooms available for occupancy by residents of the facility

      f.   Exterior areas of each site that were open to use by residents, including patios, sitting areas, outdoor recreational areas where they existed and walkways and other paths of travel connecting these areas and the parking lots to one another and to the buildings on the site.

      g.   Shuttle vehicles used to transport residents.

15.     At each of the facilities I surveyed, I inspected between six and eighteen resident rooms as specified in each individual survey report. In total I inspected two hundred and ninety-nine resident rooms among the twenty-eight facilities. These included rooms of different configurations, sizes, and types, including rooms for both assisted living residents and memory care residents and rooms that were both occupied and unoccupied on the date of the inspection. The exemplar rooms I was permitted to inspect were identified by Brookdale's counsel, who were present at all of the survey's I conducted. My understanding, based on a stipulation between Brookdale and Plaintiffs, is that the rooms identified by counsel for Brookdale that I inspected at each location were typical in all material respects affecting disability access, of all other residential units of the same configuration (*e.g.*, studio, one-bedroom, two-bedroom, etc.) at the location. (Docket No. 154, paragraph 7). Based on that same Stipulation, it is my understanding that no residential units that were not made available for inspection at any of these facilities have any features, elements or dimensions that provide greater access to persons with disabilities than those that were inspected.

1

2

3     16.     The opinions I express in this declaration are based on the results of my survey and

4 inspections of the Brookdale facilities identified above using the methods and techniques described

5 herein, as well as my experience and review of the documents and materials described below.

6                            **BASES OF EXPERT OPINIONS**

7          **A. Published Materials**

8     17.     The opinions I express in connection with this litigation are based upon various

9 professional trainings and seminars that I have either presented or attended, upon articles, reports,

10 codes and publications that I have studied, my professional experience interpreting and applying the

11 requirements of the ADA (including the standards of the 2010 ADAS, the 1991 ADAAG, and

12 UFAS) and the CBC in practice, and my experience in working with public entities and owners to

13 educate them on their obligations under the ADA, the 2010 ADAS, the 1991 ADAAG, and the CBC

14 with regard to providing accessible facilities.

15          **B. Review of Relevant Case Documents and Testimony**

16     18.     The opinions I express in this Declaration are based on the review and analysis of

17 various documents, including the architectural and construction drawings and records for each

18 facility I inspected that were produced by Brookdale and non-party public agencies in this litigation,

19 and relevant portions of the transcript of the deposition testimony of Kevin Bowman, testifying on

20 behalf of Brookdale on June 23, 2021, as a Rule 30(b)(6) witness on issues related to Brookdale's

21 disability access policies, procedures, and practices. I also reviewed relevant portions of the

22 deposition transcript of Audrey Withers, who testified on behalf of Brookdale on July 23, 2021, as its

23 rule 30(b)(6) designee on the topic of employee training. I also reviewed Defendants' Supplemental

24 Responses to Plaintiffs Stacia Stiner's Interrogatories, Set One, various Brookdale renovation status

25 spreadsheets, Brookdale's 3 Year Renovation Plan Consolidated Communities, the Cap Ex Review,

26 and the 2017 Budget Projects Spreadsheet produced by Brookdale. I have reviewed Plaintiffs' Third

27 Amended Complaint and Defendants' Answer and the District Court's opinions in this case, *Stiner v.*

28

1   *Brookdale Senior Living Inc.*, 354 F. Supp. 3d 1046 (N.D. Cal. 2019) and *Stiner v. Brookdale Senior*

2

3   *Living, Inc.*, 383 F. Supp. 3d 949 (N.D. Cal. 2019).  Additionally, I have reviewed the site inspection

4   reports prepared by Gary Waters based on his inspections of other Brookdale facilities in California.

5       19.     The analysis and conclusions contained in this declaration reflect my preliminary

6   findings and conclusions, and these are subject to revision and supplementation, as further

7   information becomes available through the discovery process in this case.  My work is continuing.  I

8   may supplement, revise, or change the opinions contained within this Declaration as I review

9   additional documents produced and additional deposition testimony in this litigation and should I

10  conduct any further site inspections of the Stadium and its facilities.

11      20.     For each of the twenty-eight California Brookdale assisted living facilities that I

12  inspected in connection with this litigation I prepared an Access Compliance Evaluation Survey

13  Barrier Report. True and correct copies of those Barrier Reports, identified as Exhibits A through

14  BB, are submitted with this declaration. The reports, including the photographs that are included,

15  identify the barriers to access for persons with disabilities that I found at each facility, with reference

16  to the ADA standards or the CBC code sections and a description of the condition I found at the site.

17  The list of barriers contained in these reports are not necessarily exhaustive, however, as several

18  circumstances often limited my ability to perform a complete inspection. Time was a factor, since we

19  were limited to a single day for each site and some of the larger facilities required more than one day.

20  In addition, some of the rooms were occupied by the resident at the time of the inspection, which

21  created some awkwardness and added to the pressure to get in and out of those rooms quickly.

22  Finally, we were instructed not to touch anything or take photographs of any personal effects, even

23  items like shampoo bottles. This sometimes made it difficult to access certain areas to take

24  measurements or to take photographs of an area where personal items were nearby. Thus, while all of

25  the barriers listed in the reports were present, there were others at each facility that are not listed.

26  Additionally, because of time constraints and the inability to photograph or measure every element of

27  every room, where I could clearly tell by observation that a condition was the same as the condition

28

1  that I had measured in a similarly configured room, I may have chosen not to repeat the measurement

2  and/or to have documented the condition photographically.

3  **C.  Applicability of Title III of the ADA, the CBC, and Federal Disability Access Design Standards**

4  21.     It is a responsibility of California architects and disability access experts to determine

5  the extent to which facilities they inspect are subject to disability access requirements and the

6  particular access standards that apply. It is my opinion that the Brookdale assisted living facilities in

7  California that I surveyed are covered by Title III of the ADA and by Title 24 of the CBC.

8  Specifically, the assisted living and memory care facilities operated by Brookdale are "places of

9  public accommodation" as defined by the Americans with Disabilities Act (ADA) 42 U.S.C. §

10  12181((7) and its applicable regulations.  As such, the public and common areas of the assisted living

11  and memory care facilities must comply with the general requirements of the ADA.

12  22.     With the passage of the ADA, the Department of Justice issued the ADAAG standards.

13  Since January 26, 1993, owners, operators, and managers of places of public accommodation have

14  been obligated to perform new construction and alterations in compliance with the 1991 ADAAG.

15  On September 15, 2010, the Department of Justice published updated accessible design standards, the

16  2010 ADA Standards for Accessible Design (2010 ADAS).  For new construction and alterations

17  commenced between September 15, 2010, and March 15, 2012, public accommodations had to

18  choose and ensure compliance with either the 1991 ADAAG or the 2010 ADAS,  Physical

19  construction or alterations commenced by public accommodations on or after March 15, 2012, must

20  comply with the 2010 ADAS.

21  23.     It is considered the appropriate standard of professional care by California architects to

22  ensure that new construction and alterations be performed in compliance with both the CBC and the

23  applicable federal access standard, whichever is more restrictive.  The reason for applying these

24  provisions is that they are the minimum standards for establishing accessibility. I have utilized the

25  most restrictive requirements of the applicable federal access standard (2010 ADAS or 1991

26  ADAAG) and the CBC as the appropriate disability access standard for our work with public

27  accommodations in California.  It is widely accepted among California architects who work with

28

1  owners, operators, and managers of public accommodations that compliance with the standards of

2  both the applicable federal access standard and the CBC, whichever is more restrictive, is necessary

3  to ensure that persons with mobility disabilities are able to use public accommodation safely and

4  independently.

5  **METHODOLOGY**

6  24.   In conducting my surveys, I follow the methods outlined in the Department of Justice's

7  ADA Best Practices Tool Kit, Introduction to Appendices 1 and 2.  The equipment I use includes a

8  two-foot digital smart level, a metal tape measurer, a door pressure gauge, and a camera.  I record the

9  information in note form.  Typically, I will begin a survey by familiarizing myself with the facility.  I

10  will note whether required elements are correctly provided or not and record dimensions and slopes

11  as appropriate.  Generally, in conducting the survey of barriers, I will identify if the required

12  accessible features are provided and if they meet the requirements of the 1991 ADAAG and/or the

13  2010 ADAS. For these surveys, I also used the 2016 and 2019 versions of the CBC as a baseline for

14  the current California access standards.  This typically involves taking dimensions, slopes, and cross

15  slopes, as applicable, and photographs.

16  25.   In conducting the surveys, I considered and applied dimensional tolerances.

