1    Gerald L. Maatman, Jr. (IL SBN 6181016)
     gmaatman@seyfarth.com
2    Jennifer A. Riley (IL SBN 6272366)
     jriley@seyfarth.com
3    **SEYFARTH SHAW LLP**
     233 S. Wacker Drive, Suite 8000
4    Chicago, Illinois 60606
     Telephone:    (312) 460-5000
5    Facsimile:    (312) 460-7000

6    Justin T. Curley (SBN 233287)
     jcurley@seyfarth.com
7    **SEYFARTH SHAW LLP**
     560 Mission Street, 31st Floor
8    San Francisco, California 94105
     Telephone:    (415) 397-2823
9    Facsimile:    (415) 397-8549

10   Erica Rutner (FBN 0070510) (*Pro Hac Vice*)
     e.rutner@mooreandlee.com
11   John A. Bertino (VBN 93393) (*Pro Hac Vice*)
     j.bertino@mooreandlee.com
12   **MOORE & LEE, LLP**
     110 SE 6th Street, Suite 1980
13   Fort Lauderdale, Florida 33301
     Telephone: (703) 940-3763
14   Facsimile: (703) 506-2051

15   Attorneys for Defendants
     BROOKDALE SENIOR LIVING INC. and
16   BROOKDALE SENIOR LIVING COMMUNITIES, INC.

17

18                       UNITED STATES DISTRICT COURT

19                      NORTHERN DISTRICT OF CALIFORNIA

20                                        )
                                          )   Case No. 4:17-cv-03962-HSG (LB)
21   STACIA STINER, et al.,               )
                                          )   **DECLARATION OF ERICA RUTNER**
22   Plaintiffs,                          )   **IN SUPPORT OF DEFENDANTS'**
                                          )   **RESPONSE TO PLAINTIFFS'**
23   v.                                   )   **ADMINISTRATIVE MOTION TO**
                                          )   **CONSIDER WHETHER DEFENDANTS'**
24   BROOKDALE SENIOR LIVING INC., et     )   **MATERIAL SHOULD BE SEALED**
     al.                                  )
25                                        )   Judge:    Haywood S. Gilliam, Jr.
                                          )   Magistrate Judge:  Laurel Beeler
26   Defendants.                          )

27

28

I, Erica Rutner, declare:

1.      I am a partner with the law firm of Moore & Lee, LLP, attorneys of record for Defendants Brookdale Senior Living Inc. and Brookdale Senior Living Communities, Inc. (collectively, "Defendants") in this action.  An Order granting an application for my admission *pro hac vice* was entered on November 8, 2021. *See* ECF No. 321. I have personal knowledge of the matters stated herein, and if called as a witness, I could and would competently testify to each of the following facts.

2.      I submit this Declaration in support of Defendants' Response to Plaintiffs' Administrative Motion to Consider Whether to File Under Seal Certain Documents (the "Motion to Consider") relating to their Oppositions to Defendants' Motions to Exclude the Testimony of Dale Schroyer and Cristina Flores (respectively, the "Schroyer Opposition" and "Flores Opposition"). Defendants request that certain confidential information in the Schroyer and Flores Oppositions and associated exhibits remain redacted and/or under seal.

3.      Defendants request that only the documents (or portions of documents) referenced in Paragraph 4 remain redacted and/or under seal. These documents have been designated as "Confidential" or reference information from documents that have been designated as "Confidential".

4.      As set forth in more detail below, there exists good cause for these documents to be placed under seal.

      a.      Defendants request that the Court allow the redaction of portions of the Schroyer and Flores Oppositions and certain exhibits attached thereto. The redacted portions of the Oppositions contain confidential, non-public proprietary information that Defendants developed at their own expense to support operations.  In particular, the redactions address (a) the benchmarks calculated by Defendants' highly proprietary Service Alignment Software, (b) how the Software considers and accounts for various information in calculating benchmarks, (c) the results of Defendants' highly proprietary time studies and associated task time norms, and (d) the way in which Defendants record and consider these norms. As discussed in detail in the November 5, 2019 Declaration of Steven Boisen, attached as Ex. A, Defendants invested considerable time, money, and

effort in conducting time studies and developing the Service Alignment Software. If a competitor were to obtain this information, then it would cause competitive injury to Defendants, including because the competitor could use the information in its own operations and thereby wrongly benefit from the significant business investments Defendants have made.

