**MOORE & LEE, P.C.**
Erica Rutner (SBN 344880)
e.rutner@mooreandlee.com
John A. Bertino (VBN 93393) (*Pro Hac Vice*)
j.bertino@mooreandlee.com
110 SE 6th Street, Suite 1980
Fort Lauderdale, Florida 33301
Telephone: (703) 940-3763
Facsimile: (703) 506-2051

**SEYFARTH SHAW LLP**
Michael D. Jacobsen (IL SBN 6303584) (*Pro Hac Vice*)
mjacobsen@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

**SEYFARTH SHAW LLP**
Justin T. Curley (SBN 233287)
jcurley@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendants
BROOKDALE SENIOR LIVING INC. and
BROOKDALE SENIOR LIVING COMMUNITIES, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| STACIA STINER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROOKDALE SENIOR LIVING INC., et al. <br><br> Defendants. | Case No. 4:17-cv-03962-HSG <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DECERTIFY THE RULE 23(B)(2) ACCESS BARRIER SUBCLASSES** <br><br> Hearing: September 19, 2024 <br> Time: 2:00 pm <br> Judge: Hon. Haywood S. Gilliam, Jr. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 19, 2024, at 2:00 p.m., or as soon as this matter may be heard in Courtroom 2 of the above-captioned Court, located at the Ronald V. Dellums Federal Building and U.S. Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendants Brookdale Senior Living Inc. and Brookdale Senior Living Communities, Inc. (collectively "Defendants"), will and hereby do move this Court for an order decertifying the Rule 23(b)(2) Access Barrier Subclasses.

This motion is made pursuant to Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure (the "Rules"). Rule 23(c)(1)(C) provides that a district court is free to alter or amend an order granting or denying class certification any time before final judgment. Pursuant to this Rule, the Ninth Circuit has made clear that the standard for class decertification is the same as it is with class certification: "[t]he party seeking class certification[] bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (internal quotations omitted). Here, based on newly produced data, it is evident that the vast majority of the members of the Rule 23(b)(2) Access Barrier Subclasses—upwards of 70%—are former residents who lack standing to seek prospective injunctive relief. Governing law provides that a Rule 23(b)(2) class cannot be certified where, as here, the class is defined to include a great number of identifiable individuals who do not face a future risk of harm and therefore do not have a claim for prospective relief. Nor can the class definition be amended to exclude former residents as that would result in Plaintiffs failing to satisfy the numerosity requirement of Rule 23(a). Accordingly, the Court should decertify the Access Barrier Subclasses.

## INTRODUCTION

The Court recently certified three Rule 23(b)(2) subclasses consisting of both current and former residents of three Brookdale-affiliated assisted living communities (the "Access Barrier Subclasses"). *See* ECF No. 820 ("Order"). While the parties had disputed the nature of the class definitions and whether they were limited to current residents, the Court deferred to the "subclass definitions themselves" and concluded that they did not restrict membership to current residents. Order at 9-10. In light of this, the Court found that numerosity was satisfied for the three Access Barrier Subclasses. Following the Order, Defendants completed their production of the class list for the members of the Rule 23(b)(2) Scooter and Wheelchair Users Subclass (the "FSP Subclass"). In so doing, Defendants were able to identify many of the former residents who are also members of the Access Barrier Subclasses. Defendants' analysis of the available data reveals that the vast majority of the members of the Access Barrier Subclasses—upwards of 70%—are former residents.

Based on governing law, former residents who do not have an intent to return to the communities do not have standing to seek prospective injunctive relief. Governing law further provides that a (b)(2) class should not be certified where it is defined to include a great number of identifiable individuals who do not face a future risk of harm and therefore do not have a claim for prospective relief. Here, the data that Defendants have recently identified makes clear that the certified subclasses are defined to include a great number of identifiable individuals who lack standing to seek prospective relief—namely, the former residents, many of whom are also deceased. Under these circumstances, governing law provides that the Court should decertify the Access Barrier Subclasses.

