| | |
|---|---|
| Guy B. Wallace – 176151<br>Mark T. Johnson – 76904<br>Jennifer U. Bybee - 302212<br>Travis C. Close – 308673<br>Rachel L. Steyer – 330064<br>**SCHNEIDER WALLACE**<br>**COTTRELL KONECKY LLP**<br>2000 Powell Street, Suite 1400<br>Emeryville, California  94608-1863<br>Telephone:        (415) 421-7100<br>Facsimile:         (415) 421-7105<br>Email:  gwallace@schneiderwallace.com<br>            mjohnson@schneiderwallace.com<br>            juhrowczik@schneiderwallace.com<br>            tclose@schneiderwallace.com<br>            rsteyer@schneiderwallace.com | Gay Crosthwait Grunfeld – 121944<br>Jenny S. Yelin – 273601<br>Benjamin Bien-Kahn – 267933<br>Adrienne Spiegel – 330482<br>**ROSEN BIEN**<br>**GALVAN & GRUNFELD LLP**<br>101 Mission Street, Sixth Floor<br>San Francisco, California  94105-1738<br>Telephone:        (415) 433-6830<br>Facsimile:         (415) 433-7104<br>Email: ggrunfeld@rbgg.com<br>            bbien-kahn@rbgg.com<br>            jyelin@rbgg.com<br>            aspiegel@rbgg.com |
| Kathryn A. Stebner – 121088<br>Brian S. Umpierre – 236399<br>**STEBNER GERTLER**<br>**GUADAGNI & KAWAMOTO**<br>**A Professional Law Corporation**<br>870 Market Street, Suite 1285<br>San Francisco, California  94102-2918<br>Telephone:        (415) 362-9800<br>Facsimile:         (415) 362-9801<br>Email:  kathryn@sggklaw.com<br>            brian@sggklaw.com | David T. Marks – *pro hac vice*<br>**MARKS, BALETTE, GIESSEL**<br>**& YOUNG, P.L.L.C.**<br>7521 Westview Drive<br>Houston, Texas 77055<br>Telephone:        (713) 681-3070<br>Facsimile:         (713) 681-2811<br>Email:  davidm@marksfirm.com |

Attorneys for Plaintiffs, the Certified Classes and the Proposed Subclasses

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA-OAKLAND DIVISION

| | |
|---|---|
| STACIA STINER, et al., on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br>vs.<br><br>BROOKDALE SENIOR LIVING, INC.; BROOKDALE SENIOR LIVING COMMUNITIES, INC.; et al.,<br><br>            Defendants. | Case No. 4:17-cv-03962-HSG (LB)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    September 19, 2024<br>Time:   2:00 p.m.<br>Place:  Courtroom 2<br>Judge:  Hon. Haywood S. Gilliam, Jr. |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.     INTRODUCTION..............................................................................................................1

II.    RELEVANT PROCEDURAL BACKGROUND................................................................3

III.   ISSUE PRESENTED .........................................................................................................6

IV.   LEGAL STANDARD ........................................................................................................6

V.    ARGUMENT.....................................................................................................................6

      A.     Whether The District Court Applied The Correct Legal Standard Regarding Standing, Eligibility For Statutory Damages, And Predominance Under Rule 23(b)(3) In Unruh Act Cases Presents A Controlling Question Of Law ............................................................................6

      B.     Multiple District Court Opinions Demonstrate That There Is Substantial Ground for Difference Of Opinion On The Legal Standards for Evaluating Standing, Eligibility For Statutory Damages, And Rule 23(b)(3) Predominance In Unruh Act Cases ......................................................8

      C.     Determining Whether The District Court Applied The Correct Legal Standard Regarding Standing, Eligibility For Statutory Damages, And Rule 23(b) Predominance in Unruh Act Cases Will Materially Advance This Litigation..............................................................................................11

VI.   CONCLUSION................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
   No. 06cv02671 BTM (WMc), 2012 WL 3762440 (S.D. Cal. Aug. 28, 2012) ........................ passim

*Castaneda v. Burger King Corp.*,
   264 F.R.D. 557 (N.D. Cal. 2009) ...................................................................................... 5, 10, 11

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) ................................................................................................ 1, 6, 8

*Davis v. Laboratory Corp. of America Holdings*,
   604 F. Supp. 3d 913 (C.D. Cal. 2022), *aff'd*, No. 22-55873, 2024 WL 489288 (9th Cir. Feb. 8, 2024) ....................................................................................................................................... 5, 11

