UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIA STINER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BROOKDALE SENIOR LIVING, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-03962-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 856, 861 |

Pending before the Court are Plaintiffs' motion for partial summary judgment, Dkt. No. 856 ("Mot."), 885 ("Opp."), 902 ("Reply"), and Defendant Brookdale Senior Living, Inc. ("Brookdale")'s cross-motion for summary judgment, Dkt. No. 861 ("Cross Mot."), 884 ("Cross Opp."), 905 ("Cross Reply"). For the reasons discussed below, the Court (1) denies Plaintiffs' motion in part, (2) defers ruling on Plaintiffs' motion in part, (3) and grants in part and denies in part Brookdale's motion.

**I.   BACKGROUND**

Given the parties' familiarity with this case, the Court briefly recaps the facts relevant to the pending motions. Brookdale, a for-profit corporation, is the largest provider of assisted living for senior citizens and persons with disabilities in the nation. Plaintiffs are residents (or their successors in interest) who reside or resided at six Brookdale facilities in California: Brookhurst, Fountaingrove, Hemet, San Ramon, Scotts Valley, and Tracy. According to Plaintiffs, these facilities are not accessible to people with disabilities in violation of the Americans with Disabilities Act of 1990 ("ADA") and California's Unruh Civil Rights Act. Plaintiffs further allege that Brookdale's policies regarding transportation, emergency evacuation, and staffing prevent its residents from fully accessing and enjoying the facilities.

In addition to Plaintiffs' individual claims, the Court certified four Federal Rule of Civil Procedure 23(b)(2) subclasses: (1) a Wheelchair and Scooter Users Subclass to pursue claims under the ADA and Unruh Act regarding Brookdale's Fleet Safety Policy, Dkt. No. 593, and (2) three facility-specific subclasses representing current and former residents of Brookdale's San Ramon, Scotts Valley, and Brookhurst facilities to seek injunctive and declaratory relief under the ADA and Unruh Act. Dkt. Nos. 733, 820.[1] Individual plaintiffs Stacia Stiner, Bernie Jestrabek-Hart, and Jeanette Algarme represent these subclasses.[2]

After seven years of litigation, the following sets of claims remain:

- Individual Plaintiffs' injunctive relief and damages claims alleging that the six Brookdale facilities contain physical access barriers in violation of the ADA and Unruh Act

- Individual Plaintiffs' injunctive relief and damages claims alleging that Brookdale's Fleet Safety Policy and emergency evacuation plans violate the ADA and Unruh Act

- The San Ramon, Scotts Valley, and Brookhurst facility-based subclasses' injunctive relief claims alleging that these three facilities contain physical access barriers in violation of the ADA and Unruh Act

- The Wheelchair and Scooter Users Subclass' injunctive relief claims alleging that Brookdale's Fleet Safety Policy violates the ADA and Unruh Act

The first trial concerning these claims is limited to the subclass claims for injunctive relief under the ADA and Unruh Act. Plaintiffs' individual claims will be tried separately after the conclusion of the first trial.

//
//

---

[1] The three facility-based subclasses are comprised of current and former residents of the San Ramon, Scotts Valley, and Brookhurst facilities with mobility and/or vision disabilities who seek declaratory relief finding that those facilities are in violation of applicable disability access standards and an order requiring the facilities to come into compliance.

[2] The facility-based certified subclasses are defined as follows: "All persons with disabilities who use wheelchairs, scooters, or other mobility aids or who have vision disabilities and who reside or have resided at the Brookdale [San Ramon / Scotts Valley / Brookhurst] residential care facility for the elderly located in California and owned, operated and/or managed by Brookdale during the three years prior to the filing of the Complaint herein through the conclusion of this action, including their successors-in-interest if deceased, excluding any persons who are subject to arbitration."

## II. DISCUSSION

### A. Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Unruh Act Access Barrier Claims

Plaintiffs allege that access barriers at the Brookdale facilities violate the Unruh Act. The Unruh Act, which prohibits "discrimination on the basis of disability in the full and equal access to the services, facilities, and advantages of public accommodation," pre-dates the ADA and can afford "additional protections and remedies not provided under federal law." *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1073–74 (N.D. Cal. 2014) (internal citation and quotations omitted). "There are several avenues by which a plaintiff can prevail on a disability discrimination claim under the . . . Unruh Act," including (1) by "prov[ing] that defendants

3

violated California accessibility requirements" such as those set out in the California Building Code (CBC), or (2) "by proving that defendants violated federal disability law [i.e. the ADA]." *Id.*; Cal. Civ. Code §§ 51(f), 54(c). "[A] violation of the ADA is, *per se,* a violation of the Unruh Act." *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004).

