UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIA STINER, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BROOKDALE SENIOR LIVING, INC., et al.,<br><br>　　　　Defendants. | Case No. 17-cv-03962-HSG<br><br>**ORDER GRANTING UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT FOR INJUNCTIVE RELIEF**<br><br>Re: Dkt. No. 1026 |

Pending before the Court is Plaintiffs' unopposed motion for preliminary approval of class action settlement for injunctive relief. *See* Dkt. No. 1026 ("Mot."). The Court held a hearing on the motion on May 1, 2025. For the reasons detailed below, the Court GRANTS the motion.

## I. BACKGROUND

### A. Factual Allegations

This is a putative class action lawsuit in which Plaintiffs allege that Defendants Brookdale Senior Living, Inc. and Brookdale Senior Living Communities, Inc. (collectively, "Brookdale" or "Defendants") operate their facilities in California in a manner that violates federal and state disability laws. Brookdale, a for-profit corporation, is the largest provider of assisted living for senior citizens and persons with disabilities in the nation. Plaintiffs, who are current and former Brookdale residents (or their successors in interest), allege that six Brookdale facilities in California are not accessible to people with disabilities in violation of the Americans with Disabilities Act of 1990 ("ADA") and California's Unruh Civil Rights Act. Plaintiffs further allege that Brookdale's policies regarding transportation, emergency evacuation, and staffing prevent its residents from fully accessing and enjoying the facilities. *See Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2024 WL 5112480, at *1 (N.D. Cal. Dec. 13, 2024).

The Court previously certified four subclasses under Federal Rule of Civil Procedure 23(b)(2): (1) a Wheelchair and Scooter Users Subclass to pursue claims under the ADA and Unruh Act regarding Brookdale's Fleet Safety Policy (FSP), Dkt. No. 593, and (2) three facility-specific subclasses representing current and former residents of Brookdale's San Ramon, Scotts Valley, and Brookhurst facilities to seek injunctive and declaratory relief under the ADA and Unruh Act. Dkt. Nos. 733, 820.  After nearly eight years of litigation, several sets of claims remain, including individual Plaintiffs' injunctive relief and damages claims, injunctive relief claims brought by the Wheelchair and Scooter Users Subclass, and injunctive relief claims brought on behalf of the Brookhurst subclass.[1]

### B. Settlement Agreement

In January 2025, the parties engaged in further settlement discussions with Magistrate Judge Joseph C. Spero.  The parties ultimately entered into a settlement agreement that covers the subclasses' injunctive relief claims.  *See* Dkt. No. 1026-1 ("Settlement Agreement" or "SA").  The parties separately agreed to a confidential, individual settlement agreement that resolves the eight named plaintiffs' individual claims.  *See* Dkt. No. 1032.

The key terms of the injunctive relief Settlement Agreement are as follows:

FSP Subclass Definition: The FSP settlement class is defined as "[a]ll persons with disabilities who use wheelchairs, scooters, or other powered mobility aids and who reside or have resided at a Brookdale RCFE during the three years prior to the filing of the Complaint herein through the conclusion of this action, including their successors-in-interest if deceased, excluding any persons who are subject to arbitration."  SA at 15; Dkt. No. 593.

Access Barrier Subclass Definition: The access barrier settlement class is defined as "[a]ll

---

[1] In December 2024, the Court ruled on the parties' cross-motions for summary judgment and granted Brookdale's cross-motion for summary judgment as to the ADA and Unruh Act injunctive relief claims brought by the San Ramon and Scotts Valley subclasses.  *See Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2024 WL 5112480, at *10 (N.D. Cal. Dec. 13, 2024).

2

1    persons with disabilities who use wheelchairs, scooters, or other mobility aids or who have vision

2    disabilities and who reside or have resided at [Brookdale Brookhurst, Brookdale San Ramon,

3    and/or Brookdale Scotts Valley] during the three years prior to the filing of the Complaint herein

4    through the conclusion of this action, including their successors-in- interest if deceased, excluding

5    any persons who are subject to arbitration." SA at 15; Dkt. No. 820.

