Guy B. Wallace – 176151
Mark T. Johnson – 76904
Jennifer U. Bybee – 302212
Travis C. Close – 308673
Rachel L. Steyer – 330064
**SCHNEIDER WALLACE**
**COTTRELL KIM LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608-1863
Telephone:    (415) 421-7100
Facsimile:    (415) 421-7105
Email:    gwallace@schneiderwallace.com
            mjohnson@schneiderwallace.com
            juhrowczik@schneiderwallace.com
            tclose@schneiderwallace.com
            rsteyer@schneiderwallace.com

Gay Crosthwait Grunfeld – 121944
Jenny S. Yelin – 273601
Benjamin Bien-Kahn – 267933
Brenda Muñoz – 328813
Adrienne Spiegel – 330482
Maya Campbell – 345180
**ROSEN BIEN**
**GALVAN & GRUNFELD LLP**
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:    ggrunfeld@rbgg.com
            jyelin@rbgg.com
            bbien-kahn@rbgg.com
            bmunoz@rbgg.com
            aspiegel@rbgg.com
            mcampbell@rbgg.com

Kathryn A. Stebner – 121088
Brian S. Umpierre – 236399
**STEBNER GERTLER & GUADAGNI**
**A Professional Law Corporation**
870 Market Street, Suite 1285
San Francisco, California 94102-2918
Telephone:    (415) 362-9800
Facsimile:    (415) 362-9801
Email:    kathryn@sgg-lawfirm.com
            brian@sgg-lawfirm.com

David T. Marks – *pro hac vice*
**MARKS, BALETTE, GIESSEL**
**& YOUNG, P.L.L.C.**
7521 Westview Drive
Houston, Texas 77055
Telephone:    (713) 681-3070
Facsimile:    (713) 681-2811
Email:    davidm@marksfirm.com

Attorneys for Plaintiffs and the Certified Subclasses

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| STACIA STINER; RALPH CARLSON, in his capacity as Trustee of the Beverly E. Carlson and Helen V. Carlson Joint Trust; LORESIA VALLETTE, in her capacity as representative of the Lawrence Quinlan Trust; MICHELE LYTLE, in her capacity as Trustee of the Boris Family Revocable Trust; RALPH SCHMIDT, by and through his Guardian Ad Litem, HEATHER FISHER; PATRICIA LINDSTROM, as successor-in-interest to the Estate of ARTHUR LINDSTROM; BERNIE JESTRABEK-HART; and JEANETTE ALGARME; on their own behalves and on behalf of others similarly situated, | Case No. 4:17-cv-03962-HSG (LB) **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR INJUNCTIVE RELIEF** Judge: Hon. Hon. Haywood S. Gilliam, Jr. Date:    October 16, 2025 Time:    2:00 p.m. Crtrm.:    2, 4th Floor |

Plaintiffs,

v.

BROKDALE SENIOR LIVING, INC.;
BROOKDALE SENIOR LIVING
COMMUNITIES, INC.; and DOES 1 through 100,

Defendants.

[4741736.5]

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................2

FACTUAL AND PROCEDURAL BACKGROUND................................................................3

SUMMARY OF THE PROPOSED SETTLEMENT ...............................................................5

ARGUMENT ..........................................................................................................................10

I.    THE COURT SHOULD CONFIRM CLASS CERTIFICATION ...................................10

II.   THE PARTIES' JOINT NOTICE PLAN ADEQUATELY APPRAISED ABSENT
      CLASS MEMBERS OF THE TERMS OF THE PROPOSED SETTLEMENT................10

III.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND SHOULD BE
      GRANTED FINAL APPROVAL .......................................................................................12

      A.    Class Counsel and the Class Representatives Have Adequately Represented
            the Subclasses .........................................................................................................14

      B.    The Proposed Settlement Was Negotiated at Arm's Length and Without
            Collusion .................................................................................................................16

      C.    The Proposed Settlement Provides the Subclasses Adequate Relief,
            Considering the Costs, Risks, and Delay of Litigation and Other *Hanlon*
            Factors Addressing Whether a Settlement is Fair, Reasonable and Adequate.........18

            1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity,
                  and Likely Duration of Further Litigation....................................................19

            2.    The Amount Offered in Settlement and Terms of Proposed
                  Attorneys' Fees ............................................................................................21

            3.    The Extent of Discovery Completed and the Stage of Proceedings ...........21

            4.    The Experience and Views of Counsel .........................................................22

            5.    The Reaction of Class Members to Date.......................................................22

      D.    Class Members are Treated Equitably Relative to Each Other Under the
            Proposed Settlement ................................................................................................23

CONCLUSION ........................................................................................................................24

# TABLE OF AUTHORITIES

Page

**CASES**

*Ang v. Bimbo Bakeries USA, Inc.*,
    No. 13-CV-01196-HSG, 2020 WL 2091801 (N.D. Cal. Mar. 31, 2020) ........................... 10

*Austin v. Foodliner, Inc.*,
    No. 16-CV-07185-HSG, 2019 WL 2077851 (N.D. Cal. May 10, 2019) ........................... 19

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) ............................................................................................. 10

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ............................................................................................. 23

*Churchill Vill., LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................................... 13

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................................. 13

*Franklin v. Kaypro*,
    884 F. 2d 1222 (9th Cir. 1989) ............................................................................................ 13

*G.F. v. Contra Costa Cnty.*,
    Case No. 13–cv–03667–MEJ, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ................... 16

*Grant v. Cap. Mgmt. Servs., L.P.*,
    No. 10-CV-2471-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ....................... 21

*Hanlon v. Chrysler*,
    150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores,*
    *Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................................... passim

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
    85 F.4th 1070 (11th Cir. 2023) ........................................................................................... 23

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ........................................................................... 16, 17, 18, 22

*In re Google LLC Street View Elec. Commc'ns Litig.*,
    611 F. Supp. 3d 872 (N.D. Cal. 2020*), aff'd sub nom. In re Google Inc. Street View*
    *Elec. Commc'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021) ................................................. 15, 22

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................................................... 13

*In re Lyft Inc. Sec. Litig.*,
    No. 19-CV-02690-HSG, 2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ............................. 21

*In re Omnivision Techs.*, Inc.,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 22

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015)............................................................................. 24

*In re Snap Inc. Sec. Litig.*,
    No. 2:17-cv-0367-SVW, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ............................ 14

*Kang v. Wells Fargo Bank, N.A.*,
    No. 17-cv-06220, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021), *aff'd sub nom. Kang*
    *v. Fyson*, No. 22-15694, 2022 WL 6943174 (9th Cir. Oct. 12, 2022) ............................ 13

*Kastler v. Oh My Green, Inc.*,
    No. 19-CV-02411-HSG, 2021 WL 3604714 (N.D. Cal. Aug. 13, 2021) ........................ 17

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021)............................................................................. 18

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) .............................................................. 19

*Kuraica v. Dropbox, Inc.*,
    No. 19-CV-06348-BLF, 2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ............................ 22

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012)............................................................................. 13

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023).............................................................................. 23

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 14

*O'Connor v. Uber Techs., Inc.*,
    No. 13-cv-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019)............................ 14

*Officers for Just. v. Civ. Serv. Comm'n of S.F.*,
    688 F.2d 615 (9th Cir. 1982)............................................................................. 14

*Richards v. Chime Fin., Inc.*,
    No. 19-CV-06864-HSG, 2020 WL 6318713 (N.D. Cal. Oct. 28, 2020) ........................ 17

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)........................................................................ 13, 22

*Roe v. Frito-Lay, Inc.*,
    No. 14-cv-00751-HSG, 2017 WL 1315626 (N.D. Cal. Apr. 7, 2017)............................ 24

*Satchell v. Fed. Exp. Corp.*,
    Nos. C03–2659 SI, C 03–2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)............. 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)........................................................................ 23, 24

