UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACIA STINER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BROOKDALE SENIOR LIVING, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-03962-HSG<br><br>**ORDER GRANTING UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR INJUNCTIVE RELIEF AND GRANTING UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND GRANTING UNOPPOSED MOTION FOR INCENTIVE AWARDS**<br><br>Re: Dkt. Nos. 1052, 1073, 1074 |

Pending before the Court are Plaintiffs' unopposed motions for final approval of class action settlement; for attorneys' fees, costs, and expenses; and for incentive awards. Dkt. Nos. 1052, 1073, 1074. The Court held a final fairness hearing on October 16, 2025. The Court **GRANTS** final approval of the settlement. The Court also **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and their motion for incentive awards.

**I.  BACKGROUND**

    **A.  Factual Allegations and Procedural Background**

This is a putative class action lawsuit in which Plaintiffs allege that Defendants Brookdale Senior Living, Inc. and Brookdale Senior Living Communities, Inc. (collectively, "Brookdale" or "Defendants") operate their facilities in California in a manner that violates federal and state disability laws. Brookdale, a for-profit corporation, is the country's largest provider of assisted living for senior citizens and persons with disabilities. Plaintiffs, who are current and former Brookdale residents (or their successors in interest), allege that six Brookdale facilities in California are not accessible to people with disabilities in violation of the Americans with

Disabilities Act of 1990 ("ADA") and California's Unruh Civil Rights Act. Plaintiffs further allege that Brookdale's policies regarding transportation, emergency evacuation, and staffing prevent its residents from fully accessing and enjoying the facilities. *See Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2024 WL 5112480, at *1 (N.D. Cal. Dec. 13, 2024).

The Court previously certified four subclasses under Federal Rule of Civil Procedure 23(b)(2): (1) a Wheelchair and Scooter Users Subclass to pursue claims under the ADA and Unruh Act regarding Brookdale's Fleet Safety Policy (FSP), Dkt. No. 593, and (2) three facility-specific subclasses representing current and former residents of Brookdale's San Ramon, Scotts Valley, and Brookhurst facilities to seek injunctive and declaratory relief under the ADA and Unruh Act. Dkt. Nos. 733, 820. After nearly eight years of litigation, several sets of claims remain, including individual Plaintiffs' injunctive relief and damages claims, injunctive relief claims brought by the Wheelchair and Scooter Users Subclass, and injunctive relief claims brought on behalf of the Brookhurst subclass.[1]

The parties participated in four Mandatory Settlement Conference sessions with Magistrate Judge Joseph C. Spero. *See* Dkt. No. 1073 at 21. Several months of additional settlement negotiations culminated in a settlement agreement that provides injunctive relief to the four subclasses. *See* Dkt. No. 1073-1 ("Settlement Agreement" or "SA"). Plaintiffs filed a motion for preliminary approval in March 2025, Dkt. No. 1026, and after supplemental briefing,[2] the Court granted the motion in June 2025, Dkt. No. 1047. The parties now seek final approval of the class action settlement and Plaintiffs seek attorneys' fees, costs, and service awards for three class representatives. *See* Dkt. Nos. 1073, 1074.

---

[1] In December 2024, the Court ruled on the parties' cross-motions for summary judgment and granted Brookdale's cross-motion for summary judgment as to the ADA and Unruh Act injunctive relief claims brought by the San Ramon and Scotts Valley subclasses. *See Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2024 WL 5112480, at *10 (N.D. Cal. Dec. 13, 2024).

[2] Plaintiffs' motion for preliminary approval did not include a notice plan. *See* Dkt. No. 1026 at 23. At the preliminary approval hearing on May 1, 2025, the Court instructed the parties to develop one. The parties then filed a proposed notice plan, which the Court directed the parties to implement "consistent with the terms of the Settlement Agreement and the parties' supplemental briefing." Dkt. No. 1047 at 12.