17  **OBSERVATIONS AND FINDINGS**

18  **Newly Constructed Facilities**

19  26.   Pursuant to 28 CFR §36.401, a facility is considered "new construction" if it was

20  designed and constructed for first occupancy after January 26, 1993. Under §36.406, facilities that

21  qualify as new construction must comply with the 1991 ADAAG. Facilities constructed after March

22  15, 2012, must comply with the 2010 ADAS. For facilities constructed before March 15, 2012, but

23  after September 15, 2010, may be made accessible in accordance with either the 1991 ADAAG or the

24  2010 Standards

25  27.   Defendants' Supplemental Responses to Plaintiffs' Interrogatories, Set One, Brookdale

26  identified twenty-seven (27) of its California Assisted Living facilities as having been constructed

27  after January 26, 1993, including Bakersfield, Brookhurst, Carlsbad, Carmel Valley, Citrus Heights,

28

[3779845.4]
Declaration of Jeffrey Scott Mastin ISO Plaintiffs' Motion for Class Certification
*Stiner et al., v. Brookdale Senior Living, Inc., LLC, et al.,* Case No. 4:17-cv-03962-HSG (LB)
9

Cortona Park, Danville, Elk Grove, Fountaingrove, Hemet, Kettleman Lane, Lodi, Mirage Inn, Murrieta, North Fremont, Northridge, Paso Robles, Red Bluff, Riverwalk, Roseville, Salinas, San Dimas, San Juan Capistrano, Sterling Court, Vacaville, Windsor and Yorba Linda. Of these, I inspected seven (7): Bakersfield, Brookhurst, Hemet, Riverwalk, San Dimas, Vacaville, and Yorba Linda. Based on a review of construction documents produced in this case, I also identified an additional Brookdale facility in California that I inspected, Brookdale Magnolia, that was constructed for first occupancy after January 26, 1993. All 8 of these Brookdale facilities should have been compliant with the 1991 ADAAG. From my review of available construction records, I did not identify any facilities that were constructed after September 15, 2010.

28.    The residential units that I inspected at each of the above-identified newly constructed facilities included numerous similar significant barriers in the residents' bathrooms, including, but not limited to, the following:

a.   bathroom entrance doors that are too narrow, are not provided with accessible maneuvering clearances and are equipped with inaccessible hardware

b.   bathrooms that are too small for a wheelchair to maneuver to use the elements inside, or in many cases, do not provide enough space to enter and close the door

c.   toilets that lack maneuvering clearances and grab bars that would allow safe transfer from a wheelchair

d.   lavatories lacking knee and toe clearance and/or presenting unprotected hazardous elements below that can cause injury to those without sensation in their lower body

e.   inaccessible showers and bathtubs, lacking accessible clearances, without grab bars and seats in accessible locations, and with controls beyond accessible reach, making it difficult for persons with mobility disabilities to safely and independently wash themselves.

29.    These barriers deny residents with disabilities full and equal access to the bathrooms in their units by making it difficult or impossible for them to use the toilet, shower, wash their hands, brush their teeth and/or use the bathroom area for grooming purposes.

30.    In addition to these bathroom barriers, each of the residents' units I inspected at the newly constructed facilities had other barriers to access, including, but not limited to:

     a.   kitchen counters that are too high with inaccessible sinks, thus making it difficult for residents to use their kitchens prepare and eat food or wash their hands

     b.   balconies or patio areas that are inaccessible to residents with mobility disabilities because the door is too narrow and thresholds too high

     c.   closets with clothes rods and shelves that are too high, making it difficult or impossible for residents with disabilities to hang up or get their clothes without assistance.

31.    In the areas outside each of these new construction facilities, including the parking lots, paths of travel and the primary entrances to the building, I consistently observed numerous access barriers. By way of example, these included, but were not limited to, the following:

     a.   insufficient number of accessible parking spaces

     b.   accessible parking spaces that are not wide enough or lacked an access aisle

     c.   accessible parking spaces that are not level

     d.   paths of travel leading to and within the facilities that are too narrow or have steep slopes and potentially hazardous drop-offs, that are difficult and potentially hazardous for persons with mobility and vision disabilities

     e.   overhanging and protruding objects that are not cane-detectable, presenting hazard to persons with visual disabilities

     f.   ramps with excessive steep running slopes

g.   ramps and stairways that lack handrails

32.   As a result of these barriers, residents with disabilities encounter barriers that limit or deny equal access when they attempt to park at, approach, and/or enter these facilities.

33.   The common areas inside Brookdale's new facilities that I inspected also contained many barriers that deny or limit full, equal, and safe access to residents with disabilities and that violate the ADAAG and the CBC. In the common area restrooms, for example, I regularly observed the following barriers:

a.   Toilets that are located too far from the wall where the grab bar is located, restrooms lacking maneuvering clearances and toilets not equipped correctly with grab bars, for persons with disabilities to safely stabilize themselves

b.   Lack of knee clearance under lavatories and hazardous unprotected elements located below them

c.   doors that require too much force to open and that close too quickly

d.   doors without required maneuvering clearances

e.   doors that are too narrow

f.   doors with high thresholds

g.   lack of tactile signage for the blind, including room identification and emergency exit signage

h.   items that are located beyond accessible reach range in common areas.

34.   The dining rooms also contained numerous barriers, including but not limited to tables that are too low and/or that do not provide adequate knee clearance to residents with mobility disabilities.

35.   These facilities frequently contain objects in circulation areas that protrude from the side or above that don't comply with the ADAAG or CBC because they are not cane-detectable, presenting hazards to residents who are blind or who have low vision.

36.     Based on the pervasive existence of these types of barriers in facilities that Brookdale admits are new construction, it is my opinion that Brookdale has a policy and/or practice of disregarding the existence of such barriers and of failing to remove them or take any other steps to ensure that its facilities build after January 26, 1993, are compliant with the ADAAG. This is confirmed by my review of deposition testimony in this case in which Brookdale officials, including those testifying on behalf of Brookdale as a corporate representative, have taken the position that Brookdale's Assisted Living Facilities are not covered by the ADA. For example, Kevin Bowman, testifying on behalf of Brookdale as a Rule 30(b)(6) designee, asserted that the communities it operates are not public accommodations covered by title III of the ADA. (Bowman Tr. June 23, 2021, at 30:10-31:14. Similarly, Brookdale official Audrey Withers, also testifying on behalf of Brookdale as a Rule 30(b)(6) witness, stated that Brookdale's California facilities do not "fall under" Title III of the ADA or its standards for disability access. (Withers, Tr. July 23, 2021, at 113:12-114:7). Mr. Bowman also testified in his representative capacity that he was unaware of any survey or analysis conducted by Brookdale to determine whether its assisted living facilities in California comply with the 1991 ADAAG or the 2010 ADAS. (Bowman Tr., June 23, 2021, at 36:11-25).

**New Facilities Under California Law**

37.     Many of the facilities I inspected that were not constructed after January 26, 1993, are still considered new facilities under California law if they were constructed after July 1, 1970. Facilities constructed between July 1970 and December 1981 were required to comply with the American National Standards Institute's Specifications A117.1/1961 (the "ANSI Standards").  After December 31, 1981, newly constructed facilities were required to comply with the access requirements of Title 24 of the California Code of Regulations (also known as the 1981 CBC).  New iterations of the access requirements of the CBC become effective generally every three years.  My inspections showed that none of these facilities were fully compliant with the applicable requirements of the CBC.

38.     According to building department records, Brookdale Anaheim, located in Anaheim, California, was originally constructed in 1976.  Under California law, this facility was therefore

[3779845.4]

DECLARATION OF JEFFREY SCOTT MASTIN ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., LLC, et al.,* Case No. 4:17-cv-03962-HSG (LB)
13

required to comply with the ANSI standards.  My inspection identified the following barriers at the Anaheim facility, among others, that do not comply with the ANSI standards:

    a.  Lack of signage directing to or identifying accessible routes

    b.  Accessible parking spaces that are too narrow

    c.  Door thresholds that are too high

    d.  Signs that lack tactile characters for the blind

    e.  Unprotected hazardous elements located under lavatories

And within resident units including, but not limited to:

    f.  Door thresholds that are too high

    g.  Closet shelves/clothing rods that are located too high

    h.  Accessories such as coat hooks, and window blinds and latches that are located too high

    i.  Items such as thermostats and exhaust fans that are located beyond accessible reach range

    j.  Bathroom doors with inadequate maneuvering clearances

    k.  Bathrooms with inadequate space for a person in a wheelchair to maneuver

    l.  Toilets with no grab bars and/or inadequate grab bars

    m.  Bathroom lavatories with no or inadequate knee/toe clearance

    n.  Unprotected hazardous elements located under lavatories

39.    According to building department records, Brookdale Garden Grove, located in Anaheim, California, was originally constructed in 1976.  Under California law, this facility was therefore required to comply with the ANSI standards.  My inspection identified the following barriers at the Garden Grove facility, among others, that do not comply with the ANSI standards:

    a.  Lack of signage directing to or identifying accessible routes

    b.  Exterior walkways that are not wide enough

    c.  Exterior walkways with excessive running slope

       d.   Accessible parking spaces with steep surface slopes

       e.   Door thresholds that are too high

       f.   Signs that lack tactile characters for the blind

       g.   Unprotected hazardous elements located under lavatories

       h.   Inadequate width at toilet alcoves

       i.   Inadequate side grab bar at toilet

       j.   Lavatories without knee and/or toe clearance

       k.   Accessories in restrooms that are beyond accessible reach range

       l.   Restroom mirrors that are too high

And within resident units including, but not limited to:

       m.   Patio/balcony door thresholds that are too high

       n.   Bathrooms with inadequate space for a person in a wheelchair to maneuver

       o.   Inadequate width at toilet alcoves

       p.   Toilets with no grab bars and/or inadequate grab bars

       q.   Bathroom lavatories with no o inadequate knee/toe clearance

       r.   Bathroom lavatory mirrors that are located too high

       s.   Unprotected hazardous elements located under lavatories

       t.   Accessories in bathrooms that are beyond accessible reach range

    40.   According to building department records, Brookdale Valley View, located in Garden Grove, California, was originally constructed in 1974.  Under California law, this facility was therefore required to comply with the ANSI standards.  My inspection identified the following barriers at the Valley View facility, among others, that do not comply with the ANSI standards:

       a.   Exterior walkways that are not wide enough

       b.   Exterior walkways with excessive running slope

       c.   Ramps with excessive running slope

       d.   Ramps lacking handrails

1

   e. Accessible parking spaces with steep surface slopes

2

   f. Door maneuvering clearances that are too steep

3

   g. Doors with inadequate maneuvering clearances

4

   h. Door thresholds that are too high

5

   i. Doors that are not wide enough

6

   j. Signs that lack tactile characters for the blind

7

   k. Unprotected hazardous elements located under lavatories

8

   l. Accessories in restrooms that are beyond accessible reach range

9

   m. Restroom mirrors that are too high

10

   n. Inadequate handrail extensions at stair handrails

11

And within resident units including, but not limited to:

12

   o. Closet shelves/clothing rods that are located too high

13

   p. Patio/balcony doors that are not wide enough

14

   q. Patio/balcony door thresholds that are too high

15

   r. Bathroom doors that are not wide enough

16

   s. Bathroom doors with inadequate maneuvering clearances

17

   t. Toilets with no grab bars and/or inadequate grab bars

18

   u. Bathroom lavatories with no or inadequate knee/toe clearance

19

  41. According to building department records, Brookdale Alhambra was originally

20

constructed in 1982.  Under California law, this facility was therefore required to comply with the

21

1981 iteration of the CBC.  My inspection identified the following barriers at this facility, among

22

others, that do not comply with the CBC standards:

23

   a. Lack of signage directing to or identifying accessible routes

24

   b. Exterior walkways with excessive running slope

25

   c. Exterior walkways with excessive cross slope

26

   d. Signs that lack tactile characters for the blind

27

   e. Items that are beyond accessible reach range

28

1    f. Doors equipped with inaccessible operating hardware

2    g. Door thresholds that are too high

3    h. Doors that are not wide enough

4    i. Doors with inadequate maneuvering clearances

5    j. Doors that are not smooth on the bottom of the push side

6    k. Doors that close too quickly

7    l. Elements that protrude from the side or above, presenting hazards to the

8     blind

9    m. Inaccessible locking hardware on restroom door

10    n. Restrooms with inadequate space for a person in a wheelchair to

11     maneuver

12    o. Inadequate width at toilet alcoves

13    p. Lavatories with inadequate knee and/or toe clearance

14    q. Unprotected hazardous elements located under lavatories

15    r. Accessories in restrooms that are beyond accessible reach range

16    s. Restroom mirrors that are too high

17    t. Toilet paper dispenser located too far from toilet

18    u. Inadequate handrail extensions at stair handrails

19    v. Stairs without or with inadequate contrast striping at edges of steps and

20     landings

21    w. Stair without handrail at both sides

22  And within resident units including, but not limited to:

23    x. Doors that are not wide enough

24    y. Doors equipped with inaccessible operating hardware

25    z. Closet shelves/clothing rods that are located too high

26    aa. Accessories such as coat hooks, and window blinds and latches that are

27     located too high

28

bb. Bathroom doors that are not wide enough

cc. Bathroom doors with inadequate maneuvering clearances

dd. Bathrooms with inadequate space for a person in a wheelchair to maneuver

ee. Inadequate width at toilet alcoves

ff.  Toilets with no grab bars and/or inadequate grab bars

gg. Bathroom lavatories with no or inadequate knee/toe clearance

hh. Unprotected hazardous elements located under lavatories

ii.  Showers that are not of an accessible configuration

jj.  Shower thresholds that are too high

kk. Showers that lack an accessible wall-mounted seat

ll.  Showers that lack grab bars in required locations

mm.  Shower hand-held sprayers that are located too high

42.   According to building department records, Brookdale Anaheim Hills, located in Anaheim Hills, California was originally constructed in 1985.  Under California law, the requirements of the 1981 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a.   Exterior walkways with excessive running slope

b.   Exterior walkways with excessive cross slope

c.   Lack of parking tow away signage

d.   Accessible parking spaces with excessive surface slopes

e.   Accessible spaces located so that users must pass behind other parked vehicles

f.   Reception counter that is too high

g.   Door thresholds that are too high

h.   Doors that are not wide enough

i.   Doors with inadequate maneuvering clearances

1    j.    Doors that are not smooth on the bottom of the push side

2    k.    Doors that require too much force to operate

3    l.    Doors that close too quickly

4    m.   Elements that protrude from the side or above, presenting hazards to the

5          blind

6    n.    Inaccessible locking hardware on restroom door

7    o.    Inadequate width at toilet alcoves

8    p.    Inadequate grab bar at toilet

9    q.    Unprotected hazardous elements located under lavatories

10   r.    Accessories in restrooms that are beyond accessible reach range

11   s.    Restroom mirrors that are too high

12   t.    Toilet flush levers that are located on the wrong side of the toilet

13   u.    Toilet located too close or too far from the wall

14   v.    Urinal located too high

15   w.    Toilet paper dispenser located too far from toilet

16   x.    Inadequate handrail extensions at stair handrails

17   And within resident units including, but not limited to:

18   y.    Doors equipped with inaccessible locking hardware

19   z.    Patio/balcony door thresholds that are too high

20   aa.   Operable controls for items such as thermostats and fans that are too

21         high

22   bb.   Kitchen/wet bar counters that are too high

23   cc.   Bathrooms with inadequate space for a person in a wheelchair to

24         maneuver

25   dd.   Inadequate width at toilet alcoves

26   ee.   Toilet located too close or too far from the wall

27   ff.   Toilets with no grab bars and/or inadequate grab bars

28

gg.   Toilet flush levers that are located on the wrong side of the toilet

hh.   Bathroom lavatories with no or inadequate knee/toe clearance

ii.   Accessories in bathrooms that are beyond accessible reach range

jj.   Showers that are not of an accessible configuration

kk.   Shower thresholds that are too high

ll.   Showers that lack an accessible wall-mounted seat

mm.  Showers that lack grab bars in required locations

nn.   Shower hand-held sprayers that are located too high

43.   According to building department records, Brookdale Brea was originally constructed in 1987.  Under California law, the requirements of the 1985 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a.   Lack of signage directing to or identifying accessible routes

b.   Exterior walkways that are not wide enough

c.   Exterior walkways with excessive running slope

d.   Exterior walkways with excessive cross slope

e.   Ramps with excessive running slope

f.   Lack of parking tow away signage

g.   Accessible parking spaces without identification signs

h.   Accessible parking spaces with excessive surface slopes

i.   Inadequate number of van accessible parking spaces

j.   Accessible parking spaces that are not wide enough

k.   Accessible spaces located so that users must pass behind other parked vehicles

l.   Accessible parking spaces that are located farther from the entrance than standard spaces

1       m.  Items such as doorbells, suggestion boxes or paper towel dispensers that

2             are located too high

3       n.  Signs that lack tactile characters for the blind

4       o.  Doors equipped with inaccessible operating hardware

5       p.  Door thresholds that are too high

6       q.  Doors that are not wide enough

7       r.  Doors with inadequate maneuvering clearances

8       s.  Door maneuvering clearances that are too steep

9       t.  Doors that are not smooth on the bottom of the push side

10      u.  Elements that protrude from the side or above, presenting hazards to the

11            blind

12      v.  Hazardous drop-offs at circulation areas

13      w.  Toilet compartments that are too narrow

14      x.  Lavatories with inadequate knee and/or toe clearance

15      y.  Accessories in restrooms that are beyond accessible reach range

16      z.  Toilet flush levers that are located on the wrong side of the toilet

17      aa. Toilet located too far from the wall

18      bb. Inadequate handrail extensions at stair handrails

19      cc. Stairs without or with inadequate contrast striping at edges of steps and

20            landings

21  And within resident units including, but not limited to:

22      dd. Doors with inadequate maneuvering clearance

23      ee. Doors with maneuvering clearances that are not level

24      ff.  Patio/balcony doors that are not wide enough

25      gg. Patio/balcony door thresholds that are too high

26      hh. Closet shelves/clothing rods that are located too high

27      ii.  Windows with inaccessible latching hardware

28

jj.  Bathroom doors with inaccessible latching hardware

kk. Bathrooms with inadequate space for a person in a wheelchair to maneuver

ll.  Inadequate width at toilet alcoves

mm.  Toilets with no grab bars and/or inadequate grab bars

nn. Bathroom lavatories with no or inadequate knee/toe clearance

oo. Unprotected hazardous elements located under lavatories

pp. Accessories in bathrooms that are beyond accessible reach range

qq. Showers that are not of an accessible configuration

rr.  Shower thresholds that are too high

ss.  Showers that lack an accessible wall-mounted seat

tt.  Showers that lack grab bars in required locations

uu. Shower hand-held sprayers that are located too high

44.    According to building department records, Brookdale Loma Linda was originally constructed in 1986.  Under California law, the requirements of the 1985 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a.  Lack of signage directing to or identifying accessible routes

b.  Exterior walkways that are not wide enough

c.  Exterior walkways with excessive running slope

d.  Exterior walkways with excessive cross slope

e.  Ramps with excessive running slope

f.  Ramps lacking handrails

g.  Lack of detectable warnings where pedestrian walks meet hazardous vehicular areas

h.  Lack of parking tow away signage

i.  Accessible parking spaces without identification signs

j.  Accessible parking spaces without access aisles

k.  Accessible parking spaces with excessive surface slopes

l.  Inadequate number of accessible parking spaces

m.  Inadequate number of van accessible parking spaces

n.  Accessible spaces located so that users must pass behind other parked vehicles

o.  Signs that lack tactile characters for the blind

p.  Doors equipped with inaccessible operating hardware

q.  Door thresholds that are too high

r.  Doors that are not wide enough

s.  Doors that are not smooth on the bottom of the push side

t.  Doors that close too quickly

u.  Elements that protrude from the side or above, presenting hazards to the blind

v.  Lavatories with inadequate knee and/or toe clearance

w.  Toilet flush levers that are located on the wrong side of the toilet

x.  Toilet located too far from the wall

y.  Urinal located too high

z.  Inadequate handrail extensions at stair handrails

aa. Stairs without or with inadequate contrast striping at edges of steps and landings