b.  For the same reasons, Defendants request that the Court allow the sealing of the following exhibits attached to the Schroyer and Flores Oppositions:

   i.  Exhibit B to Flores Opposition / Exhibit C to Schroyer Opposition: This is a spreadsheet that reveals proprietary information regarding the results of Defendants' Clinical Time Studies. It is comparable to the information discussed *supra* in Paragraph 4.a.

   i.  Exhibit KK to Flores Opposition / Exhibit E to Schroyer Opposition: This is a document that reveals proprietary information regarding how Defendants identify resident's assessed needs for use in the Service Alignment Software. It is comparable to the information discussed *supra* in Paragraph 4.a.

   ii.  Exhibit LL to Flores Opposition / Exhibit J to Schroyer Opposition: This is a one-page document that reveals the specific proprietary task time norms discussed *supra* in Paragraph 4.a.

c.  Defendants also request that the Court allow the sealing of the following exhibit:

   i.  Exhibit D to Schroyer Opposition: This is a two-page document that contains confidential, non-public proprietary information concerning Defendants' internal business operations, including descriptions of the unique job responsibilities and duties for a certain type of employee.  If a competitor were to obtain this information, then it would cause competitive injury to Defendants, including because the competitor could use the information in its own operations and thereby wrongly benefit from the time, money, and effort spent by Defendants developing this unique information.

2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25 day of March 2022, in Fort Lauderdale, Florida.


*/s/ Erica Rutner*_____
Erica Rutner

3

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

CASE NO.: 0:17-cv-60664-CMA-ALTONAGA/GOODMAN

GLORIA RUNTON, by and through her guardian
ADULT ADVOCACY & REPRESENTATION,
on her own behalf and others similarly situated,

                                                         CLASS ACTION

        Plaintiff,

vs.

BROOKDALE SENIOR LIVING, INC.,

        Defendant.

_____/

**DECLARATION OF STEVEN BOISEN IN SUPPORT OF DEFENDANT BROOKDALE
SENIOR LIVING COMMUNITIES, INC.'S RESPONSES AND OBJECTIONS
TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**

I, Steven Boisen, declare and state as follows:

1.　　I am over the age of 18, am competent to testify, and have knowledge of the matters stated herein.

2.　　I am a Divisional Director, Service Alignment for Brookdale Senior Living Inc. ("Brookdale") for the southeast division, which includes the State of Florida. I am the subject matter expert pertaining to labor management and the Service Alignment System. My duties, among other things, include training executive directors on the Service Alignment System including the executive director for the community operated by BLC Tampa-GC, LLC, d/b/a Brookdale Bayshore ("Brookdale Bayshore").

3.　　It is my understanding that the plaintiff in the above-captioned matter seeks to obtain discovery related to Brookdale's proprietary Service Alignment System.

4.      The Service Alignment System is a highly proprietary operating platform that is designed to support decision-making at the local level, including by aligning community resources, improving quality and processes and increasing resident and associate satisfaction.  The Service Alignment System simultaneously considers the needs and acuity of a particular resident population, the physical plant and layout of a given community, and the projected time to complete a wide range of tasks associated with meeting resident care needs, among other factors.  This system is critical to the daily operations of Brookdale and its independent subsidiaries who operate individual communities and represents the core of Brookdale's business.  The Service Alignment System is also completely unique to Brookdale and distinguishes it from its competitors in the industry.

5.      A version of Brookdale's proprietary Service Alignment System has been in existence for more than five years and has gradually been implemented at the facilities owned and/or operated by Brookdale's independent subsidiaries in Florida over that same time frame.

6.      It is my understanding that the plaintiff in this action specifically seeks to obtain documents or information that comprise Brookdale's Service Alignment System, including categories of information that are highly proprietary and sensitive.  These categories include:

      a.   Service Alignment System time studies;

      b.   Service Alignment program algorithms and source codes; and

      c.   Training materials and manuals for the Service Alignment System.