## BACKGROUND

On July 22, 2024, the Court granted class certification as to three Rule 23(b)(2) subclasses asserting claims for alleged access barriers at three Brookdale-affiliated assisted living communities (*i.e.*, the "Access Barrier Subclasses").[1] Although Plaintiffs affirmatively stated in their Motion for Subclass Certification

---

[1] The three subclasses are referred to herein as the Brookhurst Subclass, the San Ramon Subclass, and the Scotts Valley Subclass. The Brookhurst, San Ramon, and Scotts Valley Communities are collectively referred to herein as the "Three Communities."

that "[a]ll subclasses proposed under Fed. R. Civ. Proc. 23(b)(2) are limited to current residents,"[2] the Court found that the subclass definitions themselves did not restrict membership to current residents and instead contemplated subclasses comprised of both current and former residents. *See* Order at 9-10. Because former residents were deemed included in the Access Barrier Subclasses, the Court found that numerosity was satisfied. *Id*. at 10.

Subsequent to the Court's Order, Defendants completed their production of the class list for the members of the FSP Subclass. Although the FSP Subclass is limited to users of motorized mobility devices, Defendants did not have a readily available way to accurately ascertain the population of residents who used motorized mobility devices as compared to non-motorized devices. *See* Decl. of E. Rutner ¶ 3. As such, Defendants produced a list that included residents who used any kind of mobility device—both motorized and non-motorized—and who are not subject to arbitration. *See id*. This list therefore includes all mobility-disabled individuals included in the Access Barrier Subclasses. *Id.* Based on the list, Defendants have identified at least 85 former residents in the Brookhurst Subclass, 55 former residents in the Scotts Valley Subclass, and 65 former residents in the San Ramon Subclass. *Id.* ¶ 4.[3] As set forth in Defendants' Opposition, however, there are only 15 current residents who are members of the Brookhurst Subclass, 23 current residents who are members of the Scotts Valley Subclass, and 29 current residents who are members of the San Ramon Subclass. That means that the former residents make up at least 85% of the Brookhurst Subclass, 71% of the Scotts Valley Subclass, and 69% of the San Ramon Subclass. *Id.*

## LEGAL STANDARD

Pursuant to Rule 23(c)(1)(C), a district court is free to alter or amend an order granting or denying class certification any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C). The standard for class decertification is the same as it is with class certification: "[t]he party seeking class certification[] bears the

---

[2] Plaintiffs' Motion for Certification of Facility-Level Access Subclasses [ECF No. 740] at 3.

[3] While the newly produced data does not identify the number of former residents who are solely vision disabled, that is immaterial because those numbers would only increase the population of class members who constitute former residents. *Id.* ¶ 5. Because Defendants have already identified the total number of current residents in the Access Barrier Subclasses—which is inclusive of those who are solely vision disabled—the identification of additional former residents who are solely vision disabled would only lead to a greater proportion of former residents.

burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (internal quotations omitted); *see also Cruz v. Dollar Tree Stores, Inc.*, 270 F.R.D. 499, 502 (N.D. Cal. 2010) ("The standard applied by the courts in reviewing a motion to decertify is the same as the standard used in evaluating a motion to certify; namely, whether the requirements of Rule 23 are met."); *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000) (same). "A motion to decertify a class is not governed by the standard applied to motions for reconsideration." *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 635 (S.D. Cal. 2015); *see also Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 593 n.6 (E.D. Cal. 1999) ("Because the court has the power to alter or amend the previous class certification order under Rule 23(c)(1), the court need not consider whether 'reconsideration' is also warranted under Fed.R.Civ.P. 60(b) or [local rules governing reconsideration]."). In deciding whether to decertify, the Court will consider "subsequent developments in the litigation," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), and "the nature and range of proof necessary to establish the class-wide allegations." *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479-80 (C.D. Cal. 2008) (internal quotations omitted).