*Flores v. Velocity Express, LLC*,
   No. 12-cv-05790-JST, 2015 WL 4463639 (N.D. Cal. July 21, 2015) .......................................... 6

*Heaton v. Soc. Fin., Inc.*,
   No. 14-cv-05191-TEH, 2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ........................................... 6

*Hoffman v. Citibank (South Dakota), N.A.*,
   No. SACV 06-0571 AG (MLGx), 2007 WL 5659406 (N.D. Cal. Feb. 15, 2007) ....................... 2

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
   22 F.4th 1125 (9th Cir. 2022) .................................................................................................. 8, 11

*In re Cement Antitrust Litig. (MDL No. 296)*
   673 F.2d 1020 (9th Cir. 1981) ........................................................................................ 1, 6, 7, 11

*Moeller v. Taco Bell Corp.*,
   No. C 02-5949 PJH, 2012 WL 3070863 (N.D. Cal. July 26, 2012) ................................ 5, 9, 10, 11

*Nevarez v. Forty Niners Football Co. LLC*,
   326 F.R.D. 562 (N.D. Cal. 2018) ...................................................................................... 5, 10, 11

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ........................................................................................................ 8

*Silbersher v. Allergan Inc.*,
   No. 18-cv-03018-JCS, 2021 WL 292244 (N.D. Cal. Jan. 28, 2021) .......................................... 12

*Su v. Siemens Indus., Inc.*,
   No. 12-cv-03743-JST, 2014 WL 4775163 (N.D. Cal. Sept. 22, 2014) ........................................ 7

*Union Cnty., Iowa v. Piper Jaffray & Co, Inc.*,
   525 F.3d 643 (8th Cir. 2008) ........................................................................................................ 8

*United States ex rel. Atlas Copco Compressors LLC v. Rwt LLC*,
   No. 16-00215 ACK-KJM, 2017 WL 2986586 (D. Haw. July 13, 2017) ................................... 12

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
  No. CV 17-1694 PSG (SSx), 2019 WL 6973547 (C.D. Cal. Oct. 8, 2019) .................................... 12

*United States v. Woodbury*,
  263 F.2d 784 (9th Cir. 1959) ........................................................................................................ 6

*Vondesaar v. Starbucks Corp.*,
  No. CV 12-05027 DDP (AJWx), 2015 WL 629437 (C.D. Cal. Feb. 12, 2015), *aff'd*, 719 F. App'x
  657 (9th Cir. 2018) ............................................................................................................. 5, 7, 10

*Wal-Mart Stores, Inc. v. Dukes*,
  562 U.S. 338 (2011) ..................................................................................................................... 9

**STATUTES**

28 U.S.C. § 1292 ................................................................................................................................ 1

28 U.S.C. § 1292(b) .................................................................................................................... 1, 3, 6

Cal. Civ. Code § 55.56 ................................................................................................................... 1, 3

Cal. Civ. Code § 55.56(b) ................................................................................................................. 4

Cal. Civ. Code § 55.56(c) ................................................................................................................. 4

**RULES AND REGULATIONS**

Fed. R. Civ. P. 23(b) ............................................................................................................. 1, 2, 3, 7

Fed. R. Civ. P. 23(b)(2) ............................................................................................................ 3, 10, 11

Fed. R. Civ. P. 23(b)(3) ........................................................................................................... passim

**OTHER AUTHORITIES**

16 Wright, Miller & Cooper, Fed. Prac. & Proc. (Juris.) § 3930 (3d. ed.)) ........................................... 7

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on September 19, 2024, at 2:00 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Haywood S. Gilliam, Jr., located at 1301 Clay Street, Oakland, California, Plaintiffs Stacia Stiner, *et al.*, on behalf of themselves and all others similarly situated, will, and hereby do, move this Court for an order certifying its July 22, 2024 Order Granting In Part And Denying In Part Plaintiffs' Motion For Certification Of Subclasses And Defendants' Motion For Clarification Of The Court's March 30, 2023 Order (ECF No. 820) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Specifically, Plaintiffs request that this Court certify for interlocutory appeal the issue of whether the District Court applied the correct legal standard regarding standing, eligibility for statutory damages, and Fed. R. Civ. Proc. 23(b) predominance in Unruh Act cases involving disability access claims.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the entire file in this matter, and such other matters, both oral and documentary, as may properly come before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs respectfully request that this Court certify for appeal pursuant to 28 U.S.C. § 1292, the issue of whether the District Court applied the correct legal standard regarding standing, eligibility for statutory damages, and Fed. R. Civ. Proc. (hereafter "Rule") 23(b)(3) predominance in Unruh Act cases in its Order Granting In Part And Denying In Part Plaintiffs' Motion For Certification Of Subclasses And Defendants' Motion For Clarification Of The Court's March 30, 2023 Order, issued on July 22, 2024 (hereafter "Order"). ECF No. 820.