### i. Plaintiffs' Unruh Act Claims May be Predicated on a CBC Violation

Brookdale asserts that, as pled, Plaintiffs' Unruh Act access barrier claims are *exclusively* predicated on the ADA such that any Unruh Act claim based on the CBC fails as a matter of law. Cross Mot. at 20–24. It is true that Plaintiffs' 100-page complaint never specifically mentions or cites the CBC, or identifies it as a basis for Plaintiffs' Unruh Act claims. Rather, the complaint broadly alleges that Brookdale's facilities violate the ADA and the Unruh Act because they "do not meet federal or state accessibility standards." Dkt. No. 647. *See Gray v. Golden Gate Nat. Recreational Area*, 866 F. Supp. 2d 1129, 1139 (N.D. Cal. 2011) (finding that a complaint may provide notice when it "generally reference[s]" a claim). Because "lack of notice on [an] issue central to the cause of action makes it difficult, if not impossible, for [Defendant] to know how to defend itself," Brookdale contends that Plaintiffs are impermissibly providing notice of a new claim or theory of liability at the summary judgment stage. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292, 1294 (9th Cir. 2000).

Here, however, Brookdale has long had ample notice that Plaintiffs intended to pursue Unruh Act claims predicated on CBC violations. Plaintiffs' motion for class certification discussed this theory and described their position that Brookdale is obligated under California law to remediate CBC violations. Dkt. No. 740 at 26–27. In opposition to that motion, Brookdale never raised the notice argument it now presents. *See* Dkt. No. 783. And the parties' years-long discovery process clearly contemplated CBC-based Unruh Act claims. Gary Waters, for example, prepared multiple facility access reports detailing the facilities' compliance with both ADA *and* CBC standards. *See* Dkt. No. 805-9; Dkt. No. 805-5; Dkt. No. 856-6. *See also Coleman*, 232 F.3d at 1294 (holding that defendants are on notice when plaintiffs "make known during discovery their intention" to pursue a claim omitted from their complaint). Accordingly, this is not a situation in which Plaintiffs are "turn[ing] around and surpris[ing]" Brookdale with a new theory

4

of liability that Brookdale never anticipated. *Coleman*, 232 F.3d at 1293–94. The Court therefore denies Brookdale's request for summary judgment on Plaintiffs' CBC-based Unruh Act claims to the extent that request rests on alleged pleading deficiencies.

### ii. Plaintiffs' Unruh Act Claims Predicated on Alleged Violations of the CBC Fail as a Matter of Law

Having established that Plaintiffs provided Brookdale with sufficient notice that their Unruh Act claims were predicated in part on CBC violations, the Court turns to the legal viability of these claims. "[T]o establish a violation of the Unruh Act independent of a claim under the Americans with Disabilities Act ('ADA'), [Plaintiffs] must 'plead and prove intentional discrimination in public accommodations in violation of the terms of the Act.'" *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (quoting *Munson v. Del Taco, Inc.,* 208 P.3d 623, 627 (2009)). And to establish intentional discrimination, "the Unruh Act requires a showing of willful, affirmative misconduct." *Id.* at 427.

On this record, Plaintiffs fail to meet their burden of demonstrating a dispute of material fact on this point. Plaintiffs claim that Brookdale's failure to remediate barriers constitutes intentional discrimination. Cross Opp. at 17–20. But both the Ninth Circuit and California courts have rejected the theory that "intentional discrimination under the Unruh Act consists of knowledge that a protected right is substantially likely to be infringed upon, and a failure to act upon that knowledge—'deliberate indifference.'" *Greater Los Angeles Agency on Deafness, Inc.*, 742 F.3d at 427; *see Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1036–37 (2022) (finding that defendant's failure "to take adequate actions to correct accessibility barriers" did not amount to intentional discrimination under the Unruh Act). Plaintiffs ask the Court to infer discriminatory intent based on generalized assertions about compliance and repairs.[3] But

---

[3] Plaintiffs, citing *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 585–86 (2008), argue that non-compliance with the CBC by itself constitutes an Unruh Act violation. However, subsequent Ninth Circuit and California caselaw makes plain that intentional discrimination is a required element of Unruh Act claims that are not predicated on the ADA. *See Greater Los Angeles Agency on Deafness, Inc*. 742 F.3d at 425; *Munson v. Del Taco, Inc.,* 208 P.3d at 627. Non-compliance with the CBC may give rise to an Unruh Act violation, but only where that non-compliance evinces "'willful, affirmative misconduct' or intentional discrimination." *Greater Los Angeles Agency on Deafness, Inc.*, 742 F.3d at 426.