<u>Settlement Benefits</u>: The Settlement Agreement provides injunctive relief. Under the terms of the Agreement, Brookdale will physically modify its facilities in the following ways. First, Brookdale agrees to bring the interior and exterior common areas of its Brookhurst, San Ramon, and Scotts Valley facilities into compliance with the 2010 Americans with Disabilities Act Accessibility Standards ("2010 ADAS") within the next five years. SA at 34–35. In addition, Brookdale will renovate several residential units across all three facilities, as enumerated in the Agreement, to comply with Section 223.3 of the 2010 ADAS.[2] *Id.* at 34–39. As to Brookdale's transportation policy, the parties agree that Brookdale will not modify the terms of its existing "Transporting Residents on Community Vehicles" policy that allow residents to remain on wheelchairs, scooters, or other powered mobility aids during transit. *Id.* at 39.[3] To address Plaintiffs' emergency evacuation claims, Brookdale agrees to update its emergency evacuation plans for the San Ramon and Scotts Valley facilities to enhance resident emergency preparedness, better transport residents with disabilities during emergencies, and ensure that the facilities are equipped to evacuate residents with disabilities. *Id.* at 39–40. Finally, in response to Plaintiffs' staffing claims, Brookdale will continue to provide current or prospective Scotts Valley and San Ramon residents with language concerning care and services from the California Department of Social Services. *Id.* at 41. Brookdale will refrain from promising these residents that "staffing levels [adjust] whenever a new resident is admitted or an existing resident's needs change." *Id.*

---

[2] Lead Plaintiff Stacia Stiner will be offered one of the renovated, 2010 ADAS, Section 223.3 compliant studio units in the Brookdale San Ramon facility. SA at 35. Brookdale will likewise offer Plaintiff Bernie Jestrabek-Hart a 2010 ADAS Section 223.3 renovated unit at the Brookdale Scotts Valley facility. *Id.*
[3] Brookdale may modify the policy to comply with applicable laws and regulations.

3

Over the next two years, Brookdale also agrees to provide Plaintiffs' counsel with a semi-annual report detailing several staffing metrics across both facilities. *Id.* at 42.

<u>Release</u>: Subclass members will release Brookdale of "all claims, liabilities, demands, causes of action, or lawsuits for declaratory and/or injunctive relief, arising out of or relating in any way or manner to the claims and allegations asserted or that could have been asserted" in this action. SA at 21. Members also release all appellate rights except for "any appellate rights relating to the motion for attorneys' fees, costs and expenses." *Id.* at 22. The release does not extend to any individual personal injury claims or any claims based on alleged breaches of this Settlement Agreement. *Id.* at 21. Subclass members also agree to waive their rights under Section 1542 of the California Civil Code. *Id.* at 22.

<u>Incentive Award</u>: The three facility subclass representatives may seek incentive awards up to $5,000. If approved, Brookdale will pay these awards. SA at 20; Mot. at 16.

<u>Attorneys' Fees and Costs</u>: Plaintiffs intend to seek no more than $14,500,000 in attorneys' fees, costs, and expenses, which constitutes "approximately one-third of the total amount Plaintiffs' have incurred to date in attorney's fees, costs, and expenses." SA at 21; Mot. at 17. Brookdale agrees not to oppose Plaintiffs' request. *Id.* Class members will have 35 days to object to Plaintiffs' fees and cost request. *See* Dkt. No. 1044 at 5.

<u>Subclass Notice</u>[4]: The parties will provide notice of the Settlement Agreement through two template notices, one tailored to members of the facility-based subclasses and the other directed at members of the Fleet Safety Policy subclass. Dkt. No. 1044 at 3.[5] The notice

---

[4] Plaintiffs' motion for preliminary approval did not include a notice plan. *See* SA at 23. At the hearing on May 1, 2025, the Court instructed the parties to develop a notice plan. The parties then filed a proposed notice plan. *See* Dkt. No. 1044.

[5] The parties have stipulated that members of the facility-based subclasses who "use glasses or contact lenses as described in the Flores Declaration [Dkt. No. 662-6] at Paragraphs 119 and 120 and Table 8" will receive notice. *See* Dkt. No. 1046.

4

1   templates (1) define the subclasses, (2) explain the injunctive relief, (3) state the final approval
2   hearing date, and (4) detail the objection procedure and deadline. *Id.* at 10. Each subclass
3   member will receive a hard copy of the notice within 30 days of this Order. Class members with
4   designated legal representatives will also receive electronic copies. Moreover, the law firms
5   representing Plaintiffs will post the notice on their respective websites.

7   Objection Procedure: Any member of the subclasses may file a written objection to the
8   Agreement either electronically or in person. The objection must contain the information listed in
9   Section 10 of the Settlement Agreement. SA at 25. Any subclass member who does not object
10  "shall be deemed to have waived any such objection," and may not object at the final approval
11  hearing. *Id.* All objections must be filed with the Court within 60 days of notice and at least 30
12  days before the final approval hearing. *Id.* at 24; Dkt. No. 1044 at 5.