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR
INJUNCTIVE RELIEF

*Stiner v. Brookdale Senior Living, Inc.* ("*Stiner I*"),
354 F. Supp. 3d 1046 (N.D. Cal. 2019), *rev'd in part on other grounds*, 810 F.
App'x 531 (9th Cir. 2020) .................................................................................. 19

*Stiner v. Brookdale Senior Living, Inc.* ("*Stiner II*"),
665 F. Supp. 3d 1150 (N.D. Cal. 2023) .............................................................. 19

*Stiner v. Brookdale Senior Living, Inc.* ("*Stiner III*"),
665 F. Supp. 3d 1150 (N.D. Cal. 2023) ................................................ 10, 15, 19

*Stiner v. Brookdale Senior Living, Inc.* ("*Stiner IV*"),
No. 4:17-cv-03962-HSG (LB), 2024 WL 3498492 (N.D. Cal. July 22, 2024)....... 10, 15, 19

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)................................................................................ 14

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976).............................................................................. 13

**RULES**

Fed. R. Civ. P. 23 ................................................................................................ passim

**REGULATIONS**

28 C.F.R. § 36.304 .................................................................................................. 7

28 C.F.R. § 36.406 .................................................................................................. 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment ............................. 14, 16, 18

Northern District of California, Procedural Guidance for Class Action Settlements ........................ 3

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT on October 16, 2025, at 2:00 p.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Haywood S. Gilliam, Jr., located at 1301 Clay Street, Oakland, California, Plaintiffs and Subclass Representatives Stacia Stiner, Bernie Jestrabek-Hart, and Jeanette Algarme (together, the "Plaintiffs" or "Class Representatives"), by and through Class Counsel will and hereby do move the Court for entry of an Order, pursuant to Federal Rule of Civil Procedure Fed. R. Civ. P. 23(e), granting final approval of the proposed class settlement agreement for injunctive relief (the "Proposed Settlement," Proposed Agreement" or "Agreement") submitted herewith as Exhibit A to the Declaration of Gay Crosthwait Grunfeld in support of this Motion.  Plaintiffs also request that the Court enter as part of its final approval of the Proposed Settlement the Stipulated and Injunction and Order submitted herewith as Exhibit B to the Declaration of Gay Crosthwait Grunfeld in support of this Motion.

The Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declarations of Gay Crosthwait Grunfeld, Guy B. Wallace, Kathryn Stebner, David Marks, Stacia Stiner, Bernie Jestrabek-Hart, and Jeanette Algarme, all filed herewith pleadings and papers on file in this action; and any oral argument this Court permits.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs and Class Representatives Stacia Stiner, Bernie Jestrabek-Hart, and Jeanette Algarme ("Plaintiffs" or "Class Representatives") request that the Court grant final approval of the Proposed Settlement, which the Court preliminarily approved in its June 13, 2025 Order (the "Preliminary Approval Order"). ECF No. 1047. The Proposed Settlement provides significant and lasting injunctive relief to four certified subclasses: (1) the Fleet Safety Policy Subclass ("FSP Subclass"), comprised of residents of all Brookdale Residential Care Facilities for the Elderly ("RCFE") in California who use powered wheelchairs, scooters, or other powered mobility aids; (2) the Brookhurst Subclass, comprised of residents with mobility and vision disabilities who live at Brookdale Brookhurst; (3) the San Ramon Subclass, comprised of residents with mobility and vision disabilities who live at Brookdale San Ramon; and (4) the Scotts Valley Subclass, comprised of residents with mobility and vision disabilities who live at Brookdale Scotts Valley.

The Proposed Settlement requires Defendants to implement several important changes that will benefit members of the certified subclasses. These include renovating the indoor and outdoor common areas and a subset of residential units of the Brookhurst, San Ramon, and Scotts Valley RCFEs to make them compliant with the 2010 Americans with Disabilities Act Standards for Accessible Design ("2010 ADAS"), providing additional modifications to residentials units that residents with disabilities at those RCFEs require without charging the residents, and maintaining—for all California Brookdale RCFEs—a transportation policy that allows residents with mobility disabilities who use electric wheelchairs or scooters to remain in their mobility devices when they ride on a Brookdale van or bus consistent with the Americans with Disabilities Act of 1990 ("ADA") Title III regulations. The Settlement provides significant relief to all four subclasses, even the two (Scotts Valley and San Ramon) whose claims the Court dismissed in its December 13, 2024 summary judgment order, an excellent result. The Proposed Settlement is fair, adequate, and reasonable, and is the product of serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel and Class Representatives. It satisfies all criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure.

Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Proposed Settlement and enter the parties' Stipulated Injunction and Order.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs previously summarized in detail the case background and litigation history of this class action in their Unopposed Motion for Preliminary Approval of Class Action Settlement for Injunctive Relief (the "Preliminary Approval Motion"), *see* ECF Nos. 1026 at 8-13, and their Motion for Reasonable Attorneys' Fees, Costs, and Expenses (the "Attorneys' Fees Motion"), *see* ECF No. 1052 at 11-17.  Plaintiffs hereby incorporate this background and history by reference and do not repeat it here.[1]

During the preliminary approval process, the parties did not originally request notice to the four subclasses, but if the Court required notice, they "agree[d] to cooperate in good faith to identify the least burdensome and most efficient means of providing effective notice."  ECF No. 1026 at 23.  At the preliminary approval hearing, the Court found class notice to be appropriate, and ordered the parties to meet and confer about an effective notice plan.  *See* ECF No. 1035; May 1, 2025 Tr. at 7:11-24.

After extensive meet and confer discussions, the parties filed a Joint Proposed Class Notice Plan ("Joint Notice Plan").  ECF No. 1044.  The parties agreed to provide notice of the Proposed Settlement through two template notices: one for use at Brookdale Brookhurst, Brookdale Scotts Valley, and Brookdale San Ramon for members of the facility-based subclasses or the FSP subclass at those RCFEs, and the other for use at the remaining Brookdale RCFEs in California for FSP subclass members.  *Id.* at 3.  The parties also agreed on three methods for distributing notice: (1) Brookdale staff would place a hard copy of the relevant class notice in the internal facility mailboxes of each current resident identified as a member of one or more of the subclasses; (2) For any members of any of the four subclasses who have legal representative(s) designated as Responsible Parties in Brookdale's records, Brookdale staff would also send an electronic copy of

---

[1] *See* Northern District of California, Procedural Guidance for Class Action Settlements, at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/  (last visited September 15, 2025).

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR INJUNCTIVE RELIEF

1   the appropriate Notice to the designated Responsible Parties; and (3) The law firms representing

2   the Plaintiffs would also place the notices on their firm websites. *Id.* at 4.

3       In order to identify current residents who fit within one or more of the subclass definitions,

4   Brookdale agreed to review and rely on their Personal Service Assessment/Personal Service Plan

5   records. *Id.* The parties disagree as to whether individuals who use glasses or contacts but whose

6   vision does not correct to 20/20 have a vision disability and are members of the subclasses, thus

7   requiring notice. *Id.* However, to avoid litigating the dispute, the parties stipulated that such

8   individuals would receive notice along with other members of the subclasses. *See* ECF No. 1046.

9       The parties agreed that all notices were to be provided within thirty (30) days of the

10  Court's order granting preliminary approval. ECF No. 1044 at 5. Any class member who wished

11  to object had sixty (60) days after notice was provided to do so. *Id.* In addition, Plaintiffs agreed

12  to file their motion for fees, costs, and expenses thirty-five (35) days prior to the end of the sixty-

13  day objection period. *Id.* Each Plaintiffs' counsel's firm would also include a copy of the motion

14  (once filed) on their website. *Id.* at 4. The template notices would inform class members of the

15  date the fees and costs motion was to be filed, and direct them to Plaintiffs' counsel's firm

16  websites and the Court's docket, where they could access the motion once filed. *Id.* at 5-6.