**B.     Settlement Agreement**

The Court detailed the key terms of the Settlement Agreement in its order granting the motion for preliminary approval. *See* Dkt. No. 1047 at 2–5. The following key terms are relevant to the discussion below:

<u>FSP Subclass Definition</u>: The FSP settlement class is defined as "[a]ll persons with disabilities who use wheelchairs, scooters, or other powered mobility aids and who reside or have resided at a Brookdale RCFE during the three years prior to the filing of the Complaint herein through the conclusion of this action, including their successors-in-interest if deceased, excluding any persons who are subject to arbitration." SA at 16; Dkt. No. 593.

<u>Access Barrier Subclass Definition</u>: The access barrier settlement class is defined as "[a]ll persons with disabilities who use wheelchairs, scooters, or other mobility aids or who have vision disabilities and who reside or have resided at [Brookdale Brookhurst, Brookdale San Ramon, and/or Brookdale Scotts Valley] during the three years prior to the filing of the Complaint herein through the conclusion of this action, including their successors-in- interest if deceased, excluding any persons who are subject to arbitration." SA at 16; Dkt. No. 820.

<u>Settlement Benefits</u>: The Settlement Agreement provides injunctive relief. Under the terms of the Agreement, Brookdale will physically modify its facilities in the following ways. First, Brookdale agrees to bring the interior and exterior common areas of its Brookhurst, San Ramon, and Scotts Valley facilities into compliance with the 2010 Americans with Disabilities Act Accessibility Standards ("2010 ADAS") within the next five years. SA at 35–36. In addition, Brookdale will renovate several residential units across all three facilities, as enumerated in the Agreement, to comply with Section 223.3 of the 2010 ADAS.[3] *Id.* at 35–40. As to Brookdale's

---

[3] Lead Plaintiff Stacia Stiner will be offered one of the renovated, 2010 ADAS, Section 223.3 compliant studio units in the Brookdale San Ramon facility. SA at 35. Brookdale will likewise offer Plaintiff Bernie Jestrabek-Hart a 2010 ADAS Section 223.3 renovated unit at the Brookdale Scotts Valley facility. *Id.* As discussed in the preliminary approval order, the Court finds that the

3

transportation policy,[4] the parties agree that Brookdale will not modify the terms of its existing "Transporting Residents on Community Vehicles" policy that allow residents to remain on wheelchairs, scooters, or other powered mobility aids during transit. *Id.* at 40.[5]

Release: Subclass members will release Brookdale of "all claims, liabilities, demands, causes of action, or lawsuits for declaratory and/or injunctive relief, arising out of or relating in any way or manner to the claims and allegations asserted or that could have been asserted" in this action. SA at 22. Members also release all appellate rights except for "any appellate rights relating to the motion for attorneys' fees, costs and expenses." *Id.* at 23. The release does not extend to any individual personal injury claims or any claims based on alleged breaches of this Settlement Agreement. *Id.* at 22. Subclass members also agree to waive their rights under Section 1542 of the California Civil Code. *Id.* at 23.

Incentive Award: The three facility subclass representatives may seek incentive awards up to $5,000. If approved, Brookdale will pay these awards. SA at 21; Dkt. No. 1074.

Attorneys' Fees and Costs: Plaintiffs seek $14,500,000 total in attorneys' fees, costs, and expenses, which constitutes "approximately one-third of the total amount Plaintiffs' have incurred to date in attorney's fees, costs, and expenses." SA at 22; Dkt. No. 1052 at 10. Consistent with the Settlement Agreement, Brookdale has not opposed Plaintiffs' request. SA at 22. Class

---

offer of these units "does not accord preferential treatment to Plaintiffs Stiner and Hart." *See* Dkt. No. 1047 at 9.

[4] Brookdale may modify the policy to comply with applicable laws and regulations.

[5] While the Court has no role to play in approving the settlement of any individual claims, it notes that the Stipulated Injunction, which includes individual relief, mandates changes to Brookdale's emergency planning procedures, including equipment, transportation, and notice requirements at the Brookdale San Ramon and Brookdale Scotts Valley. *See* Dkt. No. 1073-1 at 40–41. The Stipulated Injunction also modifies the language that Brookdale will use to communicate with current or prospective residents at the Brookdale San Ramon and Brookdale Scotts Valley about its staffing levels and establishes a reporting mechanism under which Brookdale will relay its staffing metrics over the next several years to Plaintiffs' counsel. *Id.* at 42–43.

members had 35 days to object to Plaintiffs' fees and cost request.  *See* Dkt. No. 1073 at 9.