And within resident units including, but not limited to:

bb. Doors with inadequate maneuvering clearance

cc. Doors equipped with inaccessible locking hardware

dd. Closet shelves/clothing rods that are located too high

ee. Audible fire alarms provided without visual alarms

ff.  Bathrooms with inadequate space for a person in a wheelchair to maneuver

gg. Inadequate width at toilet alcoves

hh. Bathroom lavatory mirrors that are located too high

ii. Toilets with no grab bars and/or inadequate grab bars

jj. Bathroom lavatories that are too high

kk. Bathroom lavatories with no or inadequate knee/toe clearance

ll. Showers that are not of an accessible configuration

mm. Shower thresholds that are too high

nn. Showers that lack an accessible wall-mounted seat

oo. Showers that lack grab bars in required locations

pp. Shower hand-held sprayers that are located too high

qq. Shower equipped with inaccessible control hardware

45. According to building department records, Brookdale North Euclid in Ontario, California was originally constructed in 1986. Under California law, the requirements of the 1985 CBC would apply to this facility. My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a. Lack of signage directing to or identifying accessible routes

b. Exterior walkways with excessive cross slope

c. Ramps lacking handrails

d. Lack of parking tow away signage

e. Inadequate number of van accessible parking spaces

f. Reception counter that is too high

g. Items such as doorbells, suggestion boxes or paper towel dispensers that are located too high

h. Signs that lack tactile characters for the blind

i. Doors equipped with inaccessible operating hardware

j. Door thresholds that are too high

k. Door maneuvering clearances that are too steep

DECLARATION OF JEFFREY SCOTT MASTIN ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Stiner et al., v. Brookdale Senior Living, Inc., LLC, et al., Case No. 4:17-cv-03962-HSG (LB)

24

1  l.  Doors that are not smooth on the bottom of the push side

2  m.  Doors that require too much force to operate

3  n.  Elements that protrude from the side or above, presenting hazards to the

4  blind

5  o.  Hazardous drop-offs at circulation areas

6  p.  Audible fire alarms provided without visual alarms

7  q.  Toilet compartments that are too narrow

8  r.  Lavatories with inadequate knee and/or toe clearance

9  s.  Accessories in restrooms that are beyond accessible reach range

10  t.  Restroom mirrors that are too high

11  u.  Toilet flush levers that are located on the wrong side of the toilet

12  v.  Toilet paper dispenser located too far from toilet

13  w.  Inadequate handrail extensions at stair handrails

14  x.  Stairs without or with inadequate contrast striping at edges of steps and

15  landings

16  And within resident units including, but not limited to:

17  y.  Doors with inadequate maneuvering clearance

18  z.  Doors equipped with inaccessible locking hardware

19  aa.  Patio/balcony doors that are not wide enough

20  bb.  Patio/balcony door thresholds that are too high

21  cc.  Closet shelves/clothing rods that are located too high

22  dd.  Accessories such as coat hooks, and window blinds and latches that are

23  located too high

24  ee.  Bathroom doors with inadequate maneuvering clearances

25  ff.  Bathrooms with inadequate space for a person in a wheelchair to

26  maneuver

27  gg.  Inadequate width at toilet alcoves

28

1    hh. Bathroom lavatory mirrors that are located too high

2    ii.  Toilet flush levers that are located on the wrong side of the toilet

3    jj.  Bathroom lavatories with no or inadequate knee/toe clearance

4    kk. Showers that are not of an accessible configuration

5    ll.  Shower thresholds that are too high

6    mm. Showers that lack an accessible wall-mounted seat

7    nn. Showers that lack grab bars in required locations

8    oo. Shower hand-held sprayers that are located too high

9    46.    According to building department records, Brookdale North Tarzana in Los Angeles,

10  California was originally constructed in 1982.  Under California law, the requirements of the 1981

11  CBC would apply to this facility.  My inspection identified the following barriers at this facility,

12  among others, that do not comply with the CBC standards:

13    a.  Exterior walkways that are not wide enough

14    b.  Exterior walkways with excessive cross slope

15    c.  Ramps lacking handrails

16    d.  Lack of parking tow away signage

17    e.  Accessible parking spaces with excessive surface slopes

18    f.  Inadequate number of van accessible parking spaces

19    g.  Accessible parking spaces that are not wide enough

20    h.  Door thresholds that are too high

21    i.  Doors that are not wide enough

22    j.  Doors with inadequate maneuvering clearances

23    k.  Doors that are not smooth on the bottom of the push side

24    l.  Doors that close too quickly

25    m. Elements that protrude from the side or above, presenting hazards to the

26        blind

27    n.  Inadequate grab bar at toilet

28

o.  Lavatories with inadequate knee and/or toe clearance

p.  Accessories in restrooms that are beyond accessible reach range

q.  Restroom mirrors that are too high

r.  Toilet flush levers that are located on the wrong side of the toilet

s.  Toilet paper dispenser located too far from toilet

t.  Inadequate handrail extensions at stair handrails

u.  Stairs without or with inadequate contrast striping at edges of steps and landings

And within resident units including, but not limited to:

v.  Doors with inadequate maneuvering clearance

w.  Patio/balcony doors that are not wide enough

x.  Patio/balcony door thresholds that are too high

y.  Closet shelves/clothing rods that are located too high

z.  Operable controls for items such as thermostats and fans that are too high

aa. Bathrooms with inadequate space for a person in a wheelchair to maneuver

bb. Inadequate width at toilet alcoves

cc. Bathroom lavatory mirrors that are located too high

dd. Toilets with no grab bars and/or inadequate grab bars

ee. Bathroom lavatories with no or inadequate knee/toe clearance

ff.  Showers that are not of an accessible configuration

gg. Shower thresholds that are too high

hh. Showers that lack an accessible wall-mounted seat

ii.  Showers that lack grab bars in required locations

jj.  Shower hand-held sprayers that are located too high

47.    According to building department records, Brookdale Redwood City in Redwood City, California was originally constructed in 1987.  Under California law, the requirements of the 1985 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

  a. Lack of signage directing to or identifying accessible routes

  b. Exterior walkways that are not wide enough

  c. Exterior walkways with excessive running slope

  d. Exterior walkways with excessive cross slope

  e. Ramps with excessive running slope

  f. Accessible parking spaces with excessive surface slopes

  g. Accessible parking spaces that are not wide enough

  h. Signs that lack tactile characters for the blind

  i. Doors equipped with inaccessible operating hardware

  j. Door thresholds that are too high

  k. Doors with inadequate maneuvering clearances

  l. Door maneuvering clearances that are too steep

  m. Doors that are not smooth on the bottom of the push side

  n. Doors that require too much force to operate

  o. Doors that close too quickly

  p. Elements that protrude from the side or above, presenting hazards to the blind

  q. Hazardous drop-offs at circulation areas

  r. Lack of restroom door geometric signage

  s. Inadequate width at toilet alcoves

  t. Inadequate grab bar at toilet

  u. Lavatories with inadequate knee and/or toe clearance

  v. Unprotected hazardous elements located under lavatories

[3779845.4]

DECLARATION OF JEFFREY SCOTT MASTIN ISO PLAINTIFFS' MOTION for CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., LLC, et al.,* Case No. 4:17-cv-03962-HSG (LB)

28

w.  Accessories in restrooms that are beyond accessible reach range

x.  Toilet flush levers that are located on the wrong side of the toilet

y.  Toilet paper dispenser located too far from toilet

z.  Inadequate handrail extensions at stair handrails

aa. Stairs without or with inadequate contrast striping at edges of steps and landings

bb. Stair without handrail at both sides

And within resident units including, but not limited to:

cc. Doors with inadequate maneuvering clearance

dd. Patio/balcony doors that are not wide enough

ee. Patio/balcony door thresholds that are too high

ff.  Closet shelves/clothing rods that are located too high

gg. Accessories such as coat hooks, and window blinds and latches that are located too high

hh. Operable controls for items such as exhaust fans and ceiling fans that are too high

ii.  Kitchen sinks with inadequate knee and toe clearance

jj.  Bathroom doors with inadequate maneuvering clearances

kk. Inadequate width at toilet alcoves

ll.  Toilet located too close or too far from the wall

mm.  Toilets with no grab bars and/or inadequate grab bars

nn. Toilet flush levers that are located on the wrong side of the toilet

oo. Bathroom lavatories with no or inadequate knee/toe clearance

pp. Accessories in bathrooms that are beyond accessible reach range

qq. Showers that are not of an accessible configuration

rr.  Shower thresholds that are too high

ss.  Showers that lack an accessible wall-mounted seat

tt.  Showers that lack grab bars in required locations

uu. Shower hand-held sprayers that are located too high

48.    According to building department records, Brookdale San Marcos in San Marcos, California was originally constructed in 1986.  Under California law, the requirements of the 1985 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a.  Lack of signage directing to or identifying accessible routes

b.  Exterior walkways with excessive cross slope

c.  Lack of parking tow away signage

d.  Accessible parking spaces with excessive surface slopes

e.  Accessible parking spaces that are located farther from the entrance than standard spaces

f.  Signs that lack tactile characters for the blind

g.  Items that are beyond accessible reach range

h.  Doors equipped with inaccessible operating hardware

i.  Doors with inadequate maneuvering clearances

j.  Door maneuvering clearances that are too steep

k.  Doors that are not smooth on the bottom of the push side

l.  Doors that close too quickly

m. Elements that protrude from the side or above, presenting hazards to the blind

n.  Toilet compartments that are too narrow

o.  Lavatories with inadequate knee and/or toe clearance

p.  Toilet flush levers that are located on the wrong side of the toilet

q.  Inadequate handrail extensions at stair handrails

And within resident units including, but not limited to:

r.  Doors equipped with inaccessible locking hardware

1     s.   Patio/balcony doors that are not wide enough

2     t.   Patio/balcony door thresholds that are too high

3     u.   Closet shelves/clothing rods that are located too high

4     v.   Accessories such as coat hooks, and window blinds and latches that are