7.      Each of the above categories of documents or information constitutes a critical, proprietary component of the Service Alignment System, the disclosure of which would result in irreparable harm to Brookdale.

CASE NO.: 17-cv-60664-CMA-ALTONAGA/GOODMAN

Time Studies

8.     In general, a time study identifies an estimated time it takes to complete each particular task that a community's staff undertakes in providing care to residents. During the five years since the inception of the Service Alignment Software, Brookdale has conducted numerous time studies to determine an expected time to complete various tasks associated with meeting resident care needs based on specific variables and factors that Brookdale has identified through its institutional experience.  These data points are then taken into account by the Service Alignment System, along with other several other variables, to establish benchmarks that assist local communities in making staffing determinations.  Brookdale has invested millions of dollars in research and data collection and analysis over many years to identify and measure the various factors to be taken into account and to develop and refine the proprietary formulae and algorithms that underlie the System.

9.     These time studies are extremely sensitive because other persons or entities cannot readily duplicate the data that Brookdale has collected or the institutional experience on which Brookdale has relied in identifying and weighing the variables. This is, in large part, because the investment of time, money, and effort to develop and to conduct similar studies that could form the foundation to build a system or software comparable to the Service Alignment System is prohibitively expensive and burdensome.

10.    Thus, Brookdale regards its time studies—and any explanatory reports generated therefrom—as highly confidential, proprietary and trade secrets. Brookdale has taken extensive precautions to ensure that these studies remain confidential.  Brookdale's time studies are not publicly available and, in fact, are even not generally available within Brookdale or its independent

subsidiaries. For example, Community-level associates and executive directors do not have access to Brookdale's time studies.

11.     The production of these time studies would thus force Brookdale to disclose the results of years of Brookdale's proprietary investigation and effort. If these time studies—or any data surrounding these studies—were to become available, they could provide the foundation for any of Brookdale's competitors to try and duplicate the Service Alignment System itself.

<u>Service Alignment System Algorithms and Source Code</u>

12.     The Service Alignment Software – the actual program that operates the Service Alignment System – is comprised of unique algorithms and source code. These algorithms and source code are extremely sensitive because they transform all the various inputs to the Service Alignment System (such as the time studies discussed above) into information and reports that are used at the local community level to inform staffing decisions. The Service Alignment Software is thus an essential component in ensuring that personal services are delivered in accordance with resident expectations and  quality requirements.

13.     The development of the Service Alignment Software's underlying algorithms and source code was performed by a very limited set of Brookdale's own personnel. This development occurred at Brookdale's direction and according to its strict specifications under the confines of confidentiality.

14.     Since its development, significant efforts have been taken by Brookdale to maintain the secrecy of the Service Alignment Software. Neither the Service Alignment Software nor the reports generated from this system are publicly available. Access to the Service Alignment System is limited to appropriate decision makers and to those individuals directly involved in staffing decisions.  And, the platforms in each community where the Service Alignment Software is

accessible are password protected and restricted to those individual department heads who have a particular need for access. Each person who has access must first be approved and the access granted is limited to only that information which is necessary to that person's job function and for the time frame necessary for that person to perform his or her duties. Furthermore, those limited people who are granted access can only do so from a properly registered computer. Moreover, no one at the community level have access to the underlying algorithms and source codes for the program. These are highly confidential.

15.     The Service Alignment Software and algorithms represent a substantial investment on Brookdale's part in financial resources of multiple millions of dollars as well as time spent – the construction, evaluation and initial implementation took tens of thousands of hours over several years. Thus, Brookdale derives substantial independent economic value from the proprietary nature of the current version of the Service Alignment Software. If disclosed, however, any of Brookdale's competitors or potential competitors could repurpose the Service Alignment Software for their own use and reap the undeserved benefit of Brookdale's time, effort, and insight derived from its unique business experience.