## ARGUMENT

### I. Former Residents Do Not Have Standing to Seek Injunctive Relief

To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate an "actual and imminent" threat of future harm. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). In their Reply in Support of Subclass Certification, Plaintiffs argued that former residents have standing to seek injunctive relief so long as they were current residents at the time the Complaint was filed. ECF No. 805 at 14. According to Plaintiffs, standing is established based solely on the facts that existed when the Complaint was filed and subsequent developments cannot change that. *Id.* The Court correctly rejected that argument, holding that post-filing developments that affect the standing analysis must be considered and "standing may be contested even as late as trial." Order at 8, n. 5. The Court's conclusion is consistent with the Supreme Court's holding in *Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338 (2011) ("*Dukes*"). In *Dukes*, the Supreme Court faulted the Ninth Circuit for failing to "eliminate *all* former employees from the certified class" and

instead "eliminat[ing] only those who had left the company's employ by the date the complaint was filed." *Id*. at 364-65 (emphasis in original). According to the Supreme Court, "[t]hat solution has no logical connection to the problem, since those who have left their Wal-Mart jobs *since* the complaint was filed have no more need for prospective relief than those who left beforehand." *Id*. at 365 (emphasis in original).

As in *Dukes*, the former residents who are members of the Access Barrier Subclasses do not have standing merely because they were current residents when the Complaint was filed. Rather, what matters are the facts as they exist now. And, as both the Supreme Court and the Ninth Circuit have made clear, individuals who formerly faced a risk of harm but who now no longer face that risk do not have standing to seek injunctive relief for alleged discriminatory conduct. *See id*. (former employees seeking to challenge discriminatory conduct "have no claim for injunctive or declaratory relief at all."); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985-86 (9th Cir. 2011) (former employees "do not have standing to seek injunctive relief" that challenges discriminatory conduct by the defendant). Thus, for instance, the court in *Pileggi v. Wells Fargo Bank* held that individuals whose loan applications were previously denied pursuant to the defendant's alleged discriminatory policy but who were no longer customers of the defendant could not demonstrate that prospective injunctive relief would "provide them with any benefit." *N.A.*, 2013 WL 12325151, at *4 (N.D. Cal. Aug. 14, 2013). While such individuals may "reserve an intention to one day return to the [defendant's'] fold," this was mere speculation based on the current record and was not sufficient to demonstrate that these putative class members faced a concrete risk of future harm. *Id.* (noting that, while the plaintiffs themselves had come forward with evidence that they intended to return to the defendant bank, there was no evidence that any other individuals whose applications were denied had that same intent).

Here, just as in the aforementioned cases, Plaintiffs have not demonstrated that the members of the Access Barrier Subclasses who no longer reside at one of the Three Communities face an actual and imminent threat of future harm. As set forth in *Dukes*, those who left the Three Communities since the Complaint was filed "have no more need for prospective relief than those who left beforehand." 564 U.S. at 365. To the extent Plaintiffs assert that certain former residents have an intent to return, that assertion

is—at best—speculative and unsupported by the record.[4] In fact, many of the former residents are now deceased and necessarily cannot have any such intent.[5] As such, the former residents who are members of the Access Barrier Subclasses do not have standing to seek prospective injunctive relief.

### II. Given the Large Proportion of Identifiable Class Members Who Lack Standing to Seek Injunctive Relief, the Court Should Decertify the Access Barrier Subclasses

In the Order, the Court noted that "'there is no per se rule preventing district courts from certifying a class that may include more than a de minimis number of uninjured class members.'" Order at 27 (relying on *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651 (9th Cir. 2022) ("*Olean*")).[6] However, in *Olean,* the Ninth Circuit held that "a court *must* consider whether the possible presence of uninjured class members means that the class definition is fatally overbroad. When 'a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.'" 31 F.4th at 669, n.14 (emphasis added).[7]

Consistent with that principle, both the Supreme Court and the Ninth Circuit have made clear that a (b)(2) class should not be certified if it is defined to include a large group of identifiable individuals with no claim for prospective injunctive relief. In *Dukes*, about "half the members of the class approved by the Ninth Circuit [had] no claim for injunctive or declaratory relief at all." 564 U.S. at 365. The Supreme Court held that, under such circumstances, the "claims should not be certified under Rule 23(b)(2) at all." *Id*.