While interlocutory review is a remedy reserved for "exceptional situations," the circumstances herein easily meet the criteria for such review. *See, e.g.*, *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010); *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981). First, the question of whether the district court applied the correct legal standard regarding standing, eligibility for statutory damages, and Rule 23(b) predominance in Unruh Act cases involving disability

access claims is a controlling issue of law. The proposed issue for certification raises fundamental questions regarding standing, jurisdiction, the evaluation of injury and their impact on the predominance analysis under Rule 23(b)(3). These are pure questions of law and are appropriate for interlocutory review. The answer to the issue presented will determine whether Plaintiffs' Unruh Act claims for damages will proceed as a single class action proceeding, or as a multitude of individual trials regarding damages. Furthermore, courts have held that the denial of class certification raises controlling questions of law because for many absent class members the effect of such a denial is to deprive them of their only viable means of vindicating their claims for damages. *See, e.g.*, *Hoffman v. Citibank (S.D.), N.A.*, No. SACV 06-0571 AG (MLGx), 2007 WL 5659406, at *2 (N.D. Cal. Feb. 15, 2007). Such concerns apply with particular force herein as the putative class members are elderly and severely disabled, and many will find it too difficult to pursue relief by way of an individual damages trial. They would be greatly benefitted by the efficiency of a class action proceeding as the only practicable means of pursuing their claims for statutory minimum damages under the Unruh Act.

Second, as the District Court itself has acknowledged, there is "substantial ground for difference of opinion" on this issue, demonstrated by two groups of decisions from district courts within the Ninth Circuit regarding Rule 23(b)(3) certification of claims for damages under the Unruh Act that come to opposite conclusions on this issue. ECF No. 820 at 23 n. 15 ("However, given the divergence of authorities within the circuit and the significance of the answer for people with disabilities, the Court is of the view that further clarification regarding the relationship between standing and Rule 23(b) predominance in Unruh Act cases would benefit the courts and litigants. Accordingly, the Court would consider a request from the parties to certify this question to the Ninth Circuit.").

Third, immediate review of the issue would materially advance this litigation. In its current posture, this case will in all probability result in numerous individual damages trials that raise the same or similar issues, and this will greatly increase the judicial resources that the Court must dedicate to the trial(s) and the resources the litigants must expend on this matter. Further, if multiple individual trials are necessary, then the length of this already protracted litigation will be greatly increased. If the Ninth Circuit reverses this Court's Order, however, then this case can be addressed through a single, efficient class proceeding that addresses the statutory damages of all the elderly residents with mobility and/or

vision disabilities. Such a result would be far preferable as there is no genuine dispute that Brookdale's assisted living facilities do not comply with the minimum accessibility requirements of the Americans with Disabilities Act of 1990 ("ADA") or the Unruh Act, and the elderly disabled residents and/or their estates should be compensated for their encounters with violations of the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and the California Building Code ("CBC") as intended by the legislature.

Given the importance and unsettled nature of the question presented herein and the significant impact the answer will have on the trial in this long-running class action case, Plaintiffs respectfully request that this Court permit appeal of this issue under 28 U.S.C. § 1292(b), to allow the Ninth Circuit to issue definitive guidance as to whether the District Court applied the correct legal standard regarding standing, eligibility for statutory damages, and Rule 23(b) predominance in Unruh Act cases involving disability access claims.