5

Plaintiffs' evidentiary support for that position falls well short, even making all inferences in their favor at this stage. Since Plaintiffs do not "point to any evidence" that Brookdale sought "to accomplish discrimination on the basis of [disability]," they have not met their burden as to the Unruh Act claims predicated on CBC violations so as to avoid summary judgment. *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 854 (2005); *see also Greater Los Angeles Agency on Deafness, Inc.*, 742 F.3d at 425 (reiterating that Plaintiffs must "plead and prove" intentional discrimination to establish an Unruh Act violation independent of the ADA); *Kong v. Mana Inv. Co., LLC*, No. SACV1801615DOCDFM, 2019 WL 3220027, at *5 (C.D. Cal. May 1, 2019), *aff'd*, 818 F. App'x 660 (9th Cir. 2020) ("Plaintiff offers no evidence that Starbucks intentionally discriminated against him. Therefore, Plaintiff cannot prove an Unruh Act violation, and summary judgment for Starbucks is warranted on this claim."); *Johnson v. Starbucks Corp.*, No. 2:16-CV-2797 WBS AC, 2019 WL 699136, at *6 (E.D. Cal. Feb. 20, 2019) (granting summary judgment as to plaintiff's Unruh Act claim where plaintiff claimed that the existence of "intuitive and obvious" barriers that defendants had the alleged means and ability to change evidenced intentional discrimination).

Accordingly, summary judgment as a matter of law is appropriate with respect to Plaintiffs' Unruh Act claims that are predicated on violations of California law, including the CBC. Since "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation," the Court's intentional discrimination analysis does not bear on those Unruh Act access barrier claims that rest on alleged ADA violations. *Lentini*, 370 F.3d at 847. In the following section, the Court addresses the viability of Plaintiffs' Unruh Act claims predicated on alleged ADA violations.

### C. ADA Access Barrier Claims

Plaintiffs allege that access barriers at the Brookdale facilities violate the ADA and the Unruh Act. Brookdale moves for summary judgment on the ADA and Unruh Act access barrier claims brought by (1) the facility-based subclasses and (2) the individual Plaintiffs. Cross Mot. at 20–30. Plaintiffs likewise seek partial summary judgment on the access barrier claims brought by (1) the Brookhurst subclass and (2) individual Plaintiffs at the Fountaingrove and Hemet facilities.

6

1   Mot. at 26–47.

        **i.     Legal Elements of ADA Title III Claims**

The ADA prohibits "discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). The individual Plaintiffs and the facility-based subclasses allege that the Brookdale facilities contain unlawful physical access barriers in violation of Title III. "Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation with a nexus in interstate commerce." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (internal citation and quotations omitted); *see* 42 U.S.C. § 12182(a). To prevail on a Title III discrimination claim, Plaintiffs must establish that: (1) they are disabled within the meaning of the ADA; (2) Brookdale is a private entity that owns, leases, or operates a place of public accommodation; and (3) Brookdale discriminated against Plaintiffs by denying them public accommodations because of their disabilities. *See Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020). The parties dispute the second and third of these elements. The Court already concluded at the motion to dismiss stage that, as alleged, Brookdale's assisted living facilities were "public accommodations" subject to the ADA and will not repeat that analysis here.[4] As such, the third element—discrimination—is primarily at issue.

Under Title III of the ADA, "[n]o individual shall be *discriminated against* on the basis of disability . . . by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). "In enacting the ADA, Congress adopted two distinct systems for regulating building accessibility: one to apply to existing facilities (those designed and constructed for occupancy before January 26, 1993) and another to

---

[4] Brookdale again argues that its facilities are not places of public accommodation. Cross. Mot. at 30. This issue has already been extensively litigated, nothing relevant has changed, and Brookdale's arguments do not undermine the Court's prior conclusions. *See Stiner v. Brookdale Senior Living, Inc.*, 354 F. Supp. 3d 1046, 1058 (N.D. Cal. 2019), *aff'd in part, rev'd in part and remanded,* 810 F. App'x 531 (9th Cir. 2020).

7

apply to later-constructed facilities [i.e. "new construction" facilities]." *Long v. Coast Resorts, Inc.*, 267 F.3d 918, 923 (9th Cir. 2001); *see* 42 U.S.C. §§ 12183(a)(1), 12182(b)(2)(A)(iv). Three of the Brookdale facilities at issue here are existing facilities—San Ramon (1989), Scotts Valley (1987), and Tracy (1987). Hemet (1998), Fountaingrove (2001), and Brookhurst (2001) are new construction facilities.[5] When Congress enacted the ADA, it also "entrusted the Attorney General with the responsibility of promulgating Title III's implementing regulations." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004). *See* 42 U.S.C. § 12186(b). The "DOJ, in turn, adopted as regulations a set of guidelines promulgated by the Architectural and Transportation Barriers Compliance Board ("Access Board"), a body charged with 'establish[ing] and maintain[ing] minimum guidelines and requirements for the standards issued pursuant to' Title III of the A.D.A." *Oregon Paralyzed Veterans of Am. v. Regal Cinemas, Inc.,* 339 F.3d 1126, 1129 (9th Cir. 2003) (quoting 29 U.S.C. § 792(b)(3)(B)). These regulations, incorporated as Appendix A of 28 C.F.R. Part 36, "lay out the technical structural requirements of places of public accommodation" and are known as the ADA Architectural Guidelines (ADAAG). *Fortyune*, 364 F.3d at 1080–81; *see* 28 C.F.R. Pt. 36, App. A.