## II.   PROVISIONAL CLASS CERTIFICATION

Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011). The Court previously certified four subclasses under Federal Rule of Civil Procedure 23(b)(2). Dkt. Nos. 593, 820. Thus, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. The proposed Settlement Agreement provides relief to the same four subclasses already certified by the Court. *See* SA at 15; Dkt. Nos. 593, 820. Accordingly, there is no need to revisit the Court's prior analysis, and the Court provisionally certifies the settlement class. *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 2817588, at *3 (N.D. Cal. July 19, 2022).

## III.  PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

**A. Legal Standard**

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Regardless of whether a settlement agreement has been negotiated before or after a class has been certified, the district court must also review the settlement agreement for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *See Briseño v. Henderson*, 998 F.3d 1014, 1023–25 (9th Cir. 2021) (holding that courts must apply heightened scrutiny even to post-class certification settlement approvals) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

"The Court cannot . . . fully assess [the fairness] factors until after the final approval hearing; thus, a full fairness analysis is unnecessary at this stage." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (internal citation and quotations omitted). "At the preliminary approval stage, the settlement need only be potentially fair." *Id.* (internal citation and quotations omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (quotation omitted).

6

**B.     Analysis**

      **i.     Evidence of Conflicts and Signs of Collusion**

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement and whether the parties negotiated a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)." *Id.*

Here, Plaintiffs' motion for preliminary approval states that Plaintiffs' counsel will request up to $14,500,000 in attorneys' fees, which constitutes one-third of the fees that counsel incurred over the course of this litigation. Mot. at 17. "[B]ecause of the danger that parties will overestimate the value of injunctive relief in order to inflate fees, courts must be particularly careful when ascribing value to injunctive relief for purposes of determining attorneys' fees." *Roes*, 944 F.3d at 1055. And because the Settlement Agreement contains a clear sailing provision, the Court "has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 948.

The Ninth Circuit "has signed off on two methods for determining reasonable attorneys' fees in class actions: the 'lodestar' method and the 'percentage-of-recovery' method." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025). Because "injunctive relief is inherently difficult to monetize," *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021), courts tend to use the lodestar method in injunctive relief class actions. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015) ("Because the settlement resulted in injunctive relief**,** the lodestar method is the appropriate measure for calculating attorneys' fees."). The "[b]enefit to the class is the '[f]oremost' consideration" in assessing the reasonableness of attorneys' fees. *Kim*, 8 F.4th at 1181; *see In re California Pizza Kitchen Data Breach Litig.*, 129

F.4th at 679 (holding that the "touchstone" for the Court's attorneys' fees "analysis is 'the benefit to the class'—class counsel can only reap rewards if they have delivered results for class members").

The Court is cognizant of its obligation to review class fee awards with rigor, and at the final approval stage will scrutinize the circumstances and determine what fee award is appropriate in this case. At that point, the Court must "(1) explain[] why the value of the injunctive relief's benefits to individual class members was readily quantifiable and worth [the estimated value] or (2) exclude[] the injunctive relief from the valuation of the settlement and explain[] why attorneys' fees . . . were justified." *Kim*, 8 F.4th at 1181 (internal quotations and citation omitted). The Court will independently assess the reasonableness of Plaintiffs' fee request, evaluating Plaintiffs' billing records, the benefits obtained for the class, and the risks of further litigation. *See Hanlon*, 150 F.3d at 1029. At this preliminary stage, the Court does not find the proposed award so disproportionate as to raise concerns, particularly because one of the goals of this litigation was to improve the facilities' accessibility for persons with disabilities. And for now, the Court does not find that the Agreement's clear sailing provision creates an inference of collusion or conflict that warrants invalidating the settlement as a whole. The parties represent that the Agreement is "a result of arm's length negotiations," SA at 26, and the Agreement was facilitated through extensive discussions overseen by a neutral mediator, Magistrate Judge Spero, thereby reducing the likelihood of fraud or collusion. *See Estorga v. Santa Clara Valley Transportation Auth.*, No. 16-CV-02668-BLF, 2020 WL 7319356, at *6 (N.D. Cal. Dec. 11, 2020).

### ii. Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class members. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth Headset*, 654 F.3d at 947. Under Rule 23(e), the Settlement Agreement must "treat class members equitably relative to each other." Fed. R. Civ. P. 23. The Court finds that the Agreement satisfies this standard for purposes of preliminary approval.

8

1    First, the Settlement Agreement authorizes three subclass representatives to apply for
2  incentive awards of up to $5,000. SA at 20. The Court will ultimately determine whether any of
3  these individuals are entitled to such an award and the reasonableness of the amount requested.
4  Incentive awards "are intended to compensate class representatives for work done on behalf of the
5  class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez*
6  *v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient
7  evidence to allow the Court to evaluate these awards "individually, using 'relevant factors
8  includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to
9  which the class has benefitted from those actions, . . . [and] the amount of time and effort the
10 plaintiff expended in pursuing the litigation . . . .'" *Stanton*, 327 F.3d at 977. The Court will
11 consider the evidence presented at the final fairness hearing and evaluate the reasonableness of
12 any incentive award request. Since the incentive awards here are not per se unreasonable,
13 particularly in light of the duration and intensity of litigation in this matter, the Court finds that
14 this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that
15 "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis
16 omitted)).