17      In its Preliminary Approval Order, the Court directed the parties "to implement the

18  proposed class notice plan consistent with the terms of the Settlement Agreement and the parties'

19  supplemental briefing." ECF No. 1047 at 12. The Court also directed the parties to meet and

20  confer and stipulate to a schedule for key final approval deadlines. *Id.* at 11. The parties agreed in

21  part to provide notice to the class no later than July 14, 2025. ECF No 1049 at 2. On July 10,

22  2025, Brookdale informed Class Counsel that it began distributing the template notices to

23  residents, with all notices to be distributed by July 13, 2025. Declaration of Gay Crosthwait

24  Grunfeld in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action

25  Settlement for Injunctive Relief ("Grunfeld Decl.") ¶ 9 & Ex. C. Responsible Parties received

26  notices via email on July 14, 2025. *Id.* Each law firm representing Plaintiffs also placed the

27  notices on their firm websites. Grunfeld Decl. ¶ 10; Declaration of Guy B. Wallace In Support of

28  Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement for Injunctive Relief

1   ("Wallace Decl.") ¶ 3; Declaration of David T. Marks In Support of Plaintiffs' Unopposed Motion

2   for Final Approval of Class Action Settlement for Injunctive Relief ("Marks Decl.") ¶ 3;

3   Declaration of Kathryn Stebner In Support of Plaintiffs' Unopposed Motion for Final Approval of

4   Class Action Settlement for Injunctive Relief ("Stebner Decl.") ¶ 3.

5       On August 7, 2025, Plaintiffs filed their Attorneys' Fees Motion, seeking an award of

6   $14,500,000 for fees, costs and litigation expenses in accordance with Section 7 of the Proposed

7   Settlement.  ECF No. 1052.  The Attorneys' Fees Motion was also placed on the websites for each

8   law firm representing Plaintiffs.  Grunfeld Decl. ¶ 10; Wallace Decl. ¶ 3; Marks Decl. ¶ 3; Stebner

9   Decl. ¶ 3.

10      Any subclass member who wished to object to Plaintiffs' Attorneys' Fees Motion had until

11  September 8, 2025 to do so.  ECF No. 1049 at 4.  Any subclass member who wished to object to

12  the terms of the Proposed Settlement had until September 12, 2025 to do so.  *Id.*  There were no

13  objections filed to either the Attorneys' Fees Motion or the Proposed Settlement.  Grunfeld Decl.

14  ¶¶ 26, 28.

15                          **SUMMARY OF THE PROPOSED SETTLEMENT**

16      The Proposed Settlement is attached as Exhibit A to the Declaration of Gay Crosthwait

17  Grunfeld.  It resolves Plaintiffs' claims for declaratory and injunctive relief as to the four certified

18  subclasses.  Defendants have also agreed to pay up to $5,000 to each of the three Class

19  Representatives, Stacia Stiner, Bernie Jestrabek-Hart, and Jeanette Algarme, as incentive awards if

20  the Court approves the settlement.  *See* Motion for Class Representative Service Awards, filed

21  herewith.

22      Specifically, The Proposed Settlement includes the following requirements:

23  ***Injunctive Relief for the Access Barrier Subclasses***

24      The Proposed Settlement requires that Brookdale bring the interior and exterior common

25  areas of Brookdale Brookhurst, Brookdale San Ramon, and Brookdale Scotts Valley into

26  compliance with the 2010 ADAS, the most recent federal accessibility standards.  Grunfeld Decl.,

27

28

Ex. A, Class Action Settlement Agreement (hereinafter, "Agreement") §§ 4.1-4.3.[2]  Further, Defendants will renovate several resident units at each of the three RCFEs to fully comply with Section 223.3 of the 2010 ADAS, which requires units in long-term care facilities to include certain accessibility features: at Brookhurst, 4 studio units, 4 one-bedroom units, 1 "large" one-bedroom unit, and 1 one-bedroom two-bath unit will be renovated to be in compliance with § 223.3; at San Ramon, 3 studio units, 3 one-bedroom units will be renovated; and at Scotts Valley, 5 studio units, 5 one-bedroom units; 1 two-bedroom units, and 1 "combined unit" will be renovated.  All units renovated to the § 223.3 standards shall provide a roll-in shower compartment that complies with the 2010 ADAS Section 608.2.2 or an alternate roll-in shower compartment that complies with the 2010 ADAS Section 608.2.3.  *Id.*

In addition, at Brookdale Brookhurst, Defendants have agreed to renovate an additional 3 studio units, 4 one-bedroom units, 1 "large" one-bedroom unit, and 1 one-bedroom two-bath unit pursuant to Section 233 of the 2010 ADAS.  This provision allows for residential dwelling units to include features that do not strictly comply with the ADAS requirements, as long as they can be easily modified if necessary to provide compliant access to residents with mobility and/or vision disabilities.  Agreement § 4.1; *see, e.g.*, ADAS § 606.2 Clear Floor Space (allowing residential dwelling units to include cabinets underneath lavatories and sinks as long as they can be easily removed and other conditions are met).

Importantly, the Proposed Settlement also prohibits Defendants from requiring any resident to pay for any of the remediation Defendants have agreed to perform at the three RCFEs, and it likewise prohibits Defendants from requiring a resident of those facilities "who needs a modification to their unit to accommodate his or her mobility and/or vision disability to pay for such modifications."  Agreement § 4.4.

Brookdale committed to "mak[ing] a good faith effort" to prepare designs and plans— including providing a cost estimate—for the accessibility improvements to Brookhurst no later

---

[2] For all of the remediation work, The Proposed Settlement provides a "safe harbor" consistent with the 2010 ADAS—if features comply with the 1991 ADA Accessibility Guidelines (ADAAG) but do not comply with the 2010 ADAS, Defendants are not required to bring those features into compliance with the 2010 guidelines.  *See* 28 C.F.R. § 36.406(a)(5)(ii); Agreement § 4.5.

than June 1, 2025.  Brookdale also agreed to prepare plans and cost estimates for the accessibility improvements to the other two RCFEs **within one year of final approval** of The Proposed Settlement.  Agreement § 4.7.  On May 30, 2025, Brookdale provided Plaintiffs' counsel with the designs and plans for Brookhurst, as well as a cost estimate.  Grunfeld Decl. ¶ 24.  On June 23, 2025, Plaintiffs' counsel provided comments on the plans, and the parties later met and conferred regarding Plaintiffs' counsel's comments.  *Id.*  On September 8, 2025, Brookdale sent revised plans for Brookhurst and informed us that Brookdale has commenced the permitting process for that facility.  *Id.*

Defendants will also remediate all barriers identified as "readily achievable" by the U.S. Department of Justice **within two years of the final approval** order, and they have agreed to complete all of the access work within five years of final approval unless the work cannot be completed within five years for reasons outside the Parties' control.  *See* 28 C.F.R. § 36.304; Agreement §§ 4.6, 4.8.