## II. DISCUSSION

### A. Final Settlement Approval

#### i. Class Certification

The Court previously certified four subclasses under Federal Rule of Civil Procedure 23(b)(2).  Dkt. Nos. 593, 820.  Here, the proposed Settlement Agreement provides relief to the same four subclasses already certified by the Court.  *See* SA at 16; Dkt. Nos. 593, 820.  Because no facts that would affect the Court's reasoning have changed since the Court's Class Certification Order and since the Court preliminarily approved the settlement on June 15, 2025, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the Certification Orders.  *See* Dkt. Nos. 593, 820.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  Since then, the Ninth Circuit has applied this higher level of scrutiny even to settlements reached after class certification. *See Briseño v. Henderson*, 998 F.3d 1014, 1023–25 (9th Cir. 2021).  As the Court explained, "[t]he specter of collusion still casts a long shadow over post-class certification settlements when they involve divvying up funds between class members and class counsel."  *Id.* at 1024.[6]

---

[6] As noted *infra*, although *Briseño* was a common fund case, and did not involve solely injunctive relief, the Court nonetheless finds its guidance helpful in assessing the fairness and reasonableness of the Settlement Agreement.

5

The Ninth Circuit has identified several "subtle signs" the Court should consider in determining whether "class counsel have allowed pursuit of their own self-interests ... to infect the negotiations." *Roes*, 944 F.3d at 1043. These include: "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* at 609. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Notice is discretionary "[f]or any class certified under Rule 23(b)(1) or (b)(2)," Fed. R. Civ. P. 2(c)(2), as Rule 23(b) "does not . . . oblige the District Court to afford [classes certified under (b)(1) and (b)(2)] notice of the action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011); *see also Stathakos v. Columbia Sportswear Co.*, No. 4:15-CV-04543-YGR, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) ("In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required."). Therefore, "[c]ourts typically require less notice in Rule 23(b)(2) actions." *Lilly v. Jamba Juice Co.*, No. 13–CV–02998–JST, 2015 WL 1248027, at *8 (N.D. Cal. Mar. 18, 2015). Here, in its discretion and in light of the nature of the proposed relief, the Court directed the parties to provide

6

1  notice to the subclasses. *See Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) ("[A] district court may require notice . . . under its discretionary authority provided in Rule 23(d).").

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23. *See* Dkt. No. 1047 at 10–11; *see also* Dkt. No. 1073-1 ("Grunfeld Decl.") at ¶¶ 5–10. Consistent with the notice plan, Brookdale staff placed hard copies of the relevant class notice in the internal facility mailboxes of each current resident identified as a member of one or more of the subclasses by July 13, 2025.[7] *See* Grunfeld Decl. at ¶ 9. The following day, for any members of the four subclasses who have legal representatives designated as Responsible Parties, those Responsible Parties received notice electronically. *See id.* Finally, Plaintiffs' counsel placed the notice on their websites on July 15, 2025. *See id.* at ¶ 10. They also placed the motion for attorneys' fees on their website on August 12, 2025. *See id.* Subclass members had 60 days to object to the terms of the proposed settlement. *See* Dkt. No. 1073 at 9–10. As of September 15, 2025, no subclass members had objected. *See id.*

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiffs' Case and Risk of Further Litigation

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

---

[7] Although the parties dispute whether individuals who use glasses or contacts but whose vision does not correct to 20/20 have a vision disability and therefore are subclass members who require notice, they stipulated that such individuals would receive notice in any event. *See* Dkt. No. 1046; *see also* Grunfeld Decl. at ¶ 7.

expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the settlement agreement is reasonable in light of the complexity of this case and the risks that Plaintiffs would face in continued litigation. Plaintiffs' counsel maintain that they remain confident in the strength of their case, especially given the depth of factual development over the last eight years and their success as to several legal issues. *See* Dkt. No. 1073 at 24. Nonetheless, Plaintiffs' counsel acknowledge that significant risk and expense would remain in continued litigation. *See id.* at 25. Plaintiffs' counsel faced not one but three potential trials, each expected to last approximately two weeks, with the latter two trials requiring additional expert discovery and motion practice. *See id.* And success in the first trial was not certain, as the subclass' claims hinged almost entirely on the testimony of a single witness, and Defendants' proposed jury instructions could have tipped the scales in their favor. *See id.* Additionally, Plaintiffs' counsel note that previously dismissed claims could have been revived through appeal, resulting in further litigation. *Id.* In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class, with injunctive relief that is more certain than any result at trial. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. The Amount Offered in Settlement

While the Settlement Agreement provides solely injunctive relief for subclass members, that relief is significant. In relevant part, the Settlement Agreement implements substantial renovations to the Brookhurst, San Ramon, and Scotts Valley facilities to bring residential units and common spaces into compliance with the 2010 ADAS, and it ensures that a Brookdale transportation policy provision, which currently allows residents to stay on their mobility aids during transit, remains fixed in place. These substantial benefits weigh in favor of approval.

### 3. The Extent of Discovery Completed and the Stage of Proceedings

The Court finds that Plaintiffs' counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

(9th Cir. 2000). The parties settled only after conducting significant discovery and investigation over the course of several years, having reviewed millions of pages of documents exchanged and after taking dozens of depositions. *See* Dkt. No. 1073 at 26–27. In light of this, the Court is comfortable that Plaintiffs' counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to realistically value and assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 4. The Experience and Views of Counsel

Counsel represent that the Settlement Agreement is fair, adequate and reasonable, and they argue that the views of counsel should be granted a presumption of reasonableness. *See* Dkt. No. 1073 at 27. In recent years, however, the Ninth Circuit has stressed that district courts have an independent duty to assess these factors.[8] *See In re Apple Device Performance Litig.*, 50 F.4th 769, 782–83 (9th Cir. 2022) (reversing pre-certification order granting final approval for improperly according the settlement a presumption of reasonableness); *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (applying the higher standard of scrutiny to post-certification settlement). Although *In re Apple* and *Briseño* involved common funds and not injunctive relief, the Court views the Ninth Circuit's guidance as a strong signal that counsel's views should no longer be presumed reasonable. The Court therefore declines in its discretion to accord any weight to those views.

### 5. The Reaction of Class Members to Date.

The reaction of the Class Members also supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

---

[8] Plaintiffs' counsel separately argue that the Settlement was not the result of collusion between the parties. The Court previously addressed the issue of possible collusion in its preliminary approval order. Dkt. No. 1047. Because no facts that would affect the Court's reasoning have changed, the Court incorporates by reference its prior analysis. *See id.* at 7–10.

9

1    As of September 15, 2025, Plaintiffs' counsel had not received any objections to the
2 proposed Settlement Agreement or the motion for attorneys' fees. *See* Grunfeld Decl. at ¶¶ 26, 28.
3 At the final approval hearing, Counsel confirmed that no additional objections were received
4 between filing the motion for final approval and the final fairness hearing.  The Court finds that
5 the lack of objections indicates overwhelming support among the subclass members and weighs in
6 favor of approval of the settlement.  *See, e.g., Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566,
7 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members
8 objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10
9 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members
10 objected).

\*   \*   \*

12    After considering and weighing these factors, the Court finds that the settlement agreement
13 is fair, adequate, and reasonable, and that the Class Members received adequate notice.
14 Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### B.   Attorneys' Fees, Costs and Expenses

In their unopposed motion and consistent with the Settlement Agreement, Plaintiffs'
counsel ask the Court to approve total award of $14,500,000 in attorneys' fees, costs, and
expenses.  *See* Dkt. No. 1052 at 8–32.  Plaintiffs' counsel represent that they have incurred
$3,864,949.72 in costs, making the total amount sought in attorneys' fees is $10,635,050.28.  *See*
Dkt. No. 1052 at 10, 25.