5          located too high

6     w.  Operable controls for items such as thermostats and fans that are too

7          high

8     x.   Kitchen/wet bar counters that are too high

9     y.   Bathroom doors with inadequate maneuvering clearances

10    z.   Bathroom doors with inaccessible locking hardware

11    aa. Bathrooms with inadequate space for a person in a wheelchair to

12         maneuver

13    bb. Inadequate width at toilet alcoves

14    cc. Bathroom lavatory mirrors that are located too high

15    dd. Toilet located too close or too far from the wall

16    ee. Toilets with no grab bars and/or inadequate grab bars

17    ff.  Bathroom lavatories with no or inadequate knee/toe clearance

18    gg. Accessories in bathrooms that are beyond accessible reach range

19    hh. Showers that are not of an accessible configuration

20    ii.  Shower thresholds that are too high

21    jj.  Showers that lack an accessible wall-mounted seat

22    kk. Showers that lack grab bars in required locations

23     49.   According to building department records, Brookdale Santa Monica Gardens in Santa

24 Monica, California was originally constructed in 1986.  Under California law, the requirements of the

25 1985 CBC would apply to this facility.  My inspection identified the following barriers at this

26 facility, among others, that do not comply with the CBC standards:

27     a.   Exterior walkways that are not wide enough

28

b.  Exterior walkways with excessive running slope

c.  Exterior walkways with excessive cross slope

d.  Ramps lacking handrails

e.  Accessible parking spaces with excessive surface slopes

f.  Inadequate number of accessible parking spaces

g.  Accessible parking spaces that are not wide enough

h.  Signs that lack tactile characters for the blind

i.  Doors equipped with inaccessible operating hardware

j.  Door thresholds that are too high

k.  Doors that are not wide enough

l.  Doors with inadequate maneuvering clearances

m.  Doors that are not smooth on the bottom of the push side

n.  Doors that require too much force to operate

o.  Doors that close too quickly

p.  Elements that protrude from the side or above, presenting hazards to the blind

q.  Hazardous drop-offs at circulation areas

r.  Audible fire alarms provided without visual alarms

s.  Toilet compartments that are too narrow

t.  Inadequate grab bar at toilet

u.  Lavatories with inadequate knee and/or toe clearance

v.  Accessories in restrooms that are beyond accessible reach range

w.  Toilet located too far from the wall

x.  Stairs without or with inadequate contrast striping at edges of steps and landings

And within resident units including, but not limited to:

y.  Doors with inadequate maneuvering clearance

z.   Doors equipped with inaccessible operating hardware

aa.  Doors equipped with inaccessible locking hardware

bb.  Patio/balcony door thresholds that are too high

cc.  Closet shelves/clothing rods that are located too high

dd.  Operable controls for items such as thermostats and fans that are too
     high

ee.  Kitchen sinks with inadequate knee and toe clearance

ff.  Kitchen/wet bar counters that are too high

gg.  Bathroom doors with inadequate maneuvering clearances

hh.  Bathroom doors with inaccessible locking hardware

ii.  Bathrooms with inadequate space for a person in a wheelchair to
     maneuver

jj.  Inadequate width at toilet alcoves

kk.  Bathroom lavatory mirrors that are located too high

ll.  Bathroom lavatories with no or inadequate knee/toe clearance

mm.  Unprotected hazardous elements located under lavatories

nn.  Showers that are not of an accessible configuration

oo.  Shower thresholds that are too high

pp.  Showers that lack an accessible wall-mounted seat

qq.  Showers that lack grab bars in required locations

rr.  Shower hand-held sprayers that are located too high

50.   According to building department records, Brookdale Uptown Whittier in Whittier, California was originally constructed in 1987.  Under California law, the requirements of the 1985 CBC would apply to this facility.  My inspection identified the following barriers at this facility, among others, that do not comply with the CBC standards:

a.   Lack of signage directing to or identifying accessible routes

b.   Exterior walkways with excessive running slope

[3779845.4]

DECLARATION OF JEFFREY SCOTT MASTIN ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., LLC, et al.,* Case No. 4:17-cv-03962-HSG (LB)
33

1      c.   Exterior walkways with excessive cross slope

2      d.   Ramps with excessive running slope

3      e.   Ramps lacking handrails

4      f.   Inadequate number of van accessible parking spaces

5      g.   Accessible parking spaces that are not wide enough

6      h.   Signs that lack tactile characters for the blind

7      i.   Items that are beyond accessible reach range

8      j.   Door thresholds that are too high

9      k.   Doors with inadequate maneuvering clearances

10     l.   Doors that are not smooth on the bottom of the push side

11     m.   Elements that protrude from the side or above, presenting hazards to the

12          blind

13     n.   Restrooms with inadequate space for a person in a wheelchair to

14          maneuver

15     o.   Inadequate width at toilet alcoves

16     p.   Toilet compartments that are too narrow

17     q.   Inadequate grab bar at toilet

18     r.   Restroom mirrors that are too high

19     s.   Toilet paper dispenser located too far from toilet

20     t.   Inadequate handrail extensions at stair handrails

21     u.   Stairs without or with inadequate contrast striping at edges of steps and

22          landings

23     v.   Stair without handrail at both sides

24   And within resident units including, but not limited to:

25     w.   Doors with inadequate maneuvering clearance

26     x.   Doors equipped with inaccessible operating hardware

27     y.   Patio/balcony doors that are not wide enough

28

1       z.   Patio/balcony door thresholds that are too high

2       aa. Closet shelves/clothing rods that are located too high

3       bb. Operable controls for items such as thermostats and fans that are too high

4       cc. Kitchen/wet bar counters that are too high

5       dd. Bathrooms with inadequate space for a person in a wheelchair to maneuver

6       ee. Inadequate width at toilet alcoves

7       ff.  Toilets with no grab bars and/or inadequate grab bars

8       gg. Accessories in bathrooms that are beyond accessible reach range

9       hh. Showers that are not of an accessible configuration

10      ii.  Shower thresholds that are too high

11      jj.  Showers that lack an accessible wall-mounted seat

12      kk. Showers that lack grab bars in required locations

13      ll.  Shower equipped with inaccessible control hardware

14      51.   According to building department records, Brookdale Walnut in Walnut, California was

15 originally constructed in 1987.  Under California law, the requirements of the 1985 CBC would apply

16 to this facility.  My inspection identified the following barriers at this facility, among others, that do

17 not comply with the CBC standards:

18       a.  Lack of signage directing to or identifying accessible routes

19       b.   Exterior walkways that are not wide enough

20       c.  Exterior walkways with excessive running slope

21       d.  Exterior walkways with excessive cross slope

22       e.  Ramps with excessive running slope

23       f.  Accessible parking spaces with excessive surface slopes

24       g.  Inadequate number of van accessible parking spaces

25       h.  Accessible parking spaces that are not wide enough

26       i.  Reception counter that is too high

27       j.  Signs that lack tactile characters for the blind

28

[3779845.4]

DECLARATION OF JEFFREY SCOTT MASTIN ISO PLAINTIFFS' MOTION for CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., LLC, et al.,* Case No. 4:17-cv-03962-HSG (LB)
35

k.  Items that are beyond accessible reach range

l.  Door thresholds that are too high

m.  Doors with inadequate maneuvering clearances

n.  Doors that close too quickly

o.  Elements that protrude from the side or above, presenting hazards to the blind

p.  Hazardous drop-offs at circulation areas

q.  Inadequate grab bar at toilet

r.  Lavatories with inadequate knee and/or toe clearance

s.  Unprotected hazardous elements located under lavatories

t.  Accessories in restrooms that are beyond accessible reach range

u.  Toilet flush levers that are located on the wrong side of the toilet

And within resident units including, but not limited to:

v.  Doors with inadequate maneuvering clearance

w.  Doors equipped with inaccessible locking hardware

x.  Closet shelves/clothing rods that are located too high

y.  Bathrooms with inadequate space for a person in a wheelchair to maneuver

z.  Inadequate width at toilet alcoves

aa. Bathroom lavatory mirrors that are located too high

bb. Toilets with no grab bars and/or inadequate grab bars

cc. Bathroom lavatories with no or inadequate knee/toe clearance

dd. Accessories in bathrooms that are beyond accessible reach range

ee. Showers that are not of an accessible configuration

ff.  Shower thresholds that are too high

gg. Showers that lack an accessible wall-mounted seat

hh. Showers that lack grab bars in required locations

1

        ii.   Shower hand-held sprayers that are located too high

2

      52.   In summary, none of the facilities that I inspected that were newly constructed under

3

California law between July 1, 1970 and January 26, 1993 complied with the California accessibility

4

standards that applied to them when they were built.  The barriers that I observed in those facilities

5

would deny or limit full and equal access to persons with mobility and/or vision disabilities.

6

      53.   Under the ADA and California law, Brookdale is required to remove barriers that do not

7

comply with federal and state access standards from the newly constructed facilities that it owns,

8

operates and/or manages in California.  *See, e.g.*, 28 C.F.R. § 36.406(a)(5)(ii) ("Newly constructed or

9

altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before

10

March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be

11

made accessible in accordance with the 2010 Standards."); Cal. Govt. Code § 4452 ("It is the intent

12

of the Legislature that the building standards published in the State Building Standards Code relating

13

to access by the physically handicapped and the other regulations adopted by the State Architect

14

pursuant to Section 4450 shall be used as minimum requirements to insure that buildings, structures

15

and related facilities covered by this chapter are accessible to, and functional for, the physically

16

handicapped to, through, and within their doors, without loss of function, space, or facility where the

17

general public is concerned.  Any unauthorized deviation from such regulations or building standards

18

shall be rectified by full compliance within 90 days after discovery of the deviation.").

19

      54.   Based on my review of deposition testimony in this case, Brookdale does not have in

20

place any policies or procedures that are designed to ensure that it is in compliance  with the

21

requirements of federal and state law with respect to new construction and alterations.  Kevin.

22

Bowman, Brookdale's Rule 30(b)(6) designee regarding disability access and Brookdale's policies,

23

practices, and procedures with respect to disability access, testified that Brookdale does not consider

24

itself to be covered by Title III of the ADA.  Deposition of Kevin Bowman of June 23, 2021 at

25

18:12-19:9; 30:9-31:14.  Audrey Withers, testifying on behalf of Brookdale as a Rule 30(b)(6) on the

26

issue of training, also testified that Brookdale's California facilities do not "fall under" Title III of the

27

28

ADA or its standards for disability access.  Deposition of Audrey Withers, Senior Human Resources Business Partner, of July 23, 2021, at 113:12-114:7.

55.    With respect to new construction or alterations to facilities, Brookdale does not have any policies and procedures for ensuring compliance with Title III of the ADA or its access standards.  *Id.* at 42:14-43:6; 58:8-11; 62:13-20.  Brookdale has no written definition of what is accessible or what constitutes a barrier to persons with mobility or vision disabilities.  *Id.* at 57:9-25; 63:10-18.  Nor has it conducted any survey or inspection in order to determine whether the assisted living facilities that it owns, operates and/or manages, and that are covered by the new construction and/or alterations requirements of the ADA and the Unruh Act, comply with the 1991 ADAAG or the CBC.  *Id.* at 61:6-11; 115:3-118:25.  Brookdale has also not set any deadline for removing any of the access barriers in its newly constructed or altered facilities in California. *Id.* at 106:5-21.

**Altered Facilities**

56.    Based on my review of the construction history documents produced in this case for the Brookdale facilities I inspected, most of those facilities have been altered since January 26, 1992. Under the ADA and its applicable regulations, areas of alteration to a public accommodation that are begun after that date must be made to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 28 C.F.R. 36.402. As with newly constructed facilities, this means that the altered portion of the facility must comply with the 1991 ADAAG or, depending on the date of the alteration, the 2010 Standards. 28 C.F.R. § 36.406. In addition, if the alteration is to an area of the facility where a major activity for which the facility is intended occurs, the path of travel to that altered area and the restrooms serving that area must also be made to be accessible.

57.    I inspected many Brookdale facilities that I determined, based on my review of construction records, have been altered since January 26, 1992.  None of these facilities comply with applicable federal and state access standards with respect to the altered portion of the facilities or the path of travel leading to those areas. Similarly, in most of these instances, Brookdale has failed to make the path of travel leading to the areas of alteration compliant with the 1991 ADAAG or the

[3779845.4]

DECLARATION OF JEFFREY SCOTT MASTIN ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., LLC, et al.,* Case No. 4:17-cv-03962-HSG (LB)
38

2010 ADAS. Examples of such facilities are described in the following paragraphs.

58. According to city building permit records, the facility known as Brookdale Corona, located at 2005 Kellogg Avenue in Corona, California, underwent significant physical improvements in 1998, valued at $400,000.00. They included adding walls to the dining area to create a beauty parlor, library, recreation area and café. Additional improvements, valued at $75,880, included adding skylights, fencing and a 110 square foot lattice patio cover.

59. Notwithstanding the above-described alterations to the Brookdale Corona facility, my inspection of that facility established that there were numerous barriers in the path of travel between the public right of way and the main entrance of the facility through which the areas of improvement can be reached. These include the lack of signage directing persons to the accessible entrance, excessive running slopes on ramps, inadequate edge protection on ramps, handrails that too high and have extensions that are too short, and landings between ramps that are too small and have excessive slopes. Other path of travel barriers include a curb ramp with an excessive running slope, and an excessive top landing slope. All of these barriers are non-compliant with ADAAG and/or the CBC.

60. The Corona facility also has access barriers in the dining room, including signage, seating, and door issues. In addition, those areas identified in my inspection report as the activity room, spa, and movie room correspond to the areas identified in the construction documents as the recreation area, cafe, beauty parlor and library, each have many barriers that violate ADAAG and other applicable access standards. Such barriers include signage issues, reach range barriers, door thresholds that are too high, work surface areas and seating obstructions, excessive door operating forces and other barriers.

61. According to building department records, the facility that is Brookdale Garden Grove at 10200 Chapman Avenue in Garden Grove was altered in 2013 by the addition of a dining area and living room with a kitchen area and by interior remodeling for offices and a reception/discovery room. The remodeling work was valued at $180,000.

62. Like the Corona facility, Brookdale Garden Grove had barriers in the path of travel leading from the public right of way to the entrance of the facility, including ramp running slopes that

are excessive, missing edge protection on the ramp, the absence of handrails on the ramp, and top landings with excessive slopes. The dining room has several signage and seating barriers, including the absence of any accessible seating providing the required knee and toe clearances.

63.    In September of 1992, the facility known as Brookdale Ocean House at 2107 Ocean Avenue in Santa Monica added a 1,100 square foot roof top enclosure and game room at a cost of approximately $60,000. Further alterations were made to the site in 1999, at a cost of $1,693,737, in the form of a seismic retrofit, an arch remodel and an addition of 1,792 square feet to the 10th floor. Construction plans also indicate that significant renovations were made to the first floor of the building.

64.    My inspection of the Brookdale Ocean House facility identified many access barriers on both the first and tenth floors, including barriers in the game room on the tenth floor.  The first floor, which also serves as the entry way to this high-rise facility through a gated parking lot, has barriers in the form of passenger loading zones that lacked appropriate markings and have excessive slopes, signage issues, doors with excessive operating forces, the lack of an accessible drinking fountain. Both restrooms located on the first floor have improperly placed flush valves, toilet paper dispensers, mirrors, towel dispensers, soap dispensers, coat hooks and grab bars and have insufficient knee clearance at the sink. The dining room on the first floor lacks accessible seating and proper signage. Some of the doors lack adequate maneuvering space and are too steep.

65.    The tenth floor of the Ocean House facility has barriers that include the lack of proper signage, automatic closing doors that close too quickly, ramps leading to the doors with slopes that are excessive and cross slopes on the terrace. There are two single-accommodation restrooms on the tenth floor that have barriers similar to those on the first floor. The game room on the tenth floor lacks the required accessible seating due to inadequate toe clearances at the tables provided. The library on the tenth floor also lacks accessible seating due to inadequate knee and toe clearances at the provided table and counter seating provided.

66.    All of the barriers in the altered areas of the Brookdale Ocean House facility violate ADAAG.

67.    In 2013, the Brookdale Chatsworth facility at 20801 Devonshire Blvd. in Los Angeles underwent an interior remodel that converted four resident rooms to a common use recreation room, laundry room and administrative office, including a change of exterior doors and windows, at a cost of $127,215.00.

68.    My survey of the Brookdale Chatsworth facility included an inspection of the route between the parking and the entrance to the facility, which is the path of travel to the improved area. This route has multiple barriers that include an inadequate smooth area on the push side of the swinging door and a threshold that exceeds the maximum height permitted by ADAAG or the CBC. They also include ramps with missing or incomplete handrails, handrails that are the wrong height, and handrails that don't extend sufficiently beyond the top and bottom of the ramp. The ramps also have excessive running and cross slopes and lack level landings. Both the activity room on the first floor in the lobby area and the activity room at the new Northwest addition also have access barriers, including tables with that lack adequate knee and toe clearance, door hardware and fixture hardware that is inaccessible, and counters that are too high.

69.    As with new construction, I observed pervasive access barriers in areas of alteration at Brookdale's California facilities. In my opinion, the existence of these barriers is the direct result of Brookdale's failure to adopt and implement any policy or procedure for ensuring that alterations have been or are performed in compliance with applicable ADA regulations or standards. According to its designated Rule 30(b)6) witness, Brookdale has no written policies and procedures regarding compliance with the ADA or California access standards when performing alterations to its facilities. Deposition of Kevin Bowman dated June 23, 2021, at 62:13-20; 139:2-142:25.  In fact, Brookdale's Rule 30(b)(6) witness, testifying on behalf of Defendants, had no knowledge of what constitutes an alteration within the meaning of the ADA and its regulations.  *Id.* at 148:14-149:2. Brookdale further testified, through its designees, that it has no employees with expertise in disability access (*id.* at 40:11-41:14), that its employees are not trained on the requirements of federal or state access standards including the 2010 ADAS, the 1991 ADAAG and the CBC (*id.* at 38:1-10), and that it does not retain any access consultants for purposes of reviewing construction projects to ensure that they

comply with federal and state access standards (*id.* at 119:1-7).  Brookdale does not conduct any survey or inspection at project close-out to determine whether its alterations projects comply with applicable access standards, nor does it have any written procedures or checklists for ensuring that alterations comply with the requirements of federal or state access standards.  *Id.* at 139:10-142:24. And Brookdale has not set any deadline for the remediation of any work that does not comply with federal and state standards.  *Id.* at 106:5-21.  Based on this testimony and my facility surveys and review of the material in this case, it is my opinion that Defendants' policies and procedures do not ensure compliance with the ADA and other disability access laws and standards. In fact, Defendants' policies, or lack thereof, make non-compliance inevitable.

**Readily Achievable Barrier Removal – All Facilities.**

70.    Under the ADA and California law, the owner, operator and/or manager of a public accommodation is required to remove access barriers from its facilities regardless of the age of the facility if doing is "readily achievable, *i.e.,* easily accomplished and able to be carried out without much difficulty or expense.  28 C.F.R. § 36.304. The U.S. DOJ has provided a non-exhaustive list of examples of readily achievable barrier removal at 28 C.F.R. 36.304(b).

71.    In my survey of Brookdale's California Assisted Living facilities, I observed many barriers at every facility I inspected that could be removed without much difficulty or expense, including those specifically identified by the DOJ. Readily achievable barrier removal actions identified by DOJ that need to be taken at Brookdale's California facilities include the following:

   a. Installing accessible ramps to replace those that are too steep or that lack a smooth and even surface as required by federal and state access standards

   b.  Making curb cuts in sidewalks and entrances

   c.  Repositioning shelves

   d.  Rearranging tables, chairs, and other furniture

   e.  Adding raised markings on elevator control buttons

   f.  Installing flashing alarm lights

   g.  Widening doors

h.   Installing accessible door hardware

i.   Installing grab bars where required and in the proper positions

j.   Installing lavatory pipes under sinks to prevent burns or abrasions

k.   Installing raised toilet seats

l.   Installing bathroom mirrors at the proper heights

m.  Repositioning paper towel dispensers in bathrooms

n.  Creating or reconfiguring accessible parking spaces to make them compliant

o.   Removing high pile, low density carpeting

72.   This list from the DOJ's regulations is not exhaustive, and I identified many other barriers in each of the facilities I inspected that could be removed by means of the following, readily achievable steps:

a.   Installing properly configured hand rails on ramps

b.   Adding compliant handrail extensions to existing hand rails

c.   Lowering clothes-hanging rods that are too high

d.   Lowering thermostat controls that are too high

e.   Providing compliant controls for windows and blinds

f.   Providing toilet paper dispensers and soap dispensers at proper height and locations

g.   Providing medicine cabinets and other fixtures that are within the required reach range

h.   Providing toilets that comply with federal and state access standards in terms of height and distance from the adjacent wall

i.   Replacing inaccessible furniture that does not provide the required knee and/or toe clearance

j.   Raising and/or relocating a wall-mounted lavatory or lavatory counter

k.   Lowering excessive door pressures and adjusting door closing times

[3779845.4]
DECLARATION OF JEFFREY SCOTT MASTIN ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., LLC, et al.,* Case No. 4:17-cv-03962-HSG (LB)
43

1

2

3

4

5

6

7

    l.  Replacing or removing doorway thresholds that are too high

    m.  Providing signage directing to intended accessible routes

    n.  Relocating tactile signs to the required locations so that persons with visual disabilities can expect to locate them

    o.  Providing tactile room identification and exit signs

    p.  Providing cane-detectable barriers at protruding or overhead objects

    q.  Providing audible signals and alarms

8

9

10

11

12

       73.    In my experience, these are barriers that are routinely removed by other entities covered by Title III of the ADA. It is my opinion that all of these barriers can readily be removed without difficulty and at a cost of $5,000 per item or less.  Creating designated accessible parking spaces is a readily achievable barrier removal item that is routinely carried out by the owners, operators, or managers of public accommodations.

13

14

15

16

17

       74.    The bathrooms in the resident's units and the common area restrooms contained many barriers that fall within the category of being readily achievable.  Most of the residential units that were inspected lacked grab bars in the bathrooms that comply with federal and state standards.  Many of the bathrooms in the units lacked an accessible toilet. This was also true of many of the public restrooms.  Providing a compliant toilet is another fix that is readily achievable.

18

19

20

21

22

23

24

25

26

27

       75.    There were numerous other readily achievable barrier removal items in the resident's units.  Clothing rods are mounted too high and outside the reach range of many wheelchair users. The clothing rods in the closets can be re-mounted at a compliant height without difficulty or expense; this fix is in the nature of a maintenance item.  Similarly, thermostats and switches in the units were often mounted too high, and have controls that require tight pinching or grasping in violation of the ADAAG and the CBC.  These controls can easily be replaced with push-button controls at a compliant height so that residents with mobility disabilities can control the temperature in their units without needing assistance from a nondisabled person.  Other "reach range" barriers in the units include built-in microwaves in the kitchens that are mounted at an inaccessible height, and that should be lowered.  Also, the controls for the windows and the blinds require tight pinching and

28

grasping to operate, and do not comply with ADAAG or the CBC.  These controls can easily be replaced and made compliant, thus allowing residents to open and close their windows and blinds without assistance.

76.    The common areas in Brookdale's assisted living facilities have many significant access barriers that can be removed with little expense or difficulty.  For example, Brookdale's dining room furniture includes tables that lack compliant knee and clearance for wheelchair users. Brookdale's facilities are also characterized by heavy doors with fast closing speeds that do not comply with federal and state standards, thus creating a falling hazard for residents with mobility disabilities.  Such excessive door pressures can easily be made compliant by maintenance staff, or if a fire door (which permits a higher pressure) is at issue, an automatic door opener can be installed with little cost or difficulty.

77.    According to the testimony of Brookdale's Rule 30(b)(6) designee, Mr. Bowman, Brookdale does not have any written policy for identifying and removing barriers whose removal is readily achievable. (Bowman June 23, 2021, Tr. at 62:22-63:4; 166:14-20). Brookdale has not conducted any survey or analysis to identify access barriers that would be readily achievable to remove from its assisted living facilities in California.  Nor has Brookdale developed any plan or set any deadline for completing the removal of such access barriers from its facilities.  (Bowman June 23, 2021, Tr. at 173:2-10). Thus, it is my opinion that Brookdale has no policies or procedures in place to complete readily achievable barrier removal in its facilities and that, the pervasive existence of barriers throughout 'Brookdale's California facilities that could be removed without much difficulty or expense is a direct result of Brookdale's failure to establish and implement such policies.

**Shuttle vehicles**

78.    In addition to inspecting the physical facilities, I inspected the vehicles at each facility that were made available to me that I understand are used to transport residents to and from off-property events. Almost all the facilities employed one shuttle vehicle equipped with a lift that can accommodate no more than two wheelchair users. Some facilities had two such shuttles.  One facility had such a shuttle, but could not operate the shuttle during the inspection due to the lack of staff

1   properly licensed to operate such a vehicle. All shuttles provided at least 10 standard seats, most

2   providing either 10 or 12 such seats.

3   ## CONCLUSION

4   79.   All of the Brookdale facilities that I inspected were generally inaccessible to residents

5   with mobility and/or vision disabilities as a result of pervasive access barriers.  These barriers deny

6   residents with mobility and/or vision disabilities full and equal access to Brookdale's assisted living

7   facilities, and are highly likely to cause such residents difficulty, discomfort, or embarrassment, if not

8   physical injury.  Based on the results of my access surveys of Brookdale's California facilities and

9   my review of other evidence in this case, including relevant documents and deposition testimony I

10  have identified, and based on my years of experience as a disability access expert and specialist, it is

11  my opinion that Brookdale has a policy and practice of disregarding its obligations under the ADA

12  and the Unruh Act by failing to take the necessary steps to identify and remediate barriers to access

13  in its California facilities that violate those provisions of law and their accompanying federal and

14  state regulations and access standards.

15       I declare under the penalty of perjury under the laws of the United States that the foregoing

16  is true and correct. Executed on August 17, 2021 in Setubal, Portugal.

17

18

19

20  Jeffrey Scott Mastin

21

22

23

24

25

26

27

28

[3779845.4]

DECLARATION OF JEFFREY SCOTT MASTIN ISO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
*Stiner et al., v. Brookdale Senior Living, Inc., LLC, et al.,* Case No. 4:17-cv-03962-HSG (LB)
46

# Appendix A

**Jeff Mastin**
Accessibility Expert
Facility Access Consulting, Inc., Carlsbad, California
jmastin@fac-ca.com • 949-439-5095

Experienced and highly knowledgeable expert on federal and various state accessibility regulation and interpretation. Highly regarded as an expert for both Plaintiff and Defendant, dedicated to unbiased interpretation of accessibility standards.

## Credentials/Education

- Architect, California License C-25681
- California Certified Access Specialist (CASp) #088
- Bachelor of Science, Architecture - California Polytechnic State University, San Luis Obispo
- Division of the State Architect (DSA) Subject Matter Expert (SME) for the California State Certified Accessibility Specialist (CASp) exam 2015 thru 2020.

## Employment History

- Current Principal/President, Facility Access Consulting, Inc., 2004-present
- Partner, Architerra Architects, 2006-2009
- Project Architect, Carter & Burgess 1998-2006
- Project Architect/Project Manager, Pitman Group Architects, 1994-1998
- Construction Manager, Pacific Newspaper Services, 1991-1994
- Architect Intern, Andrews Rothenburger Architects 1987-1991

## General Experience

- Twenty-three (23) years in architectural design
- Twenty-four (24) years leading teams
- Twenty (20) years specializing in disabled accessibility
- Three (3) years in construction management
- Current Principal/President, Facility Access Consulting, Inc.

## Accessibility Expert Witness Services

Qualified in federal and California courts to provide expert opinion in areas including architecture, construction, disability access, program access, the preparation and implementation of an ADA transition plan, policies procedures and practices regarding disability access barriers, and barrier removal.

Served as expert witness for either plaintiff or defense counsel, in hundreds of cases.
Subject facilities include a wide variety of privately and publicly funded public accommodations such as:

- Assembly, including stadiums;
- Civic facilities, including courthouses, health services, libraries, parks and recreation, etc.;
- Public pedestrian rights of way
- Education,  including K-12, Community College, and University,
- Entertainment, including theaters and movie studios;
- Hospitality;
- Housing, public and private;
- Medical, including hospitals and health care facilities;
- Retail;
- Transportation facilities, including rolling stock.

## Selection of Accessibility Experience

**Indian Wells Tennis Garden**                                                     2015-2017
Provided access compliance assessment and recommendations for remediation for the 54 acre tennis campus including two stadiums, and extensive temporary facilities provided for the annual BNP Paribas Open, with a two week attendance of over 400,000.

**Panda Express**                                                                 2014-present
Provided access compliance assessment and recommendations for remediation for 100 food service facilities in California. Served as expert witness in litigation matters.

**University of California Irvine Medical Center**                                 2008 -present
Provided/providing access compliance assessment and recommendations for remediation for the medical campus and off-campus facilities. Provided/providing plan review and plan check, accessibility consulting, and employee training. Plan review services include the 500,000 sf Douglas Hospital.  Campus assessment includes 25 buildings comprising 1.4 million sf., the 39 acre site, and parking facilities. Training includes various staff seminars and regular meetings to advise staff.

**Westfield, LLP**                                                                2010-present
Provided access compliance assessments for multiple retail mall facilities in California, Oregon, New Jersey, New York and Washington, which included recommendations and detailed design. Provided services in support of settlement negotiations for several properties that were the subjects of litigation. Provided plan review.

**University of California San Diego**                                             2015-present
Served on design team as accessibility consultant for Blake and Warren student hall renovations.

**Due Diligence Services**                                                        2015-present
Routinely serve on Due Diligence teams as an accessibility expert, evaluating potential property acquisitions. Clients include the University of California San Diego and private developers.

**Accessibility Expert for Court Appointed Monitor**                              2010-2015
Provided accessibility services in support of the Monitor in Pierce v County of Orange. Assisted in ensuring compliance with the Court-ordered plan of remediation at five Orange County Jail facilities. Worked with all parties to develop innovative solutions that satisfied security/safety concerns, yet were aligned with intent of the Order.

**Division of the State Architect (DSA), Accessibility Consultant**              2010-2011
Served as field accessibility consultant and architect for fast track modernization barrier removal at 12 K-12 facilities. Identified barriers, designed remediation and closed out contractor work.

**Macy's Nationwide, Accessibility Survey**                                       2008-2009
Developed state-specific criteria for use in facility evaluations. Trained and supported dozens of surveyors performing access compliance inspections for over 700 facilities nationwide. Assisted in developing tablet-based survey tools. Directed and was responsible for quality assurance and recommending remediation for each of over 700 assessments.

**San Francisco Unified School District**                                         2007-2009
Provided various accessibility surveys, assessments, plan reviews, scope analysis and code interpretation regarding existing and proposed SFUSD facilities for Plaintiff's counsel under a class action stipulated judgment.

**Division of the State Architect (DSA), Contract Plan Reviewer**               2005-2009
Provided access compliance plan reviews on a regular basis for public school projects as a contract consultant to DSA.  Included working with applicants through back-check and approval.

### Hotel Portofino, Redondo Beach, CA, Accessibility Expert                     2008 to present
Initially served as accessibility expert during litigation. Later provided access compliance assessment and recommendations for remediation for the facility, including on-site marina and conference centers. Provided expert witness services in accessibility, architecture and construction.

### Santa Rosa Junior College, ADA Title II Assessment                     2007-2008
Principal/Project Manager for survey of Santa Rosa, California campus. Provided recommendations and costs for remediation. Conducted seminar and training for administrators and staff in how to better meet their obligations.  Developed an SQL database system for managing the detailed information.

### Los Angeles Unified School District, Accessibility Consultant                     2007-2008
Provided accessibility consulting for the District during performance of a Modified Consent Decree, including interpreting standards on behalf of LAUSD at meetings with the Court-appointed Monitor.

### City College of San Francisco, Accessibility Path of Travel Assessment     2006-2008
Surveyed and provided recommendations for campus-wide circulation system strategy to be implemented under a consent decree. Developed and presented options that ensured adequate accessibility while minimizing waste (service provided as consultant to Architerra, LLP, Court appointed expert, agreed to by both parties).

### YUM! Brands Nationwide, Accessibility Survey and Assessment          2005-2006
Provided access compliance assessments and recommendations for remediation for 107 food service facilities nationwide.

### Staples Statewide, Accessibility Survey and Assessment                     2006
Provided access compliance assessments and recommendations for remediation for 55 retail stores and associated facilities in California.

### Orange County Justice Centers, Project Manager/Designer                     2003-2005
Project Manager/Designer for the renovation of three Orange County, CA courthouses to remove ADA barriers to public access. Balanced user requirements for function and County concerns for cost and schedule. Developed innovative solutions to remove barriers in fifty courtrooms while preserving the unique character of each facility and successfully working within the unique and sensitive political landscape inherent to the justice center environment.

### The Depot at Santa Ana, Assessment and Recommendation Study          2005
Prepared assessment and recommendation study for the 40,000 sf multi-use transportation station. Researched and identified the deficiencies of the facility in implementing Client program. Provided recommendations and concept plan. Provided comprehensive accessibility assessment with remediation recommendations and costs.

### State of California Developmental Centers, ADA Surveys          2001-2004
Project Architect and on-site manager for accessibility assessment for 3 facilities (Sonoma, Fairview and Lanterman). Scope of work at each campus consisted of approximately 80 buildings comprising 1,000,000 s.f. and 500 acres.  Trained and field-managed survey teams. Included recommendations for barrier removal and assistance with formal transition plan.

### County of Alameda, CA, ADA Title II Compliance Survey Project Architect          2003
Project Architect providing services to survey and recommend remediation with associated costs for 37 County facilities totaling two million square feet. Trained and field-managed survey teams and worked closely with the County of Alameda to assure quality control and non-disruption of services.

### County of Orange, CA, ADA Title II Compliance Survey Project Architect     1999-2000
Project Architect for the survey of 144 County facilities totaling 11,000,000 sf. and 38 harbors, beaches and parks totaling 79,000 acres. Trained and field-managed survey teams and worked closely with the County of Orange to assure quality control. Included recommendations for barrier removal and assistance with formal transition plan.

3

EXHIBIT A

## Selection of Architectural Projects

**Porterville Developmental Center 96-Bed Forensic Expansion**                    2004-2005
Project Architect for the 80 million dollar project that included 6 skilled nursing forensic residence buildings with surrounding secure perimeter and new Protective Services building.  The project also included 173 acre site infrastructure for 14 future buildings.  The extensive site improvements included roads, utilities and full emergency back-up power as well as systems for well water production and distribution, and physical and electronic security.

**State of California Lanterman Developmental Center, Project Architect**                    1999-2000
Project Architect for security and ADA compliance improvements to the existing campus. Balanced security and accessibility requirements for design of the campus Police Services Facility, two school buildings, and the retrofit of five existing residence buildings.

**Riverside Community Hospital**                    2002-2003
Assistant Project Architect for new parking structure, 8,000 s.f. G.I. expansion, 14,000 s.f. remodel and 21,000 s.f. E.R. renovation. Designed improvements to allow all hospital functions to remain operational during construction.

**New Corporate Facility, Mag Instrument**                    1999-2003
Project Architect for the 50 million dollar 700,000 s.f. facility.  The project included corporate offices, machine room, cafeteria, aluminum anodizing plant, assembly, warehouse, and shipping areas.  The 300,000sf machine room featured an innovative sub-floor oil collection flume working in conjunction with an oil-removing air handling system.

**Camarillo Ranch Business Park Master Plan**                    1997
Project Architect for the 45 acre speculative development that included subdivision, road and utility infrastructure and preservation of the historic Camarillo Ranch Home.

**Sisters of Notre Dame Academy, Los Angeles**                    1996
Project Architect for renovation to the circa 1920 historic elementary school.

**Medical Materials Corporation**                    1995-1996
Project Architect for the 35,000 s.f. high-tech manufacturing facility improvement and expansion. Worked closely with Client to design manufacturing processes and material handling to minimize and control hazardous occupancy requirements.  Project included emergency systems for explosion relief and temperature control of heat-reactive materials.

**Los Angeles Times Orange County Facility Press Bay Expansion**                    1991-1994
Project Engineer directly responsible for construction of the ten million dollar process systems installation, air handling and central plant expansion to accommodate the press bay expansion.  Applied innovative construction staging, and engineered interim processes that utilized existing infrastructure that saved hundreds of thousands of dollars.  Interacted with trade unions in utilizing skills of construction personnel. This position was primarily a construction management position with extensive design-build services.