<u>Training Materials and Manuals</u>

16.     Over the past five years, Brookdale has developed a number of polices, guidelines, training courses and other explanatory materials aimed at regional, district, Executive Directors and/or Health & Wellness Directors on how to properly and effectively utilize the Service Alignment System. Brookdale regards these materials as highly confidential, proprietary, and a trade secret because they necessarily reveal, in part, the proprietary information and components that comprise the Service Alignment System itself. Many of these materials also include photos or other direct reproductions of portions of the Service Alignment System. Like the underlying

components of the Service Alignment system, these training materials and manuals are not publicly available or disseminated outside of Brookdale because that would result in the disclosure of the underlying confidential, proprietary information discussed therein. All employees within Brookdale communities who are afforded access to these materials are subject to confidentiality obligations.

17.     Production of Brookdale's training materials and manuals for the Service Alignment System would result in a windfall to Brookdale's competitors and could cause Brookdale irreparable harm. Brookdale invested substantial financial resources to create the Service Alignment System, and the disclosure of any materials containing such detailed descriptions and explanations of the Service Alignment System effectively would allow Brookdale's competitors access to trade secrets and other proprietary and confidential information to obtain an unfair competitive advantage over Brookdale.

### Alternative Documents

18.     Despite the above, I believe that some documents and information relating to the Service Alignment System can be disclosed so long as they are kept confidential in accordance with the terms of the confidentiality order agreed to by the parties in this case, which I have reviewed.

19.     In particular, I believe that a sampling of certain reports reflecting historical resident care needs and staffing data provide an accurate representation of the types of data considered and generated by Service Alignment Software.  This would include a sampling of personal service assessments (which are individual assessments of a particular resident's care need, as well as acuity reports (which are daily reports that aggregate individual resident needs on a community-wide basis to determine the overall acuity needs for that community).  In effect, the

acuity report provides all the information necessary to determine a community's care needs without necessitating the production of every individual resident's patient file.

20.     In addition to the above, the data maintained within and analyzed by Service Alignment Software provides the ability to generate a number of reports. One such report is known as a labor detail report, which is a daily report that identifies and compares the staffing benchmarks generated by the Service Alignment System (based, in part, on the acuity reports) to actual staffing levels derived directly from staff timecards. Brookdale has the ability to generate historical labor detail reports dating to when a facility began using the Service Alignment Program. In contrast, however, many other reports available in the Service Alignment Program cannot be generated for historical data, and are no longer reproducible.

21.     Additionally, to the extent more information about how the Service Alignment System works is required, including a description of the nature and types of the various inputs and outputs of the Service Alignment System, this information can be provided in the form of interrogatory responses or deposition testimony so long as such responses and testimony are protected by the confidentiality order and do not require divulging the specific types of data described above.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct to the best of my knowledge.

DATED this **1st** day of September 2017, at **Pinellas County** , Florida.

Steven Boisen

CASE NO.: 17-cv-60664-CMA-ALTONAGA/GOODMAN

<u>Certificate of Service</u>

I hereby certify that on September 1, 2017, the foregoing *Declaration of Steven Boisen in Support of Defendant Brookdale Senior Living Communities, Inc.'s Response and Objection to Plaintiff's First Request to Produce and Motion for Protective Order* was electronically filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing Generated by CM/ECF.

/s/ _____

<u>Service List</u>

J. ANDREW MEYER, ESQ.
**J. Andrew Meyer, P.A.**
Florida Bar No. 0056766
15565 Gulf Boulevard
Redington Beach, Florida 33708
Telephone: (727) 709-7668
Email:  andrew@jandrewmeyer.com

CHRISTA L. COLLINS, ESQ.
**Harmon, Woods and Parker, P.A.**
Florida Bar No. 0381829
110 North 11th Street, 2nd Floor
Tampa, Florida 33602
Telephone: (813) 864-1762
Facsimile: (813) 222-3616
Email:  clc@harmonwoodslaw.com

JON R. MANI, ESQ.

**Mani Ellis & Layne, PLLC**
Admitted Pro Hac Vice
P. O. Box 1266
Charleston, WV  25325-1266
(304) 720-1000
(304) 720-1001 (Fax)
Email: dlellis@mel-law.com