---

[4] As in *Pileggi*, only Plaintiff Algarme has claimed an intent to return. There is *no* evidence that any other former residents included in the Access Barrier Subclasses have an intent to return.

[5] For instance, based on available move-out data, the number of former residents who "moved out" of the Three Communities because they had passed away are as follows: 33 out of the 65 former residents of the San Ramon Subclass (~51%), 17 out of the 55 former residents of the Scotts Valley Subclass (~31%), and 25 out of the 85 former residents of the Brookhurst Subclass (~29%). *See* Decl. of E. Rutner ¶ 6. Those numbers do not include any individuals who passed away since they moved out of the Three Communities.

[6] The Court cited to its March 30, 2023 Class Certification Order in support of this principle, which in turn cited to *Olean*, 31 F. 4th 651. ECF No. 594 at 53.

[7] Moreover, the court's statement in *Olean* that a class may be certified even if it includes a de minimis number of uninjured class members was made in the context of its analysis of whether the plaintiffs had satisfied the elements of Rule 23(b)(3). That statement does not suggest that it is appropriate to certify a Rule 23(b)(2) class consisting mostly of uninjured members who have no claim for prospective relief whatsoever.

(further noting that would be "wasteful of the District Court's time" to continually excise plaintiffs from the class as they leave their employment). Relying on *Dukes*, the Ninth Circuit in *Ellis* then held that "the district court *must* consider how best to define the class(es) to ensure that all class members have standing to seek the requested relief." 657 F.3d at 988 (emphasis added). In both cases, the courts were addressing the legal infirmity inherent in defining a (b)(2) class to include former employees—a large group of identifiable individuals who lack standing to seek prospective relief. These two controlling authorities alone make clear that the Access Barrier Subclasses should not be defined to include former residents. Just like the former employees in *Dukes* and *Ellis*, the former residents constitute a large group of identifiable individuals who lack standing to seek injunctive relief.

If that were not independently sufficient, district courts in this Circuit have also consistently held that it is improper to certify a (b)(2) class under these circumstances. For instance, in *Galfer v. City of Los Angeles*, the court declined to certify a (b)(2) class challenging the outsourcing of parking tickets because the plaintiff's class definition "embraces identifiable members who do not have standing to sue" and was therefore fatally "overbroad." 2014 WL 12966872, at *1, *6 (C.D. Cal. May 8, 2014). When the *Galfer* plaintiffs subsequently filed a renewed motion for certification arguing that putative class members faced a future risk of harm because they might receive parking tickets in the future, the *Galfer* court rejected that argument because "an injunction must provide relief to the class as a whole in order to satisfy Rule 23(b)(2) [and] [f]or those members …who have no plans to revisit the City, the prospective injunction and declaration provide no relief at all." 2014 WL 12966867, at *5, *8 (C.D. Cal. Aug. 4, 2014). Similarly, *In re Consesco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, the court granted the defendant's motion to decertify a (b)(2) class that included former policyholders on the grounds that such members "lack standing to pursue declaratory or injunctive relief." 2011 WL 6372412, at *5-6 (N.D. Cal. Dec. 20, 2011). Relying on *Dukes*, the court reasoned that former policyholders (as opposed to current policyholders) could only be entitled to monetary relief and "monetary claims for past behavior cannot be the sole justification for membership in a 23(b)(2) class post-*Dukes*." *Id.* Likewise, in *Pileggi*, the court refused to certify a (b)(2) class because it included two discrete categories of individuals who would not benefit from any injunctive relief. 2013 WL 12325151, at *4. Even though the class definition also included categories