## II.     RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed their original motion for class certification on August 18, 2021, seeking certification of three classes for injunctive relief pursuant to Rule 23(b)(2) and two of those three classes for damages pursuant to Rule 23(b)(3). ECF No. 278. The first two putative classes sought declaratory and injunctive relief under the ADA and the Unruh Act, and statutory minimum damages under the Unruh Act, pursuant to Rule 23(b)(2) and (b)(3) (the "Mobility and Vision Impaired" and "Disabilities" Classes), respectively. ECF No. 278 at 3. The third putative class sought declaratory and injunctive relief and damages under the CLRA, the UCL, and the Elder Financial Abuse statute pursuant to Rule 23(b)(2) and (b)(3) (the "Misleading Statements and Omissions Class"). *Id.*

On March 30, 2023, after full briefing by the parties and a hearing on the matter, the Court granted in part and denied in part Plaintiffs' motion. ECF No. 593. The Court denied certification of the Disabilities Class and the Misleading Statements and Omissions Class. ECF No. 820 at 1; ECF No. 593 at 61, 73-74. It also denied certification of the Mobility and Vision Impaired Class to pursue ADA and Unruh Act claims alleging the presence of access barriers in Brookdale's California facilities. ECF No. 820 at 2; ECF No. 593 at 43. The Court certified only a Wheelchair and Scooter Users Subclass

1  under Rule 23(b)(2) to pursue their Transportation Claims based on the theory that Brookdale's Fleet
2  Safety Policy violated the ADA.  ECF No. 593 at 48.

3  On February 9, 2024, after seeking and receiving leave from the court, Plaintiffs filed their
4  Motion for Certification of Facility-Level Access Subclasses.  ECF Nos. 650, 733, 740.  As is relevant
5  herein, Plaintiffs argued that, for the subclasses seeking statutory damages under Rule 23(b)(3), liability
6  could be determined using common proof and that this would predominate over any individualized
7  issues.  Specifically, "Plaintiffs' inspections have produced objective measurements and data that show
8  that Brookdale's newly constructed facilities violate the 1991 ADAAG and the CBC," which
9  "establishes Defendants' liability under the ADA and the Unruh Act as to all members of the proposed
10 damages subclasses."  ECF No. 740 at 29; ECF No. 820 at 17.  Following the adjudication of classwide
11 liability, the determination of individual damages with respect to statutory minimum damages under the
12 Unruh Act could be determined using a sworn claims form process.  ECF No. 740 at 22-23; ECF No.
13 805 at 12-14.  This would allow class members to use affidavits to identify the ADAAG and/or CBC
14 violations they encountered, thus resulting in injury and the denial of full and equal access under the
15 ADA and the Unruh Act, and confirm that such encounters caused them difficulty, discomfort or
16 embarrassment under Cal. Civ. Code § 55.56(b), (c).  *Id.* Damages calculations would then involve
17 multiplying $4,000 by the number of occasions class members indicate they encountered ADAAG
18 and/or CBC violations that caused them difficulty, discomfort or embarrassment.  ECF No. 740 at 23.

19 Defendants opposed Plaintiffs' motion, claiming that standing to recover damages under the
20 Unruh Act requires "a highly individualized inquiry" that defeats predominance.  Specifically,
21 Defendants argued that assessing standing to recover damages under the Unruh Act on a class wide
22 basis is "infeasible" because "(1) members have different types of disabilities, (2) the nature of
23 residents' impairments resulting from those vision and/ or mobility disabilities differs, and (3) the
24 services required by Brookdale staff to assist residents with their different impairments can vary."  ECF
25 No. 820 at 18 (citing ECF No. 783 at 22-23).  In other words, each putative class member would have to
26 prove that the barrier actually interfered with his or her full and equal enjoyment of their Brookdale
27 facility.  Defendants also argued that, because this inquiry focuses on whether class members suffered
28

any injury at all, it is actually a jurisdictional element that cannot be established via a claims form process. ECF No. 820 at 19 (citing ECF No. 783 at 25).

The Court agreed with Defendants "with some reluctance" and denied certification of Plaintiffs' proposed Unruh Act 23(b)(3) damages subclasses because it found individual issues would predominate. In so doing, the Court relied on "other authorities finding the standing inquiry to be a fact-intensive, individualized liability issue rather than a pure damages one." ECF No. 820 at 19-20, citing *Moeller v. Taco Bell Corp.*, No. C 02-5949 PJH, 2012 WL 3070863, at *5 (N.D. Cal. July 26, 2012) (denying certification of Rule 23(b)(3) damages class, finding "damages for California disability claims are inextricably intertwined with individualized liability questions."); *Vondesaar v. Starbucks Corp.*, No. CV 12-05027 DDP (AJWx), 2015 WL 629437, at *4 (C.D. Cal. Feb. 12, 2015), *aff'd*, 719 F. App'x 657 (9th Cir. 2018) (denying certification of Rule 23(b)(3) Unruh Act damages class because individualized inquiries would predominate over whether counter heights violated the ADA); *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06cv02671 BTM (WMc), 2012 WL 3762440, at *6 (S.D. Cal. Aug. 28, 2012).