### ii. Brookhurst Subclass and Individual Plaintiff Access Barrier Claims

#### a. Clarifying the Claims at Issue

Plaintiffs seek summary judgment on the individual Plaintiffs' access barrier claims related to the Hemet and Fountaingrove facilities. Mot. at 26–47. Brookdale moves for summary judgment on the individual Plaintiffs' access barrier claims related to all six facilities and the access barrier claims brought by the San Ramon and Scotts Valley subclasses. Cross Mot. at 20–35. And both parties seek summary judgment on the Brookhurst subclass' access barrier claims. Mot. at 26–47; Cross Mot. at 20–35.

---

[5] Plaintiffs argue for the first time that San Ramon Building A is a new construction facility. Mot. at 15. This position contradicts Plaintiffs' repeated representations over the past seven years that the San Ramon facility, constructed in 1989, is an existing facility. Plaintiffs themselves acknowledge that "[t]his Court already made findings on the dates of construction." Mot. at 27. *See Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2024 WL 3498492, at *7 (N.D. Cal. July 22, 2024).

As a preliminary matter, Plaintiffs stated at the class certification stage that their "theory of class certification is limited to new construction claims." Dkt. No. 805 at 12. The Court then certified facility-based subclasses for the San Ramon, Scotts Valley, and Brookhurst facilities. Only the Brookhurst facility is a new construction facility. Therefore, only one of the certified subclasses—Brookhurst—may proceed with access barrier claims brought under the ADA. Accordingly, the Court grants Brookdale's motion for summary judgment as to the San Ramon and Scotts Valley subclasses' access barrier claims brought under the ADA and brought under the Unruh Act with an ADA (rather than CBC) predicate violation.

To be clear, Plaintiffs did not waive their ability to bring Unruh Act claims based on alleged CBC violations for the certified subclasses. However, consistent with the analysis in Section B, Plaintiffs' CBC-based Unruh Act claims fail as a matter of law. Therefore, the only Unruh Act access barrier claims that survive summary judgment are those claims brought by the Brookhurst subclass or individual plaintiffs that rest on alleged violations of the ADA.

### b. The Court Denies Brookdale's Motion for Summary Judgment as to the Individual Plaintiffs' Access Barrier Claims for the Existing Facilities

The Court first addresses individual Plaintiffs' claims related to the existing Brookdale facilities—Scotts Valley, San Ramon, and Tracy. Under the ADA, "[i]n the context of existing facilities, discrimination includes 'a failure to remove architectural barriers . . . where such removal is readily achievable.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)). Plaintiffs allege that the access barriers at these existing facilities are readily removable such that Brookdale's failure to remove them constitutes discrimination under the ADA. *See* Cross Opp. at 26–28. Brookdale, arguing that Plaintiffs "have offered nothing more than conclusory allegations about generalized barrier remediation," moves for summary judgment on these individual claims. Cross Mot. at 26–30. Whether the removal of these barriers is readily achievable is a fact-intensive inquiry that "will rarely be decided on summary judgment." *Rodriguez v. Barrita, Inc.*, No. C 09-04057 RS, 2012 WL 3538014, at *8 (N.D. Cal. Mar. 1, 2012). This case is no exception. The parties dispute how costly and difficult it would be to remove the barriers. *See* Cross Mot. at 26–30; Cross Opp. at

9

25–28. Accordingly, the Court denies summary judgment as to the individual Plaintiffs' access barrier claims arising under the ADA for the existing facilities. Any Unruh Act claims predicated on these alleged ADA violations also survive summary judgment.

### c. The Court Denies Brookdale's Motion for Summary Judgment as to the Access Barrier Claims for the New Facilities

#### i. Plaintiffs' Theory of Liability

As for newly constructed facilities, the ADA states that discrimination includes "fail[ing] to design and construct facilities . . . that are readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1). *See Miller v. California Speedway Corp.*, 536 F.3d 1020, 1024 (9th Cir. 2008). Brookdale asserts that under the plain text of the ADA it "cannot be liable to Plaintiffs for new design or construction discrimination under the ADA" because "to be liable for new construction claims under the ADA, the defendant must be the one that failed to design and construct the facility in accordance with the ADA." Cross Mot. at 24; Opp. at 41. Plaintiffs disagree. They contend that "subsequent owners and operators of public accommodations are liable under the ADA . . . for operating facilities that violated the applicable federal and/or state access standards when they were built or altered by a prior owner." Cross Opp. at 22. Specifically, Plaintiffs argue that the owner of a newly constructed public accommodation is liable for discrimination when that accommodation fails to comply with the ADAAG. The ADAAG mandate that new construction facilities "be made accessible in accordance with" the relevant standards governing the facility. *See* 28 C.F.R. § 36.406(a)(5)(i), (ii). Plaintiffs' argument, set out in pages 15–18 of their motion, primarily relies on *Chapman*:

> In the case of newly constructed facilities, compliance with the ADA's antidiscrimination mandate requires that facilities be 'readily accessible to and usable by individuals with disabilities.' *Id.* § 12183(a)(1). Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines ("ADAAG"). *See* 28 C.F.R. § 36.406(a); 28 C.F.R. pt. 36, app. A.