17   Second, the Agreement requires Brookdale to offer 2010 ADAS-compliant, renovated
18 studios to Plaintiffs Stacia Stiner and Bernie Jestrabek-Hart. SA at 35. Since the parties agree that
19 (1) Brookdale must remediate facilities "constructed or altered before March 15, 2012 . . . that do
20 not comply with the 1991 Standards" to comply with 2010 Standards,[6] and (2) residents who need
21 renovations to accommodate a mobility/vision disability will not pay for their renovations, the
22 Court finds that the Agreement does not accord preferential treatment to Plaintiffs Stiner and Hart.
23 Dkt. No. 1026-1, Ex. B. Although Plaintiffs Stiner and Hart are specifically discussed in the
24 Agreement, their treatment does not, under these circumstances, create any class-wide inequity.
25 *See* Fed. R. Civ. P. 23 (e).
26 //
27
28 

---

[6] This remediation is limited to the requirements of 28 C.F.R. § 36.406(a)(5)(ii).

9

### iii. Settlement Within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *8 (N.D. Cal. Nov. 21, 2018). This requires the Court to evaluate the strength of Plaintiffs' case.

The Settlement Agreement provides comprehensive injunctive relief. It implements substantial renovations to the Brookhurst, San Ramon, and Scotts Valley facilities to bring units and common spaces into compliance with the 2010 ADAS; it ensures that a Brookdale transportation policy provision, which currently allows residents to stay on their mobility aids during transit, remains fixed in place; and it mandates changes to Brookdale's emergency planning procedures, including equipment, transportation, and notice requirements. Moreover, the Agreement modifies the language that Brookdale will use to communicate with current or prospective residents about its staffing levels and establishes a reporting mechanism whereby Brookdale will relay its staffing metrics over the next several years to Plaintiffs' counsel. These substantial benefits place this settlement well within the range of possible approval, particularly when weighed against the risks of further litigation. Were this case to proceed to trial, for instance, Plaintiffs' standing to even bring access barrier injunctive relief claims would hinge on the jury's evaluation of whether Jeanette Algarme intends to return to Brookhurst. The certainty and scope of relief that the Settlement Agreement provides far outweighs the risks inherent in a jury trial. Therefore, the Court finds that the settlement benefits heavily weigh in favor of granting preliminary approval.

### iv. Obvious Deficiencies

The Court also considers whether there are obvious deficiencies in the Settlement Agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

### C. Proposed Class Notice Plan

Notice is discretionary "[f]or any class certified under Rule 23(b)(1) or (b)(2)," Fed. R.

10

Civ. P. 2(c)(2), as Rule 23(b) "does not . . . oblige the District Court to afford [classes certified under (b)(1) and (b)(2)] notice of the action." *Wal-Mart Stores, Inc.*, 564 U.S. at 362. *See Stathakos v. Columbia Sportswear Co.*, No. 4:15-CV-04543-YGR, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required."). Therefore, "[c]ourts typically require less notice in Rule 23(b)(2) actions." *Lilly v. Jamba Juice Co.*, No. 13–CV–02998–JST, 2015 WL 1248027, at *8 (N.D. Cal. Mar. 18, 2015). Here, in its discretion and in light of the nature of the proposed relief, the Court has directed the parties to provide notice to the subclasses.[7] *See Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) ("[A] district court may require notice . . . under its discretionary authority provided in Rule 23(d).").

The proposed notice template is detailed, and its distribution appears well-suited to provide all subclass members with notice of the provisions of the settlement. *See* Dkt. No. 1044. The template will be distributed in hard copy and online, increasing its visibility. Accordingly, the Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (internal citation and quotations omitted).

## IV. CONCLUSION

The Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement, Dkt. No. 1026. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Filing deadline for attorneys' fees and costs motion and requests for service awards, at least 35 days prior to the close of the objection period | |

---

[7] In this matter, notice is not costly or prohibitive to implement.

11

| | |
|---|---|
| Deadline for subclass members to object to settlement, at least 30 days prior to the final fairness hearing and at least 60 days after notice is issued | |
| Deadline for subclass members to object to any motions for attorneys' fees | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan consistent with the terms of the Settlement Agreement and the parties' supplemental briefing.

**IT IS SO ORDERED.**

Dated:   6/13/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

12