The Parties have agreed to negotiate and agree upon a certified/licensed architect with a CASp certification ("CASp Architect") to oversee the improvements.  Agreement § 4.9.  In the event that the Parties are unable to agree on a CASp Architect, one will be appointed by the Court. *Id.*  The parties are in the process of meeting and conferring to identify a mutually-agreeable CASp.  Grunfeld Decl. ¶ 13.  The CASp Architect will have the opportunity to review the plans for the remediation work before Brookdale submits them to the local building departments for approval, as will Plaintiffs' counsel.  Agreement § 4.10.  And Class Counsel, accompanied by Defendants' counsel and the CASp Architect, will have an opportunity to inspect the final work performed.  *Id.*  The CASp may require revisionary work after the inspection, which Brookdale has agreed to complete within a reasonable period of time.  *Id.*

To ensure the access barrier remediation is completed even if Brookdale ceases operating one of the three RCFEs, the parties have agreed to a series of safeguards.  First, Defendants must notify Class Counsel of any change in the owner, lessee, or licensee of any of the three RCFEs, and Defendants have agreed to offer the subsequent owner, operator, manager, or lessor/lessee, as applicable, a capital expenditure credit to cover all of the remaining access barrier remediation

work.  Agreement § 4.13.  Defendants also agreed to make good faith efforts to enter into an agreement with the landlord for Brookhurst that would either commit the landlord to doing the access work required by The Proposed Settlement or allow Defendants to complete the work even if they no longer operate the RCFE.  *Id.* § 4.14.  Plaintiffs will be a third-party beneficiary of this agreement.  *Id.*  Defendants agreed that if they were not able to enter such an agreement by June 1, 2025, they would deposit the amount of the capital expenditure credit for the Brookhurst work in an interest-bearing escrow account under the jurisdiction of this Court by July 1, 2025, and those funds would be used exclusively for the remediation work, unless the work cannot be completed within five years for reasons outside the Parties' control.  *Id.*  Defendants were not able to enter such an agreement by June 1, so they made a deposit into an escrow bearing account.  *See* ECF No. 1065-1 at ¶ 3, Ex. 1.  Defendants are purportedly still in negotiations with the landlord of the Brookhurst facility about a lease.  Grunfeld Decl. ¶ 24.  Similarly, if Defendants sell the San Ramon or Scotts Valley RCFEs prior to completing the work, Defendants agree to either complete the work before the sale, require in the sale agreement that the work be completed by the purchaser on the original timeframes (and make Plaintiffs a third-party beneficiary of that agreement), or require in the sale agreement that the purchaser will allow Defendants to complete the work.  Agreement §§ 4.15, 4.16.

### *Injunctive Relief for FSP Subclass*

The Proposed Settlement requires Brookdale to maintain the operative "Transporting Residents on Community Vehicles Policy," and not alter as it pertains to "the provision permitting residents to remain on wheelchairs, scooters, or other powered mobility aids while being transported on a Brookdale RCFE vehicle …, consistent with the current language contained in the Transporting Residents on Community Vehicles Policy."[3]  Agreement § 5.  In other words, Defendants have agreed not to reinstate the former Fleet Safety Policy, which Plaintiffs contended violated the ADA by requiring residents who use electric wheelchairs and scooters to transfer out of their mobility devices in order to ride on a Brookdale van or bus.

---

[3] The Proposed Settlement allows Defendants to modify that provision of the policy if a change in the law or regulations requires them to do so.  Agreement § 5.2.

***Class Representative Incentive Awards***

To compensate them for their service to the subclasses they represent over the course of several years of litigation, Brookdale has also agreed to provide the three class representatives—Stacia Stiner, Bernie Jestrabek-Hart, and Jeannette Algarme—incentive awards in an amount not to exceed $5,000 assuming the Court approves those awards.  Agreement § 6.

***Additional Injunctive Relief***

As a settlement of the individual injunctive relief claims of Ms. Stiner and Ms. Jestrabek-Hart regarding emergency evacuation procedures and Brookdale's allegedly false and misleading statements and omissions regarding staffing, Brookdale has agreed to additional injunctive relief that Plaintiffs believe will confer a significant benefit on the San Ramon and Scotts Valley subclasses, even though they were not certified to pursue those claims.  Grunfeld Decl., Ex. B (Stipulated Injunction) ¶¶ 19-24.  In particular, for these two RCFEs, Defendants have committed to contracting with transportation services that are able to deploy, to the extent available at the time of evacuation, vehicles with the capacity to carry residents' mobility devices, maintaining enough fuel to keep the RCFE self-reliant for 72 hours, maintaining a database of each resident's evacuation ability and disability-related needs, and regularly discussing emergency evacuation procedures at Resident and Family Council meetings.  *Id.* ¶ 19.  As to staffing, Brookdale has agreed to instruct staff at San Ramon and Scotts Valley to refrain from making certain oral or written statements to current and prospective residents about how the RCFE sets staffing, to continue using its new clearer Residency Agreement language, to set staffing at those two RCFEs using reasonable metrics such as "assessment procedures, the experience and/or education of the staff, the ability of staff to perform various tasks in parallel, the physical layout of the facility," and to provide regular reporting for a period of two years to Plaintiffs' counsel about the caregiver staffing decisions at those two RCFEs.  *Id.* ¶¶ 20-24.

***Attorneys' Fees, Costs, and Expenses***

On August 7, 2025, Plaintiffs filed their Attorneys' Fees Motion, seeking an award of $14,500,000 for fees, costs and litigation expenses in accordance with Section 7 of the Proposed Settlement.  *See* ECF No. 1052; Agreement § 7.  This is approximately one-third of the total

1    amount Plaintiffs' counsel has incurred in attorney's fees, costs, and expenses.  Grunfeld Decl.

2    ¶ 27; *see also* ECF No. 1052.

3                                         **ARGUMENT**

4          Before approving a class action settlement, a court must (1) determine that the class

5    satisfies the certification requirements of Rule 23(a) and (b), (2) determine that adequate notice

6    has been provided to the class, and (3) "ensure that any class settlement is 'fair, reasonable, and

7    adequate,' accounting for the interests of absent class members." *Briseño v. Henderson*, 998 F.3d

8    1014, 1022 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)); *Hanlon v. Chrysler*, 150 F.3d 1011,

9    1019, 1022, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*,

10   564 U.S. 338 (2011).

11   **I.      THE COURT SHOULD CONFIRM CLASS CERTIFICATION**

12         A threshold inquiry at final approval is whether the proposed settlement class satisfies the

13   requirements of Rule 23(a) and (b).  *See Hanlon*, 150 F.3d at 1019–22.  Here, the Court previously

14   found that certification pursuant to Rule 23(b)(2) is appropriate for all four subclasses.  *Stiner v.*

15   *Brookdale Senior Living, Inc.* ("*Stiner III*"), 665 F. Supp. 3d 1150, 1195 (N.D. Cal. 2023); *Stiner*

16   *v. Brookdale Senior Living, Inc.* ("*Stiner IV*"), No. 4:17-cv-03962-HSG (LB), 2024 WL 3498492,

17   at *13 (N.D. Cal. July 22, 2024).  In its Preliminary Approval Order, the Court did not disturb its

18   prior analysis and provisionally certified the proposed settlement class.  ECF No. 1047 at 5.

19   Plaintiffs respectfully submit that nothing has changed since these findings were made, and they

20   remain accurate.  Therefore, the Court need not revisit its class certification decisions here.

21   **II.     THE PARTIES' JOINT NOTICE PLAN ADEQUATELY APPRAISED ABSENT**
             **CLASS MEMBERS OF THE TERMS OF THE PROPOSED SETTLEMENT**
22

23         Under Rule 23(c)(2), "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may

24   direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).  Many courts, including this

25   one, have in their discretion directed parties to provide notice to absent class members in Rule

26   23(b)(2) class actions.  *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-HSG, 2020 WL

27   2091801, at *3 (N.D. Cal. Mar. 31, 2020) ("[N]otice in this case is not about allowing absent class

28   members to opt out of the injunctive relief, but rather is about giving them the opportunity to

understand how their rights will be affected by the proposed settlement; object to the settlement if they believe it is insufficient; and weigh in on the anticipated motions for attorneys' fees and incentive awards for the named Plaintiffs.")  Additionally, Rule 23(h) requires that notice of any motion for attorneys' fees "must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1).