#### i.   Attorneys' Fees
##### a.   Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable
costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The Ninth
Circuit "has signed off on two methods for determining reasonable attorneys' fees in class actions:
the 'lodestar' method and the 'percentage-of-recovery' method." *In re California Pizza Kitchen
Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025).  Because "injunctive relief is inherently
difficult to monetize," *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021), courts tend to use the

10

lodestar method in injunctive relief class actions. *See Hanlon.*, 150 F.3d at 1029; *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015) ("Because the settlement resulted in injunctive relief, the lodestar method is the appropriate measure for calculating attorneys' fees."). The "[b]enefit to the class is the '[f]oremost' consideration" in assessing the reasonableness of attorneys' fees. *Kim*, 8 F.4th at 1181; *see In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th at 679 (holding that the "touchstone" for the Court's attorneys' fees "analysis is 'the benefit to the class'—class counsel can only reap rewards if they have delivered results for class members"). Plaintiffs' counsel are also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

### b. Discussion

Plaintiffs' counsel here seek a total of $14,500,000 in attorneys' fees, costs, and expenses. Plaintiffs' counsel urge that the requested fees are far below their lodestar and are appropriate given the work invested in this case and the quality of the result. *Id.* The Court agrees.

As previously discussed, the settlement provides significant injunctive relief to subclass members, as well as to subclass members whose claims were previously dismissed from this case. Under the settlement, the subclasses will benefit from renovations to both common areas and residential units at Brookdale facilities, the maintenance of current transportation policies, and changes to Brookdale evacuation policies and emergency preparedness. This injunctive relief comes with greater speed and certainty than could be achieved by going to trial. Because of this litigation, Plaintiffs have "vindicated the purposes of federal and state civil rights laws[] and have obtained significant relief that will benefit the members of the class as well as the general public." Dkt. No. 1052 at 21.

Plaintiffs' counsel argue that in such circumstances, "a fully compensatory lodestar fee is warranted." *Id.* Based on Plaintiffs' counsel's calculations, as of July 15, 2025, they had spent 49,483 hours on this case, for a lodestar amount of $40,200,387 after the exercise of billing judgment. *See id.* at 10. To support this calculation, counsel provided detailed, contemporaneous billing records with their hourly rates, as well as information regarding their qualifications, several

cases approving their fees in other lawsuits, and declarations supporting the reasonableness of their fees. *See* Dkt. No. 1053; 1054-1; 1055-1; Dkt. No. 1058; 1059; 1062.  Plaintiffs' counsel proffer that their rates are reasonable, and that staffing and the number of hours claimed are reasonable in light of the circumstances, as they were contemporaneously recorded over the course of a broad-based, hotly contested, years' long litigation. *See id.* Dkt. No. 1052 at 25–28. Plaintiffs' counsel also argue that they have already exercised substantial billing judgment, calculating a lodestar that accounts for reductions for travel time, clerical time, and small billers. *See id.* at 28.  Finally, the lodestar reflects across-the-board reductions to further account for any time that might be considered duplicative or excessive. *See* Dkt. No. 1058 at ¶ 139; Dkt. No. 1053 at ¶ 29; Dkt. No. 1054 at ¶ 21; Dkt. No. 1055 at ¶¶ 53–54.  Therefore, the requested award of $10,635,050.28 is approximately 0.26 times the net lodestar attorneys' fees. *See id.* at 29.

Having reviewed these records, the Court observes that this litigation involved, for certain of Plaintiffs' counsel, over eight years of preparation and hard-fought litigation.  The case was challenging and aggressively litigated, on both sides, requiring substantial time and attention from Plaintiffs' counsel over the course of the case.  Plaintiffs' counsel have already made significant reductions in the interest of billing judgment.  And, as Plaintiffs' counsel represent, they are requesting far less than their lodestar.  The Court accordingly finds that an award of $10,635,050.28 in attorneys' fees is reasonable under the circumstances.