of individuals who could have plausibly benefitted from injunctive relief, the court declined to certify the (b)(2) class at all because it "would require redrafting and substantially narrowing plaintiffs' proposed class definition." *Id*. And in *Gonzalez v. Comcast Corp.*, the court denied certification of a Rule 23(b)(2) class defined to include former Comcast subscribers because "based on the proposed class definitions, the vast majority of class members would have no claim for injunctive relief." 2012 WL 10621, at *16 (E.D. Cal. Jan. 3, 2012), *report and recommendation adopted*, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012).[8]

Here, the recently produced data makes clear that the large majority of class members in the Access Barrier Subclasses are former residents who do not face a risk of future harm and therefore lack standing to seek injunctive relief. In fact, far more than half of the class members have no claim at all for injunctive relief—even more than in *Dukes*. These members are readily identifiable simply by virtue of being former residents. Under these circumstances, governing law as set forth in *Dukes* and *Ellis* requires that the Access Barrier Subclasses be decertified.

### III. Limiting the Access Barrier Subclasses to Current Class Members Will Not Satisfy Rule 23(a)

While district courts have discretion to re-define putative classes where appropriate, it would be futile to do so here because redefining the Access Barrier Subclasses would require limiting the subclasses to current residents. As Defendants established in their Opposition to Plaintiffs' Motion for Subclass Certification, when the Access Barrier Subclasses are limited to current residents, Plaintiffs do not satisfy numerosity. ECF No. 783 at 22-23. In fact, based on Defendants' unchallenged identification of the number of current residents who both opted out of arbitration and satisfy Plaintiffs' (overbroad) disability profile, all three Access Barrier Subclasses have far fewer than 40 members. *Id*. Accordingly, even if the Court redefines the Access Barrier Subclasses to include only current residents, the redefined subclasses still could not be certified because they would not satisfy the requirements of Rule 23(a). *See also Gen. Tel. Co. of*

---

[8] *See also Kurihara v. Best Buy Co.*, 2007 WL 2501698, at *8 (N.D. Cal. Aug. 30, 2007) (denying certification of a (b)(2) class where the "proposed class definition explicitly envisions a certain proportion of former employees. Accordingly, the predominant claims in this action are monetary, and certification under Rule 23(b)(2) is not available"); *Jang v. Asset Campus Hous., Inc.*, 2016 WL 11755105, at *4 (C.D. Cal. May 4, 2016) (denying certification of a (b)(2) class because it was defined to include "former residents of an ACH-related California apartment" and such individuals "lacked standing to seek injunctive or declaratory relief under Rule 23(b)(2)").

7

*Sw.*, 457 U.S. at 160 (holding that, although the ability to modify a class definition after certification "enhances the usefulness of the class-action device; actual, not presumed, conformance with Rule 23(a) remains, however, indispensable").

## CONCLUSION

For the foregoing reasons, the Court should decertify all three Access Barrier Subclasses and order any other relief it deems just and proper.

DATED: August 8, 2024                                           Respectfully Submitted,

/s/ *Erica Rutner*
Erica Rutner
e.rutner@mooreandlee.com
John A. Bertino
j.bertino@mooreandlee.com
**MOORE & LEE, P.C.**
110 SE 6th Street, Suite 1980
Fort Lauderdale, Florida 33301
Telephone: (703) 940-3763

Attorneys Defendants BROOKDALE SENIOR LIVING INC. and BROOKDALE SENIOR LIVING COMMUNITIES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Erica Rutner*
Erica Rutner

8
DEFENDANTS' MOTION TO DECERTIFY RULE 23(B)(2) ACCESS BARRIER SUBCLASSES
CASE NO. 4:17-CV-03962-HSG

311509350v.2