In its opinion, the District Court acknowledged that several other courts in the Ninth Circuit have come to the opposite conclusion regarding Rule 23(b)(3) damages classes alleging Unruh Act claims. ECF No. 820 at 21-22. In *Nevarez v. Forty Niners Football Co. LLC*, 326 F.R.D. 562 (N.D. Cal. 2018), which dealt with ADAAG violations at Levi's Stadium, the court found predominance was satisfied and certified a Rule 23(b)(3) damages class under the Unruh Act, employing a claims form process to determine entitlement to damages similar to that proposed by Plaintiffs herein. *Id.* at 584-86, 589. In *Davis v. Laboratory Corp. of America Holdings*, 604 F. Supp. 3d 913 (C.D. Cal. 2022), *aff'd*, No. 22-55873, 2024 WL 489288 (9th Cir. Feb. 8, 2024), the court similarly approved the use of a claims form process following the liability determination. *Id.* at 929-30. The Court also acknowledged *Castaneda v. Burger King Corp.*, 264 F.R.D. 557 (N.D. Cal. 2009), which certified ten subclasses to pursue Unruh Act damages at Burger King restaurants, but disregarded its persuasive value on the basis that the *Castaneda* court did not conduct a specific predominance analysis. ECF No. 820 at 21.

The District Court then stated that "the real question seems to be whether standing can be established by a claims process in an Unruh Act access barrier case where class members' interaction

with the barriers is variable." *Id.* In other words, the Court found that "standing questions here implicate the actual existence of injury, rather than just the arithmetic of damages." *Id.* at 22.

### III. ISSUE PRESENTED

Whether this Court should certify to the Ninth Circuit for interlocutory review pursuant to 28 U.S.C. § 1292 the following issue: What are the correct legal standards for evaluating standing, eligibility for damages, and predominance under Fed. R. Civ. Proc. 23(b)(3) in cases under the Unruh Civil Rights Act involving disability access claims?

### IV. LEGAL STANDARD

Interlocutory review of an order is proper where the District Court decision involves (1) A "Controlling Question of Law" (2) "As to which there is substantial ground for difference of opinion," and that (3) "An immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Couch*, 611 F.3d at 633. Certification under section 1292(b) "requires the District Court to expressly find in writing that all three § 1292(b) requirements are met." *Id.* As discussed below, each of these requirements is satisfied in this case.

### V. ARGUMENT

**A. Whether The District Court Applied The Correct Legal Standard Regarding Standing, Eligibility For Statutory Damages, And Predominance Under Rule 23(b)(3) In Unruh Act Cases Presents A Controlling Question Of Law**

A question of law is "controlling" if "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. Courts have not required "that reversal of the district court's order terminate the litigation." *Id.* (citing *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959)). Controlling questions of law "are usually fundamental issues, such as who are proper parties, whether a court has jurisdiction, and whether state or federal law should apply." *Heaton v. Soc. Fin., Inc.*, No. 14-cv-05191-TEH, 2016 WL 232433, at *3 (N.D. Cal. Jan. 20, 2016) (citing *In re Cement*, 673 F.2d at 1026). A controlling question of law "may only be found in those 'exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation.'" *Flores v. Velocity Express, LLC*, No. 12-cv-05790-JST, 2015 WL 4463639, at *2 (N.D. Cal. July 21, 2015) (quoting *In re Cement*, 673 F.2d at 1026). Notably, "'[a] steadily growing number of decisions' have found 'that a question is controlling … if

interlocutory reversal might save time for the district court, and time and expense for the litigants.'" *Su v. Siemens Indus., Inc.*, No. 12-cv-03743-JST, 2014 WL 4775163, at *2 (N.D. Cal. Sept. 22, 2014) (quoting 16 Wright, Miller & Cooper, Fed. Prac. & Proc. (Juris.) § 3930 (3d. ed.)).

Whether the District Court applied the correct legal standards regarding standing, eligibility for statutory damages, and Rule 23(b) predominance in Unruh Act cases involving disability access claims plainly constitutes a "controlling question of law." Indeed, in its opinion, the District Court itself acknowledged that "given the divergence of authorities within the circuit and the significance of the answer for people with disabilities, the Court is of the view that further clarification regarding the relationship between standing and Rule 23(b) predominance in Unruh Act cases would benefit the courts and litigants" and invited a request for certification of this issue from the parties. ECF No. 820 at 23 n.15.

As discussed, controlling questions of law are raised where there are "fundamental questions" such as who is a proper party, and whether the court has jurisdiction of their claims. *In re Cement*, 673 F.2d at 1026-27. Here, this Court has expressly found that such questions are presented. As the Court stated in its opinion, it is "of the view that the standing questions here implicate the actual existence of injury, rather than just the arithmetic of damages." ECF No. 820 at 22. "In the absence of controlling Ninth Circuit authority that squarely permits establishment of this jurisdictional element through a claims process, the Court finds *Moeller*, *Antoninetti*, and *Vondersaar* persuasive." *Id.* Thus, if the Ninth Circuit were to reverse on this issue, the outcome of the motion to certify damages subclasses under Rule 23(b)(3) would be different.

Moreover, a decision from the Ninth Circuit on this issue regarding standing and the propriety of Rule 23(b)(3) certification would heavily impact the scope, the time investment required by both the District Court and the litigants, and the expense of the upcoming trial(s) in this matter. Under the current procedural posture, each class member's claim for damages will need to be litigated as an individual action, requiring numerous separate damages trials in the District Court. This would require a substantial investment of time and resources for all parties involved. However, if this Court's Order were to be reversed, the class members' claims for damages would proceed as a certified class in a single efficient proceeding. This would greatly decrease the time investment of the District Court, and

also time and expense for the litigants. Further, because Plaintiffs do not seek a stay in conjunction with the appeal, the upcoming trial(s) in this matter would not be delayed pending appeal. Thus, given the material effect the outcome of an interlocutory appeal would have on the length and expense of the proceedings herein, this issue presents a controlling question of law.

Additionally, an answer to this question by the Ninth Circuit would determine whether *any* Unruh Act claims for damages involving disability access barriers may proceed on a class wide basis in the future, or if they must always be litigated individually. Indeed, if the District Court's opinion were allowed to stand, the damages phase in all future disability access class actions under the Unruh Act would have to be tried as individual actions, thereby greatly increasing the overall difficulty, time and cost investment required for persons with disabilities to recover statutory damages for injuries and discrimination they suffer due to encounters with violations of the ADAAG and the CBC. The reversal of the District Court's opinion would do the opposite, permitting the consolidation and simplification of future proceedings, thereby saving time for courts and time and expense for future litigants. In other words, an answer from the Ninth Circuit on this controlling question of law would have major implications for this important area of civil rights law.

### B. Multiple District Court Opinions Demonstrate That There Is Substantial Ground for Difference Of Opinion On The Legal Standards for Evaluating Standing, Eligibility For Statutory Damages, And Rule 23(b)(3) Predominance In Unruh Act Cases

The "substantial ground for difference of opinion" prong is satisfied when "'novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions.'" *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). In order to determine if a "substantial ground for difference of opinion" exists, "courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633. A "'substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.'" *Su*, 2014 WL 4775163, at *3 (quoting *Reese*, 643 F.3d at 688). Indeed, the "'identification of a sufficient number of conflicting and contradictory opinions would provide substantial ground for disagreement.'" *Couch*, 611 F.3d at 634 (quoting *Union Cnty., Iowa v. Piper Jaffray & Co, Inc.*, 525 F.3d 643, 647 (8th Cir. 2008)).

1       This prong is clearly satisfied herein.  As this Court noted in its opinion, reasonable jurists
2  within the Ninth Circuit have disagreed on this issue on multiple occasions and the Ninth Circuit has yet
3  to address in a published opinion the propriety of certifying Rule 23(b)(3) classes for damages under the
4  Unruh Act in disability access cases.  ECF No. 820 at 23 n.15.  The group of cases that the District
5  Court found, admittedly "with some reluctance," more persuasive "recognized the individualized nature
6  of the standing inquiry in the context of the Unruh Act, and found it to pose a core question of
7  substantive liability."  *Id.* at 19.

8       In *Moeller v. Taco Bell Corp.*, 2012 WL 3070863 (N.D. Cal. July 26, 2012), a class action
9  involving up to 150,000 class members challenging access barriers in approximately 220 California
10 Taco Bell restaurants, Defendants moved for decertification following the Supreme Court's decision in
11 *Wal-Mart Stores, Inc. v. Dukes*, 562 U.S. 338 (2011).  *Id.* at *2. The *Moeller* court examined whether it
12 could certify a Rule 23(b)(3) class for statutory damages under the Unruh Act, but ultimately declined
13 to do so because of, *inter alia*, a lack of predominance.  *Moeller*, 2012 WL 3070863, at *5.
14 Specifically, the court found that "damages for California disability claims are inextricably intertwined
15 with individualized liability questions, and it is thus impossible to make an across-the-board conclusion
16 as to the recovery of damages by any class member."  *Id.*  Common questions of law and fact did not
17 predominate over individualized questions regarding how each class member "was personally affected
18 and was denied full and equal access" because "the issue is whether an individual class member has any
19 claim at all."  *Id.*

20      In *Antoninetti v. Chipotle Mexican Grill, Inc.*, 2012 WL 3762440 (S.D. Ca. Aug. 28, 2012),
21 mobility device users brought a class action suit against Chipotle, alleging non-compliant counter
22 heights in all of its California restaurants.  As to the claims for damages under the Unruh Act, the court
23 denied certification.  It found individualized issues predominated since establishing entitlement to
24 damages "is a fact-intensive inquiry" that requires "each class member to establish which Chipotle
25 restaurant he visited, when he visited it, and whether he traveled the food service line – all as to each
26 particular occasion for which the class member seeks damages."  *Id.* at *6.  The court also determined
27 that a person would have to "establish that he was actually unable to see his food prepared, which will
28 in turn require at least proof of how high the counter wall was at the time of the visit… and how high

the class member sat in his wheelchair at the relevant time." *Id.*

Similarly, in *Vondersaar v. Starbucks Corp.*, 2015 WL 629437, *aff'd*, 719 App'x 657 (9th Cir. 2018), wheelchair and scooter users brought a nation-wide class action alleging noncompliant counter heights at Starbucks stores, including a Rule 23(b)(3) class seeking damages under the Unruh Act for only the California stores. Citing *Moeller* and *Antoninetti*, the *Vondersaar* court found that in order to recover Unruh Act damages "each class member must show how he or she was personally affected and was denied full and equal access by the defendant." *Id.* at *3. The court denied certification of the (b)(3) damages class finding that, similar to *Antoninetti*, individualized inquiries would predominate over the common question of whether the counter heights violated the ADA. *Id.* at *4.

In their motion, however, Plaintiffs urged the District Court to follow another group of cases within the Ninth Circuit that have come to the opposite conclusion when confronted with this same issue. In *Castaneda v. Burger King Corp.*, 264 F.R.D. 557 (N.D. Cal. 2009), a group of mobility-impaired customers of 92 California Burger King stores brought a putative class action alleging that numerous access barriers violated the ADA and the Unruh Act. While the court denied certification of the statewide Rule 23(b)(3) class due in part to substantial physical variation across locations, it did certify Rule 23(b)(3) classes for each of the 10 restaurants the named plaintiffs had visited. *Id.* at 564. The court found that "class certification is more appropriately analyzed under Rule 23(b)(3) instead of Rule 23(b)(2)" because the value of damages "will require an individual-by-individual determination as to who visited which stores and how many times." *Id.* at 571.

In *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562 (N.D. Cal. 2018), stadium patrons with mobility disabilities and their companions brought a class action suit against the owners and operators of Forty Niners stadium, alleging violations of the ADA and Unruh Act due to pervasive access barriers. Then-district court Judge Koh found that individual issues did not predominate and certified a Rule 23(b)(3) damages class for Plaintiffs' Unruh Act claims. As in this case, Plaintiffs argued that class members would only need to show that they "personally encountered" an Unruh Act violation that caused them "difficulty, discomfort or embarrassment" and that "damages calculations will come down to multiplying $4,000 by the number of class members' visits to the Stadium." *Id.* at 585. The *Nevarez* court distinguished *Moeller* and *Antoninetti* based on the difference in the scale of

the cases, the number of class members, the fact that Defendants have a record and contact information for class members, and the number of challenged facilities at issue. *Id.* at 585-86. The *Nevarez* court also found that *Moeller* and *Antoninetti* were both decided "*after* the defendants' liability had been adjudicated, which meant that the most important common question had already been resolved" and therefore no longer predominated. *Id.* at 586. The court ultimately found *Burger King* persuasive and certified a Rule 23(b)(3) damages class, using a claims form process similar to that proposed in this case to establish entitlement to damages and to calculate the amount thereof.

In *Davis v. Laboratory Corp. of America Holdings*, 604 F. Supp. 3d 913 (C.D. Cal. 2022), *aff'd*, No. 22-55873, 2024 WL 489288 (9th Cir. Feb. 8, 2024), visually impaired individuals sought certification of a nationwide class under Rule 23(b)(2) and a California class under Rule 23(b)(3) alleging violations of, *inter alia*, the ADA and the Unruh Act for failing to provide accessible touchscreen kiosks for self-service check-in at Defendants' patient service centers. Plaintiffs proposed the use of a claims form following the liability adjudication arguing that it is "well-settled that this issue may [be] properly addressed" in that manner. *Id.* at 929. Much like Brookdale, the defendants argued that determining whether each class member used one of the kiosks would be a highly individualized inquiry. *Id.* The *Davis* court found this unpersuasive, noting that "predominance is not concerned with determining who may be entitled to class membership, *i.e.*, identifying legally blind class members who attempted to or were discouraged from using LabCorp's kiosks. Rather, the superiority prong is where that issue is considered." *Id.* Citing *Nevarez*, the court held that the question of whether class members personally encountered a kiosk would not predominate over the "more important common questions of fact and law" such as whether the kiosks are actually accessible. *Id.* at 929, 932-33.

**C. Determining Whether The District Court Applied The Correct Legal Standard Regarding Standing, Eligibility For Statutory Damages, And Rule 23(b) Predominance in Unruh Act Cases Will Materially Advance This Litigation**

The "materially advance" prong is satisfied "when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Or., Inc.*, 22 F.4th at 1131 (quoting *In re Cement*, 673 F.2d at 1027). Courts in the Ninth Circuit "have held that resolution of a question materially advances the termination of litigation if it 'facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later

[in order to] save the courts and the litigants unnecessary trouble and expense.'" *Silbersher v. Allergan Inc.*, No. 18-cv-03018-JCS, 2021 WL 292244, at *3 (N.D. Cal. Jan. 28, 2021) (quoting *United States ex rel. Atlas Copco Compressors LLC v. Rwt LLC*, No. 16-00215 ACK-KJM, 2017 WL 2986586, at *11 (D. Haw. July 13, 2017)). The language of the statute requires only that the appeal *may* materially advance the ultimate termination of the litigation. Certification is thus proper even if there is only the possibility of saving the time of the district court and expense to the litigants. Indeed, courts apply "pragmatic considerations to determine whether certifying non-final orders will materially advance the ultimate termination of the litigation." *Silbersher*, 2021 WL 292244, at *3 (quoting *United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSx), 2019 WL 6973547, at *4 (C.D. Cal. Oct. 8, 2019)).

An opinion from the Ninth Circuit reversing this Court's decision would materially advance this litigation. As discussed above, the cost in both time and money of nearly identical individual damages trials for numerous class members would impose a heavy burden on both the Court and the litigants. Indeed, in total there are several hundred class members who would fall within the subclasses for the six facilities at which the named Plaintiffs reside or resided, and it is probable that many would have viable claims for statutory minimum damages under the Unruh Act. It is also important to note that the burden of coming forward and trying their individual claims for damages would be imposed on elderly class members with mobility and/or vision disabilities, who would be required to file a separate action and appear and testify in court instead of affirming their experiences via a claims form. Such expensive, protracted, and burdensome litigation could be avoided almost entirely by the resolution of this single legal issue at this juncture. The Ninth Circuit's ruling on this appeal could result in a substantial reduction of that burden by permitting the damages phase to proceed as a single class action proceeding instead of numerous individual damages trials.

## VI.     CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that their motion be granted.

Dated: August 15, 2024              Respectfully submitted,

 */s/ Guy B. Wallace*
Guy B. Wallace
Attorneys for Plaintiffs and the Proposed Subclasses

PLAINTIFFS' MOT. FOR INTERLOCUTORY APPEAL - CASE NO. 4:17-cv-03962-HSG (LB)

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system on August 15, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

Dated: August 15, 2024                     /s/ *Guy B. Wallace*
                                            Guy B. Wallace