*Chapman*, 631 F.3d at 945.

Existing case law provides little clarity regarding successor liability for new construction claims brought under Title III of the ADA. But courts in this district, citing *Chapman*, have

10

repeatedly held that "[a] plaintiff can establish discrimination in violation of the ADA by showing that the defendant violated the applicable accessibility standards set forth in the ADA Accessibility Guidelines." *Lemmons v. Ace Hardware Corp.*, No. 12-CV-03936-JST, 2014 WL 3107842, at *7 (N.D. Cal. July 3, 2014). *See also Oliver*, 654 F.3d at 905 ("In general, a facility is readily accessible to and usable by individuals with disabilities if it meets the requirements promulgated by the Attorney General in the ADA Accessibility Guidelines or the ADAAG, which is essentially an encyclopedia of design standards."); *Garcia v. Woldemichael*, No. 21-CV-05079-DMR, 2022 WL 3590328, at *4 (N.D. Cal. Aug. 22, 2022) ("To prove discrimination . . . a plaintiff must show a violation of applicable accessibility standards."); *Moeller v. Taco Bell Corp.*, No. C02-05849 MJJ, 2007 WL 2301778, at *5 (N.D. Cal. Aug. 8, 2007) ("A failure to comply with the DOJ Standards in buildings constructed after January 23, 1996 is a violation of the ADA."); *Rodriguez*, 10 F. Supp. 3d at 1073; *Yates v. Bacco*, No. C-11-01573 DMR, 2014 WL 1089101, at *4 (N.D. Cal. Mar. 17, 2014).

Under Plaintiffs' theory, ADA discrimination occurs when a new construction facility does not currently comply with the ADAAG standards governing that facility, whether or not the current owner was involved in the facility's construction or design. This reading of the ADA and understanding of the ADAAG's role necessarily would impose a substantial obligation on successor owners, lessors, lessees, and operators to remediate facilities that they did not themselves design or construct. Perhaps for this reason, some district courts have found that the plain text of the ADA does not support this theory of successor liability. *See Paulick v. Ritz-Carlton Hotel Co., LLC*, No. C 10-01115 CRB, 2011 WL 6141015, at *5, n.11 (N.D. Cal. Dec. 9, 2011); *De La Rosa v. Lewis Foods of 42nd St., LLC*, 124 F. Supp. 3d 290, 296–97 (S.D.N.Y. 2015). Especially in light of *Loper Bright Enterprises v. Raimondo*, 219 L. Ed. 2d 832 (2024), this Court is wary of imposing such a sweeping obligation to remediate based solely on regulations, rather than on the plain text of the statute Congress enacted. And the Court has concerns about the broader repercussions of such an interpretation, which would essentially put successors perpetually on the hook to remediate structures that they had no hand in building or designing. Nevertheless, controlling Circuit authority appears to compel this conclusion. The

Ninth Circuit, citing 28 C.F.R. § 36.406(a), has held that non-compliance with the ADAAG itself constitutes discrimination under the ADA. *See Chapman*, 631 F.3d at 945. Accordingly, the Court finds that successor owners like Brookdale may be liable for discrimination when their newly constructed facilities do not adhere to the ADAAG standards governing that facility. As a result of this finding, Brookdale's motion for summary judgment as to the new facility access barrier claims is denied.

The Court acknowledges that this conclusion creates a split within this district. *See Paulick*, 2011 WL 6141015, at *5, n.11 ("Whether ADA regulations require Defendants to make the hotel accessible in accordance with the 1991 [ADAAG] standards has no bearing on whether Defendants may be held liable for discrimination. A failure to comply with § 36.401(a) does not constitute 'discrimination' under the ADA."). And the Court recognizes that *Loper Bright* raises substantial new questions about the degree of deference courts should give to regulations, particularly vis-à-vis statutes.[6] In the end, the Court concludes that it is bound by *Chapman* to this interpretation of the law, and only the Ninth Circuit has the power to reconsider that ruling (based on *Loper Bright* or otherwise).

### ii. The Court Defers Ruling on Plaintiffs' Request for Summary Judgment on the Access Barrier Claims

Plaintiffs request partial summary judgment as to the "existence" of certain physical access barriers at Brookhurst, Fountaingrove, and Hemet. Mot. at 26–47. Brookdale does not contest either the existence of these barriers or Plaintiffs' assertions that these barriers violate the ADAAG. Instead, Brookdale makes the same argument—that subsequent owners cannot be liable for new construction claims—that the Court rejected above. *See* Opp. at 43. It appears, then, that there is neither a genuine dispute of fact as to the existence of the access barriers listed in Plaintiffs' motion for summary judgment, nor a legal basis on which to deny summary judgment. However, the Court is unable to discern precisely what Plaintiffs seek by requesting summary

---

[6] The parties' briefing does not meaningfully engage with these issues. *See* Mot. at 18, n.3; Cross Opp. at 22, n.3.

12

judgment as to the "existence" of these barriers.  It is not clear whether Plaintiffs seek a factual finding of sorts (i.e. "Fountaingrove's second floor restroom contains a soap dispenser more than 40" high"), or a legal conclusion (i.e. "Fountaingrove's second floor restroom's soap dispenser violates the ADA"), or both.  In addition, Plaintiffs have not specified how a summary judgment ruling on these claims would functionally operate at trial.  Do Plaintiffs anticipate that the Court will issue specific jury instructions on these issues, or that the Court will direct the jury to accept certain facts as proven, or something else?  Plaintiffs' lack of clarity impedes the Court's ability to rule on this issue.  So due to this lack of clarity as to both the substance and form of relief that Plaintiffs seek, the Court defers ruling on Plaintiffs' motion for summary judgment as to the new facility access barrier claims.  This deferral applies to both the ADA and Unruh Act access barrier claims related to the new facilities.  The Court expects Plaintiffs to have a clear proposal as to this issue by the pretrial conference.

### D. Fleet Safety Policy Claims

Brookdale's former Fleet Safety Policy allegedly required scooter and power wheelchair users seeking transport in Brookdale vehicles to transfer out of their scooter or wheelchair and onto either a manual wheelchair or a passenger seat within the vehicle. *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1192–93 (N.D. Cal. 2023).  According to Plaintiffs, this policy violates Department of Transportation regulations promulgated to implement Title III of the ADA, which mandate that a public accommodation *may only recommend* that the user of a wheelchair or scooter transfer from their mobility device. *See* 49 C.F.R. § 37.165(e).  Plaintiffs therefore contend that the Fleet Safety Policy on its face violates Title III of the ADA, and, necessarily, the Unruh Act.  Mot. at 26; *see* 42 U.S.C. §§ 12182(b)(2)(C)(i), 12186(a)(1).  Both Plaintiffs (individually and as subclass representatives) and Brookdale seek summary judgment with respect to Plaintiffs' Fleet Safety Policy claims.  Mot. at 24–26; Cross Mot. at 35–40.  Both motions turn on three issues: (1) mootness, (2) the applicability of 49 C.F.R. § 37.165(e), and (3) the direct threat exception.  As set forth below, the Court denies both parties' motions for summary judgment on the Fleet Safety Policy claims.

//

### i. Mootness

The parties agree that Brookdale modified its Fleet Safety Policy in April 2024 and that Brookdale's new policy does not contain the transfer provision that allegedly violated the ADA. Brookdale therefore argues that "Plaintiffs' subclass and individual injunctive relief claims are moot." Cross Mot. at 36. "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Brookdale has not met this burden. Considering the recency of the policy's modification (years into this litigation and only after the Court certified subclasses) and Brookdale's own admission that the changes were implemented in part "to avoid the uncertainty of future litigation," the Court cannot conclude that it is "absolutely clear" that Brookdale's new policy will not be "easily abandoned or altered in the future." *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013); Cross Mot. at 38. Since "Defendants have failed to establish . . . that the new policy is the kind of permanent change that proves voluntary cessation," mootness is not a basis to grant summary judgment as to Plaintiffs' Fleet Safety Policy claims. *Id.*

### ii. The Applicability of 49 C.F.R. § 37.165

Plaintiffs' Fleet Safety Policy claims rely on the "lift and securement use" regulation at 49 C.F.R. § 37.165(e), which states: "[An] entity may recommend to a user of a wheelchair that the individual transfer to a vehicle seat. The entity may not require the individual to transfer." Brookdale argues that this regulation does not apply to its transportation fleet. Instead, Brookdale claims that 49 CFR § 37.101, which governs the "[p]urchase or lease of vehicles by private entities not primarily engaged in the business of transporting people," should apply. Cross Mot. at 38. Under § 37.101(e), "entities . . . covered under this section" are "required to ensure that their systems, when viewed in their entirety, meet the equivalent service requirements of §§ 37.171 and 37.105." 49 CFR § 37.101. Accordingly, the Court must resolve whether 49 C.F.R. § 37.165 applies to Brookdale (as Plaintiffs contend), or whether 49 C.F.R. § 37.171 alone can serve as a basis for Brookdale's liability.

The plain text of these regulations suggests that § 37.165 applies to Brookdale. § 37.165

"applies to public and private entities" and regulates the specific use of vehicle lifts and securement systems for wheelchair users. On their face, then, Plaintiffs' Fleet Safety Policy claims appear to directly implicate this regulation. § 37.101, which applies to the *purchase or lease* of vehicles, concerns a different issue: broader transportation systems. Nor does any provision of § 37.101 suggest that it alone applies at the exclusion of other facially applicable regulations. § 37.101(e) states that certain entities "providing demand responsive transportation . . . are required to . . . meet the equivalent service requirements," but this language does not preclude the application of other relevant regulations. It does not, for instance, provide that covered entities are "*only* required" to meet the equivalent service requirements. Simply put, the Court considers § 37.165 and § 37.101 to be distinct regulations, each governing separate issues (wheelchair securement and transportation systems for non-transportation entities, respectively). Since § 37.165 could provide a basis for liability, Brookdale's regulatory argument does not support granting summary judgment.

### iii. The Direct Threat Exception

In opposition to Plaintiffs' motion for summary judgment on these claims, Brookdale argues for the first time that the "direct threat exception" excuses any ADA discrimination allegedly caused by the prior Fleet Safety Policy and that "disputed issues of fact exist with respect to the application of the direct threat exception." Opp. at 33. The direct threat exception permits entities to engage in otherwise discriminatory conduct against individuals who "pose[] a direct threat to the health or safety of others." 42 U.S.C. § 12182(b)(3). Because this is an affirmative defense, Brookdale has the burden to prove that allowing individuals to stay on their scooter or wheelchair posed a direct threat to others. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999); *Lockett v. Catalina Channel Exp., Inc.,* 496 F.3d 1061, 1066 (9th Cir. 2007). To establish a direct threat, a public accommodation must conduct an "individualized assessment" as set forth in 28 C.F.R. § 36.208. *Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1085 (N.D. Cal. 2013). A "blanket denial" of accommodation based on "general . . . policy" is insufficient. *Id*. But Brookdale offers no evidence that it conducted such individualized analyses. Rather, Brookdale's Fleet Safety Manager conceded that the company never undertook

15

a direct threat analysis. Dkt. No. 901, Ex. 3. *See Tamara*, 964 F. Supp. 2d at 1085 ("[S]peculations about the potential danger imposed by wheelchairs in general, without looking at the individual and his circumstances, were not enough to justify a blanket prohibition."). Therefore, the direct threat exception would not preclude summary judgment in favor of Plaintiffs.

### iv. Material Issues of Fact Exist Regarding the Fleet Safety Policy's Facial Meaning.

As represented at class certification, Plaintiffs' Fleet Safety Policy claims are a "facial challenge to the legality of Brookdale's Fleet Safety Policy." Dkt. No. 594 at 45. On its face, the Fleet Safety Policy raises genuine disputes of material fact. *See* Dkt. No. 855-3, Ex. 19, 20. Plaintiffs contend that "[e]very version of Brookdale's Fleet Safety Policy . . . require[d] residents who use scooters or motorized wheelchairs to transfer from their mobility device in order to ride," while Brookdale argues that the Policy "allowed residents to remain on an electric wheelchair or power chair" provided that the device met specific safety standards. Cross Opp. at 14; Opp. at 34. More generally, the parties contest whether the Policy just recommended that residents transfer from their devices or instead mandated these transfers. *Compare* Mot. at 25 (stating that the Policy *required* transfers), *with* Opp. at 12 ("The prior [Policy] only advised that a resident *should* transfer . . ."). The text of the policy itself does not plainly resolve the parties' disputes. *See* Dkt. No. 855-3, Ex. 19, 20. Instead, that language could be read to support both parties' positions. Since disputed issues of fact remain regarding the Policy's terms and their meaning, the Court denies both parties' motions for summary judgment as to the Fleet Safety Policy claims.

### E. Emergency Evacuation Claims

Brookdale seeks summary judgment as a matter of law on Plaintiffs' emergency evacuation claims, which broadly allege that the facilities' emergency evacuation plans discriminate against disabled residents in violation of the ADA. Cross Mot. at 40–42; Dkt. No. 647 at 83. Brookdale argues that neither the ADA nor its implementing regulations mention emergency plans, let alone impose requirements for public accommodations' emergency planning procedures. *Id*. Plaintiffs assert that Brookdale's alleged failure to provide adequate emergency evacuation plans for disabled residents denies these residents "full and equal enjoyment" of the

16

facilities. 42 U.S.C. § 12182(a); Dkt. No. 647 at 83. At issue, then, is whether Plaintiffs' emergency evacuation claims can rest on the ADA's broad anti-discrimination mandate or whether these claims require a more specific statutory or regulatory basis.[7] Few other courts have addressed this issue, and fewer still have addressed these claims in the context of Title III. *See Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 642 (S.D.N.Y. 2013) ("To the Court's knowledge, only one other court—the District Court for the Central District of California—has ever examined . . . emergency preparedness and planning for compliance with the ADA.").

Brookdale rightly notes that neither the ADA's text nor its implementing regulations set forth specific emergency evacuation requirements. *See Martinez v. Walt Disney Co.*, No. SACV1100214JVSRNBX, 2012 WL 12913738, at *7 (C.D. Cal. Nov. 26, 2012) ("[Plaintiffs] cite no legal authority mandating that all evacuation routes be fully accessible."). However, Congress enacted the ADA to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). As the Supreme Court has recognized, discrimination against disabled persons includes not just "intentional discrimination" or "affirmative animus" but also "thoughtlessness and indifference." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). Since courts must "construe the language of the ADA broadly to advance its remedial purpose," the Court cannot say here that Plaintiffs' emergency evacuation claims fail as a matter of law. *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014); *see Tcherepnin v. Knight,* 389 U.S. 332, 336 (1967); *Chapman*, 631 F.3d at 945.

Several factual disputes preclude summary judgment with respect to the emergency planning claims. These disputes include disagreements as to the regularity of emergency drills, residents' ability to participate in drills, the availability of accessible emergency transportation, and the frequency with which emergency procedures are updated. *See* Cross Opp at 45. More

---

[7] According to Plaintiffs, Brookdale is also liable for discrimination under the ADA on the supposed basis that violations of California law can be a basis for ADA liability. Cross Opp. at 43. Plaintiffs provide no legal support for this novel theory of ADA liability. Claims based on this theory of liability fail as a matter of law. At trial, Plaintiffs may only seek to impose liability for this claim based on the ADA's anti-discrimination mandate itself.

17

generally, the parties contest whether Brookdale's emergency plans are discriminatory. While Brookdale states that its emergency plans "applied equally to residents of all abilities" and were "not discriminatory in any sense," Plaintiffs allege that there are "serious gaps in emergency evacuation planning" that discriminate against residents with disabilities. Cross Mot. at 18, 42; Cross Opp. at 15. These factual disputes are appropriate for resolution by a factfinder at trial. Accordingly, the Court denies Brookdale's motion for summary judgment on Plaintiffs' emergency evacuation claims.

### F. Plaintiff Algarme's Standing

Brookdale moves for summary judgment on Plaintiff Jeanette Algarme's injunctive relief claims, arguing that she lacks standing to seek prospective injunctive relief. Cross Mot. at 42. Plaintiff Algarme formerly lived at the Brookhurst facility and declares under oath that she "would return to visit the Brookdale Brookhurst facility, but only if it were made accessible to people with mobility disabilities by the removal of all of the current access barriers." Dkt. No. 740-15.

To establish standing for injunctive relief, an ADA plaintiff can demonstrate a "genuine" "intent to return to a noncompliant accommodation" or show that she was "deterred from visiting a noncompliant public accommodation because [s]he . . . encountered barriers related to [her] disability there." *Chapman*, 631 F.3d at 949, 953. Plaintiffs contend that Plaintiff Algarme's sworn declaration is sufficient to establish her intent to return. Cross Opp. at 47. While Plaintiff Algarme's professed intent to return lacks extensive detail, it is a statement made under oath sufficient for purposes of summary judgment. *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039–40 (9th Cir. 2008) (quoting *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 209 (1972)) ("The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'"). Accordingly, the Court denies Brookdale's motion for summary judgment as to Plaintiff Algarme's injunctive relief claims.[8] The Court notes that

---

[8] Brookdale separately argues that Plaintiff Algarme lacks standing to seek prospective relief as to the memory care unit in Brookhurst because she never visited it. Cross Mot. at 44. This argument lacks merit under Ninth Circuit precedent. *See Chapman,* 631 F.3d at 944 ("[A]n ADA plaintiff who establishes standing as to encountered barriers may also sue for injunctive relief as to

Brookdale may still challenge Plaintiff Algarme's standing at trial. *See California v. Ross*, 362 F. Supp. 3d 749, 753 (N.D. Cal. 2018).

### G. Conclusion

To summarize, the Court grants Brookdale's cross-motion for summary judgment as to (1) the ADA and Unruh Act claims brought by the San Ramon and Scotts Valley subclasses and (2) Plaintiffs' Unruh Act claims predicated on alleged violations of the CBC. The Court defers ruling on Plaintiffs' motion for summary judgment with respect to the new facility access barrier claims brought by the individual Plaintiffs and the Brookhurst subclass under the ADA and Unruh Act. The motions for summary judgment are otherwise denied.

**IT IS SO ORDERED.**

Dated: 12/13/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

unencountered barriers related to his disability.").