At the preliminary approval hearing, the Court found notice appropriate in this case and directed the parties to meet and confer regarding a plan for effectuating notice.  *See* ECF No. 1035; May 1, 2025 Tr. at 7:11-24.  The Court provisionally approved the parties' Joint Notice Plan in its Preliminary Approval Order, finding that it was "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement."  ECF No. 1047 at 11 (citation omitted).

The parties were able to successfully implement all aspects of the Joint Notice Plan.  Every subclass member who is a current resident and was identified pursuant to the procedures outlined in the Joint Notice Plan received a hard copy of the applicable template notice in their Brookdale facility mailbox, and those with designated Responsible Parties also received electronic copies. Grunfeld Decl. ¶ 9 & Ex. C; *see also* Declaration of Bernie Jestrabek-Hart in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Unopposed Motion for Class Representative Service Awards ("Jestrabek-Hart Decl.") ¶ 21.  In addition, the law firms representing the Plaintiffs posted copies of the different versions of class notice on their firm websites.  Grunfeld Decl. ¶ 10; Wallace Decl. ¶ 3; Marks Decl. ¶ 3; Stebner Decl. ¶ 3.  The notice informed class members that Plaintiffs were to file a motion requesting attorneys' fees, costs, and expenses on August 7, 2025, which would be available on the Court's docket or on Class Counsel's firm websites once filed.  Grunfeld Decl. ¶ 8.  It also informed class members of the deadlines by which they had to object to either the Proposed Settlement or Plaintiffs' motion for attorneys' fees, costs, and expenses.  *Id.*

The dual mechanisms of individual mailbox notice to all subclass members and additional e-mailed notice for any subclass members with a designated Responsible Party ensured that the notice reached the vast majority of current Brookdale residents who fit within a subclass

1   definition.  In order to identify all individuals who fit within one or more subclass definition,

2   Brookdale relied on recent assessment information for all current residents at its California

3   RCFEs.  Grunfeld Decl. ¶ 7.  In addition, copies of all of the notices as well as Plaintiffs'

4   Attorneys' Fees Motion (once filed) were uploaded onto Class Counsel's firm websites, *Id.* ¶ 10,

5   and served as an additional backstop to ensure all subclass members had access to the notices and

6   pertinent information about the Proposed Settlement.

7          The separate notices for each subclass were tailored to ensure that the relevant information

8   for that subclass was included and the notices were as clear and easy to understand as possible.

9   The notices defined the subclasses, explained the injunctive relief, provided the final approval

10  hearing date, and detailed the objection procedure and deadline.  ECF No. 1044 at 10.

11  Additionally, the notice language complied (as closely as is possible in the context of an injunctive

12  relief-only settlement) to Section 3 of the Northern District of California's Procedural Guidance

13  for Class Action Settlements and included specific information regarding PACER access that the

14  Guidelines recommend be included.

15         The Court should therefore find that the Joint Notice Plan, as executed, satisfied Rule

16  23(c)(2)(A) and Rule 23(h)(1), and adequately appraised all class members of the terms of the

17  Proposed Settlement.

18  **III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND SHOULD BE
         GRANTED FINAL APPROVAL**

19

20         A court considers several factors in determining whether a settlement agreement is "fair,

21  reasonable, and adequate" under Federal Rule of Civil Procedure 23(e), as relevant here, whether:

22  (1) "the class representatives and class counsel have adequately represented the class"; (2) "the

23  proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate," taking

24  into consideration the risks associated with continued litigation, the effectiveness of distributing

25  the proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying

26  settlement agreement; and (4) "the proposal treats class members equitably relative to each other."

27  Fed. R. Civ. P. 23(e)(2).

28         The Ninth Circuit in particular recognizes the "overriding public interest in settling and

1    quieting litigation … particularly … in class action suits ….” *Van Bronkhorst v. Safeco Corp.*,

2    529 F.2d 943, 950 (9th Cir. 1976); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

3    (9th Cir. 1992) (There is a “strong judicial policy that favors settlements, particularly where

4    complex class action litigation is concerned.”); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d

5    539, 556 (9th Cir. 2019) (en banc) (same).  “Litigation settlements offer parties and their counsel

6    relief from the burdens and uncertainties inherent in trial. … The economics of litigation are such

7    that pretrial settlement may be more advantageous for both sides than expending the time and

8    resources inevitably consumed in the trial process.”  *Franklin v. Kaypro*, 884 F. 2d 1222, 1225

9    (9th Cir. 1989).  To that end, the Ninth Circuit has articulated its own factors for final approval,

10   which although they predate revised Rule 23(e), overlap with the Rule:

11   > the strength of the plaintiffs’ case; the risk, expense, complexity, and likely
   > duration of further litigation; the risk of maintaining class action status throughout
12   > the trial; the amount offered in settlement; the extent of discovery completed and
   > the stage of the proceedings; the experience and views of counsel; the presence of a
13   > governmental participant; and the reaction of the class members to the proposed
   > settlement.

14

15   *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

16   2004).  Accordingly, Plaintiffs’ analysis focuses on the amended 23(e) factors and addresses

17   pertinent *Hanlon* factors as appropriate.  *See Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220,

18   2021 WL 5826230, at *14 (N.D. Cal. Dec. 8, 2021), *aff’d sub nom. Kang v. Fyson*, No. 22-15694,

19   2022 WL 6943174 (9th Cir. Oct. 12, 2022) (“Because Rule 23 has been amended to list the factors

20   most central to approval of a class action settlement, the Court began its analysis with the Rule

21   23(e) factors....the Court considers the remaining *Churchill* factors, as relevant.”).

22        The Court must “evaluate the fairness of a settlement as a whole, rather than assessing its

23   individual components.”  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012) (citing

24   *Hanlon*, 150 F.3d at 1026.  Although the Court must “explore[ ] comprehensively all factors,” it

25   is not required to “reach any ultimate conclusions on the contested issues of fact and law which

26   underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and

27   avoidance of wasteful and expensive litigation that induce consensual settlements.”  *Rodriguez v.*

28   *West Publ’g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv.*

1    *Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).  Additionally, "[n]ot all of these factors will

2    apply to every class action settlement. Under certain circumstances, one factor alone may prove

3    determinative in finding sufficient grounds for court approval."  *Nat'l Rural Telecomm. Coop. v.*

4    *DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004) (citing *Torrisi v. Tucson Elec. Power*

5    *Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

6    **A.    Class Counsel and the Class Representatives Have Adequately Represented**
         **the Subclasses**

7

8    The first Rule 23(e) factor concerns adequate representation.  The focus of this analysis is

9    "on the actual performance of counsel acting on behalf of the class" throughout the litigation and

10   in settlement negotiations.  Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment.

11   This factor overlaps significantly with the adequacy requirement of Rule 23(a).  *See O'Connor v.*

12   *Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019).  In

13   considering this factor, courts examine in part whether plaintiffs and class counsel had adequate

14   information to negotiate a class-wide settlement.  Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes

15   to 2018 Amendment.  Ultimately, this factor is generally satisfied where the named plaintiffs and

16   class counsel "have prosecuted the case with diligence and success."  *In re Snap Inc. Sec. Litig.*,

17   No. 2:17-cv-0367-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021).

18   Here, Class Counsel and the Class Representatives engaged in over seven years of heavily

19   contested litigation, through two rounds of motions to dismiss, motions to compel arbitration, and

20   motions to strike certain allegations in Plaintiffs' complaint; extensive fact and expert discovery,

21   including multiple facility site visits; two rounds of class certification briefing (the original

22   statewide motion, and the later facility-based subclass motion) and an unsuccessful decertification

23   motion; cross-motions for summary judgment; and two rounds of pretrial filings for the first of

24   three trials set to begin on January 27, 2025.  *See* ECF No. 1026 at 8-13; ECF No. 1052 at 11-17.

25   Given the advanced posture of the case, Class Counsel had all the necessary information to

26   successfully negotiate a settlement which provides significant injunctive relief to the four

27   subclasses.  Grunfeld Decl. ¶¶ 11-17.  The Proposed Settlement will result in three Brookdale

28   RCFEs being made accessible to people with mobility and/or vision disabilities, and guarantees

1    that current and future residents of Brookdale RCFEs across California who use electric

2    wheelchairs and scooters will not have to transfer out of their mobility devices in order to take

3    advantage of Brookdale's transportation services. Grunfeld Decl. ¶¶ 12, 16.

4              Moreover, the Court already found both the Class Representatives and Class Counsel

5    adequate to represent the Certified Subclasses under Rule 23(a)(4). *Stiner III*, 665 F. Supp. 3d at

6    1185; *Stiner IV*, 2024 WL 3498492, at *9. The Class Representatives' interests are closely

7    aligned with those of the absent class members, and they advanced those interests through the

8    vigorous prosecution of this case. *See Hanlon*, 150 F.3d at 1020. The Class Representatives

9    collectively spent over hundreds of hours working on various tasks related to the case, including,

10   *inter alia*, attending in-person, Zoom, and phone meetings with Class Counsel; collecting and

11   sharing documents related to their residency at Brookdale; responding to questions from Class

12   Counsel regarding Brookdale's policies and practices and their experiences with specific

13   Brookdale staff members and employees; discussing case strategy; reviewing and commenting on

14   case documents; preparing for deposition sessions and being deposed; and drafting multiple

15   declarations with Class Counsel. *See* Jestrabek-Hart Decl. ¶¶ 9-19; Declaration of Jeanette

16   Algarme in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action

17   Settlement and Unopposed Motion for Class Representative Service Awards ("Algarme Decl.")

18   ¶¶ 7-15; Declaration of Stacia Stiner in Support of Plaintiffs' Unopposed Motion for Final

19   Approval of Class Action Settlement and Unopposed Motion for Class Representative Service

20   Awards ("Stiner Decl.") ¶¶ 6-11. And Class Counsel collectively have extensive expertise in

21   disability law, class action cases, and the rights of elderly people residing in RCFE settings.

22   Grunfeld Decl. ¶ 1; Wallace Decl. ¶ 4; Marks Decl. ¶ 4; Stebner Decl. ¶ 4. This all weighs in

23   favor of final approval. *See In re Google LLC Street View Elec. Commc'ns Litig.*, 611 F. Supp. 3d

24   872, 890 (N.D. Cal. 2020*), aff'd sub nom. In re Google Inc. Street View Elec. Commc'ns Litig.*, 21

25   F.4th 1102 (9th Cir. 2021) (finding adequate representation where plaintiffs "vigorously

26   represented the class" by providing information and evidence and where "[c]ounsel are

27   experienced class action litigators.")

28

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR
INJUNCTIVE RELIEF

**B.    The Proposed Settlement Was Negotiated at Arm's Length and Without Collusion**

Rule 23(e)(2)(B) asks whether the settlement terms were "negotiated at arm's length." Courts look for circumstances demonstrating a truly adversarial bargaining process, for example, the involvement of a neutral, third-party mediator, *see* Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests"); *G.F. v. Contra Costa Cnty.*, Case No. 13–cv–03667–MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (" '[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive' ") (quoting *Satchell v. Fed. Exp. Corp.*, Nos. C03–2659 SI, C 03–2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

The Proposed Settlement was the product of extensive, non-collusive negotiations between Plaintiffs and Defendants facilitated by Magistrate Judge Joseph C. Spero.  Grunfeld Decl. ¶ 4. The parties participated in four settlement conference sessions with Judge Spero; he also facilitated additional settlement communications outside of the scheduled mediation sessions. *Id.* In coming to agreement on the terms of the Proposed Settlement, the parties exchanged numerous draft written proposals over several months and through several meet and confers. *Id.*  This all weighs in favor of a finding  that the Proposed Settlement was negotiated at arms-length. *See G.F.*, 2015 WL 4606078, at *13.

The Ninth Circuit has also identified three signs of potential collusion between the parties that trigger further scrutiny:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).  The higher level of scrutiny required by the Ninth Circuit applies

1   most strongly to cases where parties resolved a class action prior to class certification, which is not

2   the case here.  *In re Bluetooth,* 654 F.3d at 946-47.  And the first and third red flags the Ninth

3   Circuit warned about are also not applicable here—there could not have been any fund for

4   monetary distribution to class members because the classes were certified to pursue only

5   injunctive relief (and the injunctive relief obtained here is substantial), so there is no concern that

6   Class Counsel are taking a disproportionate share of the settlement or that fees the Court does not

7   award will revert to Defendants rather than going to the class.  *Id.* at 947.

8        As for the second red flag, the parties did agree that Plaintiffs would seek an award of

9   $14,500,000 for fees, costs and litigation expenses, which Defendants would not oppose.

10  Agreement § 7.  Plaintiffs thus filed their Attorneys' Fees' Motion on August 7, 2025.  *See* ECF

11  No. 1052.  Notably, on August 20, 2025, Defendants filed a "Notice" regarding Plaintiffs'

12  Attorneys' Fees Motion, ECF No. 1065, which according to them, they did not submit "to dispute

13  or undermine Plaintiffs' request for fees," but only to "clarify and correct the record" with respect

14  to various "misstatements" they contend are found in the Attorneys' Fees Motion.  *Id.* at 2.  This

15  "Notice" followed meet and confer discussions between the parties where Plaintiffs affirmed their

16  position that the Attorneys' Fees Motion does not contain any misrepresentations and omissions,

17  and no corrected or amended motion is needed.  Plaintiffs' Reply to the "Notice" contended that

18  Defendants' filing constituted a de facto opposition to Plaintiffs' Attorneys' Fees Motion.  Reply,

19  ECF No. 1066.  That Defendants filed such "Notice" is a strong indicator that the parties'

20  settlement negotiations have been anything but collusive.

21       More importantly, a "clear sailing" arrangement alone does not necessarily indicate

22  collusion, particularly where the relief provided to the class is substantial and extensive.  *See*

23  *Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2021 WL 3604714, at *8–9 (N.D. Cal.

24  Aug. 13, 2021) (granting preliminary approval of settlement with clear sailing provision because

25  "Class Counsel obtained results for the prospective class members," the requested fees were

26  significantly below the plaintiffs' lodestar, and class members were still receiving the majority of

27  the benefit from the agreement); *Richards v. Chime Fin., Inc.*, No. 19-CV-06864-HSG, 2020 WL

28  6318713, at *8 (N.D. Cal. Oct. 28, 2020) (same).  Here, the members of the certified subclasses

1    are receiving very significant injunctive relief, even though the Court dismissed the claims of two

2    of the subclasses at summary judgment, including extensive remediation work at three RCFEs.

3    Grunfeld Decl. ¶¶ 12-16, 19.[4]  And the requested amount for attorneys' fees, costs and expenses is

4    only approximately one-third of the fees and costs Plaintiffs have incurred during their over eight

5    years of working on this case without any payment.  *Id.* ¶ 27.  These factors alone weigh against

6    any finding of collusive behavior.

7        **C.    The Proposed Settlement Provides the Subclasses Adequate Relief,
             Considering the Costs, Risks, and Delay of Litigation and Other *Hanlon***

8             **Factors Addressing Whether a Settlement is Fair, Reasonable and Adequate**

9            The issues considered under Rule 23(e)(2)(C)—whether the "relief provided for the class is

10    adequate"—overlaps considerably with the Ninth Circuit's *Hanlon* factors used to assess final

11    approval of a settlement.  All entail "a 'substantive' review of the terms of the proposed

12    settlement" that evaluate the fairness of the "relief that the settlement is expected to provide."  *See*

13    Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment; *see also Hanlon*, 150 F.3d

14    at 1026.[5]  As demonstrated below, these considerations weigh in favor of the Proposed Settlement.

15

16

---

17    [4] "Injunctive relief is inherently difficult to monetize," and a district court "should generally avoid
      valuing hard-to-measure injunctive relief altogether, 'because of the danger that parties will

18    overestimate the value of injunctive relief in order to inflate fees.'"  *Kim v. Allison*, 8 F.4th 1170,
      1181 (9th Cir. 2021) (citation omitted).  "When a settlement includes injunctive relief *among*

19    *other forms of relief*, the court should (1) 'explain[ ] why the value of the injunctive relief's
      benefits to individual class members was readily quantifiable and worth [the estimated value]' or

20    (2) 'exclude[ ] the injunctive relief from the valuation of the settlement and explain[ ] why
      attorneys' fees ... were justified.'"  *Id.* (emphasis added).  This analysis is required when courts

21    use the percentage-of-recovery approach to calculate attorneys' fee awards in class actions.  *Id.*
      As explained in Plaintiffs' Attorneys' Fees Motion, this Court should use the lodestar method—

22    not the percentage-of-recovery method—to determine the reasonableness of Plaintiffs' requested
      amount in this case.  *See* ECF No. 1052 at 18 (quoting *In re Bluetooth*, 654 F.3d at 941 ("The

23    'lodestar method' is appropriate in class actions brought under federal fee-shifting statutes …
      where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily

24    monetized, but where the legislature has authorized the award of fees to ensure compensation for
      counsel undertaking socially beneficial litigation.")).

25    [5] There are a handful of Rule 23(e)(2) and *Hanlon* factors which are not pertinent to the facts of
      this case.  *See* Fed. R. Civ. P. 23(e)(2)(ii) ("the effectiveness of any proposed method of

26    distributing relief to the class, including the method of processing class member-member claims,"
      which is not applicable to injunctive-relief only settlements, and "any agreement required to be

27    identified under Rule 23(e)(3)," which requires parties to identify any agreements made in
      connection with a proposed settlement, and no such agreements were made here); *Hanlon*, 150

28    F.3d at 1026 ("the presence of a government participant," which is not relevant here).

1
2

### 1.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

3    In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i),

4    courts in the Ninth Circuit evaluate factors including "the strength of the plaintiffs' case; [and] the

5    risk, expense, complexity, and likely duration of further litigation." *Hanlon*, 150 F.3d at 1026.[6]

6    They "must balance the risks of continued litigation, including the strengths and weaknesses of

7    plaintiff's case, against the benefits afforded to class members, including the immediacy and

8    certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

9    "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable

10   to lengthy and expensive litigation with uncertain results." *Austin v. Foodliner, Inc.*, No. 16-CV-

11   07185-HSG, 2019 WL 2077851, at *4 (N.D. Cal. May 10, 2019) (citation omitted).

12   Plaintiffs at all times remained confident in their ability to prove their claims at trial, given

13   their thorough investigation into the factual and legal issues raised in this class action over the last

14   eight years, and especially given the fact that Plaintiffs prevailed with respect to certain critical

15   issues of law at various stages of the case. *See, e.g.*, *Stiner v. Brookdale Senior Living, Inc.*

16   ("*Stiner I*"), 354 F. Supp. 3d 1046, 1058-59 (N.D. Cal. 2019), *rev'd in part on other grounds*, 810

17   F. App'x 531 (9th Cir. 2020) (finding that "the Brookdale assisted living facilities are 'public

18   accommodations' subject to the ADA); *Stiner v. Brookdale Senior Living, Inc.* ("*Stiner II*"), 665 F.

19   Supp. 3d 1150, 1187 (N.D. Cal. 2023) (same); *Stiner III*, 2024 WL 3498492, at *6 n.7 (finding

20   that subsequent owners and operators are responsible for remediating barriers under Title III of the

21   ADA because "relieving subsequent owners of the obligation to make places of public

22   accommodation accessible would be at odds with the language and spirit of the ADA and its

23   implementing regulations, and Plaintiffs point to a slew of authority that holds as much.").

24

25   _____

[6] Many courts also simultaneously evaluate the third *Hanlon* factor, "risk of maintaining class
action status throughout the trial." *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110,
26   1120 (N.D. Cal. 2016) (quoting *Hanlon*, 150 F.3d at 1026). Here, however, there is minimal risk
of the subclasses being decertified, given that the Court has reaffirmed its class certification
27   analysis on multiple occasions, and nothing has changed which would require the Court to disturb
these findings. *See Stiner II*, 665 F. Supp. 3d at 1195; *Stiner IV*, 2024 WL 3498492, at *13; ECF
28   No. 1047 at 5.

1          Nevertheless, Plaintiffs faced significant risks and expense in continuing in the litigation.

2    Defendants have opposed the case strenuously at every turn since Plaintiffs filed it, including in

3    the period immediately preceding the scheduled trial.  Grunfeld Decl. ¶ 21.  There was a

4    significant chance that Plaintiffs would have lost one or both of the claims in the first trial—the

5    Brookhurst Subclass's claims hinged almost entirely on the testimony of one person, Plaintiff

6    Jeanette Algarme, an elderly former resident of the facility whose standing Defendants repeatedly

7    attacked and who needed to testify credibly that she would re-visit the facility.  *Id.*  There was also

8    a possibility that the Court would have agreed to give Defendants' proposed instruction to the jury

9    regarding the FSP claim, which would have made a verdict in Defendants' favor significantly

10   more likely.  *Id.*  It is very likely that one or both parties would have appealed the verdict in the

11   first class-wide trial.  *Id.* ¶ 18.

12         In addition to the first trial on the ADA claims on behalf of the Brookhurst and FSP

13   subclasses, which would have lasted at least two weeks, the Parties also would have needed to

14   complete two more jury trials of approximately the same length, as well as significant additional

15   expert discovery and motion practice regarding the individual consumer statutory claims.  *Id.*

16   Proceeding to trial, and the inevitable appeals of those decisions, could have added three years or

17   more to the resolution of this case.  Given the importance of the accessibility of these RCFEs to

18   the elderly residents with disabilities, the potential for years of delayed relief is a genuine concern.

19         Moreover, Plaintiffs' Unruh Act new construction claims of the Scotts Valley and San

20   Ramon subclasses (which were entirely dismissed in the Court's December 13, 2024 summary

21   judgment order, *see* ECF No. 978 at 19) could only have been revived through a successful appeal.

22   Grunfeld Decl. ¶ 19.  Given the complexity of all these moving pieces in the litigation, Class

23   Counsel views the Proposed as a successful compromise that will afford great benefit to the

24   subclasses and that will result in genuine improvement in their circumstance and quality of life.

25   Grunfeld Decl. ¶ 11, 24; Wallace Decl. ¶ 5; Marks. Decl. ¶ 5; Stebner Decl. ¶ 5.  This factor

26   weighs in favor of final approval.

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR
INJUNCTIVE RELIEF

**2.      The Amount Offered in Settlement and Terms of Proposed Attorneys'
Fees**

The Proposed Settlement provides solely injunctive relief, and thus, the only monetary

amounts offered in the settlement are for Plaintiffs' attorneys' fees and costs, in the amount of

$14,500,000, and incentive awards of up to $5,000 to each of the three Class Representatives,

Stacia Stiner, Bernie Jestrabek-Hart, and Jeanette Algarme, if the Court approves the settlement.

Agreement §§ 6, 7.  "While this settlement does not include monetary relief for the Class, it stops

the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not

prevent class members from seeking legal recourse.  Other courts have approved similar

settlements providing solely injunctive relief, attorneys' fees, costs, and damages to named

plaintiffs." *Grant v. Cap. Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH BGS, 2014 WL 888665, at

*4 (S.D. Cal. Mar. 5, 2014) (collecting cases).  With respect to Plaintiffs' request for attorneys'

fees, costs, and expenses, as explained in more detail in their Attorneys' Fees Motion, Plaintiffs

believe that their request is reasonable given that they have vindicated the purposes of federal and

state civil rights laws, and obtained significant injunctive relief that will benefit the members of

the classes as well as the general public.  *See* ECF No. 1052.  And as explained below, *infra*

Section III.C.D, and in the accompanying Motion for Class Representative Service Awards, the

Class Representatives' incentive awards are reasonable and in line with awards granted in similar

cases.  This factor also weighs in favor of final approval.

**3.      The Extent of Discovery Completed and the Stage of Proceedings**

This factor evaluates whether class counsel "had sufficient information to make an

informed decision about the merits of the case." *In re Lyft Inc. Sec. Litig.*, No. 19-CV-02690-

HSG, 2023 WL 5068504, at *8 (N.D. Cal. Aug. 7, 2023).  As noted above, *supra* Section III.A,

Plaintiffs diligently prosecuted this case for over seven years, from pre-complaint investigation to

pretrial preparation, and were deeply familiar with its strengths and weaknesses heading into the

settlement conference sessions with Magistrate Judge Spero.  *See* ECF No. 1026 at 8-13; ECF No.

1052 at 11-17.  Plaintiffs also had the benefit of having reviewed approximately 3,3000,000 pages

of documents received from Defendants and third parties over the course of this litigation.  *See*

ECF No. 1052 at 13.  Class Counsel had all the necessary information to properly assess the value of the Proposed Settlement for the four subclasses, compared to the substantial risks of continued litigation, in order to come to the reasonable conclusion that the Proposed Settlement was in the best interest of all subclass members.  Grunfeld Decl. ¶¶ 11-17, 21-23.

### 4.    The Experience and Views of Counsel

"[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotation omitted).  Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs.*, Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  Here, Class Counsel are highly regarded members of the civil-rights bar who have extensive experience in complex civil litigation, including disability rights class actions. Grunfeld Decl. ¶ 1Marks. Decl. ¶ 4; Stebner Decl. ¶ 4.  Based on this experience, Class Counsel concludes that the Proposed Settlement provides exceptional results to all subclass members, while avoiding the costs, delays, and uncertainties of continued litigation.  Grunfeld Decl. ¶ 11; Wallace Decl. ¶ 5; Marks. Decl. ¶ 5; Stebner Decl. ¶ 5.  Class Counsel's recommendation is presumptively reasonable, and supports final approval of the Proposed Settlement. *See In re Omnivision Techs.*, *Inc.*, 559 F. Supp. 2d at 1043.

### 5.    The Reaction of Class Members to Date

In assessing the fairness of a class action settlement, "courts within the Ninth Circuit typically consider 'the reaction of the class members [to] the proposed settlement.'" *In re Google LLC Street View Elec. Commc'ns Litig.*, 611 F. Supp. 3d at 896 (alteration in original) (quoting *In re Bluetooth*, 654 F.3d at 946).  Specifically, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc.*, No. 19-CV-06348-BLF, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021) (citation omitted); *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.")

**No member of any of the four certified subclasses objected to the terms of the**

1  **Proposed Settlement, the Attorneys' Fees Motion, or the Class Representatives' proposed**

2  **incentive awards.**  Grunfeld Decl. ¶¶ 26, 28.  This factor overwhelmingly supports final

3  approval.

4          **D.      Class Members are Treated Equitably Relative to Each Other Under the
                      Proposed Settlement**

5

6          Finally, a proposed settlement agreement must "treat[] class members equitably relative to

7  each other."  Fed. R. Civ. P. 23(e)(2)(D); *see generally Campbell v. Facebook, Inc.*, 951 F.3d

8  1106, 1121 n.10 (9th Cir. 2020).  This requirement guards against the risk that class

9  representatives will use a class action "principally to increase their own leverage to attain a

10  remunerative settlement for themselves and then trad[e] on that leverage in the course of

11  negotiations."  *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003).

12         Here, the Proposed Settlement offers the same substantive relief to all class members.  At

13  the preliminary approval hearing, the Court asked about the provision in the Proposed Settlement

14  which requires Brookdale to offer named Plaintiffs Bernie Jestrabek-Hart and Stacia Stiner one of

15  the newly-accessible units at their respective Brookdale facilities.  *See* May 1, 2025 Tr. at 3:21-

16  5:9.  In response, Plaintiffs submitted a supplemental brief explaining that under the Proposed

17  Settlement, all members of the San Ramon and Scotts Valley subclasses are entitled to a

18  remediated room or modifications to the resident's current room, as needed to provide physical

19  accessibility for their mobility or vision disabilities as required by the ADA and the Unruh Act,

20  free of charge.  ECF No. 1043 at 3; *see also* Grunfeld Decl., Ex. B (Stipulated Injunction) ¶ 4.

21  Accordingly, Defendants' agreement to "offer" Ms. Jestrabek-Hart and Ms. Stiner remediated

22  units does not provide them with relief that differs in a significant way from what Defendants have

23  agreed to provide to all class members.

24         Moreover, "Rule 23(e)(2)(D) requires that class members be treated equitably, not

25  identically," *Moses v. New York Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023); *In re Blue Cross*

26  *Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1093 (11th Cir. 2023).  To the extent there

27  is differential treatment, this is justified by the fact that:  (1) Ms. Jestrabek-Hart and Ms. Stiner are

28  two of the longest tenured residents at their respective Brookdale facilities, and seniority or tenure-

1  based systems are a well-established, acceptable way of disseminating benefits in a neutral

2  manner; and (2) the offer to Ms. Jestrabek-Hart and Ms. Stiner of remediated units at their

3  respective Brookdale facilities was also in exchange for the resolution of their individual claims

4  for injunctive relief under the ADA and Unruh Act.  *See* ECF No. 1043 at 4-5.

5         Likewise, as discussed more fully in Plaintiffs' Motion for Class Representative Service

6  Awards, filed herewith, the $5,000 incentive awards for the three Class Representatives are

7  consistent with the equitable treatment of class members.  Such awards are commonplace and

8  serve to recognize the valuable efforts of a class representative in prosecuting the case on behalf of

9  the class.  As noted above, *supra* Section  III.A, Ms. Jestrabek-Hart, Ms. Stiner, and Ms. Algarme

10  all expended substantial efforts over the last eight years in support of the subclasses.  Jestrabek-

11  Hart Decl.¶¶ 9-19; Algarme Decl. ¶¶ 7-15; Stiner Decl. ¶¶ 6-11.  The requested incentive awards

12  of $5,000 per class representative are reasonable and in line with awards granted in similar cases.

13  *See, e.g.*, *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751-HSG, 2017 WL 1315626, at *8 (N.D. Cal.

14  Apr. 7, 2017) (noting that numerous courts in this district have found that a $5,000.00 Service

15  Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*,

16  779 F.3d 934, 947-48 (9th Cir. 2015) (citing *Staton*, 327 F.3d at 976-77) (approving service

17  awards of $5,000.00 as "an amount we said was reasonable in *Staton*.").

18                                    **CONCLUSION**

19         For all the foregoing reasons, Plaintiffs respectfully request that the Court grant final

20  approval of the Proposed Settlement as fair, reasonable, and adequate, and enter the parties'

21  Stipulated Injunction and Order.

22

23  DATED: September 15, 2025            Respectfully submitted,

24                                      ROSEN BIEN GALVAN & GRUNFELD LLP

25                                      By:  */s/ Gay Crosthwait Grunfeld*

26                                           Gay Crosthwait Grunfeld

27                                      Attorneys for Plaintiffs and the Certified Subclasses

28

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR INJUNCTIVE RELIEF**