### ii. Costs

Additionally, Plaintiffs' counsel seek to recover $3,864,949.72 in costs and expenses incurred in litigating this case.  Plaintiffs' counsel are entitled to "recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris*, 24 F.3d at 19.  These costs include expert fees, deposition transcripts, travel, mediation fees, telephone, copying and printing, and other litigation-based costs needed to prosecute a case of this nature. *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). Plaintiffs' counsel have provided an itemized list of costs incurred, including for expert fees, deposition transcripts, investigation services, travel, and research, as well as receipts reflecting those costs and expenses. *See* Dkt. Nos. 1060 at 3; 1053, 1054-3; 1060-1–1060-12.  Given the

1  scope of this litigation, the extent of fact and expert discovery, and the stage of the proceedings,
2  the Court finds the request for $3,864,949.72 in costs and expenses reasonable.

### C. Incentive Awards

Finally, Plaintiffs filed a third unopposed motion seeking incentive awards of $5,000 for each of three class representatives: Stacia Stiner, Bernie Jestrabek-Hart, and Jeannette Algarme. Dkt. No. 1074 at 3–9. District courts have discretion to award incentive fees to named class representatives. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d at 463. However, the Court shares the Ninth Circuit's concern that "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003); *Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1163–64 (9th Cir. 2013) (noting that the Ninth Circuit has "expressed disapproval of these incentive agreements" and that "in some cases incentive awards may be proper but ... awarding them should not become routine practice"). The Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe*, 715 F.3d at 1165 (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.*

Although the Settlement Agreement provides only injunctive relief to class members, the Court finds that the service awards requested are warranted under the circumstances. The three class representatives seeking incentive awards spent considerable time in furthering this case. Each of them spent at least 75 hours assisting counsel in discovery and depositions, with Ms. Stiner contributing nearly 100 hours of her time for document review alone. *See* Dkt. No. 1073-5 ("Stiner Decl.") at ¶ 8; Dkt. No. 1073-6 ("Hart Decl.") at ¶ 9; Dkt. No. 1073-7 ("Algarme Decl.") at ¶ 7. Ms. Stiner participated in this case for over eight years, contributing at every stage of the litigation. *See* Stiner Decl. at ¶ 5. Each class representative seeking incentive awards sat for at least one deposition, with Ms. Stiner's and Ms. Algarme's depositions continued to a second day to accommodate their medical needs. *See* Stiner Decl. at ¶ 10; Algarme Decl. at ¶ 11.

Additionally, Ms. Stiner, Ms. Hart, and Ms. Algarme each spent considerable time assisting with document review, assisting counsel in answering written discovery requests, and participating in settlement conferences. *See* Stiner Decl. at ¶¶ 8–9, 11; Hart Decl. at ¶¶ 9, 11–12, 15; Algarme Decl. at ¶ 11. Ms. Algarme and Ms. Hart also assisted discovery efforts by making their rooms available for inspection, and both began to prepare their testimony for trial. *See* Hart Decl. at ¶¶ 16, 19; Algarme Decl. at ¶¶ 14, 16. The Court finds that the considerable efforts and contributions of the class representatives helped achieve the substantial injunctive relief secured by the Settlement Agreement. Accordingly, the Court **GRANTS** the motion for incentive awards.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for final approval of the Settlement Agreement, Dkt. No. 1073. The Court **GRANTS** Plaintiffs' motion for attorneys' fees and costs, Dkt. No. 1052, and awards $10,635,050.28 in fees and $3,864,949.72 in costs. Finally, the Court **GRANTS** Plaintiffs' motion for class representatives' incentive awards, Dkt. No. 1074, and awards $5,000 each as an incentive to Plaintiffs Stiner, Hart, and Algarme.

The parties are directed to file a short stipulated proposed final judgment of two pages or less within seven days from the date of this order. The judgment need not, and should not, repeat the analysis in this Order.

**IT IS SO ORDERED.**

Dated: 10/24/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge